**ORIGINAL**

1  BOB STEINBERG (SBN 126407)
   (bob.steinberg@lw.com)
2  NEIL RUBIN (SBN 250761)
   (neil.rubin@lw.com)
3  LATHAM & WATKINS LLP
   355 South Grand Avenue
4  Los Angeles, CA 90071
   Telephone: (213) 485-1234
5  Facsimile: (213) 891-8763

6  WILLIAM F. LEE (admitted *pro hac vice*)
   (william.lee@wilmerhale.com)
7  DOMINIC E. MASSA (admitted *pro hac vice*)
   (dominic.massa@wilmerhale.com)
8  JOSEPH J. MUELLER (admitted *pro hac vice*)
   (joseph.mueller@wilmerhale.com)
9  WILMER CUTLER PICKERING HALE AND
   DORR LLP
10 60 State Street
11 Boston, MA 02129
   Telephone: (617) 526-6000
12 Facsimile: (617) 526-5000

13 Attorneys for Plaintiff and Counterclaim
   Defendant
14 BROADCOM CORPORATION
   (Additional Counsel Listed on Signature Page)
15

16           **UNITED STATES DISTRICT COURT**

17    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

18

19 **BROADCOM CORPORATION,**          CASE No. SACV 09-1058 JVS (ANx)

20           **Plaintiff,**            **PLAINTIFF BROADCOM
                                        CORPORATION'S FIRST
21      v.                             AMENDED COMPLAINT FOR
                                        PATENT INFRINGEMENT AND
22 **EMULEX CORPORATION,**             DEMAND FOR JURY TRIAL**

23           **Defendant.**
                                       Hon. James V. Selna
24
                                       Trial Date: September 20, 2011
25

26 **And Related Counterclaims**

27

28

1

Plaintiff Broadcom Corporation ("Broadcom"), for its Complaint against Defendant Emulex Corporation ("Emulex" or "the defendant"), alleges as follows:

## I.    JURISDICTION AND VENUE

1.    Plaintiff's patent infringement claims arise under the patent laws of the United States, Title 35 U.S.C. §§ 1 et seq.  This Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.    This Court has personal jurisdiction over the defendant, the principal place of business of which is located in Costa Mesa, California and which has sufficient minimum contacts with this District.

3.    Venue for this action is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Emulex has committed, and is continuing to commit, acts of infringement in this District, has its principal place of business in this District, and is subject to personal jurisdiction in this District.

## II.    PARTIES

4.    Plaintiff Broadcom is a corporation organized and existing under the laws of the state of California, with its principal place of business at 5300 California Avenue, Irvine, California 92617.

5.    Defendant Emulex is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 3333 Susan Street, Costa Mesa, California 92626.

## III.    FACTS

6.    This action arises out of Emulex's infringement of eleven patents owned by Broadcom.

7.    On July 3, 2007, United States Patent No. 7,239,636 (the "'636 Patent"), entitled "Multiple Virtual Channels for Use in Network Devices," was duly and legally issued to inventors Shiri Kadambi, Shekhar Ambe, Mohan Kalkunte, Sandeep Relan, Allan Christie, Uri Elzur, Martin Lund, and Daniel

**FIRST AMENDED COMPLAINT**

Talayco. The '636 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '636 Patent is attached hereto as Exhibit A.

8.      On November 13, 2007, United States Patent No. 7,295,555 (the "'555 Patent"), entitled "System and Method for Identifying Upper Layer Protocol Message Boundaries," was duly and legally issued to inventor Uri Elzur. The '555 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '555 Patent is attached hereto as Exhibit B.

9.      On July 20, 2004, United States Patent No. 6,766,389 (the "'389 Patent"), entitled "System on a Chip for Networking," was duly and legally issued to inventors Mark D. Hayter, Joseph B. Rowlands, and James Y. Cho. The '389 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '389 Patent is attached hereto as Exhibit C.

10.      On December 30, 2008, United States Patent No. 7,471,691 (the "'691 Patent"), entitled "Fibre Channel Arbitrated Loop Bufferless Switch Circuitry to Increase Bandwidth without Significant Increase in Cost," was duly and legally issued to inventors Alistair D. Black and Kurt Chan. The '691 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '691 Patent is attached hereto as Exhibit D.

11.      On November 11, 2008, United States Patent No. 7,450,500 (the "'500 Patent"), entitled "Fibre Channel Arbitrated Loop Bufferless Switch Circuitry to Increase Bandwidth Without Significant Increase in Cost," was duly and legally issued to inventors Alistair D. Black and Kurt Chan. The '500 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '500 Patent is attached hereto as Exhibit E.

12.      On July 23, 2002, United States Patent No. 6,424,194 (the "'194 Patent"), entitled "Current-Controlled CMOS Logic Family," was duly and legally issued to inventor Armond Hairapetian. The '194 Patent has been duly and legally

3

**FIRST AMENDED COMPLAINT**

assigned to Broadcom.  A true and correct copy of the '194 Patent is attached hereto as Exhibit F.

13.    On May 2, 2006, United States Patent No. 7,038,516 (the "'516 Patent"), entitled "Current-Controlled CMOS Logic Family," was duly and legally issued to inventor Armond Hairapetian. The '516 Patent has been duly and legally assigned to Broadcom.  A true and correct copy of the '516 Patent is attached hereto as Exhibit G.

14.    On February 3, 2009, United States Patent No. 7,486,124 (the "'124 Patent"), entitled "Current-Controlled CMOS Logic Family," was duly and legally issued to inventor Armond Hairapetian. The '124 Patent has been duly and legally assigned to Broadcom.  A true and correct copy of the '124 Patent is attached hereto as Exhibit H.

15.    On May 8, 2007, United States Patent No. 7,215,169 (the "'169 Patent"), entitled "Current-Controlled CMOS Logic Family," was duly and legally issued to inventor Armond Hairapetian. The '169 Patent has been duly and legally assigned to Broadcom.  A true and correct copy of the '169 Patent is attached hereto as Exhibit I.

16.    On December 25, 2007, United States Patent No. 7,313,623 (the "'623 Patent"), entitled "System and Method for TCP/IP Offload Independent of Bandwidth Delay Product," was duly and legally issued to inventors Uri Elzur, Frankie Fan, Steven B. Lindsay, and Scott S. McDaniel. The '623 Patent has been duly and legally assigned to Broadcom.  A true and correct copy of the '623 Patent is attached hereto as Exhibit J.

17.    On June 6, 2006, United States Patent No. 7,058,150 (the "'150 Patent"), entitled "High-Speed Serial Data Transceiver and Related Methods," was duly and legally issued to inventors Aaron W. Buchwald, Michael Le, Jurgen Van Engelen, Xicheng Jiang, Hui Wang, Howard A. Baumer, and Avanindra Madisetti.

FIRST AMENDED COMPLAINT

The '150 Patent has been duly and legally assigned to Broadcom. A true and correct copy of the '150 Patent is attached hereto as Exhibit K.

18.    Broadcom is the owner of the '636, '555, '389, '691, '500, '194, '516, '124, '169, '623, and '150 Patents ("Broadcom Patents in Suit") with the full and exclusive right to bring suit to enforce the Broadcom Patents in Suit.

19.    Emulex has had prior knowledge of one or more of the Broadcom Patents in Suit.

20.    Emulex designs, makes, uses, sells and/or supports networking infrastructure solutions.

21.    Emulex designs, makes, uses, sells, and/or supports fibre channel based connectivity products.

22.    Emulex designs, makes, uses, sells, and/or supports application-specific integrated circuits ("ASICs") that contain embedded Serializers/Deserializers ("SerDes").

23.    Emulex designs, makes, uses, sells, and/or supports converged network adapters under the product family name "LightPulse."

24.    Emulex designs, makes, uses, sells, and/or supports universal converged network adapters under the product family name "OneConnect."

25.    Emulex designs, makes, uses, sells, and/or supports embedded storage networking products, which include embedded storage processors, embedded storage controllers, and embedded storage switches.

26.    Emulex designs, makes, uses, sells, and/or supports embedded storage switches under the product family names "InSpeed" and "FibreSpy."

27.    Emulex's converged network adapters are integrated into devices made, used, and/or sold by original equipment manufacturers ("OEMs").

28.    Emulex's embedded storage networking products are integrated into devices made, used, and/or sold by OEMs.

FIRST AMENDED COMPLAINT

29.    As alleged herein, Emulex has engaged in actions that have directly and indirectly infringed the Broadcom Patents in Suit.

30.    For one or more of the Broadcom Patents in Suit, Emulex has directly infringed by making, using, selling, offering to sell, and/or importing infringing products into the United States.

31.    For one of more of the Broadcom Patents in Suit, Emulex has contributorily infringed by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s), knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

32.    For one or more of the Broadcom Patents in Suit, Emulex has induced infringement by encouraging acts of direct infringement, when Emulex knew or should have known it was inducing direct infringement.    Emulex's acts of encouragement include but are not limited to (a) selling to, supplying to, encouraging, helping design, and/or supporting OEMs to incorporate certain Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use certain Emulex products.

33.    For one or more of the Broadcom Patents in Suit, Emulex has acted willfully despite an objectively high likelihood that its actions constituted infringement of a valid patent, and this objectively-high risk was either known or should have been known by Emulex.

## IV.    COUNT ONE

### Infringement of the '636 Patent

34.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through

**FIRST AMENDED COMPLAINT**

33 above as if fully set forth herein.

35.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '636 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to (a) the "LightPulse" LP21000 Family of 10Gb/s Fibre Channel over Ethernet Single Channel Converged Network Adapters, such as LP21000, LP21000-C, LP21000-M, and LP21000-NC Converged Network Adapters; (b) the "LightPulse" LP21002 Family of 10Gb/s Fibre Channel over Ethernet Dual Channel Converged Network Adapters, such as LP21002, LP21002-C, LP21002-M, LP21002-NC Converged Network Adapters; (c) the "LightPulse" LP2105-CI 10Gb/s Fibre Channel over Ethernet Mezzanine CNA products; (d) the "OneConnect" Universal Converged Network Adapter; and (e) other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

36.    Emulex's continuing actions as alleged herein are inducing infringement of the '636 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

37.    Emulex's continuing actions as alleged herein are contributorily infringing the '636 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a

7

patented process, constituting a material part of the claimed invention(s) of the '636 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

38.     Emulex's continuing actions as alleged herein are willfully infringing the '636 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

39.     The '636 patent claims that Emulex infringes (directly and/or indirectly) include but are not limited to claim 18:

A virtual channel capable network device comprising:

a data port interface, supporting a plurality of data ports transmitting and receiving data;

wherein said data port interface is configured to establish a virtual channel
between said virtual channel capable network device and other virtual
channel capable network devices through the transmission and receipt of
virtual channel messages and configured to exchange virtual channel data
to allow for functions of at least one of the virtual channel capable network
device and other virtual channel capable network devices to be controlled,
and wherein the data port interface is configured to receive a remote
capability list and to send a local capability list to the other virtual channel
capable network devices,

said data port interface is configured to exchange virtual channel data to
control the selective flow of the transmitted and received data in at least
one of the virtual channel capable network device and other virtual
channel capable network devices.

**V.     COUNT TWO**

**FIRST AMENDED COMPLAINT**

**Infringement of the '555 Patent**

40.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 39 above as if fully set forth herein.

41.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '555 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "OneConnect" Universal Converged Network Adapter and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

42.    Emulex's continuing actions as alleged herein are inducing infringement of the '555 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

43.    Emulex's continuing actions as alleged herein are contributorily infringing the '555 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '555 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

44.    Emulex's continuing actions as alleged herein are willfully infringing

FIRST AMENDED COMPLAINT

the '555 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

45.   The '555 patent claims that Emulex infringes (directly and/or indirectly) include but are not limited to claim 1:

A method for locating a framing header in a received Transmission Control Protocol (TCP) frame, the method comprising:

locating a backwards-pointing marker; and

using information stored in the backwards-pointing marker to locate the framing header,

wherein locating a backwards-pointing marker comprises subtracting an initial value and performing a modulo operation on a TCP sequence number with respect to a preset marker interval.

## VI.   COUNT THREE

### Infringement of the '389 Patent

46.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 45 above as if fully set forth herein.

47.   Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '389 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the IOP 502M Embedded Storage Processor, IOC 500S Embedded Storage Controller, and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

48.   Emulex's continuing actions as alleged herein are inducing infringement of the '389 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to,

10

**FIRST AMENDED COMPLAINT**

supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

49.     Emulex's continuing actions as alleged herein are contributorily infringing the '389 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '389 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

50.     Emulex's continuing actions as alleged herein are willfully infringing the '389 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

51.     The '389 patent claims that Emulex infringes (directly and/or indirectly) include but are not limited to claim 1:

An integrated circuit comprising: at least one processor coupled to a bus;

a cache memory coupled to the bus to cache data for the integrated circuit;

a memory controller coupled to the bus;

a bridge circuit coupled to the bus:

and at least one interface circuit to couple to a network external to the integrated circuit, the at least one interface circuit also coupled to the bridge circuit to allow the bridge circuit to initiate transactions onto the bus for data transfer between the bus and the at least one interface circuit.

FIRST AMENDED COMPLAINT

## VII.   COUNT FOUR

### Infringement of the '691 Patent

52.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 51 above as if fully set forth herein.

53.   Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '691 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

54.   Emulex's continuing actions as alleged herein are inducing infringement of the '691 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

55.   Emulex's continuing actions as alleged herein are contributorily infringing the '691 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '691 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

12

**FIRST AMENDED COMPLAINT**

56.    Emulex's continuing actions as alleged herein are willfully infringing the '691 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

57.    The '691 patent claims that Emulex infringes (directly and/or indirectly) include but are not limited to claim 7:

A packet switch for coupling a plurality of node loop (NL) nodes and/or Fibre Channel Arbitrated Loop network (FCAL nets) together to all concurrent data exchanges between a plurality of pairs comprised of one NL node or FCAL net and one other NL node or FCAL net, comprising:

a crossbar switch;

a protocol bus;

a plurality of port circuits each having an input and an output for connecting to an FCAL net coupled to one or more NL nodes and capable of implementing a Fibre Channel loop protocol, and each having a crossbar switch port coupled to said crossbar switch;

circuitry in each said port circuit and coupled to said protocol bus for maintaining a scoreboard table containing at least status information and a routing table containing data mapping destination addresses of NL nodes to port IDs;

and wherein said port circuits function to establish connections between themselves by using destination addresses in Open (OPN) primitives received from source nodes to search said routing table to determine the ID of a remote port coupled to the destination node having the destination address in the OPN and, using that port ID to search said scoreboard table to determine status of the remote port, and then exchanging messages with said remote port to cause it to arbitrate for and take control of its local FCAL net and establish a data path via a particular channel through said

13

**FIRST AMENDED COMPLAINT**

crossbar switch and use said channel to transmit primitives and data frames between said source node and said destination node.

## VIII. COUNT FIVE

### Infringement of the '500 Patent

58.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 57 above as if fully set forth herein.

59.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '500 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to cascaded "InSpeed" SOC 422 Embedded Storage Switches and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

60.    Emulex's continuing actions as alleged herein are inducing infringement of the '500 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

61.    Emulex's continuing actions as alleged herein are contributorily infringing the '500 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '500 Patent, knowing the same to be especially made or especially adapted for use

**FIRST AMENDED COMPLAINT**

in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

62.    Emulex's continuing actions as alleged herein are willfully infringing the '500 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

63.    The '500 patent claims that Emulex infringes (directly and/or indirectly) include but are not limited to claim 3:

A method for coupling a plurality of Fibre Channel Arbitrated Loop (FCAL) nets, comprising:

> providing a plurality of separate backplane data paths;
>
> coupling a plurality of port integrated circuits by said separate backplane data paths, each integrated circuit having integrated thereon a port circuit and a portion of a crossbar switch; and
>
> coupling FCAL net interface to at least one FCAL net, and the portion of the crossbar switch,
>
> wherein each of said plurality of port integrated circuits has a priority level for access to busy destination nodes.

## IX.    COUNT SIX

### Infringement of the '194 Patent

64.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 63 above as if fully set forth herein.

65.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '194 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic

**FIRST AMENDED COMPLAINT**

devices that incorporate similar circuitry and/or have similar features and/or functionality.

66.    Emulex's continuing actions as alleged herein are inducing infringement of the '194 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

67.    Emulex's continuing actions as alleged herein are contributorily infringing the '194 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '194 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

68.    Emulex's continuing actions as alleged herein are willfully infringing the '194 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

69.    The '194 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 1:

A metal-oxide-semiconductor field-effect transistor (MOSFET) circuit fabricated on a silicon substrate, comprising:

first circuitry implemented using current-controlled complementary metal-oxide semiconductor $C^3MOS$ logic wherein logic levels are signaled by current steering in one of two or more branches in response to differential

**FIRST AMENDED COMPLAINT**

input signals, the first circuitry being configured to process a first signal having a first frequency; and

second circuitry implemented using conventional complementary metal-oxide-semiconductor (CMOS) logic wherein substantially zero static current is dissipated, the second circuitry being coupled to the first circuitry and configured to process a second signal having a second frequency that is different than the first frequency,

wherein the first circuitry comprises an input circuit that is implemented using the $C^3$MOS logic, and is configured to deserialize the first signal into a plurality of lower frequency signals.

## X.     COUNT SEVEN

### Infringement of the '516 Patent

70.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 69 above as if fully set forth herein.

71.     Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '516 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

72.     Emulex's continuing actions as alleged herein are inducing infringement of the '516 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by

17

OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

73.     Emulex's continuing actions as alleged herein are contributorily infringing the '516 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '516 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

74.     Emulex's continuing actions as alleged herein are willfully infringing the '516 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

75.     The '516 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 1:

A circuit, comprising:

an input that is operable to receive a serial input signal that has a first frequency;

a circuit block, implemented using current-controlled complementary metal-oxide semiconductor (CMOS) logic wherein logic levels are signaled by current steering in one of two or more branches in response to differential input signals, that is operable to convert the serial input signal into a deserialized signal comprising a plurality of signals such that each signal of the plurality of signals has a second frequency; and

an output that is operable to transmit each signal of the plurality of signals.

XI.   **COUNT EIGHT**

**FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Infringement of the '124 Patent**

76.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 75 above as if fully set forth herein.

77.   Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '124 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

78.   Emulex's continuing actions as alleged herein are inducing infringement of the '124 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

79.   Emulex's continuing actions as alleged herein are contributorily infringing the '124 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '124 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

80.   Emulex's continuing actions as alleged herein are willfully infringing

19

**FIRST AMENDED COMPLAINT**

the '124 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

81.    The '124 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 1:

A circuit, comprising:

an input that is operable to receive an input signal;

a deserializer circuit block, implemented using current-controlled complementary metal-oxide semiconductor ($C^3MOS$) logic wherein logic levels are signaled by current steering in one of two or more branches in response to differential input signals, that is operable to convert the input signal into a parallel signal that includes a plurality of signals such that the plurality of signals includes all information within the input signal;

and an output that is operable to transmit the parallel signal by transmitting each signal of the plurality of signals.

## XII.    COUNT NINE

### Infringement of the '169 Patent

82.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 81 above as if fully set forth herein.

83.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '169 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

84.    Emulex's    continuing    actions    as    alleged    herein    are    inducing

**FIRST AMENDED COMPLAINT**

infringement of the '169 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

85.     Emulex's continuing actions as alleged herein are contributorily infringing the '169 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '169 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

86.     Emulex's continuing actions as alleged herein are willfully infringing the '169 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

87.     The '169 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 9:

An apparatus, comprising:

a first circuit block, implemented using current-controlled complementary metal-oxide semiconductor ($C^3MOS$) logic wherein logic levels are signaled by current steering in one of two or more branches in response to differential input signals, that is operable to receive and process a first signal thereby generating a second signal and a third signal there from;

a second circuit block, implemented using conventional complementary metal-oxide-semiconductor (CMOS) logic wherein substantially zero static

21

current is dissipated, that is operable to receive and process the second signal thereby generating a fourth signal there from; and

a third circuit block, implemented using conventional CMOS logic wherein substantially zero static current is dissipated, that is operable to receive and process the third signal thereby generating a fifth signal there from.

## XIII.  COUNT TEN

### Infringement of the '623 Patent

88.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 87 above as if fully set forth herein.

89.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '623 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States (and/or contributing to and/or inducing others to do the same) including but not limited to the "OneConnect" Universal Converged Network Adapter used in, without limitation, Emulex's Virtual Fabric Adapter for certain blade servers, and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

90.    Emulex's continuing actions as alleged herein are inducing infringement of the '623 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

91.    Emulex's continuing actions as alleged herein are contributorily infringing the '623 Patent by offering to sell or selling within the United States or

22

FIRST AMENDED COMPLAINT

importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '623 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

92.    Emulex's continuing actions as alleged herein are willfully infringing the '623 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

93.    The '623 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 25:

A system for providing connection offload, comprising:

a network interface card (NIC) for operatively coupling to a host, wherein when said NIC and said host are operatively coupled, for a particular connection offloaded to said NIC, control of state information is split between said host and said NIC, said NIC updates at least a portion of updated connection variables for said particular connection, and said NIC unloads said at least a portion of said updated connection variables for said particular connection to said host.

## XIV.  COUNT ELEVEN

### Infringement of the '150 Patent

94.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 93 above as if fully set forth herein.

95.    Emulex has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more claims of the '150 Patent, directly and/or indirectly, in violation of 35 U.S.C. § 271(a), (b), (c) and/or (f); at least by making, using, selling, offering to sell and/or importing products in the United States

**FIRST AMENDED COMPLAINT**

(and/or contributing to and/or inducing others to do the same) including but not limited to the "InSpeed" SOC 422 Embedded Storage Switch and other electronic devices that incorporate similar circuitry and/or have similar features and/or functionality.

96.    Emulex's continuing actions as alleged herein are inducing infringement of the '150 Patent by encouraging acts of direct infringement, and Emulex knows or should know it is inducing direct infringement by (a) selling to, supplying to, encouraging, helping design, and/or supporting original equipment manufacturers ("OEMs") to incorporate Emulex products into devices sold by OEMs, and (b) selling to, supplying to, encouraging, and/or instructing third parties how to use such Emulex products.

97.    Emulex's continuing actions as alleged herein are contributorily infringing the '150 Patent by offering to sell or selling within the United States or importing into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the claimed invention(s) of the '150 Patent, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

98.    Emulex's continuing actions as alleged herein are willfully infringing the '150 Patent, such that Broadcom is entitled to enhanced damages (including treble damages) and other available relief from Emulex.

99.    The '150 patent claims that Emulex infringes (directly or indirectly) include but are not limited to claim 1:

A communication device, comprising:

a master signal generator adapted to generate a master timing signal;

a receive-lane adapted to receive an analog serial data signal and including:

24

**FIRST AMENDED COMPLAINT**

a sampling signal generator adapted to generate multiple time-staggered sampling signals based on the master timing signal, and

multiple data paths each adapted to sample the serial data signal in accordance with a corresponding one of the time-staggered sampling signals, thereby producing multiple time-staggered data sample streams; and

a data demultiplexer module adapted to time-deskew and demultiplex the multiple time-staggered data streams.

## XV.  DAMAGES

100.  By reason of the acts alleged herein, including the patent infringement recited in each Count above, Broadcom has suffered, is suffering, and unless restrained by the Court, will continue to suffer injury to its business and property rights, for which it is entitled to damages pursuant to 35 U.S.C. §§ 284-285 in an amount to be proven at trial.

## XVI.  INJUNCTION

101.  By reason of the acts alleged herein, Broadcom has suffered, is suffering, and unless restrained by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Broadcom is entitled to preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283.

## XVII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Broadcom requests that the Court enter judgment in its favor and against Emulex as follows:

a.  Declare that Emulex has infringed one or more claims of the Broadcom Patents in Suit;

b.  Enter a preliminary and permanent injunction prohibiting Emulex, its subsidiaries, divisions, agents, servants, employees, and all those acting in concert with and/or who are in privity

FIRST AMENDED COMPLAINT

with Emulex and/or any of the foregoing from infringing, contributing to the infringement of, and/or inducing infringement of the Broadcom Patents in Suit, and for all further proper injunctive relief;

c.    Find that Emulex's infringement of one or more of the Broadcom Patents in Suit has been willful;

d.    Award to Plaintiff damages for Emulex's infringement, with pre-judgment and post-judgment interest, damages, as well as enhanced damages, including treble damages for willful infringement, costs (including expert fees), disbursements, and reasonable attorneys' fees incurred by Plaintiff in this action, pursuant to 35 U.S.C. §§ 284-285, finding this to be an "exceptional" case; and

e.    Grant any and all such further relief as the Court deems just and proper.

## XVIII. DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b) and Local Rule 38-1, Plaintiff Broadcom demands a trial by jury on all issues so triable.

Dated: February 23, 2010        By: _____
                                     Dominic E. Massa

BOB STEINBERG (SBN 126407)
(bob.steinberg@lw.com)
NEIL RUBIN (SBN 250761)
(neil.rubin@lw.com)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

26

FIRST AMENDED COMPLAINT

MICHAEL W. DE VRIES (SBN 211001)
(mike.devries@lw.com)
JOSEPH K. LIU (SBN 216227)
(joseph.liu@lw.com)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626
Telephone:  (714) 540-1235
Facsimile:  (714) 755-8290

WILLIAM F. LEE (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA (admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER (admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02129
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

*Attorneys for Attorneys for Plaintiff
and Counterclaim Defendant*
BROADCOM CORPORATION

27

**FIRST AMENDED COMPLAINT**

US1DOCS 7448726v1

# EXHIBIT A

US007239636B2

(12) **United States Patent**
Kadambi et al.

(10) **Patent No.:** **US 7,239,636 B2**
(45) **Date of Patent:** **Jul. 3, 2007**

(54) **MULTIPLE VIRTUAL CHANNELS FOR USE IN NETWORK DEVICES**

(75) Inventors: **Shiri Kadambi**, Los Altos Hills, CA (US); **Shekhar Ambe**, San Jose, CA (US); **Mohan Kalkunte**, Sunnyvale, CA (US); **Sandeep Relan**, Bangalore (IN); **Allan Christie**, Freemont, CA (US); **Uri Elzur**, Irvine, CA (US); **Martin Lund**, Menlo Park, CA (US); **Daniel Talayco**, San Jose, CA (US)

(73) Assignee: **Broadcom Corporation**, Irvine, CA (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1045 days.

(21) Appl. No.: **10/173,422**

(22) Filed: **Jun. 18, 2002**

(65) **Prior Publication Data**

US 2003/0021229 A1    Jan. 30, 2003

**Related U.S. Application Data**

(60) Provisional application No. 60/306,870, filed on Jul. 23, 2001.

(51) **Int. Cl.**
*H04L 12/28* (2006.01)
*H04L 12/56* (2006.01)

(52) **U.S. Cl.** ................................ 370/395.2; 370/395.4; 370/352; 370/353; 370/354; 370/409; 370/410; 710/100; 710/104

(58) **Field of Classification Search** .................... None
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,473,607 A    12/1995 Hausman et al.

(Continued)

FOREIGN PATENT DOCUMENTS

EP         465090     1/1992

(Continued)

OTHER PUBLICATIONS

3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; IP Multimedia (IM) Sysbsystem—Stage 2; (3G TS 23,228 version 2.0.0), 2001.

(Continued)

*Primary Examiner*—Chi Pham
*Assistant Examiner*—Raj Jain
(74) *Attorney, Agent, or Firm*—Squire, Sanders & Dempsey L.L.P.

(57) **ABSTRACT**

A method for establishing a virtual channel between network devices is disclosed. In the case of a local network device establishing a virtual channel with a remote network device, a virtual channel request message is sent from the local network device to the remote network device. A virtual channel acknowledgement message and a remote capability list are received and a virtual channel resume message and a local capability list are sent. The virtual channel is then enabled. In the case of a remote network device establishing a virtual channel with a local network device, a virtual channel request message is received from a local network device by a remote network device. A virtual channel acknowledgement message and a remote capability list are sent and a virtual channel resume message and a local capability list are received. The virtual channel is then enabled.

**20 Claims, 6 Drawing Sheets**



LOCAL LINK DEVICE "A"    REMOTE LINK DEVICE "B"

Sends VC Request

Sends VC ACK + Remote Device Capability List

Sends VC RESUME + Local Device Capability List

Local Enables VC Mode    Remote Enables VC Mode

## US 7,239,636 B2
### Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,748,631 A | 5/1998 | Bergantino et al. | |
| 5,826,027 A | 10/1998 | Pederson et al. | |
| 5,828,653 A | 10/1998 | Goss | |
| 5,892,922 A | 4/1999 | Lorenz | |
| 5,907,553 A | 5/1999 | Kelly et al. | |
| 5,909,686 A | 6/1999 | Muller et al. | |
| 5,987,507 A | 11/1999 | Creedon et al. | |
| 6,061,351 A | 5/2000 | Erimli et al. | |
| 6,185,185 B1 | 2/2001 | Bass et al. | |
| 6,279,035 B1 * | 8/2001 | Brown et al. | 709/224 |
| 6,597,689 B1 * | 7/2003 | Chiu et al. | 370/354 |
| 6,606,321 B1 * | 8/2003 | Natanson et al. | 370/395.2 |
| 6,614,791 B1 * | 9/2003 | Luciani et al. | 370/395.53 |
| 6,631,351 B1 * | 10/2003 | Ramachandran et al. | 704/270 |
| 6,865,158 B2 * | 3/2005 | Iwamoto | 370/248 |
| 2002/0194400 A1 * | 12/2002 | Porterfield | 710/1 |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 1 206 075 | 5/2002 |
| EP | 1 280 302 | 1/2003 |
| FR | 2725573 | 4/1996 |
| WO | 99/00948 | 1/1999 |

### OTHER PUBLICATIONS

I. Crayford, "Fast Ethernet Gets Plug-and-Play," Wescon Cnference, IEEE Center, Hoes Lane, US, Nov. 7, 1995, pp. 354-359, XP000586593.

W. Noureddine et al., "Selective Back-Pressure in Switched Ethernet LANS," IEEE Globecom, pp. 1256-1263, vol. 1, 1999, pp. 1-9, XP002258500.

K. MacLeod et al., "Enhanced Flow Control for 802.3 Links Utilizing Extensions of 802.3x Flow Control," IEEE 802 Exec Study Group on QOS and Flow Control, Nov. 11, 1998, XP002178211.

3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; IP Multimedia (IM) Subsystem—Stage 2 (3G TS 23.228 version 1.7.0); (Feb. 2001); 134 pages.

3rd Generation Partnership Project; Technical Specification Group Services and System Aspects; IP Multimedia (IM) Subsystem—Stage 5 (3G TS 23.228 version 5.0.0); (Apr. 2001); 126 pages.

http://www.3gpp.org/ftp/Specs/archive/23_series/23.228/.

* cited by examiner



(Zero-Loss Mode)

Fig. 1



(HOL Avoidance Mode)

Fig. 2



Fig. 3



Fig. 4

U.S. Patent          Jul. 3, 2007          Sheet 3 of 6          US 7,239,636 B2



Fig. 5



Fig. 6

| Byte 0 . . 17 | DA, SA 0x8808, 0x0001, 0x0000 |
| Byte 18 . . 59 | VC Local Capability Advertisement |
| Byte 60 . . 63 | 32 bit FCS (std. 802.3) |

Fig. 7

EXHIBIT A - 32

U.S. Patent          Jul. 3, 2007          Sheet 4 of 6          US 7,239,636 B2

| Bit | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| +0 | DA | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| +32 | SA | | | | | | | | | | | | | | | | DA | | | | | | | | | | | | | | | |
| +64 | SA | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| +96 | RESERVED | | | | | | | | PROTOCOL | | | | | | | | ETHERTYPE | | | | | | | | | | | | | | | |
| +128 | VC_TAG | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| +160 | OPT_PARAMS | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Varies | DATA | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| Field | Bit(S) | Description |
|---|---|---|
| DA | 0:47 | Destination Address, value set from register for control frame |
| SA | 95:48 | Source Address, value set from register for control frame |
| ETHERTYPE | 111:96 | Ethernet Type Field, value set from register |
| PROTOCOL | 119:112 | Subtype of this ether type, must be 1 for VC packet type |
| RESERVED | 127:119 | Reserved, can be used for VC priority or VC tunneling |
| VC_TAG | 159:128 | VC opcode and parameters |
| OPT_PARAMS | 160+ | Optional additional parameters for command |
| DATA | Varies | Data following tag insertion, offset depends on VC command |

Fig. 8

| Bit | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| +0 | PARAMS | | | | | | | | | | | | | | | | | | | | | | | | OPCODE0 | | | | | | | |

| Field | Bit(S) | Description |
|---|---|---|
| OPCODE0 | 7:0 | Operation opcode. Must be less than 0xFF.<br>0x0          RESERVED<br>0x1          SELECTIVE_FLOW  Selective flow control<br>0x2 - 0xFE   RESERVED<br>0xFF         INACTIVE  Move to opcode1 for evaluation |
| PARAMS | 31:8 | Parameters; format depends on opcode |

Fig. 9

| Bit | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| +0 | PARAMS | | | | | | | | | | | | | | | | OPCODE1 | | | | | | | | OPCODE0_ALL1 | | | | | | | |

| Field | Bit(S) | Description |
|---|---|---|
| OPCODE0_ALL1 | 7:0 | Opcode 0; Must be equal to 0xFF |
| OPCODE1 | 15:8 | Operation opcode. Must be less than 0xFF.<br><br>0x0          RESERVED<br>0x1          SEL_FLOW_PRIORITY  Priority based elective flow control<br>0x2          EGRESS_PRIORITY_FLOW: Flow control based on egress congestion with priority indications<br>0x03 - 0xFE  RESERVED<br>0xFF         INACTIVE  Move to opcode2 for evaluation |
| PARAMS | 31:16 | Parameters; format depends on opcode1 |

Fig. 10

| Bit | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| +0 | OPCODE2 | | | | | | | | | | | | | | | | OPCODE1_ALL1 | | | | | | | | OPCODE0_ALL1 | | | | | | | |

| Field | Bit(S) | Description |
|---|---|---|
| OPCODE2 | 31:16 | Opcode field for header type 2.  Must be less than 0xFFFF.<br><br>Parameters for these opcodes (if any) must be in words following the VC tag.<br><br>0x0000 - 0xFFFE    RESERVED<br>0xFFFF            INACTIVE  Move to data for opcode |
| OPCODE1_ALL1 | 15:8 | Opcode 1; Must be equal to 0xFF |
| OPCODE0_ALL1 | 7:0 | Opcode 0; Must be equal to 0xFF |

Fig. 11

EXHIBIT A - 34

| Bit | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| +0 | RESERVED | | | | | | | | PRIORITY_BITMAP | | | | | | | | OPCODE1_1 | | | | | | | | OPCODE0_ALL1 | | | | | | | |

| Field | Bit(s) | Description |
|---|---|---|
| OPCODE0_ALL1 | 7:0 | Opcode 0; Must be equal to 0xFF |
| OPCODE1_1 | 15:8 | Value is 0x1 indicating SEL_FLOW_PRIORITY operation |
| PRIORITY_BITMAP | 23:16 | Bit map indicating the congestion state of 802.1p priorities Bit states indicate:<br><br>0  No congestion for this priority. De-assert flow control for this priority<br>1  Congestion present for this priority.  Assert flow control for this priority |
| RESERVED | 31:28 | Reserved |

Fig. 12

US 7,239,636 B2

| 1 | 2 |

## MULTIPLE VIRTUAL CHANNELS FOR USE IN NETWORK DEVICES

This nonprovisional application claims the benefit of U.S. Provisional Application No. 60/306,870, filed Jul. 23, 2001. The contents of the provisional application are hereby incorporated by reference.

### BACKGROUND OF THE INVENTION

#### 1. Field of Invention

The present invention relates to a method and apparatus of selectively exchanging control and state information (extensible to exchange of upper layer application data) between network devices. The control and state information is exchanged via a frame that is scalable to support many different applications. More specifically, multiple virtual channels are established between network devices by blocking or control of certain data flows, without blocking the flow of other data through the same link, effectively increasing the bandwidth utilization of the link and the throughput of the network device.

#### 2. Description of Related Art

Many types of network devices are necessary to allow a network to function properly. One such network device is commonly referred to as a switch. A switch is defined as a network component that receives incoming data, stores the data temporarily, and sends the data back out on another port. The switching is accomplished by determining a destination address from the incoming data and sending the data to a port or set of ports associated with the destination address. The control and monitoring of a switch is essential in handling the flow of data in high speed networks. The effective functioning of the switch can be enhanced by control of the traffic through the switch, including monitoring and modification of that traffic. One such function is the control of the selective flow of data through the switch in response to congestion, either internal or external to the switch. This function is also illustrative since it involves the exchange of control and state information between network devices

Ethernet switches generally support two common mechanisms to handle resource congestion inside the switch. The Ingress backpressure mechanism enables the switch to flow control the traffic sent by a remote link partner, i.e. another network connected to the switch. This process is illustrated in FIG. 1. The Ethernet Switch 100 keeps track of the number of packets or cells received on each Ingress Port, such as Port #1 connected to remote link partner 110. If the number of bytes or cells received on an Ingress Port exceed the configurable Ingress Back Pressure threshold, then the switch exerts Back Pressure. In another technique, if the number of packets received on an Egress Port, such as Egress Port #8 connected to the local or wide area networks 120, exceeds a pre-configured threshold value, then egress generates an Ingress Back Pressure request to the Ingress port.

In Full Duplex mode, this Back Pressure is achieved by sending a MAC Control Frame called a "Pause Frame." Upon receiving the Pause Frame, the remote link partner stops sending further packets until the timer specified in the Pause Frame expires or the switch explicitly sends Resume Frame (Pause Frame with Timer=0). Thus, the entire link remains idle until communication resumes. This flow control mechanism on a full duplex port is specified in the IEEE std 802.3x, in which it has been specified that an ingress port in a full duplex mode should send Pause Frames for flow control.

In Half Duplex mode, this Back Pressure mechanism can be achieved by enabling a Jamming signal and thereby preventing any other station from sending the packet. For ports that are in half duplex mode, this prevents any other station from sending packets to the port. The enabling of jamming signal in half duplex is not a standard, but is done by many of the switch vendors.

These techniques help in avoiding losing any packet that was being received and forwarded by the ingress port and it is generally termed as a Zero-Loss mode of switching, or as a Zero Packet Loss mode of switching. This process has other side effects, however, including an adverse impact on the switch's throughput and wire speed switch rate.

In addition, Ethernet switches also support a mechanism to handle Head Of Line (HOL) blocking avoidance. This mechanism is illustrated in FIG. 2. The switch 200 keeps track of number of bytes or cells that are sitting on an Egress Port, such as Egress Port #8 connected to the local or wide area networks, or any type of networks 220. If the number of bytes or cells or packets exceed the Head Of Line (HOL) threshold value then all packets going to that Egress port are dropped at the Ingress port itself. The HOL values are generally configured by software depending on the size of the packet memory. This is generally termed as a HOL avoidance mode of switching. In this HOL avoidance mode, switch performance is sustained by sacrificing packets.

In a Zero-Loss mechanism, the switch never drops any packet for any traffic scenario, the worst case being all ingress ports are sending packets to one egress port. In this Zero-Loss mode, the switch will hit the Ingress Back Pressure threshold before hitting the Egress HOL limit, so that it exerts Ingress Back Pressure rather than dropping packet going to the congested port. As such, there are disadvantages to both types of mechanisms used for controlling the flow of data through a switch.

In terms of providing actual control of the flow of data through a network device, the above processes are often crude with respect to the aspects they allow to be controlled. The present implementations can achieve zero-packet loss but the throughput of the network is often decreased. Alternatively, implementations dealing with Head Of Line blocking can sustain throughput, but the loss of packets increases. Thus, there is a need for a mechanism in a network device that achieves Zero-Loss processing of data that does not have the detrimental effects on the performance of the network device found in the prior art processes. Additionally, there is also a need for selective flow control mechanism that can also be utilized to allow the flow of data having a certain priority to be unimpeded.

### SUMMARY OF THE INVENTION

It is an object of this invention to overcome the drawbacks of the above-described conventional network devices and methods. The above control and monitoring of the processes of a network device can be accomplished through the establishment of multiple virtual channels between network devices. These virtual channels allow for the selective control of flows through the network device. The virtual channels also can provide for in-band management of the network device, as well as traffic shaping and rate control. The use of virtual channels facilitates operations, adminis-

US 7,239,636 B2

3

tration, and maintenance functions and simplifies device detection and remote monitoring of the functions of the network device.

According to one aspect of this invention, a method for establishing a virtual channel between network devices is disclosed. In the case of a local network device establishing a virtual channel with a remote network device, a virtual channel request message is sent from the local network device to the remote network device. A virtual channel acknowledgement message and a remote capability list are received and a virtual channel resume message and a local capability list are sent. The virtual channel is then enabled. Similarly, in the case of a remote network device establishing a virtual channel with a local network device, a virtual channel request message sent from a remote network device, is received by a local network device. A virtual channel acknowledgement message and a remote capability list are sent and a virtual channel resume message and a local capability list are received. The virtual channel is then enabled.

Additionally, the virtual channel request message may be an Ethernet frame that is interpreted as a pause frame when the remote network device is not virtual channel capable. Also, a request retry timer may be used to wait for a specified period after the request message is sent and then resent after the specified period when no virtual channel acknowledgement message has been received. A request retry limit value may be used to limit the number of times the request message is sent. Similarly, an acknowledgement retry timer may be used to wait a specified period after the acknowledgement message is sent and then resent after the specified period when no virtual channel resume message has been received. Also, an acknowledgement retry limit value may be used to limit the number of times the acknowledgement message is sent.

Also, the local and remote capability lists can be in the form of link advertisement registers where each bit of the registers refers to specific capabilities of the local and remote network devices, and these registers are sent and received in the steps of the method. Furthermore, the virtual channel request message, the virtual channel acknowledgement message and the virtual channel resume message can each have an Ethernet frame format with a source address and a destination address being one of an address of the local network device and an address of the remote network device.

In addition, the virtual channel may be established through auto-negotiation between the local network device and the remote network device and can use the sending and receipt of next pages to exchange virtual channel data.

In another aspect of the invention, a virtual channel capable network device is disclosed. The device includes means for sending or receiving a virtual channel request message from or to a second network device and means for sending or receiving a virtual channel acknowledgement message and a first capability list. The device also includes means for sending or receiving a virtual channel resume message and a second capability list and means for enabling the virtual channel. When the virtual channel acknowledgement message is sent by the virtual channel capable network device, the first capability list is a capability list for the virtual channel capable network device and when the virtual channel acknowledgement message is received by the virtual channel capable network device, the first capability list is a capability list for the second network device.

Additionally, the network device may include means for sending or receiving an Ethernet frame that is interpreted as

4

a pause frame when the second network device is not virtual channel capable. Also, the device may have one or both of a request retry timer and an acknowledgement retry timer, used to determine the period after which either the request or acknowledgement messages should be resent if the proper reply is not received. The device may also use one or both of a request retry limit value and an acknowledgement retry limit value in determining the number of times a message should be resent.

Also, link advertisement registers may be used, where each bit of the registers refers to specific capabilities of the local and remote network devices. The virtual channel request message, the virtual channel acknowledgement message and the virtual channel resume message can each have an Ethernet frame format with a source address and a destination address being one of an address of the virtual channel capable network device and an address of the second network device.

The device may also include means for auto-negotiation (as specified in the IEEE std 802.3) between the virtual channel capable network device and the second network device to establish communications there between. Also, the device may also incorporate means for sending and receiving next pages used to exchange virtual channel data.

These and other objects of the present invention will be described in or be apparent from the following description of the preferred embodiments.

BRIEF DESCRIPTION OF THE DRAWINGS

For the present invention to be easily understood and readily practiced, preferred embodiments will now be described, for purposes of illustration and not limitation, in conjunction with the following figures:

FIG. 1 illustrates a Zero-Loss process of dealing with congestion in a network switch;

FIG. 2 illustrates the HOL avoidance process of dealing with congestion in a network switch;

FIG. 3 illustrates a Virtual Channel (VC) capable network device linked with remote link partner;

FIG. 4 illustrates the VC three-way handshake process, according to one embodiment of the present invention;

FIG. 5 illustrates an example of VC Handshake REQUEST encoding in the MAC-SA address field of "Pause control" Ethernet frame;

FIG. 6 illustrates an example of VC ACK frame format;

FIG. 7 illustrates an example of VC RESUME frame format;

FIG. 8 illustrates an example of VC frame format;

FIG. 9 illustrates an example of VC frame format for Type 0;

FIG. 10 illustrates an example of VC tag format for Type 1;

FIG. 11 illustrates an example of VC tag format for Type 2; and

FIG. 12 illustrates an example of VC tag for priority based selective flow control.

DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

The Virtual Channel (VC) protocol is intended for exchange of proprietary control between network devices such as switches, routers, network interface cards (NICs), cable modems and related devices. The VC protocol, according to an embodiment of the invention, enables value add functions such as selective flow control, operations, admin-

US 7,239,636 B2

5

istration and maintenance (OAM) functions, in-band management and many other functions between network devices. The VC protocol can be applied to any media between network devices that are so configured.

The VC protocol has many applications, including selective flow control, inband management, rate control, traffic shaping, device detection, OAM functions, remote monitoring, and remote alarms.

An exemplary application of the virtual channels of the present invention is directed to Selective Flow Control (SFC). The IEEE 802.3 standard defines link level flow control between two Ethernet devices. For example, if a switch port is congested, it can send a flow control frame to the remote end to stop all incoming traffic. However, if the remote is sending both delay sensitive and delivery sensitive traffic, it is desirable to flow control only the delivery sensitive traffic and not the delay sensitive traffic. This is the feature referred to as Selective Flow Control.

In FIG. 3, a VC capable Server 310 is connected to a VC capable Switch 300 on port 2 and its clients 320–350 are connected on switch ports 5, 7, 18 and 24. As an example, if client #3 creates congestion on port 18 and port 18 hits the egress congestion threshold, the egress will inform the ingress port 2 of the congestion. Using the VC flow ID technique, Port 2 sends a VC frame to Server 310 indicating congestion for the given flow ID. The Server in turn will stop sending any packets for that Flow ID (mapped to the egress port 18); thereby there will be no packet loss for packets going to egress port 18. Now, the server can continue sending packets to other clients connected to other egress ports, thereby the link bandwidth is fully utilized.

Another important application of the VC protocol is in-band management. This functionality permits a management agent to control a device through a port, rather than through a dedicated bus, such as Peripheral Component Interconnect (PCI). In particular, an internal, VC enabled port can provide full access to the register and memory space of the device, as well as provide the ability to set up remote monitoring, RMON-like trap conditions which will generate an alert by sending a VC frame. The device can then be fully managed without the need for a dedicated CPU.

The architectural paradigm for the VC framework is as follows. The framework enables most common applications and has a minimal impact on link bandwidth. The VC is enabled based on a hardware mechanism with optional software control and the VC does not violate any layer standard (IEEE, IETF). The framework is flexible to allow multiple applications and functions, the architecture is scalable for complex applications and enables customer specific applications to provide differentiation among system vendors using VC-capable devices.

Each of the local and remote sides must indicate it is VC capable. This is accomplished by a three-way handshake. Once the local and remote sides are VC aware, a mechanism is necessary to pass application specific information between the local and remote devices. This is accomplished through a VC frame, which contains all the relevant control information.

When a device supporting VC establishes a link, it should determine whether its link partner is VC capable, and, if so, what functionality to activate. Two of the mechanisms are proposed to establish this are: using the three-way VC Handshake mechanism and/or using the Next Page capability of Auto-negotiation.

Once the capabilities are exchanged, VC control frames are sent to execute the supported functionalities. The actual

6

triggering of the VC frame is dependent on several factors including the application, the state of the device and implementation dependencies.

Ve Handshake

The VC Handshake is performed by the exchange of proprietary frames. It has at least two important tasks to perform: 1) to enable the VC mode between the two link partners and 2) to determine common VC capabilities of the two link partners.

The VC Handshake Mechanism is for Full Duplex ports and is based on the 802.3x Pause Control Frame used for flow control, as specified in the std. 802.3x. This mechanism has distinct advantages, including being 100% compatible with IEEE standard devices (non-VC mode) and 100% forward compatible with the future VC framework. The mechanism is extensible to new Ethernet standards (10 GE), is independent of Media type (copper, Fiber, etc.), is a hardware based handshake mechanism and has the flexibility to fine tune the Handshake parameters using software.

The VC Handshake specification expands upon the MAC Pause control Frames. It has the following requirements. The Handshake should be initiated immediately after link-up, which is after the completion of the auto-negotiation process. The Handshake may be initiated by each link partner. It should only be initiated on links in Full Duplex mode.

The VC Handshake is comprised of three steps. To successfully complete the VC Handshake, the third step should be completed. The steps are:

1. REQUEST phase to search for VC compliant link partner. This is initiated by the local side called the Requester;

2. ACK phase to confirm and pass VC feature list to the requester. This is a response from the remote side, called the Responder; and

3. RESUME phase to complete the handshake and pass requestor's VC feature list. This is sent by the Requester. It indicates the functionality to be supported over this link. These steps are illustrated in FIG. 4.

For all VC Handshake frames, the pause timer field should be set according to the current state of the port. The value should be the same value that would be used if the port were sending a normal pause frame rather than a VC frame. This ensures that non-VC devices connected to this port will act appropriately.

In general, VC capabilities are asymmetrical and involve sending a specific type of VC control frame and involve obeying that type of VC control frame. In order for VC functionality to be enabled, the VC Handshake may be initiated from both link partners. Each device that is capable of generating VC frames may initiate a VC handshake by sending a VC REQUEST frame. FIG. 4 shows an overview of the packet flow during the VC handshake.

The Request phase, initiated by the local device, is an encoded Pause frame sent to the remote device on the link with pause timer value determined by the current state of the port. The frame format follow the standard pause control frame with following field settings:

6 byte DA=as specified in standard.

6 byte SA=REQUEST phase encoding

2 byte Type=MAC Control: 88-08

2 byte Op-Code=Pause Frame: 00-01

2 byte Pause Timer value According to port's state.

42 byte of "Data Payload"=Reserved (all zeros), and

4 byte FCS.

Request Phase encoding uses the 6 bytes of "don't care" SA address field of Pause control frame (Bit 40 of SA

US 7,239,636 B2

7

address set to "0" to avoid multicast source address). The frame encodes the VC REQUEST with following bit assignment, also shown in FIG. 5,:

Bits **47:40** VC Negotiation Code (VC REQUEST)
Bits **39:24** VC Device ID
Bits **23:12** VC Vendor ID
Bit **11:8** VC Rev ID, and
Bits **7:0** VC Signature.

For the VC Signature, an 8-bit checksum is calculated (XOR of bytes in header) and is used as a signature. If this checksum is not correct, the frame should be treated as a normal pause frame. The VC Revision ID is an 8-bit VC Specification Revision ID field. It indicates the VC architectural framework compliance of the local device. This Rev ID is useful for backward compatibility as the VC specification evolves. For first Generation devices, the VC Revision ID is "1" and up to a maximum of 255 revisions of VC Specifications is supported.

The VC Vendor ID is an 8-bit Vendor ID field. It indicates the Vendor ID of the VC silicon. The Default value is 0x1. The allocation of the Vendor ID is performed when requested by the customer for a unique Vendor ID. The intent on providing Vendor ID is for system vendors to provide differentiated products and services to their customers. The VC Device Type is a 16-bit field. It is intended to provide an indication of the capabilities of the device by indicating the family to which it belongs.

The VC Negotiation Code is an 8-bit field with bit zero always set to "0" (to avoid a source routed frame). The Negotiation codes are instrumental in conducting the VC handshake mechanism. Support of up to a maximum of 127 unique Negotiation codes is provided. Following are a few example Negotiation codes, with others being developed based on future requirements:

VC REQUEST (from local to remote)=0x02;
VC ACK (from remote to local)=0x04;
VC RESUME (from local to remote)=0x06; and
Reserved Negotiation code=0x0.

The local has an internal REQ Retry timer and REQ Retry limits (both programmable by software before link up). The REQ Timer is based on the standard pause timer mechanism, except that it is within the local device. If the local does not receive any VC ACK response from remote before the timer expires, the local device re-sends another VC request. The number of VC REQUEST retried by local is controlled by the REQ Retry limits value. The default for the Internal REQ Retry timer is 0x1FFF and the default for the Internal REQ Retry limits is 3.

The ACKNOWLEDGEMENT (ACK) response phase is an encoded Pause frame sent from the remote (Responder) back to the local (Requester) after receiving the initial VC Request packet. If the remote device does not support the VC protocol, the remote device enters a pause state as per the standard Pause frame. Otherwise, the fields have the following meaning:

6 byte DA, as specified in std;
6 byte SA, ACKNOWLEDGEMENT Phase Encoding;
2 byte Type, MAC Control: 88-08;
2 byte op-code, Pause Frame: 00-01;
2 byte Pause Timer, According to port's state;
42 byte Payload, VC Capability list; and
4 byte FCS.

With respect to acknowledgement phase encoding, the 6 byte SA field of the remote device VC ACK and the remote VC identification is encoded with exactly the same semantics as the six bytes of SA address field in the VC REQUEST phase. The description of this field is exactly the same as

8

outlined above in the VC REQUEST phase with remote response and shown in FIG. 5. The 42 bytes of data payload is used to encode the remote device VC capability feature list. This is also discussed in more detail below. The ACK Frame Format is illustrated in FIG. 6.

The remote has an internal ACK Retry timer and ACK Retry limits (both programmable by software). The ACK Timer is based on the std. Pause timer mechanism, except that it is within the remote device. If the remote does not receive any VC RESUME response from local before the timer expires, the remote device re-sends another VC ACK. The number of VC ACK sent by remote is controlled by the ACK Retry limits value. As an example, the default for the Internal ACK Retry timer is set to 0x1FFF and the default for the Internal ACK Retry limits is set to 3.

The RESUME response phase, initiated by the local device, is also an encoded Pause frame sent to the remote with pause timer value determined by the port's current state. After receiving the ACK from the remote device, the local device sends the local capability list in the Resume frame. The 42 bytes of data payload encode the list of VC functions that should be enabled on the link. FIG. 7 shows the RESUME Frame Format. The frame format follows 802.3 standard for Pause control frames with following field settings:

6 byte DA=as specified in std;
6 byte SA=RESUME phase encoding;
2 byte Type=MAC Control: 88-08;
2 byte Op-code=Pause Frame: 00-01;
2 byte Pause Timer=According to port's state;
42 byte Payload=Enabled Capability list; and
4 byte FCS.

The 6 byte SA field of local device VC RESUME and local VC identification is encoded with exactly the same semantics as the six bytes of SA address field in the VC REQUEST phase. The description of this field is exactly the same as outlined in VC REQUEST phase, which is illustrated in FIG. 5.

In addition, the VC architecture is also capable of handling special conditions arising during the VC handshake mechanism. One such condition occurs if the VC REQUEST needs to be retried. If the VC ACK response does not come from the remote, the local re-sends another REQUEST, limited to maximum REQ Retry limit value. If the REQ Retry limit is reached and no ACK has arrived, the local MAC switches to non-VC (standard) mode and supports the standard Ethernet packet flow.

In the case when the VC ACK is retried, i.e. the VC RESUME response does not come from the local, the remote re-sends another ACK, limited to maximum ACK Retry limit value. If the ACK Retry limit is reached and no RESUME arrived, the remote MAC switches to non-VC (standard) mode.

In addition, a remote device may receive multiple VC REQUEST frames. This can happen if the local device did not receive the VC ACK frame from the remote or the VC ACK frame had CRC errors. The "remote" device should send an ACK frame for each request received. However, the "remote" may send one VC ACK frame if multiple REQUEST frames are received before an ACK is sent by the "remote". Similarly, a local device may receive multiple VC frames. This could happen if the "remote" did not receive the RESUME frame or the RESUME frame has CRC errors. The local should send an ACK frame for each RESUME frame it receives. However, the local may send one RESUME frame if multiple ACKS are received before a RESUME frame is sent.

EXHIBIT A - 39

US 7,239,636 B2

9

Also, if the two VC link partners find during the handshake that the other link partner supports a different version of VC specification, then the two VC devices settle for the lowest common denominator feature set between the two versions.

In general, the pause timer value indicated in the VC Handshake frame should be obeyed. In this way, pause may be asserted during the VC Handshake if required. If a non-zero pause time is specified by the VC Handshake frame, then the receiver of the frame may send further VC Handshake frames, but it should not send normal frames until the Pause time is elapsed (or until pause has been de-asserted).

In order for VC Handshake operation to operate, certain registers need to be set. Guidelines for the design of the VC Handshake mechanism in the MAC are provided below, where the following items may entail the use of multiple registers. Control of VC subsystems, such as enabling handshake, forcing renegotiation, determining manner of function enabling (automatic or software) etc., should be supported. Registers devoted to VC Status should be supported, including a Per Port register, indicating successful completion of VC Handshake and other necessary status information. Registers for the REQUEST phase timer and the REQUEST Retry limit counter, discussed above, need to be included, as well as registers for the ACK phase timer and the ACK Retry limit counter.

Additional registers are required in respective devices for capability negotiation. These include read only VC capability registers indicating the capabilities of local and remote devices and VC Local and Remote Advertisement registers. The VC Advertisement registers are usually a copy of VC Capability, and this is the actual value that is advertised by the local and remote device during the handshake. In this way, software can disable some capabilities in local and/or remote device, if desired.

Since the handshake can be initiated by both the link partners, hardware implementation can provide two advertisement registers per device. For example: 1) VC Local Client Advertisement register (read/write register) containing the values to be advertised in the ACK frame sent during the VC Handshake. This register indicates the client functions supported by the device (which VC frames will be obeyed by the local side). 2) VC Local Server Advertisement register (read/write register) containing the values to be sent in the RESUME frame sent during the VC Handshake. It indicates the server functions supported by the local device (which VC frames the local side may generate).

In addition, other registers are not strictly required and are thus optional VC registers. For example, a VC device may implement the VC Local and Remote Advertisement register as separate registers for the ACK (client functions) and RESUME (server functions) phases of the Handshake. Thus, the local device may have a VC Remote Advertisement register initialized with the values indicated in the ACK frame received during the VC Handshake. This indicates the client functions supported by the remote device. Similarly, the remote device may have a VC local Advertisement register initialized with the values indicated in the RESUME frames received during the VC Handshake. This indicates the functions supported by the local device.

A VC Functionality Enabled register may also be required that indicates what VC functionality is actually enabled. This may be configured by software or as a result of the VC Handshake.

10

Lastly, with respect to the VC Handshake triggering, the VC Handshake frames are typically the first frames exchanged between the devices involved. The handshake should immediately follow the link up state. Thus, a reliable indication of link up is required.

Vc Capability Exchange

The VC Handshake mechanism allows the link partners to be VC aware. At the same time, VC capabilities are exchanged between the link partners during the ACK and RESUME phases of the handshake. The link partners participating in the VC Handshake must support the VC capability registers, which consist of VC Control, Local VC Capability, Local VC Advertisement and Remote VC Advertisement registers. It is noted that each of these may be a set of registers depending on implementation, for example, if the register size of the device is smaller than the number of VC capability bits. Each type is referred to as a single register to emphasize the parallel nature of the sets.

The exchange of the capabilities is done via the VC Link Advertisement register encoded in the data payload of the VC ACK and RESUME frame. Each bit in this sequence may refer to an individual application op-code or to a collection or related application op-codes. A "1" indicates that a specific capability is enabled and "0" indicates that it is disabled. The intent of VC Capability registers is to provide the required configuration settings for the VC applications supported by both local and remote devices. In addition VC devices may implement Configuration registers which give overall control to enable/disable hardware functionality. The size of all VC Capability registers is recommended to be 32 bits for the initial version.

The bits in each VC capability register can refer to the same functionality. However, the significance depends on whether the register represents the local or remote ability. The following TABLE 1 is an implementation example to show the applications supported in one version of the VC architecture.

TABLE 1

| Bit | Description |
| --- | --- |
| 0 | Device can generate Priority Selective Flow Control frames |
| 1 | Device can obey Priority Selective Flow Control frames |
| 2 | Device can generate Flow ID Selective Flow Control frames |
| 3 | Device can obey Flow ID Selective Flow Control frames |
| 4 | Device can generate Egress Priority Selective Flow Control frames |
| 5 | Device can obey Egress Priority Selective Flow Control frames |
| 31:6 | Reserved. |

Each VC aware device supports the following sets of registers. The Local VC Capability Register is a read only register set. The register defines the set of capabilities of which the local device is capable. The Local VC Advertisement Register is a read/write register set. This register advertises the local VC capability to the remote. It may be initialized in one of two ways: it may be 0 to advertise no abilities by default, and thus software is required to change the register, or it may be copied from the Local VC Ability register.

The Remote VC Advertisement Register is a read only register set, but its value is determined by the VC negotiation. This register is populated by the local when it receives the ACK frame, and by the remote when it receives the RESUME frame during the handshake.

The VC Functionality Enabled Register is a read/write register set. The purpose of this register is to enable the hardware functionality of the indicated VC operations. The

US 7,239,636 B2

**11**

default value of this register may be indicated in one of two
ways depending on configuration settings and is determined
by the result of the VC Handshake frames. The ability to
generate a certain VC frame type (that is, to be a server for
this operation) is enabled if the device is capable of this
function (as indicated in the Local Ability register) and the
corresponding VC Frame obey function is advertised by the
remote device (as indicated in the Remote Advertisement
register). Alternatively, the ability to obey a certain VC
frame type (that is, to be a client for this operation) is
enabled if the device is capable of this function (as indicated
in the Local Ability register) and the remote device is
capable of generating that frame type.

VC Frame Format

The VC frame format has been developed to meet many
requirements. Included in these requirements is to provide
point-to-point communication, to enable end-to-end com-
munication and enable redirection of packet to a CPU. Other
requirements include allowing customer specific function-
ality, a scalable frame format to allow complex applications,
and to enable use of Ethertype for purposes other than VC.
The various formats for VC frames are described below.

FIG. 8 illustrates one embodiment of the VC frame
format. The VC frame is an Ethernet II frame with an
Ethertype value assigned by IEEE. The destination MAC
address should be the unicast address of the directly con-
nected device or the reserved multicast address 01-80-c2-
00-00-01. It is noted that although the reserved multicast
address is reserved for IEEE802.3x PAUSE frame, a VC
frame with this DA should be sent only when both ends are
VC aware.

The source address should be that of the device sending
the VC frame. The Ethertype field represents the Ethertype
value assigned by IEEE. The Protocol field represents the
type of application. For VC applications this field MUST be
1. This field permits applications other than VC to use
frames with this Ethertype.

The VC tag may have one of the three formats as
discussed below. In the VC_TAG_TYPE0 frame format,
illustrated in FIG. 9, the OPCODE0 field is of 8 bits and
parameters field is of 24 bits in the first word. The parameter
field can be extended is necessary and is really dependent on
the o-code.

The 8-bit OPCODE0 field represents the op-code of an
application and the associated function. The value of 0xFF
is a reserved value, which indicates that the next 8 bits is the
op-code value. If the value of OPCODE0 is other than 0xFF,
then the fields following the OPCODE0 is a parameter field.
The rest of this word may be occupied by parameters for
Type 0 opcodes.

In the VC_TYPE_TAG2 VC tag format, illustrated in
FIG. 11, the OPCODE0and OPCODE1 field are inactive and
OPCODE2 is active. For OPCODE2 to be active,
OPCODE0 must be 0xFF and OPCODE1 MUST be 0xFF.
Any parameters to these opcodes must be placed in subse-
quent words. The format of those depends on the OPCODE2
value. In the VC tag for priority based selective flow
control,illustrated in FIG. 12, VC tag includes a priority bit
map.

Auto-Negotiation

The Auto-negotiation function allows a device to adver-
tise enhanced modes of operation it possesses to a device at
the remote end of a link segment and to detect corresponding
enhanced operational modes that the other device may be
advertising. The complete implementation details on auto-
negotiation are explained in IEEE802.3 specifications. The

**12**

Virtual Channel (VC) capability is established between the
two link partners by adding new bits and new registers to the
IEEE802.3 specifications.

VC capable devices can use the Next-page feature in the
standard Auto-negotiation arbitration mechanism to allow
exchange of VC capabilities. The next page format for VC
capability exchange is implementation dependent.

The above-discussed configuration of the invention is, in
one embodiment, embodied on a semiconductor substrate,
such as silicon, with appropriate semiconductor manufac-
turing techniques and based upon a circuit layout which
would, based upon the embodiments discussed above, be
apparent to those skilled in the art. A person of skill in the
art with respect to semiconductor design and manufacturing
would be able to implement the various modules, interfaces,
and components, etc. of the present invention onto a single
semiconductor substrate, based upon the architectural
description discussed above. It would also be within the
scope of the invention to implement the disclosed elements
of the invention in discrete electronic components, thereby
taking advantage of the functional aspects of the invention
without maximizing the advantages through the use of a
single semiconductor substrate.

Although the invention has been described based upon
these preferred embodiments, it would be apparent to those
of skilled in the art that certain modifications, variations, and
alternative constructions would be apparent, while remain-
ing within the spirit and scope of the invention. In order to
determine the metes and bounds of the invention, therefore,
reference should be made to the appended claims.

The invention claimed is:

1. A method for establishing a virtual channel between
network devices comprising:
   sending a virtual channel request message from a local
   network device to a remote network device;
   receiving a virtual channel acknowledgement message
   and a remote capability list;
   sending a virtual channel resume message and a local
   capability list; and
   enabling the virtual channel,
   wherein sending a virtual channel request message com-
   prises sending an Ethernet pause frame when the
   remote network device is not virtual channel capable.

2. The method for establishing a virtual channel according
to claim 1, wherein the step of sending a virtual channel
request message further comprises waiting a specified period
according a request retry timer and resending the virtual
channel request message after the specified period when no
virtual channel acknowledgement message has been
received.

3. The method for establishing a virtual channel according
to claim 2, wherein the virtual channel request message is
resent a number of times according to a request retry limit
value.

4. The method for establishing a virtual channel according
to claim 1, wherein the local and remote capability lists
comprise link advertisement registers where each bit of the
registers refers to specific capabilities of the local and
remote network devices, the step of receiving the remote
capability list comprises receiving a remote link advertise-
ment register and the step of sending a local capability list
comprises sending a local link advertisement register.

5. The method for establishing a virtual channel according
to claim 1, wherein the virtual channel request message, the
virtual channel acknowledgement message and the virtual
channel resume message each have an Ethernet frame for-
mat with a source address and a destination address being

US 7,239,636 B2

13

one of an address of the local network device and an address of the remote network device.

6. A method for establishing a virtual channel between network devices comprising:

receiving a virtual channel request message from a local network device by a remote network device;

sending a virtual channel acknowledgement message and a remote capability list;

receiving a virtual channel resume message and a local capability list; and

enabling the virtual channel,

wherein receiving a virtual channel request message comprises receiving an Ethernet pause frame when the remote network device is not virtual channel capable.

7. The method for establishing a virtual channel according to claim 6, wherein the step of sending a virtual channel acknowledgement message further comprises waiting a specified period according an acknowledgement retry timer and resending the virtual channel acknowledgement message after the specified period when no virtual channel resume message has been received.

8. The method for establishing a virtual channel according to claim 7, wherein the virtual channel acknowledgement message is resent a number of times according to a acknowledgement retry limit value.

9. The method for establishing a virtual channel according to claim 6, wherein the local and remote capability lists comprise link advertisement registers where each bit of the registers refers to specific capabilities of the local and remote network devices, the step of receiving the remote capability list comprises receiving a remote link advertisement register and the step of sending a local capability list comprises sending a local link advertisement register.

10. The method for establishing a virtual channel according to claim 6, wherein the virtual channel request message, the virtual channel acknowledgement message and the virtual channel resume message each have an Ethernet frame format with a source address and a destination address being one of an address of the local network device and an address of the remote network device.

11. A virtual channel capable network device comprising:

means for sending or receiving a virtual channel request message from or to a second network device;

means for sending or receiving a virtual channel acknowledgement message and a first capability list;

means for sending or receiving a virtual channel resume message and a second capability list; and

means for enabling the virtual channel;

wherein said first capability list is a capability list for the virtual channel capable network device when the virtual channel acknowledgement message is sent by the virtual channel capable network device and said first capability list is a capability list for the second network device when the virtual channel acknowledgement message is received by the virtual channel capable network device,

means for sending or receiving a virtual channel request message comprises means for sending or receiving an Ethernet pause frame when the second network device is not virtual channel capable.

12. The virtual channel capable network device according to claim 11, wherein the means for sending or receiving a virtual channel request message further comprises a request retry timer and the means for sending or receiving a virtual channel request message is configured to resend the virtual channel request message after a specified period measured

14

by the request retry timer when no virtual channel acknowledgement message has been received.

13. The virtual channel capable network device according to claim 12, wherein the means for sending or receiving a virtual channel request message is configured to resend the virtual channel request message a number of times according to a request retry limit value.

14. The virtual channel capable network device according to claim 11, wherein the means for sending or receiving a virtual channel acknowledgement message further comprises an acknowledgement retry timer and the means for sending or receiving a virtual channel acknowledgement message is configured to resend the virtual channel acknowledgement message after a specified period measured by the acknowledgement retry timer when no virtual channel resume message has been received.

15. The virtual channel capable network device according to claim 14, wherein the means for sending or receiving a virtual channel acknowledgement message is configured to resend the virtual channel acknowledgement message a number of times according to a request retry limit value.

16. The virtual channel capable network device according to claim 12, wherein the local and remote capability lists comprise link advertisement registers where each bit of the registers refers to specific capabilities of the local and remote network devices.

17. The virtual channel capable network device according to claim 12, wherein the virtual channel request message, the virtual channel acknowledgement message and the virtual channel resume message each have an Ethernet frame format with a source address and a destination address being one of an address of the virtual channel capable network device and an address of the second network device.

18. A virtual channel capable network device comprising:

a data port interface, supporting a plurality of data ports transmitting and receiving data;

wherein said data port interface is configured to establish a virtual channel between said virtual channel capable network device and other virtual channel capable network devices through the transmission and receipt of virtual channel messages and configured to exchange virtual channel data to allow for functions of at least one of the virtual channel capable network device and other virtual channel capable network devices to be controlled, and

wherein the data port interface is configured to receive a remote capability list and to send a local capability list to the other virtual channel capable network devices,

said data port interface is configured to exchange virtual channel data to control the selective flow of the transmitted and received data in at least one of the virtual channel capable network device and other virtual channel capable network devices.

19. A virtual channel capable network device comprising:

a data port interface, supporting a plurality of data ports transmitting and receiving data;

wherein said data port interface is configured to establish a virtual channel between said virtual channel capable network device and other virtual channel capable network devices through the transmission and receipt of virtual channel messages and configured to exchange virtual channel data to allow for functions of at least one of the virtual channel capable network device and other virtual channel capable network devices to be controlled, and

US 7,239,636 B2

15

16

wherein the data port interface is configured to receive a remote capability list and to send a local capability list to the other virtual channel capable network devices,

wherein said data port interface is configured to exchange virtual channel data to control the operations, administration and maintenance functions of at least one of the virtual channel capable network device and other virtual channel capable network devices.

20. A virtual channel capable network device comprising:

a data port interface, supporting a plurality of data ports transmitting and receiving data;

wherein said data port interface is configured to establish a virtual channel between said virtual channel capable network device and other virtual channel capable network devices through the transmission and receipt of

virtual channel messages and configured to exchange virtual channel data to allow for functions of at least one of the virtual channel capable network device and other virtual channel capable network devices to be controlled, and

wherein the data port interface is configured to receive a remote capability list and to send a local capability list to the other virtual channel capable network devices,

wherein said data port interface is configured to exchange virtual channel data to control in-band management functions of at least one of the virtual channel capable network device and other virtual channel capable network devices.

* * * * *

# EXHIBIT B

US007295555B2

(12) **United States Patent**      (10) **Patent No.:**     **US 7,295,555 B2**

Elzur                              (45) **Date of Patent:**      **Nov. 13, 2007**

(54) **SYSTEM AND METHOD FOR IDENTIFYING UPPER LAYER PROTOCOL MESSAGE BOUNDARIES**

(75) Inventor: **Uri Elzur**, Irvine, CA (US)

(73) Assignee: **Broadcom Corporation**, Irvine, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 638 days.

(21) Appl. No.: **10/230,643**

(22) Filed: **Aug. 29, 2002**

(65) **Prior Publication Data**

US 2003/0172342 A1      Sep. 11, 2003

**Related U.S. Application Data**

(60) Provisional application No. 60/372,851, filed on Apr. 16, 2002, provisional application No. 60/372,852, filed on Apr. 16, 2002, provisional application No. 60/363,356, filed on Mar. 11, 2002, provisional application No. 60/363,381, filed on Mar. 8, 2002.

(51) **Int. Cl.**
  **H04L 12/56**        (2006.01)
(52) **U.S. Cl.** ..................................... **370/394; 709/222**
(58) **Field of Classification Search** ........ 370/469–476; 709/230–231
  See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,356,944 | B1 * | 3/2002 | McCarty ..................... 709/222 |
| 6,845,403 | B2 * | 1/2005 | Chadalapaka ................. 710/5 |
| 2001/0037397 | A1 | 11/2001 | Boucher et al. |

2003/0084185 A1 *   5/2003   Pinkerton .................... 709/236

OTHER PUBLICATIONS

Randy Haagens, TCP ULP Message Framing iSCSI Framing, May 10, 2001, http://storage-arch.hp.com/Framing__slides.pdf.*
Minutes for Nov. 29, 2000 discussion of iSCSI Framing Issue, http://storage-arch.hp.com/FramingMinutes.pdf.*
ULP Framing for TCP, Jul. 6, 2001, http://www3.ietf.org/proceedings/01aug/I-D/draft-ietf-tsvwg-tcp-ulp-frame-00.txt.*
Hemal V. Shah, Jim Pinkerton, Framing and RDMA in TCP/IP Applications, Feb. 25-28, 2002, http://cnscenter.future.co.kr/recource/rsc-center/presentaton/intel/spring2002/STGS038.pdf.*
Securing iSCSI, iFCP. and FCIP, IETF Standard-Working-Draft, Internet Engineering Task Force, IETF, CH, vo. ips, No. 6; Nov. 20, 2001: XP015021365; ISSN: 0000-0004.
Julian Satran Daniel Smith Kalman Meth Ofer Miran Jim Hafner IBM Costa Sapuntzakis Mark Bakke Cisco Systems Randy Haagens Mallikar: "iSCSI" XP015021220 *p. 227, paragraphs A, A1, A2, A3, A3.1, A3.2—p. 230*, dated Mar. 1, 2002.

(Continued)

*Primary Examiner*—Edan Orgad
*Assistant Examiner*—Robert W. Wilson
(74) *Attorney, Agent, or Firm*—McAndrews, Held & Malloy, Ltd.

(57)            **ABSTRACT**

Systems and methods that identify the Upper Layer Protocol (ULP) message boundaries are provided. In one example, a method that identifies ULP message boundaries is provided. The method may include one or more of the following steps: attaching a framing header of a frame to a data payload to form a packet, the framing header being placed immediately after the byte stream transport protocol header, the framing header comprising a length field comprising a length of a framing protocol data unit (PDU); and inserting a marker in the packet, the marker pointing backwards to the framing header and being inserted at a preset interval.

**12 Claims, 18 Drawing Sheets**



# US 7,295,555 B2

Page 2

## OTHER PUBLICATIONS

David Black: Internet Citation, Online, Jan. 15, 2001, pp. 1-12, Draft San Diego minutes retrieved from the Internet Mar. 3, 2004, p. 1, line 29-p. 3, line 5.

Culley, Elzur, Recio, Bailey: "draft-culley-iwarp-mpa-00: Marker PDU Aligned Framing for TCP Specification" Internet Drafts Archive, Sep. 2002, pp. 1-31.

Bailey, Chase, Pinkerton, Romanow, Sapuntzakis, Wendt, Williams: "draft-ietf-tsvwg-tcp-ulp-frame-01: TCP ULP Framing Protocol (TUF)" Internet Drafts Archive, Nov. 2001, pp. 1-30.

Pinkerton, Bailey, Sapuntzakis, Elzur, Williams: "draft-jpink-warp-summary-00: Warp Architectural Requirements Summary" Internet Drafts Archive, Jan. 2001, pp. 1-10.

Bailey et al., TCP ULP Framing Protocol (TUF), Nov. 15, 2001, pp. 1-30.

Market PDU Aligned Framing for TCP Specification, Apr. 2002, pp. 1-48.

Internet Engineering Task Force, Requirements for Internet Hosts—Communication Layers, Oct. 1989, pp. 1-116.

* cited by examiner



PRIOR ART

FIG. 1



PRIOR ART

FIG. 2



FIG. 3