Juanita R. Brooks (SBN 75934)
 brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*(Additional counsel listed on signature page)*

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>　　Plaintiff,<br><br>　　v.<br><br>EMULEX CORPORATION,<br><br>　　Defendant.<br><br>And Related Counterclaims | Case No. CV 09-1058-JVS (ANx)<br><br>consolidated with CV 10-3963 JVS (ANx)<br><br>**EMULEX CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS FOR U.S. PAT. NO. 7,239,636**<br><br>Hearing Date:　April 11, 2011<br>Time:　1:30 p.m.<br>Place:　Courtroom 10C<br>Before:　Hon. James V. Selna |

**I.　INTRODUCTION**

While preparing for the deposition of Martin Lund, one of the named inventors on U.S. Patent No. 7,239,636 ("the '636 patent"), attorneys for Emulex discovered a highly relevant piece of prior art within Broadcom's 9-million-page document production called "Infiniband." Emulex believes that Infiniband anticipates and invalidates the only asserted claim of the '636 patent. In fact, Infiniband is the most relevant and material piece of prior art Emulex has located for

the '636 patent, and Emulex is prepared to both narrow its invalidity contentions for the '636 patent and file a motion for summary judgment on Infiniband that it believes will completely remove the patent from this case. Before Emulex can assert this reference, however, it must first obtain leave from the Court, since Infiniband was not located until 19 days after the deadline for serving amended invalidity contentions.

Leave to assert Infiniband should be granted for several reasons.

First, the reference is highly material. As discussed below, Infiniband anticipates every limitation of the '636 patent. It is dated long before Broadcom's alleged invention, and is unquestionably prior art under 35 U.S.C. § 102(a).[1] Emulex believes Infiniband may be the most material reference it has located for the '636 patent, and the Supreme Court has said there is a strong public policy in favor of resolving patent validity.

Second, Emulex has acted diligently in locating and disclosing prior art, including Infiniband. The Court is aware that this is a complex case involving at various times 12 different patents. Emulex identified over 278 different prior art references in its most recent contentions, including 113 different references for the '636 patent. Emulex served discovery requests, worked with 10 different experts, spoke to Emulex engineers, and employed multiple search firms to locate this prior art. Infiniband, however, is not a journal article or a patent. It is not something that one could expect to easily find without knowing to look for it. In fact Emulex asked two of the named inventors of the '636 patent about Infiniband, and neither knew any details about it. Neither Emulex nor Broadcom were involved in the creation of Infiniband. Once Emulex located Infiniband, it asked about it in a deposition two days later, and provided a claim chart to Broadcom only one week later. There is no

---

[1] Broadcom has consistently stated in interrogatory responses and in multiple versions of its infringement contentions that it conceived of the '636 patent on July 14, 2001. (*See, e.g.,* Docket No. 289 at 14). The Infiniband specification is dated October 24, 2000, 9 months earlier. (*See* Ex. A).

accusation of gamesmanship or any improper purpose – this was something Emulex came across in Broadcom's voluminous production and, recognizing its importance, immediately disclosed.

Third, there is no possible prejudice to Broadcom in allowing in this reference. There is still a month left in fact discovery. Broadcom's rebuttal report on invalidity is not due until May 6, 2011, giving it two months to craft a response to Emulex's contention. The parties recently served amended contentions for all the asserted patents, which raised far more prior art than this. Emulex's request only involves one reference asserted against one claim of one patent. Finally, Emulex has agreed to significantly narrow the asserted references for the '636 patent should it be allowed to assert Infiniband, further reducing any possible prejudice to Broadcom.

The Court has indicated that it wants the parties to narrow this case before trial. The best way to do so for the '636 patent is to allow Emulex to amend its invalidity contentions to raise Infiniband. Emulex will then file a motion for summary judgment of invalidity that will remove the '636 patent from this case. As several courts have held, important cases such as this should be resolved on the merits, not on procedural grounds. Absent any prejudice to Broadcom, the Court should grant this motion and allow Emulex to assert Infiniband as an invalidating reference.

## II. STATEMENT OF LAW

This Court has adopted disclosure deadlines similar to the Northern District of California Patent Local Rules. (Docket No. 31). The Northern District patent rules allow for supplementation of invalidity contentions "by order of the Court upon a timely showing of good cause." Patent L.R. 3-6. "[C]ircumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include…recent discovery of material, prior art despite earlier diligent search." *Id.*

In *Lear, Inc. v. Adkins*, 395 U.S. 653, 674 (1969), the Supreme Court noted the "strong federal policy" in challenging invalid patents and in "permitting full and free competition in the use of ideas which are in reality a part of the public domain." Several courts following the Northern District patent rules have held that amendments to invalidity contentions are permissible absent some showing of undue prejudice or gamesmanship. *See*, *e.g.*, *Streak Prods., Inc. v. Antec, Inc.*, 2010 U.S. Dist. LEXIS 97613 (N.D. Cal. September 8, 2010) (granting motion to amend invalidity contentions); *Halo Elecs. v. Bel Fuse, Inc.*, 2010 U.S. Dist. LEXIS 97640 (N.D. Cal. September 3, 2010) (same); *Mintz v. Dietz & Waston, Inc.*, 2009 U.S. Dist. LEXIS 55040 (S.D. Cal. June 29, 2009) (same); *Zoltar Satellite Alarm Sys. v. Motorola, Inc.*, 2008 U.S. Dist. LEXIS 108652 (N.D. Cal. April 2, 2008) (same); *Yodlee, Inc. v. CashEdge, Inc.*, 2007 U.S. Dist. LEXIS 39564 (N.D. Cal. May 17, 2007) (same); *Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 U.S. Dist. LEXIS 35957 (N.D. Cal. April 30, 2007); *Streak Prods., Inc. v. Antec, Inc.*, 2010 U.S. Dist. LEXIS 97613 at *10 (N.D. Cal. September 8, 2010) ("Courts prefer to decide case[s] on the merits, rather than on procedural grounds"); *Golden Hour Data Sys. v. Health Servs. Integration*, 2008 U.S. Dist. LEXIS 75495 at *12 (N.D. Cal. July 1, 2008) ("as the prior art appears to be relevant to the merits of the case, it would be unjust for such information to be avoided on the basis of mere technicalities"); *Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 2008 U.S. Dist. LEXIS 88142 at *7 (N.D. Cal. May 22, 2008) (allowing amendment and stating, "[t]he Court would prefer to decide this case on the merits…").

### III.   ARGUMENT

#### A.   Infiniband is Highly Material Prior Art to the '636 Patent

First and foremost, Emulex believes Infiniband is highly material prior art for the '636 patent.

4

CASE NO. CV 09-1058-JVS (ANx)

1        Infiniband was apparently a collaboration between various companies including Compaq, IBM, Hewlett-Packard, Intel, Microsoft, and Sun. The goal was to develop a networking protocol that would replace technologies like Ethernet, SCSI and Fibre Channel (the standards used by companies like Emulex and Broadcom today). Version 1.0 of the Infiniband specification is dated October 24, 2000. (Ex. A[2]). A press release dated October 25, 2000 states that the specification was available for download through the InfiniBand Trade Association Web site, or available for purchase on a CD or as a bound text volume. (Ex. B; *see also* Ex. C). The specification was also apparently made available in at least the University of Southern California and U.C. Berkeley libraries. (Ex. D). Infiniband therefore qualifies as a prior art publication under 35 U.S.C. § 102(a).

The Infiniband specification discloses each and every element of claim 18 of the '636 patent. (See Ex. E).

First, Infiniband discloses a "virtual channel capable network device." The Court defined this as a "network device that is able to establish a logical connection between network devices over a physical connection." (Docket No. 261). In Infiniband, these virtual channels are called "virtual lanes." "Virtual lanes (VL) provide a mechanism for creating **multiple virtual links within a single physical link**." (Ex. A at 74) (emphasis added).

Second, Infiniband discloses "a data port interface, supporting a plurality of data ports transmitting and receiving data." The Court defined this as "an electrical boundary which supports the transfer or receipt of information between devices. Switching is one method within the scope of this construction." (Docket No. 261).

---

[2] All exhibits are attached to the Declaration of Jonathan J. Lamberson in support of Emulex Corporation's Motion for Leave to Amend Invalidity Contentions for U.S. Pat. No. 7,239,636, filed herewith.

Exhibit A includes excerpts from the Infiniband 1.0 specification; the entire specification is 880 pages long, and can be found at: http://members.infinibandta.org/kwspub/spec/past/.

The Infiniband specification states that it is used by both network adapters and switches, both of which can have multiple ports: "There may be **multiple ports** on a single Channel Adapter . . . **Switches/switch elements contain more than one port by definition**." (Ex. A at 48) (emphasis added).

Third, Infiniband discloses virtual channels. As noted above, the Infiniband specification states that "Virtual Lanes provide independent data streams on the same physical link." (*Id.* at 149). Critically, the document says that "[l]ink level flow control can be applied to one lane without affecting the others." (*Id.* at 146). The Infiniband specification discloses exchanging both "Link Management Packets" to control the link layer, and "Data Packets" to exchange data over the virtual lane. (*Id.* at 92). These correspond to the virtual channel messages and virtual channel data claimed in the '636 patent. (See Ex. F, Claim 18).

Fourth, Infiniband discloses an exchange of capabilities lists. The Court defined a "capability list" as "a record of operations that a network device is able to perform." (Docket No. 261). Infiniband describes exchanging these lists as part of a three-way handshake, exactly as the '636 patent does:

 

(Ex. A at 517, left; Ex. F at Figure 4, right). The specification states that these messages include capabilities, including most critically a bit that indicates whether flow control is supported. (Ex. A at 537 ("End-to-End Flow Control")).

Finally, as mentioned above, Infiniband teaches selective flow control. "The port maintains separate flow control over each data VL [virtual lane] such that excessive traffic on one VL does not block traffic on another VL." (*Id.* at 75).

In short, Infiniband is highly material – it is unquestionably prior art, and clearly anticipates every limitation of the '636 patent. The Supreme Court has noted the strong public policy behind challenging invalid patents, to remove them from blocking future innovations, not only by Emulex but also by any later defendants. *See Lear*, 395 U.S. at 674; *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971) (holding that a finding of invalidity bars future litigation on the same patent). Here, Broadcom has asserted that its '636 patent covers an industry standard called "DCBX." Anyone who uses this standard could be sued by Broadcom unless Emulex can prove once and for all that the '636 patent is invalid. Absent some *undue* prejudice to Broadcom, the Court should decide this case on the merits rather than excluding a highly material piece of prior art simply because it was located nineteen days too late.

### B. Emulex was Diligent in Discovering and Disclosing Infiniband

At all times, Emulex has acted diligently both in locating and disclosing relevant prior art to Broadcom.

The Court is aware that this is a complex case involving at various times 12 different patents. Emulex diligently and timely identified over 278 different prior art references, including 113 different references specifically for the '636 patent. (Lamberson Decl., ¶ 2). Emulex issued discovery requests, worked with 10 different experts in the fields for the various patents in order to locate this art, engaged in conversations with engineers at Emulex who worked on the accused products, and hired multiple third-party search firms to locate relevant prior art. (*Id.*) Broadcom did not oppose Emulex's February 4th supplementation.

Infiniband, however, is not a journal article or a patent. It is not something one could find through simple database searches. It is a technical specification released by a collection of companies that did not include Emulex or Broadcom. Computer art in general can be notoriously difficult to locate. There are hundreds of companies in the computer industry, and new specifications are released every day. The pace of innovation is rapid. Because this particular standard is different from the ones Emulex deals with every day (namely, Ethernet and Fibre Channel), Emulex had no particular reason to seek out Infiniband.

In fact, Emulex asked two of the named inventors of the '636 patent about Infiniband. Presumably the inventors are people of skill in the art, yet neither knew any details about what Infiniband was or what it did. (Lamberson Decl., ¶¶ 5 & 9 and Exs. G & H). This demonstrates that Infiniband was not some piece of "low hanging fruit" that anyone in the industry should have been aware of.

Broadcom may argue that Emulex should have located this document within its production sooner, but Broadcom produced almost 9 million pages of documents in this litigation. Emulex reviewed these documents using electronic search tools, but that did not and could not involve a page-by-page review of every single document Broadcom produced. Emulex has already spent millions of dollars on discovery, and paying to do a page-by-page review of Broadcom's entire production would drive up that cost tenfold. Instead, Emulex performs targeted searches of Broadcom's production. (Lamberson Decl., ¶ 3). A reference to Infiniband was located in one of those searches while preparing for a deposition related to the '636 patent on February 22, 2011. (*Id.*). Once attorneys for Emulex located this specification, they immediately saw its relevance and asked one of the named inventors of the '636 patent, Martin Lund, about Infiniband only two days later. (Lamberson Decl., ¶¶ 4-5). Emulex provided a detailed claim chart to Broadcom only a week after that. (Lamberson Decl., ¶ 10).

There is no accusation of gamesmanship or any improper purpose – Emulex did not sit on this reference. Once Emulex located Infiniband through diligent searches of Broadcom's production, it was immediately disclosed.

### C. There is No Possible Prejudice to Broadcom

As noted above, absent undue prejudice, courts generally prefer to decide cases on the merits. Here, there is no possible prejudice to Broadcom for several reasons.

First, there is still a month left in fact discovery, and Broadcom's rebuttal report on invalidity is not due until May 6, 2011, giving it two months to craft a response to this reference (if one exists). If anyone is prejudiced by this late discovery of Infiniband it is Emulex, since Emulex bears the burden of proof on invalidity.

Second, the amount of discovery necessary for Infiniband is not voluminous. Emulex's request only involves one prior art reference asserted against one claim of one patent. At most, Infiniband may require one witness to explain what it is, and a handful of documents to show when it was publicly available. The parties recently served amended contentions for all the asserted patents that raised far more prior art than this, and Broadcom agreed to allow that supplementation.

Finally, Emulex has agreed to significantly narrow its case should it be allowed to assert Infiniband. As noted above, Emulex has disclosed over 113 references that it believes are relevant prior art to the '636 patent. Because Infiniband completely anticipates the '636 patent, it makes much of that prior art irrelevant. In a meet and confer on March 8, 2011, Emulex agreed to narrow its invalidity contentions for the '636 patent to less than 10 references if Broadcom would agree to allow Emulex to raise Infiniband. (Lamberson Decl., ¶ 11). Broadcom refused. (*Id.*) Emulex again repeats that offer here – if there is some small number of references that Broadcom or the Court believe is appropriate, and

that would substantially narrow this case and eliminate any possible prejudice to Broadcom, Emulex will agree to limit its invalidity contentions for the '636 patent accordingly.  Emulex also plans to file a motion for summary judgment of invalidity within weeks of this motion being granted, which Emulex believes will completely remove the '636 patent from this case, further narrowing the issues remaining for trial.

Broadcom may be "prejudiced" when its patent is declared invalid, but that is not the type of undue prejudice that should bar a highly material prior art reference from this litigation.

## IV.   CONCLUSION

Because Infiniband is highly material, because Emulex has at all times acted with diligence in locating and disclosing prior art, including Infiniband, and because there is no undue prejudice to Broadcom, the Court should grant Emulex's motion for leave to amend its invalidity contentions for U.S. Pat. No. 7,239,636 to raise a single additional reference:  Infiniband.

Dated:  March 11, 2011              FISH & RICHARDSON P.C.


                                    By: */s/ Jonathan J. Lamberson*
                                        Jonathan J. Lamberson

                                    Attorneys for Defendant and
                                    Counterclaimant
                                    EMULEX CORPORATION

50765765.doc

1  *Additional Counsel*

2  David M. Barkan (SBN 160825)
   *barkan@fr.com*
3  Jonathan J. Lamberson (SBN 239107)
   *lamberson@fr.com*
4  FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
5  Redwood City, California 94063-1526
Telephone: (650) 839-5070
6  Facsimile: (650) 839-5071

7  Joseph V. Colaianni, Jr. (*pro hac vice*)
   *colaianni@fr.com*
8  FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
9  Washington, DC 20005
Telephone: (202) 783-5070
10  Facsimile: (202) 783-2331

11  Thomas H. Reger II (*pro hac vice*)
   *reger@fr.com*
12  FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
13  Dallas, Texas 75201
Telephone: (214) 747-5070
14  Facsimile: (214) 747-2091

15  Wasif H. Qureshi (*pro hac vice*)
   *qureshi@fr.com*
16  FISH & RICHARDSON P.C
One Houston Center
17  1221 McKinney Street, 28th Floor
Houston, Texas 77010
18  Telephone: (713) 654-5300
Facsimile: (713) 652-0109

19

20  50765765.doc

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 11, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3. Any other counsel of record will be served by U.S. mail or hand delivery.

By: */s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

50765765.doc