1  Juanita R. Brooks (SBN 75934)
    *brooks@fr.com*
2  FISH & RICHARDSON P.C.
   12390 El Camino Real
3  San Diego, CA 92130
   Telephone:  (858) 678-5070
4  Facsimile:  (858) 678-5099

5  *(Additional counsel listed on signature page)*

6  Attorneys for Defendant and Counterclaimant
   EMULEX CORPORATION

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        (SOUTHERN DIVISION)

11

12  BROADCOM CORPORATION,              Case No. CV 09-1058-JVS (ANx)

13         Plaintiff,                  consolidated with CV 10-3963 JVS
                                       (ANx)
14         v.
                                       **EMULEX CORPORATION'S
15  EMULEX CORPORATION,                REPLY IN SUPPORT OF ITS
                                       MOTION FOR LEAVE TO AMEND
16         Defendant.                  INVALIDITY CONTENTIONS FOR
                                       U.S. PAT. NO. 7,239,636**
17

18  ─────────────────────────         Hearing Date:   April 11, 2011
                                       Time:           1:30 p.m.
    And Related Counterclaims          Place:          Courtroom 10C
19                                     Before:         Hon. James V. Selna

20

21  **I.      INTRODUCTION**

22       Broadcom cannot identify a single limitation that is allegedly missing from

23  Infiniband.  Instead, Broadcom asks this Court to ignore Infiniband because Emulex

24  was allegedly not diligent in its prior art search, and because Broadcom will

25  allegedly be prejudiced.  Both of these arguments fail for numerous reasons.

26       First, attorneys for Emulex performed a diligent search for prior art.  This

27  included interviewing dozens of Emulex engineers, taking discovery from

28  Broadcom, hiring multiple experts to identify relevant prior art, and paying multiple

                                       CASE NO. CV 09-1058-JVS (ANx)

1    prior art search firms to conduct searches.  These efforts turned up 113 prior art

2    references for the '636 patent, and Broadcom did not challenge Emulex's diligence

3    when both parties amended their contentions in February.

4            Broadcom is certainly right that Infiniband was "well known" – Emulex never

5    said it was a secret.  But the question is not whether Emulex knew Infiniband

6    existed in the abstract, the question is whether attorneys for Emulex should have

7    known it was relevant prior art with respect to the '636 patent.  When none of the

8    engineers, none of the named inventors, none of the experts in the field, and none of

9    the prior art search firms raised Infiniband in their search for prior art to the '636

10   patent, it is unrealistic for Broadcom to assert that it should have been identified

11   earlier.  And it is unfair for Broadcom to apply hindsight in analyzing isolated and

12   generic references to the Infiniband specification in both sides' productions.  None

13   of the documents cited by Broadcom in its opposition show a reference to the

14   specific portion of the several hundred page Infiniband specification that Emulex

15   relies upon.  In fact, the witness testimony cited by Broadcom shows that while

16   certain witnesses had heard of a specification called "Infiniband," none had any

17   detailed knowledge of it.

18           With respect to prejudice, Broadcom asks the Court to ignore summary-

19   judgment-quality prior art because it allegedly does not have enough time to conduct

20   discovery.  Yet at the time Broadcom received Emulex's claim chart on the

21   Infiniband prior art, Broadcom still had five weeks of fact discovery remaining and

22   over nine weeks remaining before its expert report on invalidity would be due.

23   Even now, Broadcom has time to take third party discovery on Infiniband if it

24   wishes, and six more weeks for its expert to study the Infiniband prior art before his

25   report is due.  The fact that Broadcom has not attempted to serve any third party

26   discovery regarding Infiniband (or any other prior art Emulex identified in its recent

27   contentions) speaks volumes about the alleged prejudice, and indeed it is unclear

28

                                               2

1   why Broadcom would want to serve any such discovery given that it is *Emulex's*

2   burden to prove invalidity.

3        Broadcom also fails to acknowledge that Emulex has offered to significantly

4   narrow its invalidity case should the Court allow it to raise Infiniband, thereby

5   significantly reducing the total work to be done by Broadcom in responding to

6   Emulex's prior art.  Instead, Broadcom argues that it was denied the opportunity to

7   serve discovery on Emulex concerning when Infiniband was publicly available.  It is

8   unclear exactly what discovery Broadcom thinks Emulex can provide – Emulex has

9   already produced all the documents it has located concerning Infiniband, and

10  Emulex was not involved in drafting Infiniband.  *But one of Broadcom's own*

11  *engineers was* – specifically, Broadcom employee Pat Thaler was apparently on the

12  committee that drafted Infiniband.  Emulex has already noticed her deposition for

13  March 29th, and presumably she can tell Broadcom when Infiniband was publicly

14  available.  Even if she cannot, there are other third parties who can, and there is

15  more than sufficient time to depose them.  Broadcom itself has recently noticed and

16  taken third party discovery, and given the number of depositions Broadcom noticed

17  in the closing weeks of discovery, there is plenty of time and bandwidth for

18  Broadcom to add one more third party deposition to its schedule.  In addition, to the

19  extent Broadcom claims it needs additional time, Emulex would consent to any such

20  deposition being taken after the current close of fact discovery – an extension that

21  would uniquely benefit Broadcom, since Broadcom's expert report on validity is not

22  due until May 6th, while Emulex's expert report on invalidity is due April 15th.

23       At the end of the day, while Broadcom focuses on "diligence" and

24  "prejudice" in its opposition, it is in fact concerned that Emulex has located a prior

25  art reference that completely invalidates its patent.  Broadcom therefore hopes that

26  by complaining that it did not know about Infiniband's prior art status, it can avoid

27  adjudication of the validity of the '636 patent.  That is not the purpose of the patent

28

CASE NO. CV 09-1058-JVS (ANx)

1   system.  It is a waste of resources for this Court to proceed to trial on a patent that

2   could be eliminated through an early and straightforward summary judgment

3   motion.  For the reasons stated below and in its opening brief, Emulex's motion for

4   leave to amend should be granted.

5       II.      ARGUMENT

6       A.      Infiniband Anticipates the '636 Patent

7           Initially, and most critically, Broadcom does not dispute that the Infiniband

8   reference discloses each and every limitation of the '636 patent.  The only dispute

9   appears to be the date when this reference first became available – a discrete issue

10   that can easily be dealt with on summary judgment.  It will be Emulex's burden to

11   show that the reference qualifies as prior art, and Emulex is confident that it can

12   carry that burden.[1]  Indeed, Broadcom's effort to keep a single prior art reference

13   out of the case suggests that Broadcom doubts that it can avoid summary judgment

14   of invalidity on this reference.

15           As Emulex noted in its opening brief, Infiniband is not simply another

16   reference, it is the most material piece of prior art reference Emulex has located with

17   respect to the '636 patent.  It discloses every limitation of that patent, and is on its

18   face dated nine months before Broadcom's earliest alleged invention date, thereby

19   qualifying as prior art under 35 U.S.C. § 102(a).[2]  Emulex has offered to withdraw

20   nearly all of its other prior art references asserted against the '636 patent for the

21   opportunity to raise Infiniband.  The Supreme Court has noted the strong public

22

---

23   [1] In addition to the evidence cited in its opening brief, Emulex has also noticed the deposition of
    Pat Thayler, a Broadcom employee who apparently contributed to the Infiniband specification, and

24   who may be able to confirm the availability date of Infiniband.  Further, the internet archive
    webpage for the Infiniband Trade Association shows that the Infiniband specification was publicly

25   available on that website at least as early as December 2, 2000, seven months before Broadcom's
    alleged invention date of July 14, 2001.  *See*

26   http://replay.waybackmachine.org/200012030624/http://www.infinibandta.org/home.php3.

27   [2] Broadcom's motion incorrectly raises 35 U.S.C. § 102(b).  (Opp. at 7).  Emulex clearly stated in
    its opening brief and in its invalidity claim chart that Infiniband is prior art under 35 U.S.C.

28   § 102(a).

4

CASE NO. CV 09-1058-JVS (ANx)

1   policy in challenging invalid patents, to remove them as roadblocks for future

2   innovation.  *See Lear, Inc. v. Adkins*, 395 U.S. 653, 674 (1969).  And the Federal

3   Circuit has cautioned courts not to blindly follow local patent rules while forgetting

4   the letter or the spirit of the Federal Rules.  *See 02 Micro Intern. Ltd. v. Monolithic*

5   *Power Systems*, 467 F. 3d 1355, 1365 (Fed. Cir. 2006).

6          Excluding Infiniband now would not only ignore the most material prior art

7   for the '636 patent, it will guarantee that the '636 patent will go to trial.  Many of

8   Emulex's other invalidity contentions involve fact-specific obviousness

9   combinations that are not ripe for summary judgment.  The far better course is to

10  resolve this case on the merits, through an early summary judgment motion on

11  Infiniband, rather than proceeding to trial on an invalid patent.

12         **B.     Emulex Conducted a Diligent Search**

13         Broadcom argues that Emulex "could not have conducted a diligent search,"

14  but Emulex has been clear about the many steps it took to diligently locate relevant

15  prior art.  Emulex interviewed its own engineers, conducted discovery in the

16  litigation, hired multiple experts in the field, and paid multiple prior art search firms,

17  all in an effort to locate relevant prior art.  These efforts turned up 113 prior art

18  references for the '636 patent (and hundreds more relevant to the other patents-in-

19  suit, including the 899 references in the Appendix that Broadcom cited in its

20  opposition).  Broadcom did not challenge Emulex's diligence when both parties

21  amended their contentions in February.  That diligence did not disappear when

22  Emulex located Infiniband 19 days later, and once it did locate Infiniband, Emulex

23  had a claim chart in Broadcom's hands less a week after that.

24         Broadcom is certainly correct that Infiniband was known in the industry –

25  Infiniband was released by several major corporations, including Intel, Hewlett-

26  Packard, Microsoft, and others.  It was no secret, and employees at Emulex

27  undoubtedly knew it existed.  As Emulex noted in its opening brief, however, there

28

CASE NO. CV 09-1058-JVS (ANx)

1   are hundreds if not thousands of protocols and standards released every year.

2   Emulex is "aware" of all of them in the sense that some engineer has probably

3   looked at each of them at some time, but that does answer the question of whether

4   Emulex was diligent in searching for relevant prior art with respect to the '636

5   patent.  Emulex cannot read every protocol specification that issues, and its

6   attorneys are not omniscient.  Emulex instead must rely on the resources available to

7   it – its own engineers, the discovery process in this litigation, experts in the field,

8   and prior art search firms.  Emulex did all of these things here, which more than

9   establishes diligence.

10      **C.      The Evidence Broadcom Cites Does Not Show a Lack of Diligence**

11          All of the "evidence" that Broadcom cites to show an alleged lack of

12   diligence by Emulex is irrelevant and unpersuasive.

13          For example, Broadcom states that references to Infiniband show up in "six of

14   the patents and patent applications that Emulex itself identified as alleged prior art

15   in its own invalidity contentions."  (Opp. at 6).  In fact, none of these patents or

16   patent applications were asserted as prior art against the '636 patent – they were part

17   of the invalidity contentions regarding other, unrelated patents asserted in this case.

18   In any event, these patents make only passing references to Infiniband (5 of the 6

19   only mention it once), and, perhaps most critically, *none of these references are*

20   *even prior art with respect to the '636 patent*.  All of them are dated after July 23,

21   2001, the priority date of the '636 patent.  Consequently, even if Emulex had

22   noticed these passing references to Infiniband in six of the 899 prior art references it

23   cited in the Appendix to its contentions, Emulex would have had no reason to know

24   based on those that Infiniband was in fact prior art to the '636 patent.

25          Broadcom also cites a portion of the deposition of Mark Karnowski, where he

26   mentioned Infiniband.  (Opp. at 4).  But immediately after he raised it,

27   Mr. Karnowski stated "Infiniband is a – a different – a different protocol for data

28

CASE NO. CV 09-1058-JVS (ANx)

1   transport. *I'm not terribly familiar with it.*" (*Id.*, emphasis added).  Nothing in that

2   testimony provides any detail about what Infiniband is or what it did, let alone

3   whether it was prior art to the '636 patent (Mr. Karnowski was being deposed as a

4   30(b)(6) witness on topics unrelated to the '636 patent).  There is certainly nothing

5   in that deposition testimony that suggests Emulex should have followed up on

6   Infiniband as relevant prior art for the '636 patent.

7          Broadcom also cites a portion of the deposition testimony of Sanjeev Datla

8   that Infiniband was "well known," but Broadcom ignores Mr. Datla's later

9   testimony that he never worked on Infiniband while at Emulex, and that his

10  recollection of Infiniband was only refreshed once the lawyers in this case

11  specifically asked him about it.  (Ex. I at 106:18-108:22).  Again, there is no

12  evidence that Mr. Datla knew Infiniband was highly material and withheld it, let

13  alone that Emulex should have asked him about it earlier.

14         Broadcom also argues that Infiniband shows up in Emulex's 10k statements,

15  in a list with dozens of other protocols, including iSCSI, PCI-X 2.0, PCI Express

16  Gen one, two, and three, PCI Express Advanced Switching; SATA; SAS; and

17  Remote Direct Memory Access (RDMA).  (Opp. at 4).  Critically, none of these

18  other protocols have been identified as prior art with respect to the '636 patent.

19  There is nothing in this one paragraph that suggests Infiniband is prior art to the

20  '636 patent, or what its features are, and Broadcom does not explain why Emulex

21  should have been reviewing its 10k statements to identify relevant prior art rather

22  than, for example, talking to experts in the field or hiring prior art search firms.

23         Finally, Broadcom questions whether Emulex could have performed the same

24  targeted searches earlier.  The date these searches were performed was a result of

25  when Martin Lund was made available for a deposition.  Emulex noticed

26  Mr. Lund's deposition in January of 2011 (before the deadline for supplementation

27  of invalidity contentions), but Broadcom did not actually make him available until

28

CASE NO. CV 09-1058-JVS (ANx)

1   February 25th, after that deadline.  Had Broadcom made him available sooner, it is

2   certainly possible that Emulex could have found Infiniband and disclosed it by the

3   February 4th deadline.  But the fact that he was not made available sooner does not

4   show a lack of diligence by Emulex.

5           Broadcom essentially confuses the difference between knowing Infiniband

6   *exists* with knowing it is *relevant* with respect to the '636 patent.  While it is

7   certainly possible to find the word "Infiniband" in both sides' productions doing

8   keyword searches using hindsight, Emulex had no reason to do those searches

9   before it discovered Infiniband's relevance to this case.  Nothing Broadcom cites

10  changes that simple fact.

11          **D.      Broadcom Will Not be Unduly Prejudiced**

12          Broadcom simply ignores that Emulex has offered to significantly narrow its

13  invalidity case with respect to the '636 patent.  This more than offsets any possible

14  prejudice from allowing Emulex to raise one additional prior art reference.  Instead,

15  Broadcom argues that Emulex "late disclosure" of Infiniband prevents it from taking

16  necessary discovery.  (Opp. at 8).  This argument is belied by the facts.

17          First, Emulex served amended invalidity contentions on February 4, 2011 that

18  identified over 47 new references with respect to the '636 patent, and dozens of

19  other new references with respect to the other asserted patents in this case.

20  Broadcom never served a single discovery request directed to any of these new

21  references.  Broadcom did serve supplemental discovery on February 22, 2011, but

22  it related to infringement, not invalidity.  If Broadcom truly was concerned about

23  obtaining discovery on Infiniband, it would have served discovery promptly after

24  receiving Emulex's claim charts.

25          Second, even if it had chosen to serve discovery on Infiniband, it is not clear

26  what discovery Broadcom believes it could have propounded to Emulex that would

27  prove the date when Infiniband was first made publicly available.  Emulex was not

28

8

1    involved in the Infiniband standard.  Emulex has already produced all the

2    documents it has located showing the public availability of Infiniband.  Further, all

3    of Emulex's information regarding Infiniband so far has come from sources that are

4    readily available to Broadcom, such as libraries and Internet websites.

5          Third, it appears that Broadcom's own employees may be able to answer the

6    question of when Infiniband was first made publicly available.  Specifically, Emulex

7    has noticed the deposition of Broadcom employee Pat Thaler on March 29th.

8    Ms. Thaler is listed as a contributor to the Infiniband specification.  The Infiniband

9    reference was located in Broadcom's own files – Broadcom must have some internal

10   knowledge of the reference, and nothing prevents Broadcom from investigating that

11   knowledge.  Indeed, if Broadcom truly believes that the three references to

12   Infiniband in the accused DCBX specification should have put Emulex on notice of

13   Infiniband, the same should be true of Broadcom – in satisfying its obligations under

14   Rule 11, it should have read the DCBX specification it accuses and recognized the

15   importance of Infiniband, and thus Infiniband is no surprise.  Similarly, if producing

16   the Infiniband specification in December of 2009 was allegedly enough to put

17   Emulex on notice of the reference, then Broadcom similarly should have known

18   about it, and again there is no prejudice.

19         Fourth, Broadcom asks the Court to attach some significance to the number of

20   hits the word "Infiniband" receives in an electronic search of Emulex's production,

21   but performing this search on Broadcom's own production results in 10,631

22   document hits, compared to 390 in Emulex's.[3]  It may well be the case that

23   *Broadcom* knows far more about Infiniband than Emulex does, which shows that

24   there is no prejudice in allowing Emulex to raise it.

25         Fifth, Broadcom complains that it does not have enough time left in discovery

26   to conduct any investigation from third-party witnesses.  But both sides have served

27   _____

[3] Of course when those hits are buried in productions that consist of millions of documents and
28   tens of millions of pages, they become much harder to find.

9

third party discovery since the time Emulex first disclosed Infiniband to Broadcom. Moreover, Broadcom has not subpoenaed a single third party witness for any prior art Emulex has identified in its contentions. It is unclear why Broadcom would have acted differently towards Infiniband, and it is also unclear why Broadcom would want to take any discovery to help Emulex meet its burden of proof on invalidity. In addition, to the extent Broadcom claims it needs additional time, Emulex would consent to any such deposition being taken after the current close of fact discovery – an extension that would uniquely benefit Broadcom, since Broadcom's expert report on validity is not due until May 6th.

There is more than sufficient time for Broadcom to conduct any discovery that it wants to conduct, and for both sides to prepare expert reports. The schedule is undoubtedly compressed, but it would have been so regardless of whether Infiniband was disclosed in February or March. Presumably Broadcom would rather spend its time preparing a response to a handful of references, rather than the 113 that are currently asserted against the '636 patent. That is why Emulex has offered to narrow its contentions for the '636 patent, and that is why there is no possible prejudice to Broadcom.

**III.      CONCLUSION**

For the reasons given above and in Emulex's opening brief, the Court should allow Emulex to amend its invalidity contentions for the '636 patent to raise one additional reference:  Infiniband.

CASE NO. CV 09-1058-JVS (ANx)

1    Dated: March 28, 2011          FISH & RICHARDSON P.C.

2

3

                                By: */s/ Jonathan J. Lamberson*

4                                     Jonathan J. Lamberson

5                              Attorneys for Defendant and Counterclaimant

6                              EMULEX CORPORATION

7

8    *Additional Counsel*

9    David M. Barkan (SBN 160825)
       barkan@fr.com
10   Jonathan J. Lamberson (SBN 239107)
       lamberson@fr.com
11   FISH & RICHARDSON P.C.
     500 Arguello Street, Suite 500
12   Redwood City, California 94063-1526
     Telephone: (650) 839-5070
13   Facsimile: (650) 839-5071

14   Joseph V. Colaianni, Jr. (*pro hac vice*)
       colaianni@fr.com
15   FISH & RICHARDSON P.C.
     1425 K Street, N.W., 11th Floor
16   Washington, DC 20005
     Telephone: (202) 783-5070
17   Facsimile: (202) 783-2331

18   Thomas H. Reger II (*pro hac vice*)
       reger@fr.com
19   FISH & RICHARDSON P.C.
     1717 Main Street, Suite 5000
20   Dallas, Texas 75201
     Telephone: (214) 747-5070
21   Facsimile: (214) 747-2091

22   Wasif H. Qureshi (*pro hac vice*)
       qureshi@fr.com
23   FISH & RICHARDSON P.C
     One Houston Center
24   1221 McKinney Street, 28th Floor
     Houston, Texas 77010
25   Telephone: (713) 654-5300
     Facsimile: (713) 652-0109

26

27   50769785.doc

28

CASE NO. CV 09-1058-JVS (ANx)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 28, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3.  Any other counsel of record will be served by U.S. mail or hand delivery.

By: */s/ Jonathan J. Lamberson*
    Jonathan J. Lamberson

50769785.doc

12

CASE NO. CV 09-1058-JVS (ANx)