WILLIAM F. LEE (admitted *pro hac vice*)
  (william.lee@wilmerhale.com)
DOMINIC E. MASSA (admitted *pro hac vice*)
  (dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER (admitted *pro hac vice*)
  (joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS (admitted *pro hac vice*)
  (louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02129
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Plaintiff and Counterclaim
Defendant
BROADCOM CORPORATION

JUANITA R. BROOKS (SBN 75934)
  (brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Defendant and Counterclaim
Plaintiff
EMULEX CORPORATION

*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## (SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>EMULEX CORPORATION,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV 09-1058-JVS (ANx)<br><br>consolidated with CV 10-3963 JVS (ANx)<br><br>**JOINT STIPULATION TO EXPEDITE CONSIDERATION OF MOTIONS TO STRIKE EXPERT REPORTS, OR PORTIONS THEREOF** |

i

# <u>TABLE OF CONTENTS</u>

I.   Broadcom's Motion To Strike Section V of the Expert Report of Gary Warden ....................2

   A.   Broadcom's Arguments ............................................................................2

      1.   Introduction ...............................................................................2

      2.   Argument ...................................................................................3

      3.   Conclusion ................................................................................6

   B.   Emulex's Response ...................................................................................6

      1.   If There Are Legitimate Disputes About the Scope of the Claim Terms, the Court Must Decide Them ...................................................8

      2.   Mr. Warden's Two-Step Approach to Analyzing Invalidity is Required by Federal Circuit Law ..................................................9

      3.   Nothing Limits The Experts' Ability to Discuss the Scope of the Asserted Claims .....11

      4.   Conclusion ..............................................................................12

II.   Emulex's Motion To Strike The Expert Report of Nancy Zhang .............................12

   A.   Emulex's Arguments ...............................................................................12

   B.   Broadcom's Response ..............................................................................14

      1.   Introduction .............................................................................14

      2.   Fed. R. Civ. P. 26(a)(2)(A) Does Not Apply to Ms. Zhang .........................15

      3.   Broadcom's Testifying Experts May Properly Rely on the Cellixsoft Circuit Diagrams in Forming Their Opinions ...................................16

      4.   The Disclosure of Ms. Zhang Is Harmless Under Fed. R. Civ. P. 37(c)(1)................18

III.   Emulex's Motion To Strike Portions of The Expert Report of Paul S. Min ..........................19

   A.   Emulex's Arguments ...............................................................................19

   B.   Broadcom's Response ..............................................................................22

IV.   Emulex's Motion to Strike Newly Accused Products ..........................................25

   A.   Emulex's Arguments ...............................................................................25

   B.   Broadcom's Response ..............................................................................28

      1.   The BE3, Zephyr, and Lancer Are Not "New Products" ................................28

      2.   Emulex Has Not Suffered Any Prejudice ......................................30

V.   EXHIBITS ...........................................................................................32

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Med. Sys. Inc. v. Laser Peripherals, LLC,*
  712 F. Supp. 2d 885 (D. Minn. 2010) ...................................................... 17

*Atmel Corp. v. Information Storage Devices,*
  1998 U.S. Dist. LEXIS 17564 (N.D.Cal.1998) ........................................ 26

*Carson Harbor Vill., Ltd. v. Unocal Corp.,*
  2003 U.S. Dist. LEXIS 14438, 2003 WL 22038700 (C.D. Cal. 2003) .............. 13

*Children's Broad. Corp. v. Walt Disney Co.,*
  357 F.3d 860 (8th Cir. 2004) .................................................................. 17

*Dura Automotive Sys. v. CTS Corp.,*
  285 F.3d 609 (7th Cir. 2002) .................................................................. 17

*Elmer v. ICC Fabricating,*
  67 F.3d 1571 (Fed. Cir. 1995) ................................................................... 9

*Funai Elec. Co. v. Daewoo Elec. Corp.,*
  2007 U.S. Dist. LEXIS 29782 (N.D. Cal. Apr. 11, 2007) ........................ 15

*Gould v. Control Laser Corp.,*
  705 F.2d 1340 (Fed. Cir. 1983) ................................................................. 4

*Hangarter v. Provident Life & Accident Ins. Co.,*
  373 F.3d 998 (9th Cir. 2004) .................................................................. 17

*Huezo v. Los Angeles Cnty. Coll. Dist.,*
  2007 U.S. Dist. LEXIS 100116 (C.D. Cal. Mar. 2, 2007) ........................ 17

*In re Katz Interactive Call Processing Patent Litig.,*
  No. 09-1450, 2011 WL 607381 (Fed. Cir. 2011) ........................... 4, 5, 6, 8

*In re Synthes,*
  346 Fed. App'x 583 (Fed. Cir. 2009) ........................................................ 4

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
  302 F.3d 1352 (Fed. Cir. 2002) ................................................................. 8

*Jarritos, Inc. v. Los Jarritos,*
  2007 U.S. Dist. LEXIS 32245 (N.D. Cal. May 2, 2007) .......................... 13

*Jarritos, Inc. v. Reyes,*
  345 Fed. Appx. 215 (9th Cir. 2009) ....................................................... 13

*Lang v. Cullen,*
  725 F. Supp. 2d 925 (C.D. Cal. 2010) .................................................... 17

*Markman v. Westview Instruments,*
  517 U.S. 370 (1996) ................................................................................. 9

ii

*Monsanto Co. v. David*,
   516 F.3d 1009 (Fed. Cir. 2008) ................................................................. 16

*O2 Micro Int', Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ............................................................. 5, 8, 9

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
   833 F.2d 931 (Fed. Cir. 1987) ................................................................. 10

*Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.,*
   *Ltd.*, 2006 WL 5097360 (C.D. Cal. Jun. 5, 2006) ..................................... 30

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ............................................................. 16, 17

*Superguide Corp. v. DirecTV Enters.*,
   358 F.3d 870 (Fed. Cir. 2004) ................................................................... 9

**Statutes**

35 U.S.C. § 112 ........................................................................................... 3

Fed R. Evid. 705 ......................................................................................... 15

Fed. R. Civ. P. 26 ........................................................................... 15, 17, 18

Fed. R. Civ. P. 37 ....................................................................................... 18

Fed. R. Evid. 702 ................................................................................. 14, 15

Fed. R. Evid. 703 ......................................................................... 15, 16, 17

N.D. Cal. Pat. L.R. 3-1 ............................................................................... 27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Broadcom Corporation ("Broadcom") and Emulex Corporation ("Emulex"), through their respective counsel of record, hereby stipulate as follows.

The parties served opening expert reports on April 19, 2011. Pursuant to the Court's scheduling order, the parties must serve rebuttal expert reports on May 13, 2011. Each party asserts that portions of one or more of the expert reports submitted by the opposing party should be stricken, for the reasons stated below.

After meeting and conferring in good faith, the parties agree and jointly and respectfully request that the parties' motions to strike be considered on an expedited basis, to avoid prejudice to either party by being required to address any improper arguments in rebuttal expert reports. Because those rebuttal reports would otherwise be due before a motion to strike could be calendared and heard in the ordinary course, the parties have agreed to an expedited process. Specifically, the parties have agreed that both parties' arguments and responses on all motions to strike should be submitted to the Court for consideration in this single joint stipulation, so that the Court can decide the motions on an expedited basis.

The parties therefore respectfully request that the Court consider and decide the following motions (contained in this stipulation) on the basis of this stipulation and without argument, on an expedited basis:

1.     Broadcom's Motion to Strike Section V of the Expert Report of Gary Warden;

2.     Emulex's Motion to Strike The Expert Report of Nancy Zhang;

3.     Emulex's Motion to Strike Portions of the Expert Report of Paul S. Min; and

4.     Emulex's Motion to Strike Newly Accused Products.

/ / /

/ / /

/ / /

# I.   BROADCOM'S MOTION TO STRIKE SECTION V OF THE EXPERT REPORT OF GARY WARDEN

## A. <u>Broadcom's Arguments</u>

### 1.   <u>Introduction</u>

In its opening expert report of Gary Warden (Ex. A), Emulex included 35 pages of new claim construction arguments, in violation of this Court's scheduling orders and the applicable Patent Local Rules.  Broadcom respectfully requests that the Court strike these arguments from Dr. Warden's expert report, because they are untimely.

Dr. Warden's report contains his expert opinion concerning how certain terms should be construed.  The claim construction process was completed long ago.  The initial phases of that process included a deadline for submission of expert reports on claim construction.  (*See* Order Regarding Pretrial and Trial Dates, Jan. 11, 2010, Dkt. No. 40, at Ex. A-1 (setting July 16, 2010 as deadline to "Exchange Expert Reports on Claim Construction").)  The parties ultimately agreed that, for simplicity, they would not rely on expert opinion for claim construction, and would not submit expert claim construction reports at all.  (*See* Order Regarding Pretrial and Trial Dates, July 21, 2010, Dkt. No. 171 ("parties not relying on experts").)  Then, after briefing and argument, the Court imposed a limit of 12 claim terms for construction—of which Broadcom used only 3, leaving Emulex free to select 9 of the 12 total terms for construction. (*See* Order Granting Leave to Exceed Page Limits, Oct. 8, 2010, Dkt. No. 210, at 1.)  Following the Court's order, Emulex and Broadcom conferred to arrive at a joint set of terms for construction.  The final set of terms was the subject of extensive briefing, a full *Markman* hearing, and a 24-page decision by the Court.  (*See* Order Regarding *Markman*/Claim Construction Hearing, Dec. 17, 2010, Dkt. No. 261.)

Emulex now seeks to contravene the Court's rules by submitting a claim construction expert report ***nine months*** late, after having agreed not to rely on

2

expert opinion for claim construction at all, and by explicitly arguing constructions of additional terms they earlier elected ***not*** to make part of the Court's scheduled *Markman* process.  Emulex's violation of the scheduling orders would effectively require Broadcom to create "conditional" expert reports—one set under the plain and ordinary meaning of the claim terms, the other under Emulex's proposed constructions.  Because Broadcom has already submitted its expert report on infringement—on the basis of the plain and ordinary meaning of the claim terms and without any notice that Emulex would seek construction of their meaning—it will have no opportunity to submit a "conditional" report on infringement.  It would also require the Court to adjudicate an entirely new set of *Markman* issues, possibly requiring new *Markman* briefing and a second *Markman* hearing.  And it would prevent the parties from continuing their pretrial preparation—and briefing of any summary judgment motions—under a settled set of constructions.

Broadcom therefore respectfully requests that the Court strike the portions of Dr. Warden's expert opinions regarding claim construction (Section V), and preclude Emulex from asserting any claim construction other than plain and ordinary meaning for the claim terms that it elected not to have construed.[1]

## 2.  Argument

The Court has the authority to set deadlines for disclosure of claim construction expert opinions and to enforce the parties' agreement not to rely on experts.  The parties here agreed not to rely on expert opinions for claim construction, and that agreement is reflected in an order of the Court.  (*See* Order Regarding Pretrial and Trial Dates, July 21, 2010, Dkt. No. 171, at 3 ("parties not relying on experts").)   Likewise, the Court ordered that the parties were, together, permitted to bring 12 terms to the Court for construction.  (*See* Order Granting Leave to Exceed Page Limits, Oct. 8, 2010, Dkt. No. 210, at 2.)

/ / /

---

[1] Emulex has also agreed to withdraw Section VII.A of Dr. Warden's report, concerning, 35 U.S.C. § 112.

The parties undertook a lengthy process to determine which terms to present to the Court for construction, exchanging preliminary claim constructions on June 18, 2010 and September 10, 2010, as well as amendments to these preliminary claim constructions.  Emulex's original proposed terms included many of the same terms that it now seeks to have construed through Dr. Warden's report, but Emulex subsequently chose to drop those terms in favor of others.  Remarkably, Emulex not only now seeks to have these abandoned terms construed, but it offers entirely different constructions than the constructions it proposed (then abandoned) in the ordinary claim construction process.  (*See* Ex. B, Emulex's Preliminary Claim Constructions and Extrinsic Evidence, June 18, 2010; Ex. C, Emulex's First Amended Preliminary Claim Constructions and Extrinsic Evidence, Sept. 10, 2010.) The Final Joint Claim Construction statement did not include the terms at issue. (*See* Joint Claim Construction Statement, Sept. 24, 2010, Dkt. No. 194.)

Enforcing claim construction agreements and deadline such as these is appropriate, because district courts have wide discretion in managing their dockets. *See, e.g.*, *In re Synthes*, 346 Fed. App'x 583, 584 (Fed. Cir. 2009) (nonprecedential) ("[A] district court has broad discretion in managing its docket.") (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983)); *see also In re Katz Interactive Call Processing Patent Litig.*, No. 09-1450, 2011 WL 607381, at *3-*4 (Fed. Cir. 2011) (upholding district court decision to limit the number of asserted claims because "the district court needs to have broad discretion to administer the proceeding").

The Court exercised this discretion and expressly instructed the parties "to brief terms which will have the most significance in terms of the issues in the case." (Order Granting Leave to Exceed Page Limits, Oct. 8, 2010, Dkt. No. 210, at 2 (limiting number of claims to be construed to 12).)  Emulex now seeks to evade this Court-ordered limit by raising new terms for construction by way of an expert report, without any excuse.  Likewise, raising these claim construction arguments

4

now in an expert report violates both the Court's January 11, 2010 scheduling order (Dkt. No. 40), which set deadlines for the disclosure of expert testimony, and the parties' agreement not to rely on expert testimony in claim construction, reflected in the July 21, 2010 scheduling order (Dkt. No. 171).  The Court should strike Emulex's disclosure of new expert claim construction opinion on claim terms that it previously elected not to have construed.

Finally, the Federal Circuit's holding in *O2 Micro Int', Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008), is not implicated in this dispute because the issue is not whether courts generally need to resolve claim construction disputes, but rather whether judges have discretion to impose rules governing their docket.  *See id*. at 1362.  Broadcom does not contest that, as a general background principle, courts must decide claim construction disputes— indeed, the holding of *Markman* itself placed this function with courts.  But this is not an absolute rule that precludes district courts from imposing reasonable procedural limits on their cases.

By way of comparison, as a general background principle, a patentee can choose to select the number of claims to assert—that is, as a general legal matter a patentee can pick which claims are in the case.  But this does not preclude courts from imposing a procedural limit on the number of claims—as the Federal Circuit held just a few weeks ago.  *See In re Katz*, 2011 WL 607381, at *4 ("[Plaintiff] has not shown that the claim selection procedure the district court employed was inadequate to protect [plaintiff's] rights . . . .").)  The Court did just that here, and Broadcom has abided by that ruling.  (*See* Order Consolidating Actions, June 30, 2010, Dkt. No. 167, at 8-9 ("Courts routinely require plaintiffs to select for litigation a small number of the total asserted claims. . . . The Court has inherent power to manage its cases in the interests of judicial economic and speedy resolution. . . . Broadcom shall have thirty days from the date of this order to reduce the number of claims litigated to twenty.").)

5

1    If a district court can (as the Federal Circuit has held) limit the number of

2 asserted claims asserted in a single action, it necessarily can limit construction of

3 those claims—both types of limits serve the same goal of reasonable limits to

4 conserve the resources of the Court and the parties.  In its discretion, the Court set

5 just such a reasonable limit here, and Emulex violated it with no excuse, and no

6 forewarning to Broadcom or the Court.  The portion of Dr. Warden's report

7 addressing claim construction should therefore be stricken, and Emulex should be

8 precluded from offering any construction of the terms listed in Section V of that

9 report apart from their plain and ordinary meaning.

10    Emulex cannot deny that this Court set a limit on the number of terms to be

11 construed, and cannot deny that Dr. Warden's report conflicts with that very limit.

12 Emulex's arguments focus exclusively on background principles of law

13 (infringement as a two-step process, etc.), which are inapposite.  Emulex cites no

14 case holding that a Court cannot set reasonable limits on terms to be construed—*O2*

15 *Micro* did not so hold—and indeed, the logic of cases such as *In re Katz* runs

16 directly counter to Emulex's position.[2]  The Court set a reasonable rule, and it

17 should be followed.

### 3.  Conclusion

18

19    Broadcom respectfully requests that the Court strike Section V of Emulex's

20 Opening Expert Report of Gary Warden, and that it preclude Emulex from seeking

21 construction of the terms listed in Section V of that report.

### B.  Emulex's Response

22

23    Analysis of infringement or invalidity is a two-step process.  The first step is

24 to consider the scope of the patent claims, because the claims are what define the

25 boundaries of the invention.  Both Broadcom and Emulex engage in this two-step

26 analysis in their infringement and invalidity expert reports.  There is nothing

27

28
[2] Emulex self-servingly and inconsistently argues that the Court has the power to limit asserted claims (which disfavors Broadcom) but not to limit claim construction.  If the Court can limit asserted claims, as Emulex agrees and the Federal Circuit held, then the Court logically can also limit construction of claim terms.

6

1    unusual or improper about the specific analysis contained in Mr. Warden's report
2    for the '691 and '500 patents.  Broadcom's own expert supposedly applied the
3    "customary" meaning to the terms in his report.

4         This plain (or "customary") meaning is apparently in dispute here.
5    Specifically, both parties put forward competing claim constructions for the '691
6    and '500 patents during the claim construction process, but no terms from these two
7    patents were selected by either party for the *Markman* hearing.  Without any
8    constructions from the Court, the claim terms for these two patents will be given
9    their "plain and ordinary meaning" by the jury.  This only begs the question of what
10   that "ordinary meaning" is.  Emulex's expert is entitled to explain what the ordinary
11   meaning is, and to explain the incorrect meanings Broadcom is using in its analysis.

12        Broadcom never explicitly states what the supposed "customary" meaning of
13   the claims is, and Broadcom does not say whether it disputes any of Mr. Warden's
14   opinions.  If it does not, then there is no need to strike them – to the extent everyone
15   agrees on the ordinary meanings of the terms, the experts should be free to discuss
16   them.  If there is a legitimate dispute about claim scope, however, the Court will
17   need to resolve which party's ordinary meaning is the correct one.  There is no
18   presumption that the Plaintiff's ordinary meaning is better than the Defendant's, and
19   striking Emulex's position on the ordinary meaning of these terms would effectively
20   resolve a claim construction dispute in Broadcom's favor without any consideration
21   on the merits.

22        Because there is nothing improper about an expert considering the scope of
23   the patent claims or explaining what the "ordinary meaning" of the claim terms is,
24   Broadcom's motion to strike should be denied.  If there are legitimate disputes about
25   the ordinary meaning of these terms, the proper course would be for Broadcom to
26   squarely raise those disputes so that the Court can decide them on the merits, before
27   the case is submitted to the jury.
28   / / /

**1. If There Are Legitimate Disputes About the Scope of the Claim Terms, the Court Must Decide Them**

The parties' dispute directly implicates the Federal Circuit's holding in *O2 Micro*. In *O2 Micro*, the district court decided that a term needed "no construction because it has a well-understood definition, capable of application by both the jury and this court in considering the evidence submitted in support of an infringement or invalidity case." 521 F.3d at 1357. The Federal Circuit said that the district court committed legal error, because "[w]hen the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." *Id*. at 1360. Specifically, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary meaning' or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id*. at 1361. The Federal Circuit has made clear that this may require construing claim terms later in the case, even during trial. *See Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves. This is particularly true where issues involved are complex, either due to the nature of the technology or because the meaning of the claims is unclear from the intrinsic evidence").[3]

Broadcom cites several Federal Circuit cases that state courts have the authority to manage their docket. These cases, however, deal with situations where plaintiffs were forced to narrow the number of asserted claims. The Court certainly can limit Broadcom to a narrow subset of claims, and nothing gives Broadcom the right to assert each and every claim in every patent-in-suit against Emulex. *See In re Katz*, 2011 WL 607381, at *4. But that does not mean that the parties' disputes over the claims that *are* asserted can be ignored. Broadcom states without support

---

[3] This flexibility is especially important here, given that this is an expansive case, and both patents and claims have been added and dropped since the time the Court asked the parties to identify critical terms for construction.

that if the Court can limit the number of claims, "it necessarily can limit construction of those claims."  Not only does Broadcom's logic not follow from the premise of docket management, it has been plainly rejected by the Federal Circuit. *O2 Micro* stands for the proposition that once presented with a reasonable dispute over terms asserted to be "ordinary meaning," the district court must resolve those disputes, irrespective of when it becomes clear that there is a dispute.  *See also Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996) ("We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court").

To the extent that no disputes exist about the scope of the claims, Mr. Warden's opinions are entirely proper and serve to explain the "plain meaning" of the claim terms for the jury.  To the extent that legitimate disputes do exist regarding the scope of the claims, the Court and not the jury must resolve them.  In either case, Mr. Warden's opinions are appropriate and should not be struck.

## 2.  Mr. Warden's Two-Step Approach to Analyzing Invalidity is Required by Federal Circuit Law

Broadcom suggests that there is something improper about having Mr. Warden consider the scope of the patent claims in his expert report, but this was the approach taken by both parties, and it is in fact required by Federal Circuit law.

Specifically, the Federal Circuit has said that an infringement or invalidity analysis is a two-step process; the first step must always be to determine the meaning and scope of the claims.  *See Elmer v. ICC Fabricating*, 67 F.3d 1571, 1574 (Fed. Cir. 1995) ("In analyzing validity, the first step involves the proper interpretation of the claims.  The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art"); *Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 874 (Fed. Cir. 2004) ("A determination of infringement involves a two-step analysis, the first step being to properly construe the asserted claims").

9

1         Mr. Warden simply followed this two-step process in his expert report by

2    noting that Broadcom's proposed constructions for the '500 and '691 patents

3    contradict the plain meaning – and express language – of the asserted claim.  First,

4    Mr. Warden discussed Broadcom's Preliminary Claim Constructions submitted to

5    Emulex in September of 2010.  (Ex. A, Warden Report, at ¶¶ 148-150).  He then

6    noted that Broadcom's infringement analysis, evidenced in Broadcom's "final"

7    Infringement Contentions, applied these same contradictory constructions in order to

8    read onto Emulex's accused products.  (*Id*. at ¶¶ 151-160).  Mr. Warden then

9    explained that he was applying Broadcom's constructions and broad claim

10   interpretations in his invalidity analysis.  (*Id*. at ¶¶ 147 & 161).[4]   Finally,

11   Mr. Warden provided explanations for the ordinary meanings of various claim

12   terms, according to the patent claim language, patent specification, patent

13   prosecution history, and testimony from the patent inventors and other witnesses.

14   (*See* Ex. A at ¶¶ 162-205).[5]

15        The patent claim language defines the metes and bounds of Broadcom's

16   alleged inventions – one cannot decide infringement or invalidity without

17   considering those boundaries.  *See Pennwalt Corp. v. Durand-Wayland, Inc*., 833

18   F.2d 931, 953 (Fed. Cir. 1987) ("the elements of the claim define the metes and

19   bounds of protection").  It was entirely proper for Mr. Warden to consider the claim

20   scope before analyzing invalidity, especially where the Court has not provided any

21   constructions for these claims.  Several of Broadcom's own expert reports discuss

22   / / /

23   / / /

24

25   [4] This, too, is required by Federal Circuit case law, which requires the parties to apply the same meaning and scope of
the claims for both infringement and invalidity.  *See W.L. Gore & Assocs., Inc. v. Garlock, Inc*., 842 F.2d 1275, 1279

26   (Fed. Cir. 1988) ("Having construed the claims one way for determining their validity, it is axiomatic that the claims
must be construed in the same way for infringement"); *Bristol-Myers Squibb Co. v. Ben Venue Labs*., 246 F.3d 1368,
1378 (Fed. Cir. 2001) ("it is axiomatic that that which would literally infringe if later anticipates if earlier").

27   [5] Broadcom argues that Mr. Warden offers "entirely different constructions" from those Emulex proposed previously.
Mr. Warden explains in his report that his constructions are consistent with Emulex's prior constructions.  (Ex. A,

28   Warden Report at fns.279, 297, & 301).

the scope of the claims before engaging in their infringement analysis.  There is nothing improper about this approach, and it is in fact required by Federal Circuit law.

### 3. Nothing Limits The Experts' Ability to Discuss the Scope of the Asserted Claims

Broadcom does not attack the methodology Mr. Warden used to explain what the claim terms mean, nor does it attack any of his ultimate conclusions.  Instead Broadcom uses rhetoric to argue that Emulex is in "violation of scheduling orders" and that it intends to "contravene the Court's rules."  These arguments are incorrect.  Nothing in the Court's prior orders , or in the parties' prior agreements, prohibits either side from having its expert explain the "plain meaning" or "customary meaning" of claim terms.  Also, nothing prohibits the experts from pointing out how the claims are being applied inconsistently between infringement and invalidity.

Emulex has obeyed all of the Court's orders and abided by all of the parties' previous agreements.  The Court specifically ordered the parties to identify 12 claim terms for construction, which they did.  (Docket No. 210).  The parties also agreed not to use experts during the claim construction process – and neither side did.  The parties' previous agreement had nothing to do with infringement or invalidity expert reports.  Indeed, as noted above, Broadcom's own expert reports discuss claim construction, and also note various Emulex proposed constructions that were "rejected" by the Court.  (*See, e.g.,* Ex. K, Min Report at ¶¶ 85-90).  Broadcom neglects to explain why it is appropriate for its own reports to discuss claim scope, but why Emulex cannot do so.

The Court limited the parties to 12 terms for consideration during the *Markman* hearing, but its order did not address what would happen to any remaining claim construction disputes.  Here, both sides submitted competing constructions for the '691 and '500 patents.  (*See* Exs. B, C & Q).  Yet neither side decided to submit these disputes to the Court as one of those 12 terms.  That does not mean that all other disputes were decided in Broadcom's favor.  In other words, having no

11

construction for a term does not mean that Broadcom is free to give the claims any meaning it wants, with no opportunity for Emulex to respond.  That was never what Emulex agreed to, nor is it what the Patent Local Rules (adopted in this case) contemplate as the purpose of limiting number of claim terms to those likely to be most significant to resolving the parties' dispute.

### 4. Conclusion

Because Federal Circuit law requires Mr. Warden to consider the scope of the patent claims before engaging in a non-infringement or invalidity analysis, the Court should deny Broadcom's motion to strike.  If there are legitimate disputes about the "ordinary meaning" of these claim terms, the proper course would be for Broadcom to raise those disputes so that the Court can decide them on the merits, before the case is submitted to the jury.

## II.   EMULEX'S MOTION TO STRIKE THE EXPERT REPORT OF NANCY ZHANG

### A. Emulex's Arguments

The deadline for the parties to "Exchange Identification of Experts on Topics Other Than Claim Construction" was January 14, 2011.  (July 21, 2010 Order Regarding Pretrial and Trial Dates, Docket No. 171).  Broadcom disclosed seven experts on that date, but it did not disclose Nancy Zhang.  (Ex. P).  Nonetheless, on April 19th, Broadcom served a document entitled "Expert Report of Nancy Zhang" (Ex. D) that purports to describe reverse engineering work she performed on the accused products.  This untimely expert and her opinions should be excluded, and Broadcom and its experts should not be allowed to rely on them in any way.

The Federal Rules require parties to disclose the identity of any witnesses they intend to use at trial to present expert opinions. Fed. R. Civ. P. 26(a)(2).  The Rules further provide that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

12

unless the failure was substantially justified or is harmless." Fed. R. Civ.

P. 37(c)(1). "Plaintiff bears the burden of demonstrating its failure was either

substantially justified or harmless." *See Jarritos, Inc. v. Los Jarritos*, 2007 U.S.

Dist. LEXIS 32245 at *8 (N.D. Cal. May 2, 2007), *aff'd Jarritos, Inc. v. Reyes*, 345

Fed. Appx. 215, 217 (9th Cir. 2009); *see also Carson Harbor Vill., Ltd. v. Unocal

Corp.*, 2003 U.S. Dist. LEXIS 14438, 2003 WL 22038700, *2 (C.D. Cal. 2003)

("Excluding expert evidence as a sanction for failure to disclose expert witnesses in

a timely fashion is automatic and mandatory unless the party can show the violation

is either justified or harmless.") Neither of these exceptions apply here.

First, Broadcom's disclosure of Ms. Zhang is not justified. Ms. Zhang states

in her report that she was engaged in May of 2010 to perform a reverse engineering

report on the Emulex Blade Engine 2 ("BE2") product – eight months before the

identification of expert witnesses was due. Ms. Zhang further states that she

provided the results of her reverse engineering work to Broadcom on August 31,

2010, over four months before the expert disclosure deadline. Broadcom clearly

knew about Ms. Zhang and the nature of her work, and yet it waited months to

disclose her to Emulex.

Second, Broadcom's failure to disclose Ms. Zhang is not harmless. Reverse

engineering of integrated circuits is a highly technical and opaque process. Failure

to disclose Ms. Zhang sooner leaves Emulex with no way to effectively rebut her

opinions. Emulex cannot engage its own reverse engineering expert at this late

stage in the case, and preparing a full and effective cross-examination of

Ms. Zhang's methods, her results, and her potential biases will be impossible given

that neither party has conducted any discovery on her work. Ms. Zhang is also

apparently located Beijing, China, where civil depositions are illegal. The parties

have yet to discuss what arrangements will need to be made to take her deposition,

/ / /

/ / /

13

but even if Ms. Zhang can travel to the United States for a deposition, it would be impossible for Emulex to conduct any follow-up discovery to obtain documents or to depose any individuals in China who may also be relevant to her work.

Finally, Broadcom cannot cure its late disclosure by refashioning Ms. Zhang's expert report as a "fact declaration." It was Broadcom who titled this document an "expert report," and that title was appropriate because Ms. Zhang's work was highly technical and her report conveys "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. It is irrelevant under the Federal Rules whether she opined on the ultimate issues of infringement or invalidity.

Broadcom cannot simply cure these deficiencies by having its other experts quote Ms. Zhang's report. Broadcom states that it does not intend to call Ms. Zhang at trial, but it clearly does intend to have its other experts rely on her report and incorporate her opinions into their testimony. If Ms. Zhang cannot testify at trial because her expert report was not timely disclosed, Broadcom cannot cure that late disclosure simply by having its other experts rely on her work.

Because her disclosure was untimely, and because it prejudices Emulex, Ms. Zhang's expert report should be stricken in its entirety. Broadcom, its witnesses, and its experts should not be allowed to refer to Ms. Zhang's work or to rely on her opinions in any way.

## B. Broadcom's Response

### 1. Introduction

On April 19, 2011, Nancy Zhang submitted a 3½ page report that authenticated and established as business records certain reverse-engineering diagrams prepared by the company where Ms. Zhang works, Cellixsoft Corporation. (See Ex. D.) Ms. Zhang's report offered no opinions of any kind, including with regard to infringement. Broadcom does not presently intend to call Ms. Zhang at trial; would only call her to testify to facts within her personal knowledge; and will not call her to opine on any issue. Broadcom disclosed the reverse-engineering

14

1    diagrams, Ms. Zhang, and Cellixsoft to Emulex months ago, well before the close of

2    fact discovery.

3          Emulex nonetheless seeks to exclude Ms. Zhang's April 19th report because

4    she was not listed as an expert in Broadcom's Fed. R. Civ. P. 26(a)(2) disclosures.

5    But Rule 26(a)(2)(A) does not apply to witnesses who are not expected to present

6    expert testimony or opinions at trial.  *See, e.g.*, *Funai Elec. Co. v. Daewoo Elec.*

7    *Corp.*, 2007 U.S. Dist. LEXIS 29782, at *6 (N.D. Cal. Apr. 11, 2007).  Ms. Zhang is

8    neither expected to testify at trial, nor is she offering ***any*** opinions under the rules of

9    evidence cited by Rule 26(a)(2), or otherwise.  Indeed, although her April 19th

10   report was styled as an "expert report," the report is directed solely to facts

11   regarding the reverse-engineering diagrams prepared by Cellixsoft.  Emulex thus

12   has no basis to exclude the April 19th report—nor any ground to preclude

13   Broadcom's testifying experts from relying on the reverse-engineering diagrams.

14   Indeed, these experts could rely on the reverse-engineering diagrams even if they

15   were not admitted into evidence.

16              **2.  Fed. R. Civ. P. 26(a)(2)(A) Does Not Apply to Ms. Zhang**

17         Rule 26(a)(2)(A) requires a party to disclose "the identity of any witness it

18   may ***use at trial to present evidence*** under Federal Rule of Evidence 702, 703, or

19   705." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added).  Broadcom does not intend to

20   use Ms. Zhang to present expert evidence at trial.  Ms. Zhang's report is offered for

21   only one reason—to authenticate and establish the admissibility of certain circuit

22   diagrams prepared by her company Cellixsoft.  Ms. Zhang's report is, in substance,

23   a fact affidavit submitted to complement the expert reports of Broadcom's testifying

24   experts.  It does not include any opinions, let alone those qualifying under Fed. R.

25   Evid. 702, 703, or 705.  As such, Fed. R. Civ. P. 26(a)(2)(A) does not apply, and

26   Emulex's sole basis for excluding the report of Ms. Zhang is inapplicable.

27   / / /

28   / / /

15

1      That the document bears the title "expert report" because it was submitted in

2   conjunction with, and in support of, the reports of Broadcom's testifying experts is

3   inapposite.  The document contains ***no expert opinions***, but only a recitation of

4   ***facts***.

5          **3.   Broadcom's Testifying Experts May Properly Rely on the**
           **Cellixsoft Circuit Diagrams in Forming Their Opinions**

6      Broadcom's testifying experts regarding infringement of the BE2 chip—the

7   sole product to which the circuit diagrams relate—were timely disclosed.  Those

8   experts have provided infringement reports in which they rely upon the circuit

9   diagrams prepared by Cellixsoft.  (Ex. E, Expert Report of Richard Fair, Ph.D. at

10  ¶ 74; Ex. F, Expert Report of Vladimir Stojanovic, Ph.D. at ¶ 132.)  As those experts

11  opined, the process used to create the circuit diagrams was reliable, and such circuit

12  diagrams are of the type reasonably relied upon by experts in the field.  (Ex. E,

13  Expert Report of Richard Fair, Ph.D. at ¶ 75; Ex. F, Expert Report of Vladimir

14  Stojanovic, Ph.D. at ¶ 133.)

15     Emulex confuses Ms. Zhang's report with the underlying circuit diagrams.

16  Broadcom's testifying experts do not intend to "incorporate [Ms. Zhang's] opinions

17  into their testimony" as Emulex asserts.  First, as stated above, Ms. Zhang provided

18  no opinions.  Second, Broadcom's experts instead inform their infringement

19  opinions based on the ***circuit diagrams*** that Broadcom produced to Emulex over

20  seven months ago.

21     Therefore, Broadcom's experts may properly base their opinions on the

22  circuit diagrams prepared by Cellixsoft whether or not Ms. Zhang's report is

23  admissible.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir.

24  1997) ("The fact that [an expert's] opinions are based on data collected by others is

25  immaterial; *Federal Rule of Evidence 703* expressly allows such opinion

26  testimony."); *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008)

27  ("[N]umerous courts have held that reliance on scientific test results prepared by

28

others may constitute the type of evidence that is reasonably relied upon by experts for purposes of Rule of Evidence 703 . . . ."); *Lang v. Cullen*, 725 F. Supp. 2d 925, 953 (C.D. Cal. 2010) (citing *Southland Sod Farms*, 108 F.3d at 1142) (same); *Huezo v. Los Angeles Cnty. Coll. Dist.*, 2007 U.S. Dist. LEXIS 100116, at *16 (C.D. Cal. Mar. 2, 2007) ("[An expert's] declaration, which relies in part on 'facts and data' gathered by his associates as well as on information provided by plaintiff's counsel, is competent expert testimony."); Fed. R. Evid. 703.

Further, Broadcom's experts may properly rely on the facts regarding the creation of the circuit diagrams as outlined in Ms. Zhang's report whether or not the report itself is admissible.  While an expert need disclose the information relied upon, (Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii)), that information need not be admissible, (Fed. R. Evid. 703).  In this case, Broadcom's testifying experts properly relied on the factual statements made by the person overseeing the creation of reverse-engineered diagrams.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility . . . .") (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)); *cf. also Am. Med. Sys. Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 896-97 (D. Minn. 2010) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no general requirement that the other expert testify as well." (quoting *Dura Automotive Sys. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)).  Emulex does not challenge the factual statements themselves, but only the timing of those statements (which, as Emulex points out were made within the fact discovery period).  Thus, Emulex's argument that Broadcom's testifying experts should not be allowed to rely on Cellixsoft's circuit diagrams or the facts outlined in Ms. Zhang's report has no basis in the law or the facts.

### 4. **The Disclosure of Ms. Zhang Is Harmless Under Fed. R. Civ. P. 37(c)(1)**

Further, though inapposite in this case because Ms. Zhang is not offering expert testimony under Rule 26(a)(2)(A), Rule 37(c)(1) excuses an untimely disclosure if it is harmless. Emulex can claim no harm, as it has been in possession of the circuit diagrams to which Ms. Zhang's report relates since September 23, 2010. Ms. Zhang's report comprises less than four pages outlining the *facts* that led to the creation of the circuit diagrams provided to Emulex over *six months* prior to the close of fact discovery.[6]

Further, many of the circuit diagrams were expressly included in Broadcom's infringement contentions for the BE2 chip, served on February 4, 2011. (*See* Ex. G, Broadcom Corporation's Final Disclosure of Asserted Claims and Infringement Contentions, Feb. 4, 2011 at Exs. G, K, O(I), R.) Finally, both Ms. Zhang and Cellixsoft were identified in Broadcom's Rule 26(a)(1) initial disclosures, served on February 22, 2011, as having knowledge of "Emulex's infringement of the patents-in-suit [and] the structure and operation of Emulex's infringing products." (Ex. H, Broadcom Corporation's Second Supplemental Rule 26(a)(1) Initial Disclosures, Feb. 22, 2011 at 4, 13.)

In sum, there can be no harm to Emulex if Ms. Zhang's report is admitted for the limited purpose of authenticating the circuit diagrams—given that Emulex had prior notice of Ms. Zhang, Cellixsoft, and the reverse-engineering diagrams themselves.

/ / /

/ / /

/ / /

---

[6] Broadcom also produced additional circuit diagrams prepared by Cellixsoft on March 30, 2011, but these circuit diagrams are not relevant to the infringement analysis of Broadcom's testifying experts, Dr. Richard Fair and Dr. Vladimir Stojanovic.

18

III.   **EMULEX'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF PAUL S. MIN**

   A.  <u>Emulex's Arguments</u>

   In both its July 30, 2010 preliminary and February 4, 2011 final infringement contentions for the '636 patent, Broadcom only identified one standard as forming the basis for its infringement allegation against Emulex: the "DCBX" standard (also known as IEEE standards 802.1Qaz and 802.1Qbb).  (*See* Ex. G).  Moreover, as recently as April 11th, during the hearing on Emulex's request to add the InfiniBand reference to its invalidity contentions, Broadcom's counsel represented to the Court that its infringement theory for the '636 patent was based on the assertion that Emulex products practice the DCBX standard, and that any product practicing that standard necessarily infringes the '636 patent.  Now, for the first time in its infringement expert report, Broadcom seeks to expand its infringement theories, and asserts that the Emulex products infringe because they allegedly practice a different standard: IEEE 802.1Q, also called the "Virtual Local Area Network" or "VLAN" standard.  (*See* Ex. K).  This new infringement theory is untimely, improper, and should be excluded.

   This Court recently explained the importance of not allowing new theories to expand the case after the deadline for providing final contentions:  "[t]he purpose of the Patent Local Rules is to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. … [a]mendment of the infringement contentions or the invalidity contentions may be made only by order of the Court upon a timely showing of good cause."  (Docket No. 330).  In this situation, Broadcom never even requested leave to amend its infringement contentions to add this new theory – it simply included that theory in an expert report.  Even if Broadcom had requested leave, as is required, that request should be denied because it would be untimely, inexcusable, and because the late addition of this theory prejudices Emulex.

1    First, Broadcom's theory is untimely.  The VLAN standard has never

2    previously been accused in this case.  While the numbers on these various standards

3    may look similar, they are in fact completely different.  The VLAN standard was

4    originally written in 1998 and describes a mechanism for creating logical groups of

5    computers that can communicate as if they are on the same network (even if they

6    actually exist on different physical networks).  The DCBX standards were not

7    written until 2008 (over a decade after the VLAN standard), and deal with

8    technologies such as flow control.

9    Broadcom never explained during discovery how or why the VLAN standard

10   allegedly met any limitation of the '636 patent.  It only ever accused the "priority

11   flow control" feature in DCBX as infringing.  The only place that 802.1Q appears in

12   Broadcom's infringement contentions is in a laundry list of other specifications that

13   the accused products support, but even there Broadcom never highlighted or

14   discussed VLAN – it only highlighted the DCBX standards (802.1Qaz and Qbb).

15   Below is an example from Broadcom's final infringement contentions, where

16   Broadcom underlined the Qbb standard (emphasis is original):

17

18

19

20

21

22

23

24

25

26

27   This same laundry list of specifications is repeated in several places in

28   Broadcom's infringement claim chart, but it is always followed by a discussion of

20

the DCBX standard, not the VLAN standard.  (*See* Ex. G).  This laundry list

approach is insufficient to satisfy the Patent Local Rules adopted by this Court,

which require that infringement contentions specifically point out, on an element by

element basis, where in the accused products the element is allegedly practiced.  Pat.

L.R. 3-1.  There is no explanation in these charts for how or why VLAN allegedly

meets any limitation.  Moreover, none of the other standards listed here were or are

accused (including "PCI Express," "802.3ae," "802.1p", "802.3ad," and "802.3x").

There is no suggestion that VLAN is any different from these other, unaccused

standards.

This generic, laundry list of features, copied and pasted from a product

brochure, is very different from the discussion and analysis Broadcom gave for the

DCBX standard in its claim charts, and the explanation of how that standard

allegedly infringes.  For example, in its final infringement contentions, Broadcom

described the alleged infringement with respect to DCBX as follows:

> By supporting Priority Flow Control, the OCe10102-F supports virtual channels.
>
> The OCe10102-F uses DCBX to exchange virtual channel data with other network devices, and to control functions of other network devices by configuring DCB features of the other network devices.
>
> The OCe10102-F supports lossless Ethernet MAC using Priority Flow Control, which provides for the exchange of virtual channel data to selectively control flow of transmitted and received data between the OCe10102-F and other network devices.

Plainly, Broadcom's final infringement contentions directed any reasonable

reader to the DCBX standard, and specifically to the "Priority Flow Control"

feature, as allegedly embodying the asserted claim limitations.  Nothing in its

contentions indicated that Broadcom was also asserting that any other standard was

the basis for its contentions.

Second, Broadcom's failure to disclose this new theory is unjustified.

Broadcom was clearly aware that the 802.1Q standard existed.  Broadcom produced

21

copies of it during discovery.  Broadcom's own products support the VLAN standard.  Broadcom could have explained how it allegedly met the claim limitations in its earliest infringement contentions.  In fact this Court allowed both parties to supplement their contentions on February 4, 2011, but Broadcom's final infringement contentions for the '636 patent were identical to the preliminary contentions it served months earlier.  Had Broadcom been diligent, it would have supplemented its contentions to explain how and why VLAN allegedly practiced limitations in the '636 patent, yet it chose not to do so.

Finally, Emulex is prejudiced by this late change in theories.  Because VLAN was never at issue in this case, no witnesses were ever asked about it during discovery.  It was never introduced as an exhibit during any deposition, by Broadcom or by Emulex.  No discovery requests were served concerning VLAN.  Emulex did not identify it in its invalidity contentions, which it certainly would have done had it know Broadcom was reading its patent onto a piece of prior art.  The record in this case is completely devoid of any mention of VLAN.  Emulex cannot conduct discovery now at this late stage in the case, and this lack of discovery prejudices Emulex's ability to defend against Broadcom's claims.

The 802.1Q standard (Ex. L) is a 300 page document.  None of its 300 pages were cited or discussed in Broadcom's infringement contentions.  (Ex. G).  Pointing to portions of different standards that were written a decade later was not sufficient to put Emulex on notice that 802.1Q was accused, and it certainly was not sufficient to explain what aspects of the 802.1Q standard were allegedly infringing or how they allegedly met any of the claim limitations.  For these reasons, Broadcom's new infringement allegation should be excluded.

## B. Broadcom's Response

Emulex's argument that portions of Dr. Min's report should be excluded are unfounded.  By asserting that Dr. Min's discussion of 802.1Q is an expansion of the infringement theories disclosed in Broadcom's infringement contentions, Emulex

22

1  both misunderstands the relationship between IEEE 802.1Q and 802.1Qaz and

2  misstates Dr. Min's opinions.

3  First, Emulex appears to misunderstand how the IEEE Ethernet standards

4  operate.  802.1Q and 802.1Qaz may have been drafted at different times, but

5  802.1Qaz (as well as 802.1Qbb and 802.1Qau) are not truly separate standards.

6  Instead, they are amendments to the existing 802.1Q standard that add additional

7  features.  Indeed, 802.1Qaz and 802.1Qbb are entitled amendments to the Virtual

8  Bridged Local Area Networks standard (i.e., 802.1Q) and are clearly described as

9  such.  (*See, e.g.*, Ex. I, IEEE P802.1Qaz/D2.0, Virtual Bridged Local Area Networks

10 – Amendment XX: Enhanced Transmission Selection for Bandwidth Sharing

11 Between Traffic Classes, BCM_EMX 03851761 ("The proposed standard will be an

12 amendment to 802.1Q, and will interoperate and coexist with all prior revisions and

13 amendments of the 802.1Q standard."), *id.* at BCM_EMX 03851766 ("This

14 amendment to IEEE Std 802.1Q defines enhancements to transmission selection to

15 support allocation of bandwidth among traffic classes, plus a protocol for controlling

16 the application of Data Center Bridging features."); Ex J, IEEE P802.1Qbb/D2.2,

17 Virtual Bridged Local Area Networks – Amendment: Priority-based Flow Control,

18 BCM_EMX 03859981 ("The proposed standard will be an amendment to 802.1Q,

19 and will interoperate and coexist with all prior revisions and amendments of the

20 802.1Q standard.").

21 As amendments to 802.1Q, 802.1Qaz, 802.1Qbb, and 802.1Qau incorporate

22 and build upon the "Virtual Local Area Network" ("VLAN") protocol defined in

23 802.1Q.  (*See* Ex. K, Expert Report of Paul S. Min, Ph.D., ¶ 38 ("IEEE 802.1Q has

24 been incorporated and amended by IEEE P802.1Qaz."); L, IEEE 802.1Q, IEEE

25 Standard for Local and Metropolitan Area Networks, Virtual Bridged Local Area

26 Networks, BCM_EMX 03859673-03859975.) As these standards are amendments

27 to 802.1Q, products that implement 802.1Qaz (or 802.1Qbb or 802.1Qau)

28 *necessarily* implement 802.1Q as well.  Thus, to anyone skilled in the art, alleging

23

1  that a product of implements 802.1Qaz implies that the product implements 802.1Q

2  as well.

3       As such, Emulex misstates Dr. Min's opinions by asserting that Dr. Min is

4  "expand[ing Broadcom's] infringement theories" by "assert[ing] that the Emulex

5  products infringe because they allegedly practice" 802.1Q.  (*See* III.A *supra*.)

6  Broadcom's infringement theory is—and has always been—that Emulex's products

7  infringe the '636 patent by practicing the DCBX protocol, incorporated into

8  802.1Qaz and 802.1Qbb.  Dr. Min's report merely explains the technical details of

9  how Emulex's products implement DCBX: they establish connections using the

10  underlying 802.Q standard, and then implement features in DCBX, 802.1Qaz, and

11  802.1Qbb that are claimed by the '636 patent.  (*See, e.g.*, Ex. K, Min Report, ¶ 100

12  ("The OneConnect establishes a virtual channel with other FCoE network devices

13  by first setting up a VLAN connection . . . and then by making the VLAN

14  connection lossless with DCBX."), ¶¶ 111-112 ("Specifically, the OneConnect

15  creates a the [sic] VLAN connection . . . . The VLAN connection is then further

16  modified through the exchange of DCBX parameters, which specify priority-base

17  [sic] flow control necessary for a lossless connection.").  Dr. Min's report thus

18  simply explains the details of Broadcom's infringement theory—as is appropriate

19  and expected in an expert report; it does not offer a new theory as Emulex suggests.

20  Indeed, nowhere does Dr. Min "accuse[]" 802.1Q of infringing the '636 patent, and

21  Broadcom's infringement contentions highlight the fact that all the elements of '636

22  patent are found within DCBX, 802.1Qaz, and 802.1Qbb.

23       For this reason, Emulex's argument that Broadcom's disclosure of

24  infringement contentions are inadequate is spurious and unfounded.  Patent Local

25  Rule 3-1(c) requires that the plaintiff set out "for each limitation" the "identity of the

26  structure(s), act(s), or materials(s)" in the accused product that "perform[s] the

27  claimed function."  Broadcom's infringement contentions disclose just that;

28  Broadcom alleged that Emulex's products infringe the '636 patent by implementing

24

1   DCBX.  (*See, e.g.*,  Ex. G, Broadcom Corporation's Final Disclosure of Asserted

2   Claims and Infringement Contention, Exhibit A, at 3 ("The OCe10102-F uses

3   DCBX to exchange virtual channel data with other network devices . . . .").)

4   Broadcom's infringement contentions further disclosed—as Emulex admits—

5   802.1Qaz and 802.1Qbb.  (*See id.* at 7; *see also* § III.A *supra*.)  Therefore,

6   Broadcom has properly disclosed the "act" that implements the claimed function—

7   support for DCBX, 802.1Qaz, and 802.1Qbb.  This was more than sufficient to put

8   Emulex on notice of Broadcom's infringement theory, as Patent Local Rule 3-1

9   requires.

10         Because Broadcom's infringement theory was properly disclosed in its

11   infringement contentions, Emulex's arguments regarding prejudice are irrelevant.

12   These prejudice arguments are unfounded as well.  Emulex admits that DCBX,

13   802.1Qaz, and 802.1Qbb were disclosed in Broadcom's final infringement

14   contentions.  (*See* III.A. *supra*.)  Because 802.1Qaz (Ex. I, produced by Broadcom

15   at BCM_EMX 03851756 through 03851845) explicitly states that it is an

16   amendment to 802.1Q (Ex. J, also produced by Broadcom at BCM_EMX 03859673

17   through 03859975) there is no prejudice to Emulex from Dr. Min's use of 802.1Q to

18   explain the technical details of how Emulex's products implement DCBX,

19   802.1Qaz, and 802.1Qbb.

20         For these reasons, Broadcom respectfully requests that the Court deny

21   Emulex's motion to strike portions of Dr. Min's report.

22   **IV.   EMULEX'S MOTION TO STRIKE NEWLY ACCUSED PRODUCTS**

23         **A. <u>Emulex's Arguments</u>**

24         This Court gave Broadcom ample opportunity to conduct discovery on

25   Emulex's accused products, and to amend its infringement contentions as late as

26   February 4, 2011.  Emulex produced millions of pages of documents, Broadcom

27   took over 40 depositions of Emulex engineers, and Broadcom identified dozens of

28   accused products in its final February 4th contentions.  Yet on April 19th, Broadcom

completely changed the list of accused products, adding products that had never previously been accused of infringing several patents.  The table below shows these newly accused products (with additions **Underlined**):

| Patent/Claim | 2/4/2011 Infringement Contentions | 4/19/2011 Expert Reports |
|---|---|---|
| 057/43 | SOC422<br>SOC804<br>QT2025<br>BE2 | SOC422<br>SOC804<br>QT2025<br>BE2<br>**BE3**<br>**Zephyr**<br>**Lancer** |
| 057/44 | QT2025<br>BE2 | QT2025<br>**BE3**<br>**Zephyr** |
| 057/64 | QT2025<br>BE2 | QT2025<br>BE2 (PCIe and XAUI)<br>**BE3**<br>**Zephyr** |
| 057/81 & 84 | SOC422<br>SOC804<br>QT2025<br>SOC442 | **BE3** |
| 194/4 | SOC422<br>SOC804<br>QT2025<br>BE3<br>Lancer | SOC422<br>SOC804<br>QT2025<br>BE2 (XAUI)<br>BE3<br>**Zephyr**<br>Lancer |

These last-minute changes are unjustified and improper.

First, Broadcom itself has said that the local rules adopted in this case are meant to require parties to crystallize their theories early in the case and to adhere to those theories once they have been disclosed.  *See* Docket No. l311; *see also Atmel Corp. v. Information Storage Devices*, 1998 U.S. Dist. LEXIS 17564, at *7 (N.D.Cal.1998).  Broadcom knew about these products (including Zephyr, Lancer, and BE3) at least as early as September 2010, when it brought a motion to compel seeking additional technical documents.  Detailed technical specifications for these

26

products were made available by January 2011.  If Broadcom felt it needed more time to review any of these documents to prepare its final infringement contentions, it should have sought leave from the Court for an extension and explained the basis for its request.  Instead, Broadcom chose to disclose its new contentions for the first time in expert reports, contrary to both the letter and spirit of the disclosure rules adopted by this Court.

Second, Emulex is prejudiced by this last-minute change of contentions.  Specifically, Emulex relied on the final infringement contentions Broadcom served in February to prepare its defenses on each claim and for each accused product.  The patent claims and technical documents related to those claims are highly technical, and Emulex reasonably relied on Broadcom's final infringement contentions in devoting the time and resources of both its counsel and its experts to the products specifically accused by Broadcom.  Broadcom's surprise addition of multiple products on multiple claims puts Emulex in the untenable position of having its counsel and experts devote substantial time and resources to analysis of these newly named products – all at a time when the parties have barely over three weeks to prepare rebuttal expert reports in what is already an extremely large and technically complex litigation.

Broadcom does not dispute that it has added three products (BE3, Zephyr, and Lancer) to its contentions since its "final" Infringement Contentions just over two months ago.  While Broadcom argues that its contentions against BE3, Zephyr, and Lancer were properly disclosed because it accused these products of infringing *other claims*, Broadcom *never* argues that it properly accused these products of infringing the particular claims as required by the patent rules.  Specifically, the Northern District Local Rules, adopted by this Court, require disclosure of infringement contentions on a claim-by-claim basis. *See* N.D. Cal. Pat. L.R. 3-1.  Accusing a product of infringing an independent claim does not explain how it allegedly infringes a dependent claim, which adds limitations and necessary evidentiary

27

support for that limitation.  Broadcom had a responsibility to map the accused products to each limitation, and its argument that it charted these products against *other* claims only highlights that it failed to do so for the *now accused* claims and products identified in the table above, and that it has no valid reason for not charting them sooner.  Its failure to do so, just two months ago, prejudices Emulex and the third parties who provide the accused technology.

The time for raising new infringement theories is long past.  Because this disclosure of newly accused products is untimely and improper, and because it prejudices Emulex, these new infringement theories  should be stricken.

### B. Broadcom's Response

Emulex's motion to strike "newly accused products" should be denied as Broadcom is not accusing any new Emulex products of infringement.  Emulex's motion should be denied for two main reasons:

***First***, as to the products that Emulex contends are "newly accused" (i.e., BE3, Zephyr, and Lancer), the claims referenced in Emulex's motion are ***dependent*** claims (or, in the case of '057 patent claims 81 and 84, ***related*** claims) that Emulex fully knows to have been both timely asserted by Broadcom in this case, as well as charted against Emulex's products accused of infringement.

***Second***, as to Emulex's resulting claim of prejudice, Emulex has not suffered any prejudice because the asserted claims and accused products at issue have been timely disclosed.

### 1. The BE3, Zephyr, and Lancer Are Not "New Products"

The asserted claims and accused products for which Emulex now complains are certainly not "new," and Emulex's own table above confirms this.  To the contrary, these are the exact same products that Emulex tried to exclude as "newly charted products" in its renewed motion to strike Broadcom's infringement contentions, which the Court denied on June 30, 2010.  (*See* Dkt. No. 167.)   In fact, Emulex has been on notice of Broadcom's specific infringement contentions for

these asserted claims and accused products for  months.  Broadcom provided detailed charts for the independent and dependent claims (i.e., '057 patent claims 37 and 42; '194 patent claim 1), from which the claims at issue depend, or relate (i.e., '057 patent claims 81 and 84), provide Emulex with more than adequate notice of Broadcom's infringement contentions for the dependent and related claims for which Emulex now contends are "new."  These are simply *not* new claims, and these are *not* products.

As discussed above, contrary to Emulex's assertions, claim 4 of the '194 patent has been a part of this case since at least April 2, 2010, and Broadcom has accused the Zephyr of infringing claim 4 since at least that same date.  Broadcom provided detailed infringement claim charts of Emulex's infringement of claim 1 of the '194 patent, the claim from which claim 4 depends.  (*See* Ex. N, Broadcom's July 30, 2010 First Amended Disclosure of Asserted Claims and Infringement Contentions ("Broadcom's July 30, 2010 PIC"), Exhibit G; Ex. G, Broadcom's February 4, 2011 Final Disclosure of Asserted Claims and Infringement Contentions ("Broadcom's February 4, 2011 PIC"), Exhibits G.))  Similarly, with respect to the '057 patent, the BE3, Zephyr, and Lancer have been accused products since at least July 30, 2011, and Broadcom provided detailed infringement claim charts for the independent and dependent claims—claims 37 and 42 of the '057 patent—from which claim 43 (for the BE3, Zephyr, and Lancer) and for claim 44 (for the BE3 and Zephyr) both depend.  (*See* Broadcom's July 30, 2010 PIC, Exhibits H and S; Broadcom's February 4, 2011 PIC Exhibits H, S, and S (IV).)  The same is true for claims 81 and 84 of the '057 patent, both of which relate to claims 37 and 42.  Dr. Fair's opinions on the timely asserted dependent and related claims have not strayed from Broadcom's duly charted independent (and dependent) claims for the timely accused products at issue.  Notably, Emulex has not pointed out any specific new or different theories of infringement for any of these claims.

/ / /

29

Broadcom's detailed infringement claim charts from July 30, 2010 and February 2, 2011 have provided Emulex with more than sufficient notice of Broadcom's infringement contentions with respect to those particular asserted claims for those particular accused products. *See Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co., Ltd.*, 2006 WL 5097360, at *1 (C.D. Cal. Jun. 5, 2006) (observing that infringement contentions per Patent Local Rules must contain sufficient detail regarding the plaintiff's theory of infringement to provide defendants' with notice of infringement") (internal quotation marks and citations omitted). Contrary to Emulex's assertions, Broadcom is not required to "produce evidence of infringement or to set forth ironclad and irrefutable claim constructions" or "to provide [evidentiary] support for its contentions." *Id.* (internal quotation marks and citations omitted); (*see also* Dkt. No. 167). Emulex has had more than sufficient notice of—and details setting forth—Broadcom's asserted claims, accused products, and theory of infringement.

### 2.  Emulex Has Not Suffered Any Prejudice

Emulex has not suffered any prejudice because ***these are not new contentions***. The claims at issue for the products Emulex asserts as "new" are not new at all, as the claims are simply dependent claims (or, in the case of claims 81 and 84 for the '057 patent, related claims) that Emulex knew Broadcom to be asserting from the last two iterations of its infringement contentions (*see* Broadcom's April 2, 2010 PIC; Broadcom's July 30, 2010 PIC; Broadcom's February 4, 2011 PIC), and that Broadcom charted against products that Emulex knew were accused (*see* Broadcom's July 30, 2010 PIC, Exhibits H and S; Broadcom's February 4, 2011 PIC Exhibits H, S, and S (IV)). Broadcom's theories of infringement for the BE3, Zephyr, and Lancer—which were timely disclosed in its infringement contentions for pertinent independent and dependent claims—are the same for the dependent and related claims at issue.

/ / /

Case No. CV 09-1058-JVS (ANx)

Moreover, Emulex's own expert concedes the acute relatedness of many of the claims at issue.  For example, Dr. Wooley's invalidity report does not contain a separate analysis for certain elements of claim 5 of the '124 patent.  Instead, he simply refers back to his analysis for claim 1 of the '194 patent.  (*See* Ex., O, Expert Report of Dr. Bruce Wooley on Invalidity of U.S. Patent Nos. 6,424,194, 7,486,124, and 7,724,057 ("Wooley Invalidity Report") at 26-27.)  In one of his claim charts for the '057 patent, Dr. Wooley does not provide a separate analysis for claims 43 and 44, referring the reader instead to his analysis for claim 59B.  (*See* Ex. O, Wooley Invalidity Report, Exhibit A-1 at 9-10.)  Similarly for another of his '057 patent opinions, Dr. Wooley relies on his analysis for claim 37 in his claim chart for claim 81, and he relies on his analysis for claims 82 and 59B in his claim chart for claim 84.  (*See id.*, Exhibit A-1 at 17, 21.)  In yet another opinion, he relies on his analysis for claim 42A in his claim chart for claim 64.  (*See id.*, Exhibit A-3 at 15.)  These examples provide additional support to show that Emulex's own expert appreciates the fundamental similarities and overlap between the claims at issue, and further illustrate that Emulex has not suffered any prejudice.

Lastly, since the time Broadcom accused the Emulex products at issue of infringing the Broadcom patent claims at issue, including Broadcom's provision of detailed claim charts outlining the infringing circuitry, the precise circuit structures of the accused products themselves have not changed during discovery.  Because Emulex has not identified a single change in Broadcom's infringement theory, there is simply no prejudice to Emulex or the third parties who provide the accused technology, as these parties already have intimate familiarity with the circuit structures of the accused products.  As described above, Broadcom has provided detailed infringement contentions to Emulex, including comprehensive claim charts, which set forth the details of Broadcom's infringement theories for those claims and products, and certainly put Emulex on notice of Broadcom's infringement theories.  To the extent that there are any discrepancies between or among the charted

31

circuitry, Emulex has not suffered *any* prejudice because Emulex will be able to question Dr. Fair on any purported differences during expert discovery.  Even if Emulex's claim of prejudice had merit—which it does not—any perceived prejudice suffered by Emulex can be alleviated through expert discovery.  Thus, Emulex's motion to strike is not only without merit, but grossly premature.

For the foregoing reasons, Emulex's motion to strike should be denied.

## V.   EXHIBITS

Attached hereto are true and accurate copies of the following documents:

*Exhibit A*—Section V of the Expert Report of Gary Warden (April 19, 2011)

*Exhibit B*— Emulex's Preliminary Claim Constructions and Extrinsic Evidence (June 18, 2010)

*Exhibit C*— Emulex's First Amended Preliminary Claim Constructions and Extrinsic Evidence (September 10, 2010)

*Exhibit D*—Expert Report of Nancy Zhang (April 19, 2011)

*Exhibit E*—Pages 23-24 and Exhibit F of the Expert Report of Richard Fair, Ph.D. (April 19, 2011) – **FILED UNDER SEAL**

*Exhibit F*—Page 27 of the Expert Report of Vladimir Stojanovic, Ph.D. (April 19, 2011)

*Exhibit G*—Exhibits A, G, K, O(I), and R of Broadcom Corporation's Final Disclosure of Asserted Claims and Infringement Contentions (February 4, 2011) – **FILED UNDER SEAL**

*Exhibit H*—Broadcom Corporation's Second Supplemental Rule 26(a)(1) Initial Disclosures (February 22, 2011)

*Exhibit I*—IEEE P802.1Qaz/D2.0, Virtual Bridged Local Area Networks – Amendment XX: Enhanced Transmission Selection for Bandwidth Sharing Between Traffic Classes

*Exhibit J*—IEEE P802.1Qbb/D2.2, Virtual Bridged Local Area Networks – Amendment: Priority-based Flow Control

1    *Exhibit K*—Pages 7-8, 26, and 31-33 of the Expert Report of Paul S. Min,

2    Ph.D. (April 19, 2011)

3    *Exhibit L*—IEEE 802.1Q, IEEE Standard for Local and Metropolitan Area

4    Networks, Virtual Bridged Local Area Networks

5    *Exhibit M*—Datasheet for BladeEngine 2 BCM_EMX 03851846-47

6    *Exhibit N*—Exhibits G, K, and R to Broadcom's First Amended Disclosure of

7    Asserted Claims and Infringement Contentions (July 30, 2010) – **FILED UNDER**

8    **SEAL**

9    *Exhibit O*—Pages 25 through 26 and Exhibits A-1 and A-3 of the Expert

10   Report of Dr. Bruce Wooley (April 19, 2011)

11   *Exhibit P*—Broadcom Corporation's Disclosure of Experts on Topics Other

12   Than Claim Construction

13   *Exhibit Q*—Plaintiff Broadcom Corporation's Preliminary Claim

14   Constructions and Intrinsic Evidence Pursuant to N.D. Cal. Patent L.R. 4-2.

15   Dated:  April 29, 2011                    WILMER CUTLER PICKERING
16                                            HALE AND DORR LLP

17

18                                            By: */s/ Louise W. Tompros*
19                                                Louis W. Tompros

20                                            Attorneys for Plaintiff
21                                            BROADCOM CORPORATION

22   Dated:  April 29, 2011                    FISH & RICHARDSON P.C.

23

24                                            By: */s/ Jonathan J. Lamberson*
25                                                Jonathan J. Lamberson

26                                            Attorneys for Defendant
27                                            EMULEX CORPORATION

28

                                    33

## DECLARATION OF CONSENT

I, Jonathan J. Lamberson, hereby attest:

1.       Concurrence in the filing of the following document has been obtained from each of the other signatories, which shall serve in lieu of their signatures on the document:

### JOINT STIPULATION TO EXPEDITE CONSIDERATION OF MOTIONS TO STRIKE EXPERT REPORTS, OR PORTIONS THEREOF

2.       I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party until one year after final resolution of the action pursuant to General Order 10-07 of the United States District Court for the Central District of California.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed in Redwood City, California on April 29, 2011.

FISH & RICHARDSON P.C.


By: */s/ Jonathan J. Lamberson*
       Jonathan J. Lamberson

Attorneys for Defendant
EMULEX CORPORATION

*Additional Counsel:*

DAVID M. BARKAN (SBN 160825)
(barkan@fr.com)
JONATHAN J. LAMBERSON (SBN 239107)
(lamberson@fr.com)
FISH & RICHARDSON P.C.
505 Arguello Street, Suite 500
Redwood City, CA 94063-1526
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

50777091.doc

34

Case No. CV 09-1058-JVS (ANx)