# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION. <br><br> Plaintiff, <br><br> v. <br><br> EMULEX CORPORATION, <br><br> Defendant. <br><br> And Related Counterclaims | Case No. SACV 09-1058-JVS (ANx) consolidated with 10-CV-3963 JVS (ANx) <br><br> **Honorable James V. Selna** <br><br> **CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER** |

EXPERT REPORT OF GARY WARDEN ON THE

INVALIDITY OF THE GADZOOX PATENTS

Dated: April 19, 2011

*Gary Warden*

Gary Warden

1

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

        (C) the application for patent for the claimed invention discloses or is amended to disclose the names of the parties to the joint research agreement.

## IV.E.    The Presumption of Validity

146.  I understand that the current burden of proof for patent invalidity is "clear and convincing evidence," and that is the standard I have applied in my analysis. I further understand that the Supreme Court is currently considering whether to change the standard for proving patent invalidity, and that the standard may be lowered to a "preponderance of the evidence" in certain situations. Accordingly, I reserve the right to supplement my report in the event that the standards I have applied are changed by the Supreme Court.

## V.    APPLICABLE CLAIM INTERPRETATIONS

147.  For the purposes of the invalidity analysis herein, I will apply Broadcom's broad view of the claims as set forth in its Final Infringement Contentions dated February 4, 2011[215] and Preliminary Claim Constructions under Local Rule 4-2. I specifically note that I disagree with Broadcom's view of the claims for at least the reasons set forth in the sections below. I reserve the right to

---

[215]  Broadcom Corporation's Final Disclosure of Asserted Claims and Infringement Contentions, served on February 4, 2011 (hereinafter "Final Infringement Contentions").

supplement my report to the extent that Broadcom revises those contentions or provides expert opinion narrowing Broadcom's view on the claims.

**V.A.      Broadcom's Proposed Constructions (P.R. 4-2 Document)**

148.   The table below reproduces Broadcom's proposed constructions for certain terms of the Gadzoox Patents.

149.   Table 1. Broadcom's Proposed Constructions for the '500 Patent:[216]

| Claim Term | Broadcom's Proposed Construction |
|---|---|
| Backplane Data Path | A wire or other conductor to which one of the integrated circuits connects. |
| Port Integrated Circuit | A chip containing one or more port circuits |
| Port Circuit | Circuitry that provides an external interface to a device |
| Crossbar Switch | A device that is capable of channeling data between any of multiple inputs and any of multiple outputs |
| Priority Level | This phrase does not require construction and should be given its plain and ordinary meaning |

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

150.   Table 2. Broadcom's Proposed Constructions for the '691 Patent:[217]

| Claim Term | Broadcom's Proposed Construction |
|---|---|
| Crossbar Switch | A device that is capable of channeling data between any of multiple inputs and multiple outputs |
| Protocol Bus | A communication path for exchanging port status information |
| Port | An external interface to a device |
| Port Circuit | Circuitry that provides an external interface to a device |
| Scoreboard Table | An organization of port circuit status data |
| Routing Table | An organization of routing information |
| Arbitrate/arbitrating | This phrase does not require construction and should be given its plain and ordinary meaning |
| Channel | Data path |

[216]   Ex. D to 2010-9-10 Plaintiff Broadcom Corporation's Preliminary Claim Constructions and Intrinsic and Extrinsic Evidence Pursuant to N.D. Cal. Patent L.R. 4-2.

[217]   Ex. C to 2010-9-10 Plaintiff Broadcom Corporation's Preliminary Claim Constructions and Intrinsic and Extrinsic Evidence Pursuant to N.D. Cal. Patent L.R. 4-2.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

## V.B.    Broadcom's Infringement Contentions

151.    Broadcom's Final Infringement Contentions evidence Broadcom's (erroneously) broad view of the claims asserted in this lawsuit.  The manner in which Broadcom appears to read the asserted claims onto the accused Emulex products (including Emulex's FC-PH compliant fabric switches) rely on broad claim interpretations, which are inconsistent with how the claims should be construed according to the legal principles of which I have been made aware (such as ignoring express claim language and contradicting the specification).

152.    For example, Broadcom's Final Infringement Contentions for the '691 Patent ("'691 Contentions")[218] accuse of infringement Emulex's FibreSpy products, including the SOC 804, Model 850, and Model 870 (collectively "FibreSpy Products").[219]  Broadcom's '691 Contentions assert that the FibreSpy Products "establish connections between themselves by using destination addresses in Open (OPN) primitives."[220]  Broadcom supports this assertion citing to a patent application that discloses a legacy FibreSpy product architecture stating that it is a "frame based switch" such that "[w]hen sending data between local ports the D_ID (destination

---

[218]    Broadcom's allegations under the '691 Patent as referred to in this section appear in Exhibit C to Broadcom's Final Infringement Contentions.

[219]    Ex. C to Final Infringement Contentions at 1, 202.

[220]    Ex. C to Final Infringement Contentions at 129, 327.

identifier) of a FC frame is used to 'route' the frames between ports.'"[221]  Likewise, additional evidence to which Broadcom cites states "[t]he first double word of a new frame contains the SOF and D_ID [destination ID] words.  The RS uses this information, which is visible without unloading the Rx FIFO, to generate a route request to the router."[222]  In sum, Broadcom's interpretation of establishing connections using destination addresses in OPN primitives includes using the destination address in a frame header—a feature that was part of the original FC-PH standard.  Broadcom has equated a circuit switch set up operation with packet switch routing (which is a deficiency I describe in more detail in my invalidity analysis below).

153.   Also, Broadcom's '691 Contentions assert that the FibreSpy Products "send primitives and data frames back and forth between said source and destination nodes until the transaction is completed without ever storing any data frames."[223]  In support of this assertion, Broadcom cites to an Emulex patent application, which states "[i]f the request is granted (i.e. the ports needed to make the connection are available within the SOC 400), the data is received at Port1, and the router 410 configures the switch core 406 such that the data is routed through a physical port

---

[221]   Ex. C to Final Infringement Contentions at 180–181, 239.

[222]   Ex. C to Final Infringement Contentions at 184.

[223]   Ex. C to Final Infringement Contentions at 392.

404 to transmit buffer bank 414 where it is stored in the appropriate virtual channel buffer."[224]   Likewise, Broadcom cites to FibreSpy documentation depicting the FibreSpy architecture which shows buffers where data frames are stored, and Broadcom cites additional documentation stating "The FPI streams the SOF word followed by the rest of the received frame to the Rx FIFO."[225]   In sum, essentially Broadcom's interpretation of "without storing frames" equates buffered to bufferless.

154.   Broadcom's Final Infringement Contentions for the '500 Patent ("'500 Contentions")[226] also accuse of infringement Emulex's FibreSpy Products.[227] Specifically, Broadcom's '500 Contentions allege that two or more cascaded SOC 804s, Emulex's Model 850, and Model 870 infringe the '500 Patent because these products "couple a plurality of Fibre Channel Arbitrated Loop (FCAL) nets" using the invented methods of the '500 Patent.[228]   The '500 Patent explicitly requires routing using OPN primitives.  For example, the '500 Patent describes that an "important attribute[] of <u>all</u> species" of the invention is "the use of the destination address in an FCAL OPN primitive . . . instead of a frame header of a frame of data to

---

[224]   Ex. C to Final Infringement Contentions at 439.

[225]   Ex. C to Final Infringement Contentions at 184.

[226]   Broadcom's allegations under the '500 Patent as referred to in this section appear in Exhibit D to Broadcom's Final Infringement Contentions.

[227]   Ex. D to Final Infringement Contentions at 1.  Moreover, I have been informed that counsel for Broadcom have refused to drop allegations against FibreSpy.

find the destination node and establish the connection through the switch."[229]

Broadcom supports its allegations, in part, by citing to a patent application which

discloses a legacy FibreSpy product architecture stating that it is a "frame based

switch" such that "[w]hen sending data between local ports the D_ID (destination

identifier) of a FC frame is used to 'route' the frames between ports."[230]  Also in

Broadcom's allegations against the FibreSpy products under the '500 Patent,

Broadcom cites to Emulex documentation stating that the products store data frames

in buffers during data transmission.[231]  In sum, Broadcom's interpretation of the '500

Patent includes routing using OPN Primitives; and as discussed above, Broadcom

interprets routing using OPN Primitives to include routing using destination

information in frame headers.

155.   My review of the evidence of record—including the evidence Broadcom

cites in its Final Infringement Contentions—confirms that the FibreSpy Products

route data frames using the destination address of a frame header, not that of an

FCAL OPN primitive.[232]

---

[228]   Ex. D to Final Infringement Contentions at 1.

[229]   '500 Patent at 5:48–53 (emphasis added).

[230]   Ex. D to Final Infringement Contentions at 104, 125.

[231]   Ex. D to Final Infringement Contentions at 103.

[232]   ELX-PAT-3122158; *see also* Deposition of Bruce Gregory Warren, Feb. 2,
2011, at 106:14–107:1, 199:4–22, 6:1–6; Deposition of Deposition of David Crespi,

156.   Also, the evidence of record—including the evidence Broadcom cites in its Final Infringement Contentions—confirms that the FibreSpy Products use buffer memory to store entire data frames during data transmission.[233]

157.   The Gadzoox Patents disclose that an attribute present in all species of each invention is "the use of the destination address in an FCAL OPN primitive . . . instead of a frame header of a frame of data to find the destination node and establish the connection through the switch."[234]

158.   The Gadzoox Patents also disclose that another attribute present in all species of each invention is "using the normal flow control primitives of the FCAL protocol for hold back purposes to eliminate the need for large buffer memories in the switch and so as to implement a switching protocol to stream complete data frames from source to destination without storing any data frames in the switch, and without any packetizing, and without any segmentation and reassembly processing, and without any error recovery protocols to retransmit dropped frames."[235] And the title

---

March 30, 2011, at 23:15–24:24, 26:9–24; Deposition of Thomas Ambrose, March 30, 2011, 143:4–6, 149:1–4.

[233]   *See* ELX-PAT-03122158; *see also* Deposition of Bruce Gregory Warren, Feb. 2, 2011, at 100:5–7; Deposition of David Crespi, March 30, 2011, 53:7–19, 100:14–101:2; Deposition of Thomas Ambrose , March 30, 2011, 154:1–14.

[234]   '500 Patent at 5:48–53; '691 Patent at 5:48–53.

[235]   '500 Patent at 5:53–61; '691 Patent at 5:53–61.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

of the Gadzoox Patents reflects that the invention was directed to a "bufferless" switch.[236]

159.   Broadcom's '500 Contentions accuse cascaded switches as infringing the '500 Patent's recitation of "a portion of a crossbar switch."  I disagree that a portion of a crossbar switch ("crossbar switch slice")[237] integrated on a port integrated circuit is the same thing as two or more full crossbar switches linked together by two I/O ports.  If the solution is to increase the number of switch ports by expanding the switching core then you have made a larger switch.  On the other hand, if you connect two switches together by means of their switch ports then you have networked two switches.  And it is a characteristic of networked switches that each switch makes autonomous routing decisions at the ingress port, involving a new inspection of the destination address.  Contrast to the distributed crossbar, where the routing decision is made only once, inclusive of the path between the distributed stages.  Broadcom's '500 Patent states that the architecture of the switch disclosed in the patents consisted of "various portions of the distributed crossbar switch on different chips, when coupled together, formed one complete crossbar switch."[238]  This quotation provides language clearly indicating that a larger switch can been built by expanding the

---

[236]   The title of both the Gadzoox Patents is "Fibre channel Arbitrated Loop bufferless switch circuitry to increase bandwidth without significant increase in cost."

[237]   '500 Patent at 17:47.

[238]   '500 Patent at 15:64–66.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

switch core.  Also, during prosecution of the '500 Patent, the Applicant distinguished a prior art reference stating the prior art disclosed a port connected to a crossbar switch not a port that was part of the crossbar switch.[239]  In their infringement contentions, however, Broadcom accuses cascaded switches.  As such, it seems that Broadcom is broadening the scope of the claims to include full crossbar switches networked together, which is in the prior art.  Essentially, Broadcom alleges this limitation is met everywhere there are discrete switching elements linked or networked together, which would include backbone local area and wide area distributed networks found in the prior art.

160.   A review of the operation of Emulex's FibreSpy products and the manner in which Broadcom accuses these products in Broadcom's Final Infringement Contentions indicates Broadcom has adopted a broad view of the scope of the asserted claims.  Although Broadcom's apparent claim scope is inconsistent with the correct claim scope that would be applied by a person of ordinary skill in the art using the aforementioned legal standards, I will adopt Broadcom's apparent claim scope for purposes of this invalidity analysis.

### V.C.   Interpretations for Claim Terms of the '500 Patent

161.   In this section, I provide my construction for certain terms of the '500 Patent.  Again, though I disagree with certain of Broadcom's proposed constructions

_____

[239]   '500 Patent File History, October 2, 2007 Response at 8–9.

listed above and offer my own constructions in this section, I will defer to

Broadcom's constructions (and infringement allegations) for the purposes of this

report.

### V.C.1.  Backplane Data Path

162.   For this term, as used in the claims of the '500 Patent, I propose the

following construction:

*a trace etched into a circuit board.*

163.   A backplane is a circuit board, which is usually a printed circuit board

(PCB).[240]  It may be an internal application specific integrated circuit (ASIC) design,

which provides for several devices or connectors for devices (or other PCBs) to be

connected in parallel to each other.  A backplane data path is going to be the actual

traces etched into the board along with the connecting pads to allow several parallel

connections to be made for access to the data path.  The '500 Patent also states, "A

point-to-point backplane data path 130 comprised of a plurality of channels through

the distributed crossbar switch carries data from port to port."[241]  The '500 Patent also

defined backplane data path in terms of its function as a carrier of conversations

between switch ports.

---

[240]   *See* '500 Patent at 17:30–34 (describing, in the patent, that the data paths are etched into the PCB); *see also* Deposition of Kurt Chan, 148:20–24.

164.   In contrast, Broadcom's construction is overly simplified allowing it to be used across a broader range of instantiations that would not be supported in the industry.  Namely, Broadcom's construction would allow all cables and wires to be construed as a backplane data path including every connecting wire/conductor between every IC whether it was on a PCB or not.  There is no mention, in Broadcom's definition, of a PCB or ASIC design, whereas in the industry "backplane data path" generally relates to a databus on a PCB, which supports the definition provided by the '500 Patent specification.  For example, the patent also provides the following description of the backplane data path: "The function of the backplane data path 130 combined with the crossbar switch is to carry multiple conversations of data between ports simultaneously."[242]

165.   Further, the '500 Patent identifies the backplane data path and the cable links separately using reference number 130 for the datapath ("A point-to-point backplane data path 130 comprised of a plurality of channels through the distributed crossbar switch carries data from port to port"[243]) and reference numbers 114, 116, and 118 for the cabled Fibre Channel  links ("Each learning half bridge has a port having an input and an output for coupling to separate input and output wires or

---

[241]   '500 Patent at 16:26–30.

[242]   '500 Patent at 16:35–38.

[243]   '500 Patent at 16:26–29.

fibers of the Fibre Channel link.  The Fibre Channel link of each port can be coupled to an individual NL port such as block 108 or an FCAL net such as is represented by NL ports 110 and 112 and links 114, 116 and 118."[244]

166.   In short, my proposed construction is consistent with the patent (and supported by extrinsic evidence, like named inventor testimony) because the etched conductors on the PCB can be directed to the integrated circuits carrying the portion of the crossbar switch.

167.   In contrast, Broadcom's proposal[245] is inconsistent with the '500 Patent and inconsistent with how one of ordinary skill in the art would interpret the term, as shown by named inventor testimony.

168.   For example, Broadcom's construction of backplane data paths would include external cables.  Backplanes, however, are quite different from cables because, for example, one would use backplanes instead of cables for reliability, cost, and physical size reasons.  When cables are used for connecting devices to a data bus they are never called "backplanes" because they do not reside on a circuit board or within an ASIC.  They may be called "bus expansion cables."  But here, it is my opinion that they are different because they are used for different purposes, using

---

[244]   '500 Patent at 14:8–14.

[245]   Broadcom proposed, "A wire or other conductor to which one of the integrated circuits connects."

different connections, to achieve different results as detailed in this report.  For example, the '500 Patent describes the claimed backplane data path as going "through the distributed crossbar switch,"[246] which is distinct from connecting two switches together via switch ports.

### V.C.2.   Port Integrated Circuit

169.   My construction of "port integrated circuit," as used in the claims of the '500 Patent, is as follows:

*a chip that contains a port circuit and a crossbar slice*

170.   This construction is consistent with both the actual claim language and the definitions provided in the specification.[247]  For example, the patent states, "Integration of the ports with a crossbar switch slice on the same chip allows switches to be built with as few as two switch chips or many more because the crossbar switch is scalable and because each chip can be coupled by its portion of the crossbar switch to any one of the plurality of separate backplane channels.  Prior art fabric switches had separate, nonscalable circuits for the crossbar switch."[248]

---

[246]  *E.g.*, '500 Patent at 16:27–28.

[247]  *See, e.g.*, '500 Patent at 11:16–19 ("FIG. 5 is a block diagram of the specific preferred 'switch slice' architecture of a switch to couple a plurality of FCAL nets to provide spatial reuse with multiple port circuits and a portion of the crossbar switch integrated on each switch chip.").  It is important to note that the phrase "port integrated circuit" does not appear in the specification.

[248]  '500 Patent at 17:47–53.

171.   In contrast, Broadcom's definition is too general.[249]  According to the express language of the claim, the port integrated circuit contains both a port circuit and a portion of a crossbar switch.  As described in more detail below, the port circuit is designed with 1) an internal interface at one end to a portion of a crossbar switch, which is itself designed to connect/switch to one of the fourteen backplane data paths, and 2) an external interface to a Fibre Channel Arbitrated Loop link at the other end.[250]  For instance, if port integrated circuits are connected together to form a larger FCAL switch; it makes a difference whether the connections between the port integrated circuits are made via the internal interfaces to the ports on the backplane databus or the external interfaces to the Fibre Channel Arbitrated Loop link.  The external interfaces via the Fibre Channel Arbitrated Loop link are how loop devices are connected to the switch; not how the switch is made larger to accommodate more switch ports and by virtue of more switch ports more Arbitrated loop devices.  Both Figure 4 and Figure 5 illustrate how the internal interfaces of the ports interface with the crosspoint switch and the external interfaces interface to Fibre Channel Arbitrated Loop devices.[251]

---

[249]   Broadcom proposed, "A chip containing one or more port circuits."

[250]   *See, e.g.*, '500 Patent at 14:19–21, 14:54–56, FIGS. 4–5.

[251]   '500 Patent FIGS. 4–5.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

172.   Moreover, the claim expressly requires that "a portion" of the crossbar be part of the integrated circuit.[252]  Further, according to the description, each integrated port circuit has a priority level for arbitrating access to busy destination nodes.[253]  Therefore, Broadcom's proposed constructions impermissibly broaden the scope of the patent beyond the actual language of the claim.

173.   In sum, Broadcom's apparent claim construction fails to consider the portion of the crossbar switch, which is explicitly in the claim, and the internal and external interfaces of the required port circuits.

*V.C.3.   Port Circuit*

174.   I do not disagree with Broadcom's definition of the term "port circuit," as used in the claims of the '500 Patent, which is as follows:

*circuitry that provides an external interface to a device*

175.   This construction is generally consistent with the plain meaning of the term "port circuit."  I note, however, that the '500 Patent includes specific implementation details that it says are necessary to the operability of the claimed invention.  First, Claim 3 of the '500 Patent describes a port circuit that has an

---

[252]   '500 Patent at Cl. 3.

[253]   '500 Patent at 17:20–22.

interface to an FCAL network and to a portion of a crossbar switch.[254]  Moreover, the

port circuit of Claim 3 implicitly includes a connection to the protocol bus.  For

example, the detailed description states, "When the destination port becomes

available, a message is sent back on the protocol bus indicating that the destination

port is now available and naming the backplane channel to use."[255]

176.   A port circuit, a port, and a learning half-bridge, according to the patent,

are the same term.[256]  The patent teaches that on one side, the port interfaces with the

Fibre Channel link running the Fibre Channel Arbitrated Loop Protocol and on the

other side it interfaces to a switch construct, which gives the port access to one of the

fourteen channels in the backplane data path.[257]  The external interface to which

Broadcom is referring in their construction of the term would be the Fibre Channel

Arbitrated Loop link.  This can be assumed because it is Fibre Channel Arbitrated

Loop devices that are being connected together via the switch ports.[258]  Therefore the

port interface to the portion of the crossbar switch is the internal interface to the port.

---

[254]   '500 Patent at Cl. 3.

[255]   '500 Patent at 6:46–49, 45:49–52.

[256]   *See, e.g.*, '500 Patent at 14:19–21.

[257]   *See, e.g.*, '500 Patent at 14:19–21, 14:54–56, FIG. 4–5.

[258]   *See, e.g.*, '500 Patent at Figs. 4 and 5.

113

This is also illustrated in both Figure 4 and Figure 5 of the patent where the switch ports are connected via the crosspoint switch structures.[259]

177.   The patent states that "FIG. 5 is a block diagram of the specific preferred 'switch slice' architecture of a switch to couple a plurality of FCAL nets to provide spatial reuse with multiple port circuits and a portion of the crossbar switch integrated on each switch chip."[260]  The multiple port circuits of Figure 5 are labeled in Figure 5 as "HALF BR. PORT."[261]  BR is an abbreviation for bridge.  So the block referred to as a port circuit is a Half Bridge Port.  This is further confirmed in the '500 Patent specification, which states, "[e]ach learning half bridge in the switch can have a similar front end structure and mode of operation as that described in the parent application Ser. No. 08/786,891, filed Jan. 23, 1997 which is incorporated by reference herein, but preferably has the structure described in FIG. 7.  The 'front end' structure refers to the circuitry that is coupled to the port and any Fibre Channel link connected thereto.  Each learning bridge port circuit (hereafter sometimes referred to as a port) is coupled to a 50 Mhz 24 bit protocol bus 121. Link 123 represents this connection between port 106 and the protocol bus."[262]  Apparently the learning bridge

---

[259]  *See, e.g.*, '500 Patent at Figs. 4 and 5.

[260]  '500 Patent at 11:16.

[261]  '500 Patent at 11:16–19.

[262]  '500 Patent at 14:15–25.

114

ports may be referred to as either a "port" or a "port circuit."  Finally, the

specification states, "[i]n the alternative embodiment of FIG. 4, the scoreboard 125

and routing table 127 are shown as central shared circuits, but in the preferred

embodiment of FIG. 5, every port circuit 124, 126, and 128 has its own copy of the

scoreboard table and a routing table."[263]  The elements labeled 124, 125, and 126 in

Figure 5 are once again the Half Br. Ports.  So, according to the '500 Patent, port

circuits and ports can also be called half bridge ports.


*V.C.4.   Crossbar Switch*

178.   My construction of this term, as used in the asserted claims of the

Gadzoox Patents, is as follows:


*a switch that makes an internal data path from an input to an output while allowing concurrent and simultaneous conversations for all input-output pairs connected to the switch*

179.   A crossbar switch connects multiple inputs to multiple outputs in a

matrix fashion.  If there are M inputs and N outputs then there are M times N

switches in the matrix.  Any given crossbar switch is said to be a single-stage

crossbar or matrix switch and is implicitly non-blocking.  Put differently, a crossbar

must be capable of connecting a free input to a free output, regardless of the

connections already established across the network.  Non-blocking means that

regardless of the current configuration or state of connected ports in the crossbar

---

[263]   '500 Patent at 14:36–40.

switch any given idle input port may be connected to any given idle output port

without encumbrance or restriction due to resource contention internal to the switch.

For example, the specification states,

> The crossbar switch serves to make a data path through the appropriate switch control circuit to the input and output of one FCAL having the source node thereon to the output and input, respectively of another FCAL having the destination node thereon through the appropriate switch control circuit so as to provide a channel through which the conversation between the source node and the destination node may proceed. The crossbar switch ***must be able to simultaneously connect*** the input and output of another FCAL having another source node thereon to the output and input, respectively of yet another FCAL having another destination node thereon to provide a data path or channel for a second concurrent conversation."[264]

180.   In addition, the patent contrasts itself from the prior art by distinguishing

itself from blocking architectures.  For example, the patent states, "FCAL networks

suffer the disadvantage that the number of concurrent interconnections possible is

smaller than in switched fabric networks because FCAL networks are fully blocking

topologies such that only two pairs of nodes on the loop can communicate at any

particular time."[265]

181.   The '500 Patent does not explicitly define the term "crossbar switch."

However, the '500 Patent provides express requirements and applies the common

understanding of a single-stage crossbar switch being able to connect ("couple")

---

[264]   '500 Patent at 13:38–50 (emphasis added).

[265]   '500 Patent at 3:33–38.

switch port-pairs ("ports") together for the purpose of having non-blocking connections ("any number of separate data transfer channels").[266]  For example, the patent states that "a crossbar switch which couples the ports together and which can implement any number of separate data transfer channels under control of the ports."[267]

182.   The '500 Patent further enforces the perception that its crossbar switch is of like nature to the common industry understanding of what a crossbar switch is.  It does this by reiterating the common crossbar switch performance feature of allowing multiple independent and simultaneous non-interfering connections.  For example, the '500 Patent states, "The crossbar switch implements a plurality of completely separate data paths through the switch each of which can couple two port together.  The provision of multiple separate data paths through the crossbar switch eliminates any bottleneck which could occur if a multiplexed data bus were to be substituted for the crossbar switch."[268]

183.   The patent states that, "The switch architecture can be thought of as a multi-port switch with a stack of learning half bridges substituted for each FL_port of a prior art fabric switch, with each half bridge on each layer being coupled to its own

---

[266]   '500 Patent at 7:25–29.

[267]   '500 Patent at 7:27–29.

local FCAL loop or single NL node. The other side of each half bridge is connected to the high speed crossbar switch in the preferred embodiment so that it can be connected to the other half bridges. The crossbar switch can be thought of as a stack of separate layers of separate high speed backplane data paths connecting all the half bridges together by way of a switching network between the high speed backplane data path layers.  The switching network functions to establish selective connections between layers and can be controlled such that any bridge on any layer can talk to any other bridge on any other layer.  This allows multiple concurrent connections across the switch between a plurality of pairs of source nodes on one loop and a plurality of pairs of destination nodes on other loops or source and destination nodes coupled individually to half bridges.  The switch architecture allows simultaneous purely local loop tenancies on any FCAL net coupled to any particular half bridge so long as another node on the FCAL net is not involved in a loop tenancy which involves communication across the switch from one port on one FCAL net to another port on another FCAL net."[269]

184.   The '500 Patent alternatively discusses the concept of a distributed crossbar switch as well as a centrally located crossbar switch.  "Distinctions between species within the subclass are based upon: . . . whether the crossbar switch is central

---

[268]    '500 Patent at 9:26–34.

[269]    '500 Patent at 9:51–10:7.

118

or distributed; . . ."[270]  Specifically, the '500 Patent has two figures, Figure 4 and Figure 5, that illustrate to different types of crossbar switches.[271]  The crossbar switch of Figure 4 is a centrally located, single-stage crossbar switch that is non-blocking as illustrated.  The "preferred" crossbar switch of Figure 5 is a distributed multi-stage switch.[272]

185.    Claim 3 of the '500 Patent only references the distributed crossbar switch.  It is my opinion that it does not claim the centrally located crossbar switch. This is made clear in the language of the claims, as explained below:

A method for coupling a plurality of Fibre Channel Arbitrated Loop (FCAL) nets, comprising:

providing a plurality of separate backplane data paths;

coupling a plurality of port integrated circuits by said separate backplane data paths, *each integrated circuit having integrated thereon a port circuit and a **portion** of a crossbar switch*; and

coupling FCAL net interface to at least one FCAL net, and the portion of the crossbar switch, wherein each of said plurality of port integrated circuits has a priority level for access to busy destination nodes.

186.    Put simply, the required "portion" of a crossbar switch indicates the distributed nature of the switch in the claims.  Every recitation by the patent of the

---

[270]    '500 Patent at 7:49–55.

[271]    '500 Patent at FIGS. 4–5.

[272]    '500 Patent at 16:18–38.

words "portion of the crossbar switch" or "portion of a crossbar switch" outside of the claims is listed below and every occurrence is in reference to Figure 5 of the '500 Patent:

a. "FIG. 5 illustrates the actual architecture of the preferred species of the separate channels backplane subclass of switches.  Each block 124, 126, and 128 represents an integrated switch chip having a plurality of ports (learning half bridges) and a portion of the crossbar switch thereon."[273]

b. "Integration of the ports with a crossbar switch slice on the same chip allows switches to be built with as few as two switch chips or many more because the crossbar switch is scalable and because each chip can be coupled by its portion of the crossbar switch to any one of the plurality of separate backplane channels."[274]

c. "In contrast, in the invention, because of the full integration of all necessary circuitry onto one chip including a portion of the crossbar switch, the crossbar switch is scalable, and all sizes of switches are easily constructed and quite affordable because of the inexpensive, fully

---

[273]   '500 Patent at 6:18–23.

[274]   '500 Patent at 17:47–52 (discussing FIG. 5).

integrated construction with no buffer memory and no complicated error recovery protocols."[275]

d.  "FIG. 5 is a block diagram of the specific preferred "switch slice" architecture of a switch to couple a plurality of FCAL nets to provide spatial reuse with multiple port circuits and a portion of the crossbar switch integrated on each switch chip."[276]

187.   Claim 3 of the '500 Patent expressly contains the phrases "portion of a crossbar switch" and "portion of the crossbar switch" and no other description for a crossbar switch is given in the claims.  As such, the claims must be referring to a distributed crossbar switch like the "preferred" embodiment of Figure 5 of the '500 Patent and not to any other form of a crossbar switch such as that represented by Figure 4 of the '500 Patent in the alternative embodiment.  Also, even though the Detailed Description of the Preferred and Alternative Embodiments section says that the crossbar switch may be substituted by a TDMA (Time Division Multiple Access) bus,[277] Claim 3 expressly requires the individual "portions" of the distributed crossbar switch of Figure 5 instead of another switching structure.

---

[275]   '500 Patent at 17:57–63 (discussing FIG. 5).

[276]   '500 Patent at 11:16–19.

[277]   '500 Patent at 13:59–67.

188.   Conversely, Broadcom's definition is too broad.[278]   The Broadcom construction does not differentiate between a blocking or non-blocking switch, a centrally located or distributed switch, a single-stage or multi-stage switch.  All of these distinctions were either made or alluded to in the '500 Patent.  In fact, the Broadcom construction does not have to be a switch at all; it could be a TDMA bus or any databus.  As shown in the patent, the term has definitive meaning in the context of the claims of the patent.  In the context of the claims of the patent, a crossbar switch is a distributed multi-stage crossbar switch.  As such, the claimed "portion of a crossbar switch" is distinct from a "complete" centrally located, non-blocking switch.

### V.C.5.   *Each of said plurality of port integrated circuits has a priority level for access to busy destination nodes*

189.   My construction for this term is as follows:

*every chip that has a port circuit and crossbar switch slice integrated thereon is assigned a priority level to wait in line at a busy destination port*[279]

---

[278]   Broadcom proposed, "A device that is capable of channeling data between any of multiple inputs and any of multiple outputs."

[279]   I understand that Emulex previously proposed a preliminary construction for "priority level", in isolation, to mean "access level assigned to each port by management software that is used in arbitration."  Emulex's previously-proposed construction is consistent with the '500 Patent, but the term "priority level" can be understood when interpreted as a part of the larger phrase "each of said plurality of port integrated circuits has a priority level for access to busy destination nodes."

190.   This definition finds support from the claims, the specification, and the prosecution history.  First, the claim states that there is a priority level associated with each port integrated circuit for accessing busy destination nodes.[280]  The priority level corresponds to connection requests made by a port or ports on the integrated circuit.[281]  The specification provides for two possible implementation techniques for raising the priority level from "none" to "low" or "high."[282]  Regardless of the implemented technique, the result of raising a port's connect request from none to low or high is that the connect request is permitted to "camp" on to the busy destination node.[283]  By "camp," the specification means that the request "waits on a busy destination port until that port becomes available."[284]  When a priority level is raised from none to low or high, it is said to have been prioritized.  A connect request with a priority level of "none" sent to a busy destination node is rejected.[285]

191.   The prosecution history supports my interpretation of this claim limitation.  During prosecution, this limitation was added to overcome prior art, which taught that the node was allowed to send a connect request because of its

---

[280]   '500 Patent at Claim 3.

[281]   '500 Patent at 7:39–48, 17:20–23, 37:17–22.

[282]   '500 Patent at 37:17–53, 38;18–20.

[283]   '500 Patent at 38:13–28.

[284]   '500 Patent at 38:13–14.

priority over another, competing node.[286]  Broadcom distinguished the prior art reference by amending the claims to include the above claim language.[287]  In addition, Broadcom argued that the prior art reference presented priorities "in terms of one input/output node having priority over another input/output port, whereas the claimed invention presents priority as corresponding to accessing a busy destination node."[288]

### V.D.    Interpretations of Claims of the '691 Patent

#### V.D.1.  Crossbar Switch

192.   I construed this term in connection with the '500 Patent above.

#### V.D.2.  Protocol Bus

193.   My construction for the term "protocol bus" is as follows:

*data channel by which the scoreboard tables for each port circuit are kept current and on which switch connection requests and responses are broadcast among port circuits.*

---

[285]   '500 Patent at 38:14–16.

[286]   Prosecution History of the '500 Patent, 2008-4-16 Response to Office Action at 3, 12.

[287]   Prosecution History of the '500 Patent, 2008-4-16 Response to Office Action at 3.

[288]   Prosecution History of the '500 Patent, 2008-4-16 Response to Office Action at 12.

194.   This construction is consistent with the claim language and is directly supported by the specification.  For example, the specification provides a definition for the protocol bus.  Specifically, the specification states, "The protocol bus is the medium by which the scoreboards for each switch chip are kept current.  It also serves to communicate switch connection requests and responses between switch ports."[289]  In addition, the '691 Patent states, "The protocol bus is an 18-bit wide data bus used for broadcasting connection requests and response messages to each switch chip in the switch."[290]  This citation supports my construction because the connection requests are broadcast among the port circuits as opposed to connection requests being communicated to and from only ports involved in a connection request.

195.   Furthermore, my construction for protocol bus is consistent with my interpretation of the distributed scoreboard/routing table, which I discuss in more detail below.  Touching on it briefly here, the specification states, "Each switch chip monitors the protocol bus and updates the status information in its copy of the scoreboard such that every port knows the busy/available status of every other port."[291]  In addition, the patent states, "In the preferred embodiment, each port maintains a synchronized local copy of the scoreboard table and the contents are

---

[289]   '691 Patent at 42:12–15.

[290]   '691 Patent at 34:39–41.

[291]   '691 Patent at 34:44–47.

written to the scoreboard by learning from messages posted on the protocol bus."[292] The distributed nature of the scoreboard table is discussed in more detail in sections below.

196.    A proper construction of the term—as opposed to what Broadcom proposes—should be inclusive of the "protocol bus definitions" provided explicitly by the patent.  First, the specification states that the protocol bus is a medium (or data channel) by which switch chips are kept current of the (busy) status of each port.  For example, the patent states, "The protocol bus is the medium by which the scoreboards for each switch chip are kept current."[293]  The protocol bus is also defined to communicate switch connection requests and responses between switch ports.[294]  This aspect of the protocol bus is used for circuit setup and teardown between ports—an aspect consistent with my overall interpretation that the claims are actually directed to a circuit switch operation, and not a packet switch operation as claimed.[295]  The protocol bus is also used as a medium to implement a protocol between switch ports

---

[292]   '691 Patent at 14:30–33.

[293]   '691 Patent at 42:12–15.

[294]   *See* '691 Patent at 42:12–15.

[295]   As discussed in subsequent sections, it is my opinion that the patent is invalid under 35 USC 112, ¶¶ 1 and 2 for lacking written description and for failure to particularly point out and distinctly claim the invention.

controlling the exchange of information that aids the switch ports in exchanging Fibre Channel Frames and Primitives over a backplane channel.[296]

### V.D.3.   Port Circuit

197.   I construed this term in connection with the '500 Patent above.

### V.D.4.   Circuitry in each said port circuit and coupled to said protocol bus for maintaining a scoreboard table

198.   My construction for this term is as follows:

*circuitry in each port circuit that stores and updates a local copy of the scoreboard table*[297]

199.   At the outset and without commenting on the accuracy of Broadcom's construction of scoreboard, it is my opinion that the term "scoreboard" must be construed in view of the whole claim and specific limitations in which the scoreboard appears.  Thus, my construction is for the phrase, "circuitry in each said port circuit and coupled to said protocol bus for maintaining a scoreboard table."  Specifically, Claims 7and 10 of the '691 Patent are directed to embodiments of the patent in which the scoreboard tables are "distributed"—which is to say that each port circuit stores

---

[296]   *See* '691 Patent at Abstract, FIG. 5.

[297]   I understand that Emulex previously proposed a preliminary construction for "scoreboard table", in isolation, to mean "lookup table that stores port status and privilege information." Emulex's previously-proposed construction is consistent with the '691 Patent, but the term "scoreboard table" can be understood when interpreted as a part of the larger phrase "circuitry in each said port circuit and coupled to said protocol bus for maintaining a scoreboard table."

and updates its own copy of a scoreboard table, which gets synchronized based on port status updates broadcast to the port circuits across the protocol bus.

200.   My interpretation of the claims is consistent with the specification and with other claims in the patent.  For example, the '691 Patent states, "In the preferred embodiment, each port maintains a synchronized local copy of the scoreboard table and the contents are written to the scoreboard by learning from messages posted on the protocol bus.  'Synchronized' means all copies of the scoreboard have the same information at all times to avoid 'fatal embrace' scenarios (fatal embraces are discussed in the parent bridge case)."[298]  "In the preferred embodiment, the status determination is accomplished by checking the status entry for the destination port in a copy of a scoreboard table stored by the switch port and kept up to date with the copies of the scoreboard table in all other switch ports by monitoring messages on the protocol bus."[299]  Having reviewed other claims in the patent, Claims 7and 10 are directed to this preferred embodiment.  This is evidenced by the language used in other claims that included both preferred and alternative embodiments of the location of the scoreboard table.  For example, claim 1 recites, "means coupled to said protocol bus for maintaining a scoreboard table containing at least status information

---

[298]   '691 Patent at 14:38–47.

[299]   '691 Patent at 28:18–23.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

and a routing table *either centrally located or in **each port circuit**.*"[300]   Claim 1, thus, is directed to the preferred embodiment discussed above and an alternative embodiment where the scoreboard table is centralized.  Claims 7 and 10 do not include any such recitation of the inclusion of the alternative embodiments; rather, these claims only mimic the particular language included in claim 1 that was directed to a distributed scoreboard table.

> ### V.D.5. *Circuitry in each said port circuit and coupled to said protocol bus for maintaining . . . a routing table containing data mapping destination addresses of NL nodes to port IDs[301]*

201.   My construction for this term, which is construed here as part of the larger phrase above, is as follows:

> *circuitry in each port circuit that stores and updates a local routing table*

202.   At the outset and without commenting on the accuracy of Broadcom's construction, it is my opinion that the term "routing table" must be construed in view

---

[300]   '691 Patent at Cl. 1 (emphasis added).

[301]   I understand that Emulex previously proposed a preliminary construction for "routing table", in isolation, to mean "lookup table for storing destination addresses and identification codes of the ports or half bridges to which the destination nodes are coupled." Emulex's previously-proposed construction is consistent with the '691 Patent, but the term "routing table" can be understood when interpreted as a part of the larger phrase "circuitry in each said port circuit and coupled to said protocol bus for maintaining . . . a routing table containing data mapping destination addresses of NL nodes to port IDs."

of the whole claim and specific limitations in which the routing table appears.  Thus, my construction is for the phrase "circuitry in each said port circuit and coupled to said protocol bus for maintaining . . . a routing table containing data mapping destination addresses of NL nodes to port IDs."  Specifically, Claims 7 and 10 of the '691 Patent are directed to embodiments of the patent in which the routing tables are "distributed"—which is to say that each port circuit stores and updates its own copy of a routing table, which gets synchronized based on port status updates broadcast to the port circuits across the protocol bus.

203.   My interpretation of the claims is consistent with the specification and with other claims in the patent.  For example, the '691 Patent states, "In the preferred embodiment, each half bridge is one port.  In the preferred embodiment, the half bridges are implemented as integrated circuits with a multiplicity of half bridges on every chip with each half bridge building its own routing table by a passive learning process. An alternative embodiment uses an active discovery process to build the routing table."[302]  "In the preferred embodiment, a separate routing table is maintained in each port circuit."[303]  "[I]n the preferred embodiment of FIG. 5, every port circuit 124, 126 and 128 has its own copy of the scoreboard table and a routing

---

[302]   '691 Patent at 9:40–46.

[303]   '691 Patent at 26:32–33.

table."[304]   Having reviewed other claims in the patent, Claims 7 and 10 are directed to this "preferred" embodiment.  This is evidenced by other claims including various embodiments of the location of the routing table.  For example, claim 1 recites, "means coupled to said protocol bus for maintaining a scoreboard table containing at least status information and a routing table *either centrally located or in **each port circuit***."[305]   Claim 1, thus, is expressly drafted to cover the preferred embodiment discussed above **and** an alternative embodiment where the scoreboard / routing table is centralized.  Claims 7 and 10 do not include any such recitation of the alternative embodiment; rather, these claims only include language claiming a distributed routing table in each port circuit.

### V.D.6.   Channel

204.   I disagree with Broadcom's interpretation of this term to the extent that it is clearly inconsistent with the claims.  Broadcom's construction for "channel" is "data path."  Claim 7, however, recites a data path is established via a particular "channel."[306]   Broadcom's construction would result in the claim as reading: establish a data path via a particular data path.  This conclusion is absurd and should be rejected.

---

[304]   '691 Patent at 14:40–42.

[305]   '691 Patent at Cl. 1 (emphasis added).

[306]   '691 Patent at Cl. 7.

EXPERT REPORT OF GARY WARDEN ON THE INVALIDITY OF BROADCOM'S '500 AND '691 PATENTS

205.   I propose that the claim term does not need a special construction beyond what one of ordinary skill in the art would understand the express language to mean.

## VI.   INVALIDITY OF CLAIM 3 OF THE '500 PATENT

### VI.A.   Materiality of U.S. Patent No. 6,183,203 ("the '203 Patent")

206.   At the outset, I note that one of the child patents to the '203 Patent was cited during prosecution of the '691 Patent.  Specifically, U.S. Patent No. 6,118,776 was cited during prosecution of the '691 Patent (though it was not relied on during prosecution).  The '776 Patent is a continuation-in-part of the '203 Patent.[307]  I note, however, that there are significant differences between the two disclosures–it is not the case that the '776 Patent duplicates or merely adds to the '203 Patent disclosure.  Thus, I conclude that the '203 Patent is non-cumulative of the '776 Patent, and may be used in my invalidity analysis.

207.   Specifically, the '203 Patent provides substantively different disclosure than the '776 Patent.  For example, at the beginning of the patent, the '203 Patent states that it pertains to "input/output channel and networking systems, and more particularly to a digital switch which switches Fibre Channel Frames at link speeds of

---

[307]   '776 Patent at 1:7–10.