1  Juanita R. Brooks (SBN 75934)
     *brooks@fr.com*
2  FISH & RICHARDSON P.C.
   12390 El Camino Real
3  San Diego, CA 92130
   Telephone: (858) 678-5070
4  Facsimile: (858) 678-5099

5  *(Additional counsel listed on signature page)*

6  Attorneys for Defendant and Counterclaimant
   EMULEX CORPORATION

7

8            UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10               (SOUTHERN DIVISION)

11

12  BROADCOM CORPORATION,            Case No. CV 09-1058-JVS (ANx)

13        Plaintiff,                 consolidated with CV 10-3963 JVS
                                      (ANx)
14        v.
                                      **DEFENDANT EMULEX
15  EMULEX CORPORATION,              CORPORATION'S
                                      MEMORANDUM OF POINTS AND
16        Defendant.                 AUTHORITIES IN SUPPORT OF
                                      ITS MOTION FOR SUMMARY
17                                    JUDGMENT OF NO
                                      INFRINGEMENT (COUNT 10)**
18
                                      ██████████████████████
19

20
                                      Hearing Date:  June 27, 2011
21  And Related Counterclaims         Time:          1:30 p.m.
                                      Place:         Courtroom 10C
22                                    Before:        Hon. James V. Selna

23       ████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28

                                      CASE NO. CV 09-1058-JVS (ANx)

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................1

II.   TECHNOLOGY BACKGROUND ........................................................2

III.  STATEMENT OF FACTS .....................................................................3

      A.  Broadcom's Conception of the '623 Patent ...................................3

      B.  The Microsoft/Broadcom Joint Development ██████ for TCP Chimney
          ............................................................................................................4

      C.  ████████████████████████████████████████████████5

      D.  Broadcom Solely Accuses Emulex's Support for Microsoft TCP Chimney 7

IV.   STATEMENT OF LAW ........................................................................9

      A.  Summary Judgment.........................................................................9

      B.  The Law of Patent Exhaustion .......................................................9

V.    ARGUMENT .......................................................................................11

      A.  ███████████████████████████████████.................12

      B.  Microsoft's TCP Chimney Substantially Embodies the '623 Patent ..........14

      C.  Microsoft's Authorized Transfer of TCP Chimney to Emulex Exhausted
          Broadcom's Patent Rights................................................................17

VI.   CONCLUSION ...................................................................................18

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................... 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................... 9

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ..................................................... 9

*Excelstor Tech., Inc. v. Papst Licensing GmbH & Co. KG*,
   541 F.3d 1373 (Fed. Cir. 2008) ................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ...................................................................... 9

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008) ........................... 1, 10, 11, 12, 13, 16, 18, 19

*United States v. Univis Lens Co.*,
   316 U.S. 241 (1942) ..................................................................... 12

ii

CASE NO. CV 09-1058-JVS (ANx)

## I.   INTRODUCTION

With respect to Count 10's U.S. Pat. No. 7,313,623 ("the '623 patent"), it is undisputed:

- that Broadcom's accusations rely solely on Emulex's support for Microsoft's TCP Chimney technology,
- that the only known way to allegedly practice the invention is through Microsoft's TCP Chimney technology,
- that Broadcom collaborated with Microsoft to develop that TCP Chimney technology,

 and

As such, Broadcom's rights to assert the '623 patent against Microsoft's TCP Chimney technology have been "exhausted" under the longstanding doctrine of "patent exhaustion."   Therefore, Broadcom's rights to assert the '623 patent against Emulex, solely based on Microsoft's TCP Chimney technology, have been exhausted.

The recent Supreme Court case of *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), clarified two potential ambiguities in this longstanding doctrine.   First, the Supreme Court held that exhaustion applies even when a licensee makes the initial sale (i.e., it is irrelevant whether the patent holder itself sold the patented item, so long as the sale was "authorized").   Second, the Supreme Court held that the product sold need not embody the patent claims.   So long as the "reasonable and intended use" of the product is to practice the claims, exhaustion applies.

1

1   Here, because the reasonable and intended use of Microsoft's TCP Chimney

2   is to perform TCP offload in a way that allegedly infringes, █████████████

3   ████████████████████████████████████████ Broadcom cannot sue

4   Emulex for patent infringement simply for supporting Microsoft's TCP Chimney.

5   **II.   TECHNOLOGY BACKGROUND**

6   The '623 patent claims a "system for providing TCP/IP offload."[1]  (Ex. A.)

7   As this Court described:

> The '623 Patent focuses on dividing work according to TCP connection
> variables.  Networks that transmit large amounts of data can require
> large amounts of TCP-related work.  TCP processing can consume a
> computer's processing resources.  Thus, TCP-related tasks may be aided
> by a TCP Offload Engine ("TOE").  To offload a connection, the host
> transfers control of connection variables to the TOE.   In some
> configurations, the TOE is found on a network interface card ("NIC").

14  (*Markman* Order, p.10, Docket No. 261 (citations omitted).)  Broadcom similarly

15  describes the claims of the '623 patent as "directed to systems for dividing control

16  of TCP connection variables to optimize TCP communications."  (Broadcom's

17  Opening *Markman* Br., p.12, Docket No. 219.)

18  The '623 patent admits that prior art methods for offloading TCP connection

19  variables existed.  (Ex. A at 2:1–3:33.)  The purported novelty of the '623 patent is

20  the particular way in which it divided the TCP work between the host's operating

21  system and the TOE by dividing control of the TCP connection variables.  ███████

22  ███████  Broadcom claims that by dividing control of the TCP connection variables

23  between the host's operating system and the TOE, the '623 patent improves data

24  throughput.  (*Id.*)  Broadcom's technical expert on the '623 patent, Dr. Rubin, wrote

25  that, ███████████████████████████████████████████████████████████████

---

[1] "TCP/IP" refers to two protocols commonly used to communicate data over
computer networks—the Internet Protocol ("IP") and the Transmission Control
Protocol ("TCP").

2

III.   STATEMENT OF FACTS

A.   Broadcom's Conception of the '623 Patent

To design a direct interface with Microsoft Windows, Broadcom's Dr. Rubin states that

CASE NO. CV 09-1058-JVS (ANx)

1    ███████ That direct interface to Microsoft Windows, ███████████ came
2    to be called "TCP Chimney."[3] ███████████████████████
3    ███████████████████████████

4        **B.    The Microsoft/Broadcom Joint Development ███████ for**
5             **TCP Chimney**

6        As acknowledged by Broadcom's Dr. Rubin, ███████████████
7    ████████████████████████████████████████
8    ███████████████████████████████████
9    ███████████████████████████████████
10   ████████████████████████████████████████
11   ████████████████████████████████████████
12   ███████████████████████████████████
13   █████████████████████████████████████████

14
15   _____
16   [3] ████████████████████████████████████████
17   ████████████████████████████████████████
18   ████████████████████████████████████████
     ████████████
19        ████████████████████████████
20        ██████████████████████████
21        ████████████████████████████████
22        ████████████████████████████████
23        ████████ ███████████████████████
24        ███████████████████████
25   *See also* Ex. E, ¶ 91(discussing and citing Microsoft's TCP Chimney
26   documentation, and citing "Windows Driver Kit TCP Chimney Offload
     Documentation, Overview of TCP Chimney Offload, TCP Chimney Architecture
     (http://msdn.microsoft.com/enus/library/ff569969(v=VS.85).aspx)").
27   [4] *See* Ex. B, ¶ 50. ████████████████████████
28   ████████████████████████████████

4

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5        ███████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ███████████████████████████████

10      **C.**   ████████████████████████████████████████████

11              ██████████████████████████████████

12    As part of their joint development work on the TCP Chimney technology

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15      ·  ████████████████████████████████

16      ▪  █████████████████████████████████████

17      █████████████████

18      ▪  ██████████████████████████████████

19      █████████

20      ▪  █████████████████████████████████████████████████

21      █████████████████████

22      ▪  █████████████████████████████

23      ▪  ███████████████████████████

24 /// 

25 ///

26 _____

27 ████████████████████████████████████████████████████████

28 ██████████████████████



CASE NO. CV 09-1058-JVS (ANx)

1  ████████████████████████████████████

2  ██████████████████████████████████████

3  ████████████████████████████

4       On May 7, 2003, Broadcom formally announced in a press release that it had

5  been "Working Extensively with Microsoft Corporation to Develop 'Chimney

6  offload' Technology." (Ex. Q.)

7             **D.**    **Broadcom Solely Accuses Emulex's Support for Microsoft TCP Chimney**

8

9       Broadcom's infringement accusations solely accuse Emulex's network

10  controllers for being compatible with the Microsoft TCP Chimney offload interface

11  in the Microsoft Windows operating systems.

12       For Emulex's network controllers to allegedly practice the '623 patent, they

13  must interact with Microsoft Window TCP Chimney through a Microsoft Windows

14  driver. ████████████████████████████████████

15  ██████████████████████████████████████

16  ████████████████████████

17       In order to write TCP-Chimney-compatible drivers, Emulex pays to subscribe

18  to the Microsoft Developer Network ("MSDN"). (Exs. S & T.) Included with this

19  subscription is a "Microsoft TCP Chimney Driver Development Kit" or "DDK."

20  (Ex. U.) The DDK includes sample code, header files, documentation, and other

21  tools that software developers at Emulex use to write their network card drivers.

22  (Ex. V at 110:3–17, 140:3–21.) The DDK also comes with a license granting

23  Emulex the "Right to Use and Distribute" the code that comes with the DDK.

24  (Ex. U.)

25       As Dr. Acampora explains, the Microsoft DDK does not provide technical

26  details about Microsoft's internal implementation of TCP Chimney within

27  Microsoft's Windows operating system. (Ex. J, ¶ 489.) The DDK merely exposes a

28

CASE NO. CV 09-1058-JVS (ANx)

1  TCP Chimney interface with specific rules and specifications for interfacing with
2  Microsoft's TCP Chimney.  (*Id.*)  This TCP Chimney interface was designed by
3  Microsoft to allow network controllers to support Microsoft's TCP Chimney
4  technology.  (*Id.*)

5      It is this interface that Broadcom collaborated with Microsoft on, ████████
6  ████████████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████  As confirmed
8  by Broadcom's Dr. Rubin, "████████████████████████████████████
9  ████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████
11 ███████████████████████████████  ███████████████████████████
12      ████████ these interfaces are required to practice the claimed solution in the '623
13 patent.  ████████████████████████████████████

14      Once a driver is written, Emulex confirms that it complies with Microsoft
15 requirements by running tests written by Microsoft.  (Ex. W at
16 BCM_EMX_E04794175; Ex. X at 16:15–17:5.)  Emulex must send the test results
17 to Microsoft, which reviews them and indicates whether Emulex drivers are
18 certified.  (*Id.* at 18:5–16.)  ████████████████████████████████████
19 ████████████████████████████████  These Microsoft-certified
20 drivers are required to allow customers to use Emulex's network controllers.

21      Importantly, the TCP Chimney feature in Microsoft Windows is disabled by
22 default.  (Ex. Z at 1.)  If customers wish to use TCP Chimney, they must follow
23 certain steps in Microsoft Windows to enable it.  Once enabled, the Microsoft
24 Windows operating system decides whether or not to offload a particular connection
25 to the driver through the TCP Chimney interface.  (Ex. AA at 77:22–24.)
26  / / /
27  / / /
28

8

CASE NO. CV 09-1058-JVS (ANx)

1   IV.   **STATEMENT OF LAW**

2        A.   **Summary Judgment**

3        Summary judgment is appropriate when there is no genuine issue of material

4   fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*

5   *v. Catrett*, 477 U.S. 317, 322–23 (1986).

6        The moving party bears the burden of showing that there is no material

7   factual dispute, and the Court must draw all reasonable inferences in favor of the

8   party against whom summary judgment is sought.  *Matsushita Elec. Indus. Co. v.*

9   *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, "[t]he mere existence of a

10  scintilla of evidence in support of the [non-moving party's] position will be

11  insufficient; there must be evidence on which the jury could reasonably find for the

12  [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

13  Conclusory assertions of an expert are insufficient.  *Dynacore Holdings Corp. v.*

14  *U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004).

15       B.   **The Law of Patent Exhaustion**

16       "The authorized sale of an article that substantially embodies a patent

17  exhausts the patent holder's rights and prevents the patent holder from invoking

18  patent law to control postsale use of the article."  *Quanta*, 553 U.S. at 638.  "[P]atent

19  exhaustion is a defense to patent infringement."  *Excelstor Tech., Inc. v. Papst*

20  *Licensing GmbH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008).

21       The facts surrounding the '623 patent are very similar to those in *Quanta*.  In

22  *Quanta*, the patent holder, LG Electronics ("LGE"), held three patents related to

23  computer systems.  553 U.S. at 621–23.  LGE licensed its portfolio to Intel

24  corporation, giving Intel the right to manufacture and sell microprocessors that used

25  the LGE patents.  *Id.* at 623.  The microprocessors Intel sold did not by themselves

26  practice the LGE patents—instead, infringement only occurred when the chips were

27  combined with other parts to make functional computer products.  *Id.* at 624.  LGE

28

9

1 | separately entered into an agreement with Intel that its license would not extend to
2 | any products made by combining Intel products with non-Intel products. *Id.*

3 |       Quanta Computer purchased microprocessors from Intel and combined them
4 | with non-Intel products to manufacture computers that practiced LGE's patents. *Id.*
5 | Quanta "[did] not modify the Intel components and follow[ed] Intel's specifications
6 | to incorporate the parts into its own systems." *Id.* LGE subsequently filed a patent
7 | infringement suit against Quanta, asserting that the combination of the Intel products
8 | with non-Intel parts infringed the LGE patents. *Id.*

9 |       The District Court granted summary judgment of non-infringement based on
10 | patent exhaustion, holding that the license LGE granted to Intel resulted in the
11 | forfeiture of any potential infringement action against legitimate purchasers of Intel
12 | products. *Id.* The District Court later modified this ruling and held that patent
13 | exhaustion did not apply to method claims. *Id.* The Federal Circuit agreed, and
14 | further held that exhaustion did not apply because Intel was not licensed to sell Intel
15 | products for use in combination with non-Intel products. *Id.* at 625.

16 |       The Supreme Court granted certiorari and reversed in a 9-0 decision. The
17 | Court began by noting that the "longstanding doctrine of patent exhaustion provides
18 | that the initial authorized sale of a patented item terminates all patent rights to that
19 | item." *Id.* It noted the long history of the doctrine, and explained the public policy
20 | goal—namely, to limit patent holders from extending their monopolies once they
21 | release products to end customers. *Id.*

22 |       The Court then explained the extent to which a product must embody a patent
23 | in order for exhaustion to apply.[8]  The Court noted prior precedent that held that the
24 | item sold need not embody the entire patent: "the traditional bar on patent

25 |
---

26 | [8] The Court also rejected LGE's argument that exhaustion did not apply to method
27 | claims, holding that "[e]liminating exhaustion for method patents would seriously
undermine the exhaustion doctrine." *Id.* at 629. This part of the *Quanta* holding is
28 | not implicated here, as the '623 patent contains only "system" claims.

10

1  restrictions following the sale of an item applies when the item sufficiently

2  embodies the patent—even if it does not completely practice the patent—such that

3  its only and intended use is to be finished under the terms of the patent." *Id.* at 628,

4  *citing United States v. Univis Lens Co.*, 316 U.S. 241 (1942).  It held that *Univis*

5  governed LGE's claim because the "only reasonable and intended use" of the Intel

6  chip was to practice the patent, and because the Intel chips "embodied essential

7  features of the patented invention." *Id.* at 631.  The Court noted that the products

8  involved in *Univis* (lens blanks for eyeglasses) were "without utility until they were

9  ground and polished" in a way that infringed the asserted patents. *Id.* at 632.

10  Similarly, the Intel chips "constitute a material part of the patented invention," and

11  "Quanta had no alternative but to follow Intel's specifications in incorporating the

12  Intel Products into its computers because it did not know their internal structure,

13  which Intel guards as a trade secret." *Id.* at 633–34.  In other words, the chips had

14  no real use other than functioning in ways that infringed LGE's patents.

15      Finally, the Supreme Court rejected LGE's argument that Intel had no right to

16  sell its products for combination with non-Intel products to practice the LGE

17  patents.  The Court suggested that the appropriate remedy for any dispute over the

18  scope of Intel's rights was a breach of contract claim between LGE and Intel, not a

19  patent infringement claim against Intel's customers. *Id.* at 637, fn.7.  It held that

20  "[b]ecause Intel was authorized to sell its products to Quanta, the doctrine of patent

21  exhaustion prevents LGE from further asserting its patent rights with respect to the

22  patents substantially embodied by those products." *Id.* at 637.

23  **V.   ARGUMENT**

24

25

26

27

28



CASE NO. CV 09-1058-JVS (ANx)



1

2  Microsoft distributes this TCP offload interface to various companies through a

3  Driver Development Kit, and through its Microsoft Windows operating system.

4  Microsoft provides that software to Emulex, and Emulex simply follows Microsoft's

5  specifications to support TCP Chimney.

6  Microsoft's transfer of the TCP Chimney

7  interface to Emulex exhausted any right Broadcom had to accuse Emulex (or any

8  other Microsoft customer) of patent infringement based on that interface.  Summary

9  judgment of no infringement therefore should be granted.

10  **A.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. CV 09-1058-JVS (ANx)

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ███████████████████████████████████████

4 ████████████████████████████████████████████

5 ████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ████████████████████████████████████████████

8 ██████████████████████████████████████

9 ████████████████████████████████

10 ██████████████████████████████████████████

11 ████████████████████████████████████████████

12 █████████████  ████████████████████████████

13 ███████████████████████████████████████████

14 ███████████    Broadcom issued a press release announcing that it had been

15 "working extensively" with Microsoft to develop TCP Chimney.  (Ex. Q.)

16 █████████████████████████████████████

17 ██████████████████████████████████████████

18 █████████████████████████████████████

19 ████████████████████████████████████████████

20 ██████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ████████████████████████████████████████

24 ███████████████████████████████████████████

25 ████████████████████████████████████████████

26

27 ██████████████████████████████████████████

28 █████████████████████

13

CASE NO. CV 09-1058-JVS (ANx)



Consequently, Microsoft was and is authorized to sell and distribute TCP Chimney software to its customers, including Emulex, and Microsoft's customers are entitled to use it.

**B.   Microsoft's TCP Chimney Substantially Embodies the '623 Patent**

In order for exhaustion to apply, the TCP Chimney software must substantially embody the '623 patent. The *Quanta* decision provides a number of different tests for when a product sufficiently embodies a patent in order for exhaustion to apply. These tests include:

- its "only and intended use" or "reasonable and intended use" is to practice the patent (*Quanta*, 553 U.S. at 628, 631);
- it "embodie[s] essential features of the patented invention" or "constitute[s] a material part of the patented invention" (*id.* at 631, 633–34);
- it is "without utility" until modified to embody the patented invention (*id.* at 632); and
- the customer "had no alternative but to follow [the licensee's] specifications in incorporating the [licensee's] Products into its

14

1   computers because it did not know their internal structure" (*id.* at 633–

2       34).

3   All of these tests are satisfied by Microsoft's TCP Chimney.

4       First, ███████████████████████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████ Microsoft documents on TCP

7   Chimney describe only <u>one</u> functionality—TCP offload.  (*See* Exs. N & Z.)  TCP

8   Chimney cannot do anything else.  (*See id.*) ████████████████████████████

9   ██████performing TCP offload using TCP Chimney necessarily infringes the

10  '623 patent and that TCP Chimney is the sole basis for Broadcom's accusations

11  against Emulex under the '623 patent. ████████████████  ████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████  The only reasonable and intended use of TCP Chimney is to enable and

16  perform TCP offload in an allegedly infringing manner, and Broadcom was well

17  aware of this when it worked with Microsoft to implement TCP Chimney.  (*See*

18  Ex. H.)

19      Second, ████████████████████████Microsoft's TCP Chimney

20  "embodies essential features" of the patented invention. ████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████[11]  Broadcom witnesses testified that

25  _____

26  [10]████████████████████████████████████████████████

27  [11] Emulex witnesses████confirmed that the Microsoft Windows operating system

28  decides whether and when to implement TCP Chimney.  (Ex. AA at 77:22–24.)

15

1 ████████████████████████████████████

2 ████████████████████████████

3 ████████████████████████████████████

4 ██████████████████████████████

5 █████████████████████████████ There is thus no

6 genuine dispute that Microsoft's TCP Chimney embodies and specifies all the

7 essential features of the '623 patent.

8          Third, Microsoft's TCP Chimney is "without utility" if not used to practice

9 TCP offload in the allegedly infringing manner.  As noted above, the only

10 functionality described in Microsoft's TCP Chimney documentation is TCP

11 offload—TCP Chimney simply cannot do anything else.  (*See* Exs. N & Z.)

12 Moreover, as noted above, the TCP Chimney feature in Microsoft Windows is

13 currently disabled by default.  (*Id.*)  In other words, as it is currently implemented

14 and shipped, TCP Chimney does not do *anything* in Microsoft Windows unless it is

15 enabled *through Microsoft Windows*.

16          Finally, Emulex simply follows Microsoft's specifications and interface in

17 order to support TCP Chimney.  Like in *Quanta*, Emulex has no knowledge of the

18 internal structure of Microsoft's software. (Ex. J, ¶ 489.)  The Microsoft

19 documentation describes the TCP Chimney architecture that Emulex must conform

20 to, and the Microsoft Driver Development Kit exposes an interface that Emulex

21 must use in order to be TCP Chimney compliant.  (*Id.*)  For Emulex's network

22 controllers to allegedly practice the '623 patent, they must interact with Microsoft

23 Window TCP Chimney through a Microsoft Windows driver.  (Ex. R at 20:8-14).

24 In order to write TCP-Chimney-compatible drivers, Emulex pays Microsoft to

25 subscribe to the Microsoft Developer Network ("MSDN"), and receives Microsoft

26 _____

[12] Emulex's expert, Dr. Acampora, similarly opined that the alleged elements of the

27 '623 patent are features embodied in TCP Chimney itself or in Emulex's compliance

with the TCP Chimney specification. (Ex. J, ¶¶ 486–92.)

28

1    code, documentation and development tools.  (*See* Exs. S-W.)  Once a driver is

2    written, Emulex must confirm that it complies with Microsoft requirements by

3    running tests written by Microsoft.  (Ex. W; Ex. X at 16:15–17:5.)  Emulex must

4    send the test results to Microsoft, which reviews them and indicates whether Emulex

5    drivers are certified.  (*Id.* at 18:5–12.)  ███████████████████████████

6    ███████████████████████████████████)  Broadcom's own

7    expert wrote that ███████████████████████████████████

8    ███████████████████████████  At every step of the way,

9    Broadcom is accusing Emulex for simply using Microsoft's TCP Chimney in its

10   known and expected manner.

11       Broadcom knew that TCP Chimney would become a standard interface for all

12   Microsoft customers to use through Microsoft Windows.  By participating in the

13   joint development, Broadcom knowingly chose to ████████████████████

14   ██████████ in exchange for the opportunity to be the first to market a TCP-Chimney-

15   compatible network card.  By accepting this trade, Broadcom exhausted its right to

16   pursue infringement claims for use of TCP Chimney.

17       **C.   Microsoft's Authorized Transfer of TCP Chimney to Emulex**
18              **Exhausted Broadcom's Patent Rights**

19       "The authorized sale of an article that substantially embodies a patent

20   exhausts the patent holder's rights and prevents the patent holder from invoking

21   patent law to control postsale use of the article."  *Quanta*, 553 U.S. at 638.  Here,

22   ████████████████████████████████████████

23   ██████████████████████████████

24   ████████████████████████████████████████

25   ██████████████████████████████████

26   ████████████████████████████████████████

27   Microsoft then released TCP Chimney, which is what Broadcom relies on in its

CASE NO. CV 09-1058-JVS (ANx)

infringement allegations against Emulex. Emulex pays Microsoft for access to the Microsoft Developer Network (Ex. T) and to certify that their drivers comply with Microsoft requirements (Ex. Y). As a good faith customer and user of Microsoft's software, Emulex is free to use Microsoft's TCP Chimney to perform TCP offload.

In short, the only appropriate remedy here is summary judgment of no infringement, as Broadcom's rights to accuse Microsoft's TCP Chimney of infringing the '623 patent have been exhausted as a matter of law.

## VI.   CONCLUSION

For these reasons, the Court should grant Emulex's motion for summary judgment of no infringement of the '623 patent.

Dated:  June 2, 2011

FISH & RICHARDSON P.C.

By: _____
     Jonathan J. Lamberson

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

50783167.doc

18

CASE NO. CV 09-1058-JVS (ANx)

1 | *Additional Counsel*

2 | David M. Barkan (SBN 160825)
   | *barkan@fr.com*

3 | Jonathan J. Lamberson (SBN 239107)
   | *lamberson@fr.com*

4 | FISH & RICHARDSON P.C.
   | 500 Arguello Street, Suite 500

5 | Redwood City, California 94063-1526
   | Telephone: (650) 839-5070

6 | Facsimile: (650) 839-5071

7 | Joseph V. Colaianni, Jr. (*pro hac vice*)
   | *colaianni@fr.com*

8 | FISH & RICHARDSON P.C.
   | 1425 K Street, N.W., 11th Floor

9 | Washington, DC 20005
   | Telephone: (202) 783-5070

10 | Facsimile: (202) 783-2331

11 | Thomas H. Reger II (*pro hac vice*)
    | *reger@fr.com*

12 | FISH & RICHARDSON P.C.
    | 1717 Main Street, Suite 5000

13 | Dallas, Texas 75201
    | Telephone: (214) 747-5070

14 | Facsimile: (214) 747-2091

15 | Wasif H. Qureshi (*pro hac vice*)
    | *qureshi@fr.com*

16 | FISH & RICHARDSON P.C
    | One Houston Center

17 | 1221 McKinney Street, 28th Floor
    | Houston, Texas 77010

18 | Telephone: (713) 654-5300
    | Facsimile: (713) 652-0109

19 |

20 | 50783167.doc

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

19

CASE NO. CV 09-1058-JVS (ANx)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 2, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3.  Any other counsel of record will be served by U.S. mail or hand delivery.

By: _____

Jonathan J. Lamberson

50783167.doc

20

CASE NO. CV 09-1058-JVS (ANx)