WILLIAM F. LEE
(admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA
(admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER
(admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS
(admitted *pro hac vice*)
(louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

Attorneys for Plaintiff
BROADCOM CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BROADCOM CORPORATION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EMULEX CORPORATION,**<br><br>**Defendant.**<br><br><br>**And Related Counterclaims** | CASE No.  SACV09-1058 JVS (ANx)<br>consolidated SACV 10-03963-JVS (ANx)<br><br>**PLAINTIFF BROADCOM CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY OF U.S. PATENT NOS. 7,471,691 AND 7,450,500**<br><br>Hearing Date:   July 18, 2011<br>Before:           Hon. James V. Selna |

# Table of Contents

I.     INTRODUCTION ...................................................................................... 1

II.    BACKGROUND ....................................................................................... 2

       A.     Storage Area Networks ................................................................. 2

       B.     Fibre Channel ............................................................................... 3

       C.     The Inventions of the '691 and '500 Patents ................................ 4

              1.     The '691 Patent ................................................................... 6

              2.     The '500 Patent ................................................................... 8

       D.     Emulex's Invalidity Contentions Based On The '203 Patent ............................................................................................ 9

III.   ARGUMENT ......................................................................................... 10

       A.     Procedural Standards .................................................................. 10

       B.     No Reasonable Juror Could Find Anticipation Based On The '203 Patent—Which Emulex's Expert Concedes Does Not Disclose All Limitations Of the Asserted Claims. ......................................................................................... 11

              1.     The '203 Patent Does Not Disclose the Particular Uses of Primitives Recited in Claims 7 and 10 of the '691 Patent ................................................................... 12

              2.     The '203 Patent Does Not Disclose a "Priority Level For Access to Busy Destination Nodes" as Required by Claim 3 of the '500 Patent ................................. 15

       C.     No Reasonable Juror Could Find Obviousness Based On Emulex's Theory—Emulex's Expert Has Not Even Conducted A Limitation-By-Limitation Analysis Of The Asserted Claims ........................................................................ 16

IV.    CONCLUSION ...................................................................................... 19

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1

# Table of Authorities

2

## FEDERAL CASES

3

4   *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
     637 F.3d 1324 (Fed. Cir. 2011) .......................................................... 11

5

6   *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
     635 F.3d 1373 (Fed. Cir. 2011) .......................................................... 11

7   *Finisar Corp., v. DirecTV Group, Inc.*,
     523 F.3d 1323 (Fed. Cir. 2008) .......................................................... 11

8

9   *Graham v. John Deere Co.*,
     383 U.S. 1 (1966) ............................................................................... 16

10

11   *Honeywell Int'l, Inc. v. United States*,
     609 F.3d 1292 (Fed. Cir. 2010) .......................................................... 16

12

13   *In re Thrift*,
     298 F.3d 1357 (Fed. Cir. 2002) .......................................................... 17

14

15   *In re Translogic Tech., Inc.*,
     504 F.3d 1249 (Fed. Cir. 2007) .......................................................... 16

16   *Innovention Toys, LLC v. MGA Entm't, Inc.*,
     637 F.3d 1314 (Fed. Cir. 2011) .......................................................... 16

17

18   *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
     381 F.3d 1142 (Fed. Cir. 2004) ..................................................... 1, 18

19

20   *Microsoft Corp. v. i4i Ltd. P'ship*,
     No. 10-290, ___ U.S. ___, slip op (June 9, 2011) ............................. 11

21

22   *Proveris Scientific Corp. v. Innovasystems, Inc.*,
     536 F.3d 1256 (Fed. Cir. 2008) ..................................................... 1, 18

23

24   *Schumer v. Lab. Computer Sys., Inc.*,
     308 F.3d 1304 (Fed. Cir. 2002) .......................................................... 16

25

26   *Therasense, Inc. v. Becton, Dickinson & Co.*,
     593 F.3d 1325 (Fed. Cir. 2010) .................................................. 11, 14

27   *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors*
     *USA, Inc.*,

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

617 F.3d 1296 (Fed. Cir. 2010) .......................................................... 16

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
295 F.3d 1292 (Fed. Cir. 2002) ....................................................... 11

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ....................................................... 18

<u>FEDERAL STATUTES</u>

35 U.S.C. § 282 .............................................................................. 11

1  **I.      Introduction**

2          For two of the patents-in-suit—namely, U.S. Patent Nos. 7,471,691 ("'691

3  patent") and 7,450,500 ("'500 patent")—Defendant Emulex's invalidity

4  contentions turn on a single alleged prior art reference, U.S. Patent No. 6,185,203

5  ("'203 patent").  Emulex contends that the '203 patent anticipates and alone

6  renders obvious the asserted claims of the '691 and '500 patents.  Emulex has no

7  other invalidity defense for these patents.

8          At his recent deposition, Emulex's technical expert designated for presenting

9  Emulex's '691 and '500 invalidity theories, Gary Warden, conceded that the '203

10  patent does ***not*** disclose every element of the asserted claims, as is legally required

11  for anticipation.  He further admitted that, for obviousness, he had not even

12  conducted the requisite limitation-by-limitation analysis of the asserted claims.

13          These fundamental flaws in Mr. Warden's opinions warrant entry of

14  summary judgment of no anticipation and no obviousness of the '691 and '500

15  patents.  *See, e.g., Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256,

16  1267-68 (Fed. Cir. 2008) (upholding JMOL in favor of patent-holder because the

17  party asserting invalidity could not present "expert testimony to substantiate its

18  invalidity defenses" of anticipation and obviousness); *Koito Mfg. Co., Ltd. v.*

19  *Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) (holding that because

20  the party asserting invalidity "failed to articulate how the [asserted reference]

21  anticipates or makes obvious the [patent-in-suit], it has not presented sufficient

22  evidence for the jury with respect to the [asserted reference]").

23

24

25

26

27

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1

## II.    Background

2          The '691 and '500 patents relate to innovative designs for Fibre Channel

3   storage area networks or "SANs."  We set forth below a summary of:  (A) storage

4   area networks, (B) Fibre Channel networking protocols, (C) the inventions of the

5   '691 and '500 patents, and (D) Emulex's invalidity theories based on the '203

6   patent.

7          ### A.    Storage Area Networks

8          A SAN is a type of network used to make storage devices (such as high-

9   capacity disk drives) accessible to network servers—which in turn can be

10   connected to other devices, such as personal computers ("PCs").[1]  (Declaration of

11   Michael Wolin in Support of Plaintiff Broadcom Corporation's Motion for Partial

12   Summary Judgment ("Wolin Decl."), Ex. A [excerpts from Initial Expert Report of

13   Dr. Amin Vahdat] ¶ 36.)  A SAN allows a user to access data stored on remote

14   storage devices as readily as if the data were stored locally on the user's computer

15   system.  (*Id.*)  Figure 1 from the opening expert report of Broadcom's technical

16   expert, Professor Amin Vahdat of the Department of Computer Science and

17   Engineering at the University of California in San Diego, illustrates a simple SAN

18   with a set of PCs, a server, and storage network including disk drives:

19

20

21

22

23

24   _____

25   [1]   To provide the Court with context for this motion, Broadcom sets out herein
         certain background information regarding the technology at issue, and
26       Broadcom is also submitting excerpts from Dr. Vahdat's report explaining this
         technology.  This background information is purely for context, and does not
27       form the basis for Broadcom's motion.

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**



**Figure 1**

Over the years, networking specialists have developed various techniques for configuring and connecting devices within SANs, in a continuing effort to maximize the efficiency and reliability of these systems.  Some of these techniques have been "standardized"—i.e., incorporated into industry standards that industry members have collaboratively developed to facilitate interoperability of different companies' products.  These include the standards for "Fibre Channel" technology.

**B.     Fibre Channel**

Fibre Channel is a networking protocol and technology governing communications between SAN devices such as servers and storage devices.  (*Id.* ¶ 44.)  The American National Standards Institute ("ANSI") has developed standard rules for Fibre Channel networks, defining three distinct types of Fibre Channel topologies:  (1) point-to-point networks (2) fabric switched networks, and (3) Fibre Channel-Arbitrated Loop ("FCAL") networks.  (*Id.*)  The simple point-to-point topology connects two devices directly to each other, but fabric switched and FCAL networks can be more complex.  (*Id.* ¶ 45.)  Examples of the fabric switched and FCAL networks are depicted in Figure 2 in Dr. Vahdat's initial expert report:



**Figure 2**

In a fabric switched network such as that shown on the left, a device (e.g., a disk drive) could connect via the switch to another device. (*Id.* ¶ 46.) This is a "switched connection." (*Id.*)

In an FCAL network such as that shown on the right, devices are connected in a loop or ring. (*Id.* ¶ 47.) The transmitter of one device is connected to the receiver of another device, in a repeating pattern, until the last device's transmitter is connected back to the first device's receiver. (*Id.*) Devices communicate through a series of point-to-point connections, where data is retransmitted across each point-to-point link until it reaches the destination device. (*Id.*)

To manage connections on the FCAL loop, the FCAL devices use control messages called "primitives." (*Id.* ¶ 48.) These primitives can include messages to open a connection ("OPN"), to close a connection ("CLS"), to tell the source that the destination is ready to receive data ("RRDY"), and to cause devices to arbitrate among themselves to determine which device can communicate next on the loop ("ARB"). (*Id.*)

## C.   The Inventions of the '691 and '500 Patents

The '691 and '500 patents teach and claim novel and valuable features for coupling and switching multiple FCAL networks—offering advantages not provided by either fabric switched networks or prior art FCAL networks. The inventions are directed to establishing more efficient connections among multiple

1   FCAL networks, by using an "FCAL switch," as shown by Figure 1 of the

2   specification shared by both patents.  This Figure shows four FCAL network loops

3   (each "N" is a "node" or device on the loop) connected by the switch:

4

5

6

7

8

9

10   

11

12

13

14

15

16

17       The heart of the inventions lies in the details of how this is accomplished—

18   i.e., the structural components of the claimed FCAL switch and the ways in which

19   network connections are established among devices in this network configuration.

20   The claimed inventions improve upon the prior art standardized protocols, with a

21   particular focus on improving on FCAL networks.[2]

22

23

24   _____

25   [2]   To be clear, the '500 and '691 patents are not "standard-essential" patents—that
      is, parties practicing standards such as FCAL will not necessarily use the '500
26    or '691 patent.  The '500 and '691 patents claim inventions that improve on the
      standardized technologies.  Parties can practice the standards without using
27    these inventions—but using the inventions affords technical advantages.

28

BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY

### 1.   The '691 Patent

The '691 patent is directed to a combination of components used to implement the "FCAL switch" shown above, and connections made using this switch.  (*Id.* ¶ 55.)  The claimed components include "routing table" and "scoreboard table" features, which supply critical information for establishing connections among devices; these components are not at issue for the instant motion.  Of immediate importance, the claims also describe use of primitives to make connections to "ports" in devices (*see, e.g.,* Wolin Decl., Ex. B ['691 patent] at 5:33-45, 10:16-27) in ways that are ***not*** taught or required by the FCAL protocol itself.  As discussed below, the primitives claim language is not taught by Emulex's asserted prior art, the '203 patent.

Broadcom asserts claims 7 and 10 against Emulex; bold italics indicate the limitations that Emulex's expert concedes are absent from the '203 patent:

> 7.   A packet switch for coupling a plurality of node loop (NL)
> nodes and/or Fibre Channel Arbitrated Loop network (FCAL nets)
> together to all concurrent data exchanges between a plurality of pairs
> comprised of one NL node or FCAL net and one other NL node or
> FCAL net, comprising:
>
>> a crossbar switch;
>>
>> a protocol bus;
>>
>> a plurality of port circuits each having an input and an output
> for connecting to an FCAL net coupled to one or more NL nodes and
> capable of implementing a Fibre Channel loop protocol, and each
> having a crossbar switch port coupled to said crossbar switch;
>
>> circuitry in each said port circuit and coupled to said protocol
> bus for maintaining a scoreboard table containing at least status
> information and a routing table containing data mapping destination
> addresses of NL nodes to port IDs;

**BROADCOM'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**

1    *and wherein said port circuits function to establish*

2    *connections between themselves by using destination addresses in*

3    *Open (OPN) primitives received from source nodes to search said*

4    *routing table to determine the ID of a remote port coupled to the*

5    *destination node having the destination address in the OPN and,*

6    *using that port ID to search said scoreboard table to determine*

7    *status of the remote port, and then exchanging messages with said*

8    *remote port to cause it to arbitrate for and take control of its local*

9    *FCAL net and establish a data path via a particular channel*

10   *through said crossbar switch and use said channel to transmit*

11   *primitives and data frames between said source node and said*

12   *destination node.*

13   10.    A packet switching switch for coupling a plurality of node loop

14   (NL) nodes and/or Fibre Channel Arbitrated Loop network (FCAL

15   nets) together to all concurrent data exchanges between a plurality of

16   pairs comprised of one NL node or FCAL net and one other NL node

17   or FCAL net, comprising:

18           a crossbar switch;

19           a protocol bus;

20           a plurality of port circuits each having an input and an output

21   for connecting to an FCAL net coupled to one or more NL nodes and

22   capable of implementing a Fibre Channel loop protocol, and each

23   having a crossbar switch port coupled to said crossbar switch;

24           circuitry in each said port circuit and coupled to said protocol

25   bus for maintaining a routing table containing data mapping

26   destination addresses of NL nodes to port IDs and for maintaining a

27   scoreboard table containing at least status information of remote ports;

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1    *and wherein said port circuits function to establish*

2    *connections between themselves by latching any Open (OPN) and*

3    *Ready (RRDY) primitives received from source nodes and using*

4    *destination addresses in OPN primitives received from said source*

5    *nodes to search said routing table to determine the ID of a remote*

6    *port coupled to the destination node having the destination address*

7    *in the OPN, and then establishing a data path through said crossbar*

8    *switch to said remote port and wherein each said port when it*

9    *receives an OPN and any following RRDYs from another port via*

10    *said crossbar switch, functioning to latch said OPN and RRDY and*

11    *arbitrate for and take control of its local FCAL net, and*

12         *continuing to try to take control of its local FCAL net until*

13    *control is achieved, and when control is achieved, sending said OPN*

14    *and any latched RRDYs to the destination node, and thereafter*

15    *using said data path through said crossbar switch to send primitives*

16    *and data frames back and forth between said source and destination*

17    *nodes until the transaction is completed without ever storing any*

18    *data frames.*

19    (Wolin Decl., Ex. B at 49:54-50:15, 50:24-61 (emphases added).)

20         **2.    The '500 Patent**

21         The '500 patent is directed to a "priority" mechanism that allows certain

22    ports in a Fibre Channel Arbitrated Loop to have higher priority levels than other

23    ports—resulting in the higher-priority ports establishing network connections

24    before the lower-priority ports.  (*See, e.g.*, Wolin Decl., Ex. C ['500 patent] at

25    37:16-38:28.)

26         Broadcom asserts claim 3; bold italics indicate the limitation that Emulex's

27    expert concedes is absent from the '203 patent:

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**

3.      A method for coupling a plurality of Fibre Channel Arbitrated

Loop (FCAL) nets, comprising:

providing a plurality of separate backplane data paths;

coupling a plurality of port integrated circuits by said separate

backplane data paths, each integrated circuit having integrated thereon

a port circuit and a portion of a crossbar switch; and

coupling FCAL net interface to at least one FCAL net, and the

portion of the crossbar switch,

*wherein each of said plurality of port integrated circuits has a*

*priority level for access to busy destination nodes.*

(*Id.* at 49:7-18 (emphasis added).)

### D.     Emulex's Invalidity Contentions Based On The '203 Patent

The '203 patent is titled "Fibre Channel Switching Fabric" and "relates to

input/output channel and networking systems, and more particularly to a digital

switch which switches Fibre Channel frames at link speeds of up to at least one

gigabit per second (i.e., one billion bits per second)."[3]  (Wolin Decl., Ex. D ['203

patent] at 1:4-9.)  Emulex asserts that the '203 patent anticipates claim 3 of the

'500 patent and claims 7 and 10 of the '691 patent.  (Wolin Decl., Ex. E [excerpts

from Expert Report of Gary Warden on the Invalidity of the Gadzoox Patents,

April 19, 2011] ¶¶ 228, 266, 280.)

The '203 patent is the only reference that Emulex asserts anticipates these

claims.  (Wolin Decl., Ex. F [excerpts from Rough Transcript of May 27, 2011

Deposition of Gary Warden] at 77:3-7 ("Q. Now I want to be very clear for the

---

[3]  Broadcom disputes that the '203 patent is prior art:  if the invalidity issues were
to proceed to trial, Broadcom would establish (including through inventor
testimony) that the inventions claimed in the '691 and '500 patents predate the
priority date of the '203 patent.  But for purposes of this motion only,
Broadcom does not contest that the '203 patent is prior art.

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1   record, the only prior art that you are arguing is anticipatory with respect to these

2   two patents in suit, the '500 and '691, is the '203 patent, correct? A. Yes."),

3   101:15-18 (Q. Now, you have identified one and only one prior art reference for

4   which you are opining on anticipation and that's the '203 patent, correct? A.

5   Yes."); Ex. E ¶¶ 228, 266, 280.)

6        As is evident from its title ("Fibre Channel Switching ***Fabric***"), the '203

7   patent is aimed principally at improving on the prior art fabric switches; this stands

8   in contrast to the '691 and '500 patents, which were aimed at introducing new

9   switching techniques into FCAL networks.  The basic difference in approach

10   results in divergent teachings in the '203 patent as compared to the '691 and '500

11   patents.

12        The Court need not take Broadcom's word for this:  as explained below,

13   Emulex's expert Mr. Warden (the owner and current sole employee of a

14   networking-technology-consulting company) conceded that the '203 patent does

15   ***not*** disclose every limitation of the asserted claims of the '691 and '500 patents.

16        Mr. Warden further admitted that for obviousness—where he again relies

17   only on the '203 patent—he did not even conduct a limitation-by-limitation

18   analysis of the asserted claims of the '691 and '500 patents.

19   **III.   Argument**

20        Emulex's invalidity attack on the '691 and '500 claims fails as a matter of

21   law.  Emulex cannot hurdle the gaps in its invalidity theories, gaps that its own

22   expert conceded.  The Court should dismiss Emulex's invalidity defense now and

23   thereby narrow the issues for trial.

24       **A.   Procedural Standards**

25        This case implicates two procedural standards: first, the standard for

26   summary judgment, and second, the standard of proof for invalidity.

27        Summary judgment is appropriate where there is not a genuine issue of

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011).

A patent is presumed valid and the burden of establishing invalidity rests on the party asserting invalidity.  35 U.S.C. § 282.  Invalidity must be shown by clear and convincing evidence, as the Supreme Court reaffirmed just last week. *Microsoft Corp. v. i4i Ltd. P'ship*, No. 10-290, __ U.S. __, slip op. at 1 (June 9, 2011) ("We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.").

Thus, to proceed to trial, Emulex must show that a reasonable juror could find that Emulex has clear and convincing evidence of invalidity.  Emulex cannot meet this showing because it does not have such evidence—to the contrary, Emulex's invalidity theories suffer from fundamental flaws.

### B. No Reasonable Juror Could Find Anticipation Based On The '203 Patent—Which Emulex's Expert Concedes Does Not Disclose All Limitations Of the Asserted Claims

Anticipation requires that a single prior art reference discloses, either expressly or inherently, ***each and every*** limitation of the claimed invention. *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1383 (Fed. Cir. 2011); *Finisar Corp., v. DirecTV Group, Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  A limitation that is not expressly taught in a reference is "inherently disclosed" if—and only if—it is "necessarily present," not merely "probably or possibly present," in the reference.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (quoting *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002)).

As explained below, Emulex's sole asserted prior art reference—the '203 patent—does not disclose (either expressly or inherently) at least one limitation of each of the asserted claims.  Emulex's expert confirmed this at his deposition.

BROADCOM'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY

1.     **The '203 Patent Does Not Disclose the Particular Uses of
Primitives Recited in Claims 7 and 10 of the '691 Patent**

Both claims 7 and 10 include detailed claim language (quoted in full *supra*
at 7-9) reciting very particular uses of primitives in making connections through
the switch.  The '203 patent does not disclose the specific uses of primitives
required by claims 7 and 10—as clearly and repeatedly conceded by Emulex's
expert:

> Q.     Let's turn to the '203 patent. Does '203 patent refer anywhere to open
> primitives and feel free to take your time and review it?
>
> A.     Off a quick skim I do not see any reference to the open primitive.
>
> *Q.     So claim 7 of the '691 refers to open primitives and '203 patent
> doesn't refer to open primitives, correct?*
>
> *A.     Correct.*

(Wolin Decl., Ex. F at 113:16-24 (emphasis added).)

> Q.     And the '203 patent doesn't discuss open primitives, correct?
>
> A.     Correct.

(*Id.* at 114:7-9.)

> Q.     No discussion [of] open or ready [primitives] in the '203, right?
>
> A.     No discussion.

(*Id.* at 114:25-115:1.)

> Q.     Nothing in the '203 patent that specifically describes the, as you put
> [it], method of use of open and ready primitives recited in claim 7 and
> claim 10, correct?
>
> A.     *I am confident nothing in the '203 would be implemented exactly
> like claim 7 and 10.*

(*Id.* at 124:6-11 (emphasis added).)

Emulex initially asserted that the references to the standardized FCAL
protocol in the '203 patent inherently disclose use of Open and Ready primitives;

1   that is, Emulex contended that using the protocol necessarily required the claimed

2   use of primitives.  (*See* Wolin Decl., Ex. E ¶ 265.)  Emulex's expert, however,

3   repeatedly conceded that the FCAL protocol does not "necessarily" use Open and

4   Ready primitives in the same manner required by claims 7 and 10.  This is because

5   the FCAL protocol does not require the use of Open and Ready primitives in the

6   particular approach recited by claims 7 and 10.  As Mr. Warden admitted:

7       Q.    Claim 7 includes a limitation involving open primitives, right?

8       A.    Yes.

9       Q.    The FCAL protocol refers to open primitives, right?

10      A.    Yes.

11      Q.    But if [sic] you [can use the] FCAL protocol without doing what is

12            described here in claim 7, right?

13      A.    Okay, so the question is you can use the FC – can you develop

14            something in FCAL protocol without doing what is claim 7.

15      Q.    Correct.

16      A.    Yes.

17      ***Q.    That is to say you don't need to do what is described in claim 7 each***

18            ***and every time you use the [FCAL protocol]?***

19      ***A.    Yes.***

20   (Wolin Decl., Ex. F at 116:8-117:2 (emphasis added).)

21      Q.    Claim 10, at this language beginning at column 50 line 42 recites a

22            particular way to use open and readys, correct?

23      A.    I hate that word use because it has a double meaning. It describes a

24            particular way of – a particular method of implementing them.

25      ***Q.    Fair enough, and that particular method is not required each and***

26            ***every time [the] FC-AL protocol is used, correct?***

27      ***A.    Correct.***

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR PARTIAL SUMMARY**
**JUDGMENT OF NO INVALIDITY**

1      Q.      Let's look at the next limitation which begins at column 50 line 54

2             and it begins "continuing to try to take control," do you see that?

3      A.      Yes.

4      Q.      And it refers to open and readys as well, do you see that?

5      A.      Yes.

6      Q.      Once again this is referring to a particular method of using opens and

7             readys, right?

8      A.      Yes.

9      *Q.*      *The FC-AL protocol doesn't require that particular method be used*

10             *each and every time, right?*

11      *A.*      *That is correct.*

12 (*Id*. at 118:15-119:12 (emphases added).)

13       Thus, the '203 patent's references to the standard FCAL protocol do not

14 inherently disclose the missing limitations from the claims 7 and 10, because the

15 FCAL protocol does not necessarily entail the use of Open and Ready primitives

16 required by claims 7 and 10. *See Therasense*, 593 F.3d at 1332. Indeed, Mr.

17 Warden conceded as much:

18      *Q.*      *The method of use recited [in] these claims is not inherent in the*

19             *FCAL protocol, correct?*

20      *A.*      *Yes.*

21 (Wolin Decl., Ex. F at 120:18-20 (emphasis added).)

22       Because Emulex's expert concedes that the '203 patent does not disclose the

23 use of Open and Ready primitives, and that the use of Open and Ready primitives

24 required by claims 7 and 10 is not inherent to the FCAL protocol referenced in the

25 '203 patent, Emulex's argument that the '203 patent anticipates claims 7 and 10

26 fails as a matter of law.

27

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

### 2. The '203 Patent Does Not Disclose a "Priority Level For Access to Busy Destination Nodes" as Required by Claim 3 of the '500 Patent

The last limitation of claim 3 requires that "each of said plurality of port integrated circuits has a priority level for access to busy destination nodes." (Wolin Decl., Ex. C at 49:16-17.)  This priority mechanism allows certain ports in a Fibre Channel Arbitrated Loop to have higher priority levels than other ports—resulting in the higher-priority ports establishing network connections before the lower-priority ports.  (*See, e.g.*, *id.* at 37:16-38:28.)

The '203 patent does not disclose "a priority level for access to busy destination nodes," as Emulex's expert admits:[4]

> Q.    Look at the last sentence in claim 3. Do you see where it says
>        "wherein each of said [plurality of] port integrated circuit[s has a
>        priority level for] access [to] busy destination nodes"? Do you
>        see that?
>
> A.    Yes.
>
>        . . .
>
> *Q.    It's your opinion [that the] '203 patent does not teach or describe*
>        *precisely that claim limitation in claim 3 of the '500 patent, correct?*
>
> *A.    Under our proper viewing of the claim elements that would be true.*

(Wolin Decl., Ex. F at 125:22-126:18 (emphasis added).)

Mr. Warden suggested that under "Broadcom's construction" of the claim, the priority mechanism would be present.  (*Id.* at 125:5-7 ("I was using what [I] perceived to be a broader interpretation of the claim elements from Broadcom.")

---

[4]    In his report, Emulex's expert cited certain language in the '203 patent which he opined taught the priority mechanism, but at his deposition he did not cite or defend this portion of his report—rather, he relied on the conclusory suggestion that Broadcom's infringement theory somehow embraced a priority mechanism like that in the '203 patent.

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1    But Broadcom has never asked the Court to construe any term in claim 3—

2    including the priority limitation—and in neither his report nor his deposition did

3    Mr. Warden articulate how Broadcom's infringement theories compelled the

4    conclusion that Broadcom was treating the "priority" limitation as being broad

5    enough to embrace the '203 patent.

6         In the absence of this showing, Emulex's anticipation contention as to the

7    '500 claim must also fail, as Mr. Warden concedes that under a "proper viewing"

8    of the claim the '203 patent does not teach or describe the precise priority

9    limitation recited in claim 3 of the '500 patent. *See, e.g., Schumer v. Lab.*

10    *Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("Typically, testimony

11    concerning anticipation must be testimony from one skilled in the art . . . and

12    explain in detail how each claim element is disclosed in the prior art reference.").

13        **C.**    **No Reasonable Juror Could Find Obviousness Based On**

14            **Emulex's Theory—Emulex's Expert Has Not Even Conducted A**
            **Limitation-By-Limitation Analysis Of The Asserted Claims**

15         Obviousness requires that the party challenging the validity of a patent show

16    that the "differences between the patented subject matter and the prior art would

17    have been obvious at the time of invention to a person of ordinary skill in the art."

18    *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1258 (Fed. Cir. 2007); *Innovention*

19    *Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1320 (Fed. Cir. 2011).  The

20    Supreme Court has articulated a four part test for obviousness, under which the

21    court must consider "(1) the scope and content of the prior art; (2) the difference

22    between the prior art and the claimed invention; (3) the level of ordinary skill in

23    the art; and (4) any objective evidence of nonobviousness." *Transocean Offshore*

24    *Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303

25    (Fed. Cir. 2010) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

26         To establish obviousness, ***each and every*** limitation of the claim must be

27    proven obvious.  *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1300-01

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1   (Fed. Cir. 2010) ("Given the failure to prove that the cited references disclose

2   element (a)(3), the government has failed to carry its burden of proving by clear

3   and convincing evidence that the claimed invention would have been obvious to

4   one of skill in the art."); *In re Thrift*, 298 F.3d 1357, 1366 (Fed. Cir. 2002)

5   (vacating a finding of obviousness by the Board of Patent Appeals and

6   Interferences because "the cited references do not support each limitation of claim

7   11").

8          Emulex has failed to establish a *prima facie* case for obviousness for the

9   '500 and '691 patents.  Emulex has asserted obviousness based solely on the '203

10  patent, and will not argue a combination of the '203 with any other references.

11  (*See* Wolin Decl., Ex. F at 94:18-23 ("Q. And in this section you refer specifically

12  to the '203 patent, correct? A. Yes. Q. And that is the foundation for your

13  obviousness analysis, correct? A. Yes."), 95:18-21 ("Q. And you do not

14  specifically recite any way to combine the '203 with another prior art reference,

15  correct? A. Correct."), 96:17-25 ("Q. And you will not offer at trial [an] opinion

16  [on] any combination of the '203 patent with some other prior art reference,

17  correct? A. For obviousness. Q. For obviousness? A. Yes. ***Q. So is it fair to say***

18  ***this is a single reference, the '203 patent, obviousness argument? A. Yes.***")

19  (emphasis added).)

20         Emulex's expert has clearly and repeatedly conceded that he has not

21  undertaken the requisite limitation-by-limitation analysis of asserted claims of the

22  '500 and '691 patents.  For example:

23      Q.    You have not in this section set out any limitation by limitation

24            analysis of the asserted claims, correct?

25      A.    Yes.

26      ***Q.    So you will not offer at trial any obviousness analysis based on the***

27            ***limitation by limitation analysis of the asserted claims, correct?***

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

1    **_A.      Yes._**

2    (*Id*. at 96:7-14 (emphasis added).)

3    **_Q.      But Mr. Warden, you do not conduct an element by element analysis_**

4    **_of the asserted claims in your section, correct?_**

5    **_A.      That is correct._**

6    (*Id*. at 97:15-18 (emphasis added).)

7        This is a critical deficiency that results in Emulex's obviousness defense

8    failing as a matter of law.  Because Mr. Warden will necessarily be foreclosed

9    from offering a limitation-by-limitation analysis at trial, Emulex would be forced

10   to try to prove invalidity—on which Emulex bears the burden of proof—by using

11   attorney argument to "fill the gaps."

12       The law forbids this in circumstances like those here.[5]  In *Proveris*, for

13   example, the Federal Circuit upheld JMOL in favor of patent-holder because the

14   party asserting invalidity could not present "expert testimony to substantiate its

15   invalidity defenses" of anticipation and obviousness.  536 F.3d at 1267-68.

16   Likewise, in *Koito*, the Federal Circuit vacated a denial of JMOL on anticipation

17   and obviousness where the party asserting invalidity merely entered a prior art

18   reference into evidence and failed to provide any testimony explaining the

19   reference.  381 F.3d at 1151.  The *Koito* decision recognized that because the party

20   asserting invalidity "failed to articulate how the [asserted reference] anticipates or

21   makes obvious the [patent-in-suit], it has not presented sufficient evidence for the

22   jury with respect to the [asserted reference]."  *Id*. at 1152.   So too here.

23

24   _____

25   [5]   The Federal Circuit has found expert testimony unnecessary where "the
     references and the invention are easily understandable."  *Wyers v. Master Lock*

26   *Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010).  But Emulex itself has characterized
     the technology in this case as complicated and challenging for lay jurors to

27   understand.  *See, e.g.*, Joint Status Report, D.I. 388, at 4 (June 9, 2011).

28

**BROADCOM'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NO INVALIDITY**

## IV.    Conclusion

For the foregoing reasons, Broadcom respectfully requests that the Court grant summary judgment in Broadcom's favor on Emulex's defense of invalidity to the asserted '691 and '500 patents.


Dated: June 13, 2011                           WILMER CUTLER PICKERING
                                               HALE AND DORR LLP

                                               By:   /s/ Joseph J. Mueller
                                                     Joseph J. Mueller

                                               Attorneys for Plaintiff
                                               BROADCOM CORPORATION

19

US1DOCS 7966716v1