1  Juanita R. Brooks (SBN 75934)
     *brooks@fr.com*
2  FISH & RICHARDSON P.C.
   12390 El Camino Real
3  San Diego, CA 92130
   Telephone: (858) 678-5070
4  Facsimile: (858) 678-5099

5  *(Additional counsel listed on signature page)*

6  Attorneys for Defendant and Counterclaimant
   EMULEX CORPORATION

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    (SOUTHERN DIVISION)

11

| | |
|---|---|
| 12  BROADCOM CORPORATION, | Case No. CV 09-1058-JVS (ANx) |
| 13       Plaintiff, | consolidated with CV 10-3963 JVS (ANx) |
| 14       v. | **DEFENDANT EMULEX CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT PLAINTIFF BROADCOM CORPORATION IS NOT ENTITLED TO LOST PROFITS DAMAGES** |
| 15  EMULEX CORPORATION, | |
| 16       Defendant. | |
| 17 | |
| 18 | |
| 19 | |
| 20 | ▋▋▋▋▋▋▋▋▋ |
| 21 | |
| 22  And Related Counterclaims | Hearing Date:  July 25, 2011 |
| 23 | Time:          1:30 p.m. |
|    | Place:         Courtroom 10C |
| 24 | Before:        Hon. James V. Selna |

25  ▋▋▋▋▋▋▋▋▋▋▋▋

26  ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

27  ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

28  ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ....................................................................2

    A.  The Asserted Patents ...........................................................................2

    B.  Broadcom's Perception of Emulex as a Competitor.............................2

    C.  Broadcom's Attempted Acquisition of Emulex....................................2

    D.  The Hewlett-Packard Design Wins......................................................3

III.    STATEMENT OF LAW .......................................................................5

    A.  Summary Judgment .............................................................................5

    B.  Lost Profits .........................................................................................5

IV.     ARGUMENT ........................................................................................6

    A.  Broadcom Lacked the Ability to Exploit ████████ Demand for FCoE ...................................................................................................7

    B.  QLogic's Competition ████████ Defeats Broadcom's Arguments under the "But For" Test...........................................................9

    C.  Broadcom Fails to Demonstrate the Absence of Non-Infringing Substitutes and Fails the "But For" Test .....................................................11

    D.  Broadcom Cannot Seek "Lost Profits" for Lost Sales That Have Not and May Never Occur.............................................................................13

V.      CONCLUSION ....................................................................................13

CASE NO. CV 09-1058-JVS (ANx)

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3 *Am. Seating Co. v. USSC Group, Inc.*,
   514 F.3d 1262 (Fed. Cir. 2008)..................................................................4

4

5 *Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................5

6 *BIC Leisure Prods. v. Windsurfing Int'l*,
   1 F.3d 1214 (Fed. Cir. 1993).....................................................................12

7

8 *Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................5

9 *Cohesive Techs., Inc. v. Waters Corp.*,
   543 F.3d 1351 (Fed. Cir. 2008)..................................................................6

10

11 *Ericsson, Inc. v. Harris Corp.*,
    352 F.3d 1369 (Fed. Cir. 2003)..................................................................5

12 *Grain Processing Corp. v. Am. Maize-Prods.*,
    185 F.3d 1341 (Fed. Cir. 1999)..............................................................6, 12

13

14 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................5

15 *Oiness v. Walgreen Co.*,
    88 F.3d 1025 (Fed. Cir. 1996)..............................................................6, 13

16

17 *Pall Corp. v. Micron Separations, Inc.*,
    66 F.3d 1211 (Fed. Cir. 1995)...................................................................11

18 *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152, 1156 (6th Cir. 1978)......................................................6, 10

19

20 *Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
    383 F.3d 1303 (Fed. Cir. 2004)..................................................................5

21 *Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995).............................................................5, 8, 12

22

### <u>Rules</u>

23 Fed. R. Civ. P. 56(c) ...................................................................................5

24

25

26

27

28

ii

## I.    INTRODUCTION

Broadcom alleges that it is entitled to lost profits damages from Emulex. Broadcom bases its claim entirely on two Hewlett-Packard ("HP") design wins, but Broadcom undisputedly offered a product that fell short ████████████. ███████████ Specifically, Broadcom's 57711 Ethernet controller lacked the Fibre Channel over Ethernet ("FCoE") functionality ████████████ – a functionality wholly separate from any of the patents asserted in this case. It should come as no surprise that Emulex secured the HP design wins, given that its products offered the FCoE functionality ███████████ and that Broadcom's products did not.

Nonetheless, Broadcom asserts that it would have captured 100% of the HP business "but for" Emulex's alleged infringement. Broadcom's argument fails for at least four independent reasons:

- Broadcom lacked the ability to exploit HP's demand because it did not have a product with established FCoE functionality ███████████████

- Broadcom ignores QLogic – a competitor that offered established FCoE functionality. No reasonable jury could conclude that Broadcom would have captured 100% of HP's business but for Emulex's alleged infringement.

- Broadcom ignores several non-infringing alternatives available in the market. Emulex could have used these alternative, non-infringing circuits in its products and still secured the HP win, without any alleged infringement.

- The alleged "damages" for one of the two design wins have not actually occurred, and Broadcom does not even attempt to quantify these alleged damages in its expert report.

Lost profits is an exceptional remedy available only in specific circumstances. Those circumstances are not present here, even taking all inferences in favor of Broadcom. The Federal Circuit has determined that whether lost profits are recoverable is a preliminary question of law for the Court to decide, and this issue is ripe for summary judgment. For the reasons given below, the Court should grant partial summary judgment that Broadcom is not entitled to lost profits damages.

1

## II.   STATEMENT OF FACTS

### A.   The Asserted Patents

Broadcom currently asserts infringement of the following seven U.S. Patents: 6,424,194 ("the '194 patent"), 7,486,124 ("the '124 patent"), 7,724,057 ("the '057 patent"), 7,058,150 ("the '150 patent"), 7,313,623 ("the '623 patent"), 7,471,691 ("the '691 patent"), and 7,450,500 ("the '500 patent").  For purposes of this motion, the '194, '124, and '057 patents are referred to collectively as the "current steering patents."  As set forth in the May 16, 2011 Expert Report of Julie L. Davis, Broadcom seeks lost profits damages only with respect to the three current steering patents.  (Ex. A at 29-30.)  With respect to the rest, Broadcom seeks damages under the theory of a reasonable royalty.  (Ex. A at 29-30.)

### B.   Broadcom's Perception of Emulex as a Competitor

Broadcom claims the Emulex accused products compete with Broadcom's 57710, 57711, 57712, 57800, 57810, and 57840 Ethernet controller products.  (Ex. A at 25.)  These Broadcom products purportedly provide "similar functionality and features" to Emulex's OneConnect products.  (Ex. A at 25.)   Broadcom specifically seeks█████████ in damages under its lost profits theory.  (*See, e.g.,* Ex. A at 41.)

Ms. Davis states that Emulex became Broadcom's competitor after its introduction of the 10 Gbps OneConnect Universal Converged Network Adapter ("UCNA") in 2009.  (Ex. A at 25.)  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### C.   Broadcom's Attempted Acquisition of Emulex

█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2



Broadcom's acquisition attempt of Emulex was ultimately unsuccessful. Broadcom has yet to offer a generally available FCoE solution in its products.

### D. The Hewlett-Packard Design Wins

According to Ms. Davis, all lost profits damages allegedly stem from the design wins with Hewlett-Packard.  (Ex. A at 30-31.) As explained by Ms. Davis:

3

1

2

3

4

Emulex and Broadcom compete for design wins from original equipment manufacturer ("OEM") customers. The term 'design win' refers to a customer's commitment to use a part for some period of time in its products. An exclusive, or sole-source design win is one in which the customer commits to use only one supplier for a particular part.

5 (Ex. A at 30.)

6 ████████████████████████████████████████

7 ████████████████████████████████████ Broadcom's 57711

8 product does not provide FCOE functionality. ████████████████████

9 ████████████████████████████████████████████

10 ██████████ Broadcom argues that, absent Emulex's competition, it would

11 have won all of the ██████ business from HP. (*See, e.g.*, Ex. A at 36.)

12 ████████████████████████████████████████

13 ████████████████████████████████

14 ████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████████████████

17 ████████████████████████████████████

18 ████████████████████████████████

19 ████████████████████████████████████████

20 Ms. Davis advances the theory that "but for" Emulex's infringement, Broadcom

21 would have allegedly garnered 100% of this business. (Ex. A at 38.) ████████

22 ████████████████████████ Ms. Davis did not include any related sales in her

23 actual calculation of lost profits. (*Id.*) She instead reserves the right to do so later.

24 (*Id.*)

25

26

27

28

4

III.   **STATEMENT OF LAW**

A.   **Summary Judgment**

Broadcom bears the burden of proving entitlement to damages under a theory of lost profits. *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1269 (Fed. Cir. 2008).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "Once this initial showing is made by the movant, the burden then shifts to the nonmovant to demonstrate the existence of a genuine dispute." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"The availability of lost profits is a question of law for the court, not the jury." *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004). Only after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1373 (Fed. Cir. 2003).

B.   **Lost Profits**

To recover lost profits for patent infringement, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the alleged infringer. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The Federal Circuit commonly applies a four-factor

5

1   test to determine entitlement to lost profits damages.  Under what is known as the

2   *Panduit* test, the patentee must prove: (1) demand for the patented product; (2)

3   absence of acceptable non-infringing substitutes; (3) manufacturing and marketing

4   capability to exploit the demand; and (4) the amount of the profit it would have

5   made.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1372 (Fed. Cir.

6   2008) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156

7   (6th Cir. 1978)).

8        "To show causation and entitlement to lost profits, a patentee must

9   reconstruct the market to show 'likely outcomes with infringement factored out of

10  the economic picture.'"  *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d

11  1341, 1350 (Fed. Cir. 1999).  Such market reconstruction, though hypothetical,

12  requires "sound economic proof of the nature of the market."  *Id*; *see also Oiness v.*

13  *Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996) ("[T]he factfinder must have

14  before it such facts and circumstances to enable it to make an estimate of damage

15  based upon judgment, not guesswork.") (internal citations omitted).

16  **IV.   ARGUMENT**

17       Lost profits damages are awarded only in exceptional cases where certain,

18  specific tests are met.  Here, Broadcom's claim fails for four separate and distinct

19  reasons.  First, Broadcom did not have an established FCoE product at the time it

20  was competing for the HP design wins, ██████████████████████████████

21  ████████████████████████ Second, ██████████████████████████

22  ████████████████████████Broadcom cannot show that it would have won

23  all of HP's purchases if Emulex was not in the picture.  Third, Broadcom cannot

24  show the absence of acceptable, non-infringing substitutes.  Fourth, there are no

25  "damages" for one of the two Emulex "design wins."  No reasonable jury could

26  award lost profits under these circumstances, and summary judgment is therefore

27  appropriate.

28

CASE NO. CV 09-1058-JVS (ANx)

## A.    Broadcom Lacked the Ability to Exploit ████████████ Demand for FCoE

The third prong of the *Panduit* test requires Broadcom to prove that it had the capability to exploit Hewlett-Packard's demand within the context of the ████████ ██████ design wins. 575 F.2d at 1156.  Broadcom cannot overcome the fact that ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
██████

████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

There is no dispute that Broadcom did not have an established FCoE-capable product at the time of the ████████████████████ design-ins. ████████████████ ██████████████████████████████████████████████ ██████████████████████████████ Emulex's BE2 and BE3 chips offer FCoE

7



1  capability; Broadcom's 57711 controller does not.  (Ex. G at 208:1-3.)  It should

2  come as no surprise that Broadcom's 57711 was defeated because ▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Also, as

4  explained in more detail below, the Broadcom chips involved in the ▮▮▮win are

5  not generally available yet, and Broadcom still does not offer a generally available

6  FCoE solution. ▮▮▮▮▮▮▮

7       Broadcom's cognizance of its own shortcomings in FCoE is further evidenced

8  by its attempt to acquire Emulex in order to gain FCoE capability.  As noted above,

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Broadcom's CEO said the acquisition

15  was a "good strategic fit" because it "allows us to participate in the architectural

16  transition to Fibre Channel over Ethernet."  (Ex. D at 9, 14 & 16.)  Without Emulex,

17  Broadcom had no FCoE.  In the wake of the acquisition's failure, Broadcom now

18  attempts to claim ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮

20       Because Broadcom cannot show that it could have met Hewlett-Packard's

21  needs due to its lack of a credible FCoE solution, the Court should find as a matter

22  of law that Broadcom has not made the requisite showing under *Panduit's* third

23  prong and is not entitled to lost profits damages.

24

25

26

27

28

8

CASE NO. CV 09-1058-JVS (ANx)

**B.     QLogic's Competition ████████████ Defeats Broadcom's Arguments under the "But For" Test**

Broadcom did not have a credible FCoE solution, but another company did – QLogic. QLogic's ████████████ destroys Broadcom's "but for" causation argument.

To recover lost profits for patent infringement, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. *Rite-Hite*, 56 F.3d at 1545. Broadcom claims that it would have captured 100% of HP's business but for Emulex's alleged infringement, but as set forth above, ████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

9



QLogic's most recent Form 10-K lists Hewlett-Packard as QLogic's *largest* customer in each of its 2009-11 fiscal years, representing 21% (FY2009), 24% (FY2010), and 25% (FY2011) of QLogic's net revenues, respectively.  (*See* Ex. K.)  No reasonable jury could find on these facts that *all* sales would have gone to Broadcom and *none* would have gone to QLogic if Emulex were not in the picture.  The availability of this viable, third supplier destroys Broadcom's "but for" causation argument for lost profits, and summary judgment is therefore appropriate as a matter of law.

CASE NO. CV 09-1058-JVS (ANx)

1   **C.    Broadcom Fails to Demonstrate the Absence of Non-**

2   **Infringing Substitutes and Fails the "But For" Test**

3   The second *Panduit* prong requires proof of the "absence of acceptable non-

4   infringing substitutes…."  575 F.2d at 1156.  Even if the Court interprets all facts in

5   favor of Broadcom, Broadcom has not addressed the possibility of a non-infringing

6   "buy-around."

7   The only asserted patents where lost profits are claimed related to "current

8   steering" functionality in Serializer/Deserializer ("SERDES") circuitry.  Emulex

9   does not make its own SERDES.  Instead, Emulex buys SERDES from several

10  third-party vendors█████████████████████████████████

11  █████████████   Rather than buying allegedly infringing SERDES from its current

12  suppliers, Emulex could have instead purchased SERDES that indisputably do not

13  infringe Broadcom's patents, and Emulex could still provide the FCoE functionality

14  HP required.  At least three different, non-infringing alternative SERDES existed at

15  the time of the two HP design wins.

16  First, Emulex could have purchased substitute, non-infringing current steering

17  circuitry from a Broadcom-licensed supplier such as Intel.  ██████████████

18  ██████████████████████████████████████

19  ████████████████████████████████████████

20  ███ Intel makes SERDES██████████████████  (*See* Ex. M

21  (describing Intel 10 Gbps SERDES)).████████████████████

22  ██████████████████████████████████████

23  ████████████████████████████████

24  ████████████████████████████████████████

25  ██████████████████████████

26  Second, Emulex could have purchased SERDES circuitry from other third-

27  party SERDES manufacturers such as Gennum/Snowbush Corporation

28

11

1  ("Snowbush"). ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████████ █ ██████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  █████████████████████████████████████████████

10    ████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ██████████████████████████████████

14      There is no genuine dispute that all three of these SERDES were viable, non-

15  infringing alternatives. First, each was "available" at the time of infringement in

16  that they were being publicly sold and offered for sale. *See Grain Processing*, 185

17  F.3d at 1350. Second, the record indicates that ████████████████████████████

18  ████████████████████████████████ rendering these alternatives

19  "acceptable" under the yardstick articulated by the Federal Circuit. *See BIC Leisure

20  Prods. v. Windsurfing Int'l,* 1 F.3d 1214, 1218 (Fed. Cir. 1993). Third, with respect

21  to the Intel SERDES, ████████████████████████████████████████

22  ████████████ Finally, with respect to Snowbush and QLogic, Broadcom was asked

23  during discovery to identify any opinions concerning the alleged infringement of

24  any of the patents in suit by anyone (not limited to Emulex), and ████████████████

25  ████████████████████████████████████ (*See* Ex. P at

26  Interrogatory Nos. 6, 9 & 10.)

27

28

12

1    Because Emulex had multiple viable, non-infringing alternatives available to
2    replace the allegedly infringing SERDES, this Court should find as a matter of law
3    that Broadcom cannot satisfy the second prong of *Panduit* and is not entitled to lost
4    profits damages.

5        **D.    Broadcom Cannot Seek "Lost Profits" for Lost Sales That**
6              **Have Not and May Never Occur**

7    Lost profits are only appropriate when a company actually loses some sales
8    (and therefore profits) to a competitor that it would have made "but for" their
9    infringement. *Rite-Hite*, 56 F.3d at 1545. ███████████████████████████
10   ████████████████████████████████████████████████████████████████
11   ████████████████████████████████████████████████████████████████
12   ████████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████████████████
15   ███████████████████████████████    Ms. Davis does not even attempt to
16   estimate the damages ████████████████████ in her calculation of lost profits.
17   (Ex. A at 38.)  She instead reserves the right to do so later.  (*Id.*)

18       "The burden of proving future injury is commensurately greater than that for
19   damages already incurred, for the future always harbors unknowns." *Oiness*, 88
20   F.3d at 1031.  Here, because the ██████████ "damages" have not yet occurred, and
21   because they may never occur ███████████████████. Broadcom cannot
22   seek lost profits damages as a matter of law.

23   **V.    CONCLUSION**
24       For the reasons set forth above, this Court should find that Broadcom is not
25   entitled to claim lost profits damages as a matter of law, and the Court should grant
26   Emulex's motion for partial summary judgment.

27

28

13

CASE NO. CV 09-1058-JVS (ANx)

1  Dated:  June 17, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISH & RICHARDSON P.C.

By:
    Jonathan J. Lamberson

Attorneys for Defendant and
Counterclaimant
EMULEX CORPORATION

50784355.doc

14

CASE NO. CV 09-1058-JVS (ANx)

1 | *Additional Counsel*

2 | David M. Barkan (SBN 160825)
   *barkan@fr.com*
3 | Jonathan J. Lamberson (SBN 239107)
   *lamberson@fr.com*
4 | FISH & RICHARDSON P.C.
   500 Arguello Street, Suite 500
5 | Redwood City, California 94063-1526
   Telephone:  (650) 839-5070
6 | Facsimile:  (650) 839-5071

7 | Joseph V. Colaianni, Jr. (*pro hac vice*)
   *colaianni@fr.com*
8 | FISH & RICHARDSON P.C.
   1425 K Street, N.W., 11th Floor
9 | Washington, DC 20005
   Telephone:  (202) 783-5070
10 | Facsimile:  (202) 783-2331

11 | Thomas H. Reger II (*pro hac vice*)
   *reger@fr.com*
12 | FISH & RICHARDSON P.C.
   1717 Main Street, Suite 5000
13 | Dallas, Texas 75201
   Telephone:  (214) 747-5070
14 | Facsimile:  (214) 747-2091

15 | Wasif H. Qureshi (*pro hac vice*)
   *qureshi@fr.com*
16 | FISH & RICHARDSON P.C
   One Houston Center
17 | 1221 McKinney Street, 28th Floor
   Houston, Texas 77010
18 | Telephone:  (713) 654-5300
   Facsimile:  (713) 652-0109

19 |

20 | 50784355.doc

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

15

CASE NO. CV 09-1058-JVS (ANx)