Juanita R. Brooks (SBN 75934)
*brooks@fr.com*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*(Additional counsel listed on signature page)*

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

BROADCOM CORPORATION,

Plaintiff,

v.

EMULEX CORPORATION,

Defendant.

And Related Counterclaims

Case No. CV 09-1058-JVS (ANx)

consolidated with CV 10-3963 JVS (ANx)

**DEFENDANT EMULEX CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INFRINGEMENT (COUNT 11)**

**FILED UNDER SEAL**

Hearing Date: July 25, 2011
Time: 1:30 p.m.
Place: Courtroom 10C
Before: Hon. James V. Selna

**RESTRICTED DOCUMENTS PURSUANT TO L.R. 79-5**

**THIS DOCUMENT IS SUBJECT TO A PROTECTIVE ORDER ISSUED BY THE COURT ON FEBRUARY 19, 2010 AND IS FILED IN ACCORDANCE THEREWITH. THIS ENVELOPE IS NOT TO BE OPENED NOR ARE THE CONTENTS TO BE EXAMINED, DISPLAYED, REVEALED OR COPIED EXCEPT IN COMPLIANCE WITH SAID PROTECTIVE ORDER**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. TECHNOLOGY BACKGROUND .......... 2
III. STATEMENT OF FACTS .......... 5
A. The Asserted Claims of the '150 Patent .......... 5
B. Broadcom's Allegations of Infringement of the '150 Patent .......... 5
6. Doctrine of Equivalents .......... 9
IV. STATEMENT OF LAW .......... 9
A. Summary Judgment .......... 9
V. ARGUMENT .......... 10
VI. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 10

*Chef America, Inc. v. Lamb-Weston, Inc.*, 58 F.3d 1371 (Fed. Cir. 2004) .......... 14

*Markman v. Westview Instruments*, 517 U.S. 370 (1996) .......... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 10

*Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870 (Fed. Cir. 2004) .......... 10

## I. INTRODUCTION

With respect to Count 11's U.S. Pat. No. 7,058,150 ("the '150 patent"), summary judgment of non-infringement is appropriate because none of the accused Emulex products includes the single "interpolator control module" required by all asserted claims. The plain language of the asserted claims refers to "the" interpolator control module being "coupled to *each* receive lane" and adapted to control the phase interpolators in *each* receive-lane.[1]

Both parties' technical experts on the '150 patent have been deposed, and there is no factual dispute regarding the relevant structure and operation of the accused products.

Thus, the only dispute between the parties is a legal one relating to the interpretation of the "interpolator control module" limitation.

---

[1] Ex. 1, U.S. Patent No. 7,058,150 (the "'150 Patent"), at col. 38:64-39:3 (emphasis added).

[redacted] And Broadcom's expert Dr. Stojanovic has proffered no opinions regarding infringement under the doctrine of equivalents.[3]

Therefore, Emulex respectfully requests that the Court grant summary judgment of non-infringement of claims 8, 12, and 13 of the '150 patent.

## II. TECHNOLOGY BACKGROUND

The '150 Patent generally describes systems and techniques for processing high data rate signals in a data communication device, including techniques for recovering clock and data signals from received high speed serial data signals. Like the '194, '124, and '057 patents, the '150 Patent relates to circuit elements that can be used in a serializer/deserializer ("SERDES") integrated circuit.

Fig. 4A of the '150 Patent, reproduced below, illustrates an example high speed serial data signal in which data is encoded in the signal by varying the signal value between "+" and "-" over time (t). In order to facilitate digital processing of the signal, the receiver converts the analog signal to a digital data signal by converting the wave form into a series of 1's and 0's. In the waveform illustrated above, the values above the zero-line (408) are represented by a digital "1" value

[3] Ex. 2, Stojanovic Tr., at 234:14-238:13.

and values below the zero-line are represented by a digital "0" value. The serial data signal is converted to 1's and 0's by "sampling" the signal.

Figs. 5A-5C of the '150 Patent, reproduced below, illustrate the sampling of a serial data signal at sample times td1, tp1, td2, tp2, td3, tp3. The data samples (504) are snapshots of the serial data signal (502) that are taken at sample times determined, for example, by the rising edge of a sampling signal.

It is important for the sampling of the signal to be done at the appropriate times. For example, sampling the data at the center of a peak (or trough) of the signal would yield highly accurate results because it is likely that the peaks represent 1's and the troughs represent 0's. Sampling the signal during the

transition period of the signal, however, introduces error into the system because it may not be known if the signal is truly a 1 or 0 at the time it is being sampled. It is important, therefore, for the sampling signal and the data signal to be in synch. For a variety of reasons, however, the relative timing of the peaks and troughs of the data signal may drift slightly over time. Thus, there needs to be a mechanism by which to adjust the timing of the sampling signal to match the changes in the rate of the data signal. (*See* Ex. 1 at 8:40-45).

In the '150 patent, the mechanism that adjusts the sampling signal to match the rate of the data signal is a phase interpolator. According to the '150 patent, there is a phase interpolator in each receive-lane. Because the asserted claims of the '150 patent require there to be multiple receive-lanes each receiving serial data signals, there are multiple phase interpolators – one for each lane. The phase interpolator in each receive-lane rotates the phase of the sampling signal so that the sampling signal is in synch with the serial data signal in that receive-lane. (*See, e.g.*, Ex. 1 at 23:11-15, 23:48-55; 26:4-15).

Asserted claim 8 specifies that each receive-lane has a respective phase interpolator and that an interpolator control module is connected to and controls each of the multiple phase interpolators. For each receive-lane, the interpolator control module measures the phase and frequency difference between the lane's input serial data signal and sampling signal, and generates control signals that are provided to the lane's phase interpolator and cause each phase interpolator to rotate the phase of the sampling signal for each lane at a rate corresponding to the frequency offset between the serial data signal and the sampling signal in order to reduce the frequency offset.[4]

---

[4] Ex. 1 at 38:64-39:5.

## III. STATEMENT OF FACTS

### A. The Asserted Claims of the '150 Patent

Broadcom has asserted claims 8, 12 and 13 of the '150 patent. Claim 8 recites:

> 8. A communication device configured to receive multiple serial data signals, comprising:
>
> a master timing generator adapted to generate a master timing signal;
>
> multiple receive-lanes each configured to receive an associated one of the multiple serial data signals, each receive-lane including a phase interpolator adapted to produce a sampling signal having an interpolated phase, and a data path adapted to sample and quantize the associated serial data signal in accordance with the sampling signal; and
>
> an interpolator control module coupled to each receive-lane, the interpolator control module being adapted to cause the phase interpolator in each receive-lane to rotate the interpolated phase of the sampling signal in the receive-lane at a rate corresponding to a frequency offset between the sampling signal and the serial data signal associated with the receive-lane so as to reduce the frequency offset between the sampling signal and the serial data signal.[5]

Claims 12 and 13 are dependent on claim 8.[6] The Court was not asked by the parties to construe any language of "interpolator control module" limitation of claim 8. Instead, the parties agreed that this language should be accorded its plain and ordinary meaning to a person having ordinary skill in the art. (*See* Ex. 3 (Letter of Sept. 14, 2010 from Tompros to Jalali) at 2).

### B. Broadcom's Allegations of Infringement of the '150 Patent

Broadcom has accused the Lancer, Blade Engine 3 ("BE3"), Blade Engine 2 ("BE2"), SOC422, SOC 804, and SOC 442 products (collectively, "the Accused

[5] Ex. 1 at 38:52 – 39:5.
[6] Ex. 1 at 39:25-41.

Products") of infringing claims 8, 12 and 13 of the '150 patent.[7] [redacted]

6

CASE NO. CV 09-1058-JVS (ANx)

[Page content redacted]

[redacted]

8

CASE NO. CV 09-1058-JVS (ANx)

#### 6. Doctrine of Equivalents

Dr. Stojanovic proffered no opinions regarding infringement under the doctrine of equivalents, and confirmed during his deposition that he did not undertake any specific function-way-result analysis to assess infringement by equivalents.[20]

## IV. STATEMENT OF LAW

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex*

---

[17] Ex. 2, Stojanovic Tr., at 182:24-183:4.

[18] Ex. 4, Dr. Stojanovic Infringement Report, at ¶ 218; Ex. 12, Ex. H to Dr. Stojanovic Infringement Report, at pp. 13-15; Ex. 2, Stojanovic Tr., at 230:22-231:17; Ex. 13 at TEAC0308, TEAC0356, TEAC0358.

[19] Ex. 2, Stojanovic Tr., at 231:9-17.

[20] Ex. 2, Stojanovic Tr., at 234:14-238:13.

*Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that there is no material factual dispute, and the Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

An infringement analysis requires a two-step process; the first step is to determine the proper meaning and scope of the claims, and the second step is to compare the properly-construed claims to the accused products. *See Superguide Corp. v. DirecTV Enters.*, 358 F.3d 870, 874 (Fed. Cir. 2004). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *See Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996).

## V. ARGUMENT

Broadcom has accused certain Emulex products of infringing claims 8, 12 and 13 of the '150 patent. Claims 12 and 13 depend from independent claim 8. Claim 8 recites, *inter alia*:

> an interpolator control ***module*** coupled to each receive-lane, ***the*** interpolator control ***module*** being adapted to cause the phase interpolator in ***each*** receive-lane to rotate the interpolated phase of the sampling signal in the receive-lane at a rate corresponding to a frequency offset between the sampling signal and the serial data signal associated with the receive-lane so as to reduce the frequency offset between the sampling signal and the serial data signal.[21]

---

[21] Ex. 1, '150 Patent, at 38:64 – 39:5 (emphasis added).

The Accused Products do not literally infringe claim 8 of the '150 patent or its dependent claims 12 and 13 because none of the Accused Products includes "*the* interpolator control module" of claim 8.[22] [redacted]

11

CASE NO. CV 09-1058-JVS (ANx)



///

///

///

12

CASE NO. CV 09-1058-JVS (ANx)



Broadcom cannot use the Court to reform the unambiguous claim language. "Where the claim is susceptible to only one reasonable construction, the canons of claim construction [] are inapposite, and [the Court] must construe the claims based on the patentee's version of the claim as he himself drafted it." *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (affirming grant of summary judgment of noninfringement).

Therefore, Broadcom's interpretation of the "interpolator control module" limitation is not supported by the intrinsic evidence and cannot be correct.

Moreover, as noted above, Dr. Stojanovic proffered no opinions regarding infringement under the doctrine of equivalents, and confirmed during his deposition that he did not undertake any specific function-way-result analysis to assess

infringement by equivalents.[28] The Accused Products therefore do not infringe claim 8 of the '150 patent or any of its dependent claims, either literally or under the doctrine of equivalents, and summary judgment is appropriate because no genuine issues of material fact exist regarding the structure and operation of the Accused Products.

## VI. CONCLUSION

For these reasons, the Court should grant Emulex's motion for summary judgment of no infringement of the asserted claims of the '150 patent.

Dated: June 17, 2011

FISH & RICHARDSON P.C.

By: Jonathan J. Lamberson

Attorneys for Defendant and Counterclaimant EMULEX CORPORATION

50787246.doc

[28] Ex. 2, Stojanovic Tr., at 234:14-238:13.

*Additional Counsel*

David M. Barkan (SBN 160825)
*barkan@fr.com*
Jonathan J. Lamberson (SBN 239107)
*lamberson@fr.com*
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063-1526
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Joseph V. Colaianni, Jr. (*pro hac vice*)
*colaianni@fr.com*
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thomas H. Reger II (*pro hac vice*)
*reger@fr.com*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Wasif H. Qureshi (*pro hac vice*)
*qureshi@fr.com*
FISH & RICHARDSON P.C
One Houston Center
1221 McKinney Street, 28th Floor
Houston, Texas 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109

50787246.doc