UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| | Nancy Boehme | Not Present |
| | Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS)**   **O**rder DENYING Emulex Corporation's Motion for Partial Summary Judgment That Broadcom is Not Entitled to Lost Profits Damages (fld 6/17/11)

On June 17, 2011, Defendant Emulex Corporation ("Emulex") filed a motion for partial summary judgment that Plaintiff Broadcom Corporation ("Broadcom") is not entitled to lost profits damages. (Doc. Nos. 406 (notice), 432 (sealed version), 448 (public version).) On July 7, 2011, Broadcom filed its opposition to the motion. (Doc. Nos. 533 (sealed version), 552 (public version).) On July 14, 2011, Emulex replied. (Doc. Nos. 608 (public version), 615 (sealed version).)

For the reasons set forth below, the Court denies the motion.

I.   Background

Broadcom filed suit against Emulex, a provider of network convergence solutions, alleging infringement of eleven Broadcom patents. Broadcom seeks lost profits damages from Emulex based on Emulex's sales of 10 Gigabit per second Ethernet ("10GbE") OneConnect chips to Hewlett-Packard ("HP"). (Opp'n at 1.) HP conducted two design contests for its 10GbE "Westmere" and "Romley" designs. Broadcom alleges that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

Emulex achieved "design wins"[1] on these projects by infringing Broadcom's SerDes '194 patent family.[2] Specifically, HP awarded the business in the Westmere project solely to Emulex's BladeEngine2 ("BE2") chip, over Broadcom's 57711 Ethernet Controller. In the Romley project, HP awarded the business to both Broadcom and Emulex, and HP will allow customers to decide whether to install Broadcom's 57810/57840 controllers, or Emulex's BE3 chip on the motherboard. Broadcom alleges that there were no other competitors in the design contests, and Broadcom would have won both contests, had Emulex not infringed Broadcom's patents.

II.     Legal Standard

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment may be granted where no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Material facts are those which, under applicable substantive law, may affect the outcome of the case. Id. In determining whether a genuine issue of material fact exists, the evidence must be construed in the light most favorable to the non-moving party. Nelson v. City of Davis, 571 F.3d 924, 928 (9th Cir. 2009). The Court must not weigh disputed evidence with respect to a disputed material fact, nor should it make credibility determinations regarding statements made in affidavits, answers to interrogatories, admissions, and/or depositions. Id. Those determinations are left for the jury. Id.

On a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91

---

[1] A design win is a customer's commitment to use a part for some period of time in its products. (Lamberson Decl., Ex. A at 37.)

[2] The '194 patent family consists of U.S. Patent Nos. 6,424,194, 7,486,124, and 7,724,057. A SerDes (serializer/deserializer) is a device or system that breaks a high speed signal into smaller, slower pieces, and then reassembles the pieces into a high-speed signal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

L. Ed. 2d 265 (1986). When the non-moving party bears the burden of proof at trial, the moving party need only "point[] out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the summary judgment proponent has discharged its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by [other evidence], designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-current Fed. R. Civ. P. 56(e)).

III. Discussion

"To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995). The Federal Circuit typically applies a useful, though not exclusive, four-factor test, articulated in Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978), to determine whether a patentee is entitled to lost profits damages. The Panduit test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. Rite-Hite, 56 F.3d at 1545 (citing Panduit, 575 F.2d at 1156).

If a patentee makes a showing under Panduit, a court may infer that the lost profits claimed resulted from the infringing sales, thereby establishing the patenee's pima facie case of "but for" causation. Id. at 1545. While the quetion of whether lost profits are legally compensable is a question of law, Poly-Am., L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1311 (Fed. Cir. 2004), once a patentee has made a prima facie showing under Panduit, the amount of damages, which is a question of fact, Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1118 (Fed. Cir. 1996), goes to the jury.

    A.    Demand for Patented Product

"The first Panduit factor- demand for the patented product- presupposes that demand for the infringer's and patent owner's products is interchangeable. Under this assumption, evidence of sales of the infringing product may suffice to show Panduit's first factor, 'demand for the patented product.'" BIC Leisure Prods., Inc. v. Windsurfing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

Int'l, Inc., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993).

Broadcom submits that the patented products are the Broadcom chips that operate as 10GbE controllers and incorporate the SerDes technology described in the claims of the '194 patent family, including the 57711, 57712, 57810, and 57840 application-specific integrated circuits ("ASICs"). (Opp'n at 4.) Broadcom argues that it has ample evidence of demand, including significant sales (Lamberson Decl., Ex. A at 34), as well as the importance of 10GbE technology as a means of competing in the market. (Id. at 39-41.) In addition, there is evidence in the record of demand for Emulex's competing product. (Id.)

This evidence is sufficient to establish a reasonable inference of demand for the patented products. The burden now shifts to Emulex to show that the inference is unreasonable. See Rite-Hite, 56 F.3d at 1545 ("When the patentee establishes the reasonableness of this inference, e.g., by satisfying the Panduit test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales. The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales.") (internal citations omitted). Emulex does not address this factor. Thus, it weighs in Broadcom's favor.

B. Absence of Non-Infringing Substitutes

The Federal Circuit has cautioned that "the mere existence of a competing device does not necessarily make that device an acceptable substitute." Standard Havens Prods., Inc. v. Gencor Indus., Inc., 953 F.2d 1360, 1373 (Fed. Cir. 1991). A product without the same advantages of the patented product is not an acceptable substitute in the eyes of a customer who wants those advantages. Id. If the patented features drive consumer purchasing decisions, products without those features are not acceptable noninfringing substitutes. Id. "[T]o prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." Id. Alternatively, the Federal Circuit also employs a market share test whereby a patent owner may satisfy the second Panduit factor by substituting proof of its market share for proof of the absence of acceptable substitutes. State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1578

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

(Fed. Cir. 1989).

Broadcom argues that to be an acceptable noninfringing substitute, the ASICs in question must perform at the 10GbE speeds, offer low power consumption, and be sold at a low cost, i.e., a product that could have been an acceptable noninfringing substitute in the design wins with HP. (Opp'n at 5-6.) Because the only two potentially acceptable alternatives in the design wins were Broadcom and Emulex, removing Emulex's infringing product from the equation leaves Broadcom as the only alternative, Broadcom argues. (Id. at 6.)

Emulex argues that at least three different, noninfringing alternative SerDes existed at the time of the relevant HP design wins. (Mot. at 11.) Because Emulex does not make its own SerDes, it argues it could have acquired an acceptable substitute through a noninfringing "buy-around." (Id.) Specifically, Emulex could have purchased non-infringing current steering circuitry from a Broadcom-licensed supplier such as Intel, because it is covered in a Patent Cross License Agreement between Broadcom and Intel. (Id.) Emulex also could have purchased the circuitry from other third-party manufacturers such as Gennum/Snowbush Corporation ("Snowbush") and/or QLogic.[3] (Id. at 11-12.) The circuitry was "available" at the time of infringement from all three suppliers, Broadcom considered purchasing Snowbush technology and HP considered QLogic, showing that each was "acceptable."

Emulex cites Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1222-23 (Fed. Cir. 1995), for the proposition that the existence of a third-party licensee, with the right to sell the patented technology, is a noninfringing substitute. While Pall indeed found that a former infringer turned licensee became a noninfringing substitute upon gaining permission from the patentee, this ruling did not *bar* recovery of lost profits damages. Instead, for the period after entry of the license agreement, the court *limited* recovery of lost profit damages to 25% of sales, with the balance of damages measured at a reasonable royalty. Id.

---

[3] That Emulex propounded an interrogatory about other infringing SerDes products, to which Broadcom objected, does not permit the Court to infer that Snowbush and/or QLogic were or were not seen by Broadcom as infringing products. Broadcom's objection thereto, or lack of response as Emulex sees it, does not allow the Court to decide this issue as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

Construing the record in the light most favorable to Broadcom, it appears that HP was willing to buy the patented products and/or the infringing products based on their advantages, Standard Havens, 953 F.2d at 1373, as demonstrated by the results of both bid contests, and by rejection of QLogic's product.[4] However, there is a genuine issue of material fact regarding what product advantages HP sought. The Court cannot say as a matter of law that HP was primarily concerned with FCoE technology, nor can it say that the alleged substitutes would or would not have met HP's needs. While the record shows that even Broadcom questioned whether and to what extent the lack of FCoE resulted in certain platform losses, and whether "refusal to engage in VFA"[5] played a role, it remains disputed whether FCoE was the driving force behind HP's awards in the Romley and Westmere design wins. The record shows that Broadcom and Emulex were the finalists in both design contests, which raises the inference that had Emulex's allegedly infringing products been unavailable, there would have been no acceptable substitutes to Broadcom's products. In addition, the relevance of the Intel white paper and whether that product was a noninfringing alternative is disputed, and the dispute must be resolved by the jury. On the present record, there is no evidence that the Intel license agreement would permit the sales Emulex posits. These disputes are sufficient to tip the second Panduit factor in Broadcom's favor.

C. Manufacturing & Marketing Capabilities

The record suggests that Broadcom was already selling significant product volume,

---

[4] Contrary to Emulex's argument that QLogic's presence defeats the "but for" test for lost profits, (Mot. at 9), there is a dispute over whether QLogic would have been an acceptable substitute, because, it was not selected for either design win. In addition, even if it would have siphoned away some of Broadcom's business, this does not render lost profits unavailable as a matter of law. Rather, any lost profits award would be reduced to account for QLogic's effect on the market. See Pall, 66 F.3d at 1222-23; BIC Leisure Prods., 1 F.3d at 1218 (analyzing market and finding that exit by infringer caused sales to shift to another competitor, not to patentee, because patentee sold more expensive product in an elastic market).

[5] VFA refers to virtual fabric adapter capability, which Broadcom cites, along with lack of FCoE, as possibly the "main (?) reasons" for recent platform losses. (Scherer Depo, Ex. 4 at slide 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

and was capable of expanding its sales. (Lamberson Decl., Ex. A at 45-46; Davis Decl., Ex. 4 at 35-36.) Emulex does not challenge this inference. Thus, this factor tips in Broadcom's favor.

Emulex does challenge, however, Broadcom's evidence that it could have met HP's demand for FCoE-capable products. (Mot. at 7.) Broadcom's testimony on this point is speculative, at best, and does not support the inference that Broadcom could have gotten up to speed on FCoE. (Davis Decl., Ex. 4 at 42 (whether Broadcom could have invested the right resources to get an FCoE product to market in line with the Westmere time line was only a "guess").) This argument does not tip the factor in Emulex's favor because it overlooks the dispute of whether FCoE was required by HP as a prerequisite to the design wins. Taking the evidence in the light most favorable to Broadcom, at the very least, there is a genuine issue of material fact regarding HP's requirements at the time of the design contests, especially in light of the fact that Broadcom, without FCoE capability, was a co-winner on the Romley design win.

D.  Amount of Profit

The final factor examines whether the patentee can show the amount of profit it would have made, but for the infringing product. Panduit, 575 F.2d at 1156. Emulex challenges only Broadcom's failure to show profits in the Romley win. Emulex argues that because both companies were selected as co-winners, no one knows what percentage of sales each will receive based on customer selection, and no actual sales have taken place. (Mot. at 13.)

Because Emulex does not challenge the amount of lost profits alleged with respect to the Westmere win, Broadcom's evidence is sufficient to tip this factor in Broadcom's favor, with respect to the Westmere win. (See Lamberson Decl., Ex. A at 46-48.)

Broadcom does not challenge the assertion that it has not yet sold any products under the Romley design win; however, Broadcom's expert notes that sales may commence before trial, and any new evidence of these sales would be presented in an updated damages analysis if available before trial. (Id. at 45.) Broadcom expects that the jury will address only those damages that have occurred prior to the verdict. (Opp'n at 15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 2, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

"Normally, if the patentee is not selling a product, by definition there can be no lost profits." Rite-Hite, 56 F.3d at 1548. "The only exception is where the patentee has the ability to manufacture and market a product, but for some legitimate reason does not." Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1293 (Fed. Cir. 2007). Even if this is the case, "the burden on a patentee who has not begun to manufacture the patented product is commensurately heavy." Hebert v. Lisle Corp., 99 F.3d 1109, 1120 (Fed. Cir. 1996).

Because products based on the Romley design win have not yet shipped, there are, by definition, no lost profits. However, because there is a question of fact regarding whether sales will occur before trial, the Court cannot deny lost profits as a matter of law at this time. Because Broadcom fails to meet the commensurately heavy burden to show why it has not sold the patented product during the period of infringement, if no such sales occur, the jury will be instructed that lost profits are unavailable with respect to the Romley design win. See Wechsler, 486 F.3d at 1293-94 (although patentee demonstrated later success manufacturing and marketing a product, patentee did not have such capability during the period of infringement, resulting in no lost profits).

IV.  Conclusion

All four Panduit factors tip in Broadcom's favor. Because Broadcom has made a prima facie showing of "but for" causation, the Court finds as a matter of law that the question of amount of lost profits can go to the jury. Accordingly, the Court denies Emulex's motion for partial summary judgment on lost profits damages.

|  | : | 00 |
|---|---|---|
| Initials of Preparer | nkb | |