UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Nancy Boehme | | Not Present |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS)**   Order Granting Motion for Summary Judgment of No Infringement (Count 10)
(fld 5/27/11)

Defendant Emulex Corporation ("Emulex") moves for partial summary judgment of no infringement as to Count 10 of the First Amended Complaint ("FAC") of Plaintiff Broadcom Corporation ("Broadcom") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Broadcom opposes the motion. For the following reasons, the motion is GRANTED.

I.   Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

could return a verdict for the nonmoving party." Id. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1103 (9th Cir. 2000).

II. Discussion

In Count 10 of the FAC, Broadcom asserts that Emulex has infringed and continues to infringe one or more claims of United States Patent No. 7,313,623 ("the '623 patent"). (FAC ¶ 89.) Broadcom asserts that Emulex's use of drivers and network adapters and controllers that operate in conjunction with the TCP Chimney offload technology infringes the '623 patent. In moving for summary judgment on this count, Emulex argues that Broadcom cannot bring suit against it for infringement of the '623 patent because Broadcom has exhausted its rights to the invention claimed in that patent.

    A.    Background

The '623 patent focuses on offload of Transmission Control Protocol ("TCP"), which enables computers to transmit data more easily and reliably. (Docket No. 261, Markman Order at 10.) Because TCP processing can consume a computer's processing resources, TCP-related tasks can be made more efficient by offloading TCP to a TCP Offload Engine ("TOE"). (Id.) "The '623 patent is directed to a novel system used to split TCP processing between the host and the TOE." (Docket No. 494, Opp'n Br. 3.) Specifically, the '623 patent claims a system for providing TCP/IP offload, comprising a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

TOE for operatively coupling to a host, wherein the TOE and host are operatively coupled, the host transfers control of at least a portion of the TCP connection variables to the TOE, and the TOE updates said portion of the TCP connection variables and provides at least a portion of said portion of the variables to the host. (Lamberson Decl., Ex. A at 11:15-27.) Emulex markets and sells drivers and network adapters and controllers that are "capable of what Emulex calls 'TCP Chimney offload,' meaning that the products perform TCP/IP offload using the system described in the '623 patent by communicating with the TCP Chimney interface of the Windows Server operating system running on the host computer." (Opp'n Br. 4.)

    B.    <u>Analysis</u>

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." <u>Quanta Computer, Inc. V. LG Electronics, Inc.</u>, 553 U.S. 617, 625 (2008). In <u>Quanta</u>, the United States Supreme Court decided "whether patent exhaustion applies to the sale of components of a patented system that must be combined with additional components in order to practice the patented methods." <u>Id.</u> at 621. The Court affirmatively concluded that "[t]he authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights and prevents the patent holder from invoking patent law to control postsale use of the article." <u>Id.</u> at 638. Thus, for patent exhaustion to apply, there must have been an "authorized sale" of the article and the article must "substantially embody" the patent.

    1.    <u>Authorized Sale</u>

"Exhaustion is triggered only by a sale authorized by the patent holder." <u>Id.</u> at 636 (citing <u>United States v. Univis Lens Co.</u>, 316 U.S. 241, 249 (1942)). As noted above, "the initial authorized sale of a patented item terminates all patent rights to that item." <u>Id.</u> at 625.

Emulex argues that the "authorized sale" requirement is met because Broadcom licensed the claimed technology of the '623 patent, including the TCP Chimney software, to Microsoft, which in turn licensed the TCP Chimney software to Emulex. Broadcom does not dispute that Emulex paid Microsoft for a subscription to the TCP Chimney software and the TCP Driver Development Kit. (<u>See</u> Opp'n Br. 5, 12.) Here, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

determination of whether there was an "authorized sale" under the doctrine of patent exhaustion turns on whether Broadcom licensed Microsoft to sell products practicing the '623 patent. See Quanta, 553 U.S. at 637 ("[E]xhaustion turns only on Intel's own license to sell products practicing the LGE Patents.").

Broadcom concedes that the "TCP Chimney interface through which Emulex's network controllers communicate with the Windows Server operating system was developed as part of a joint collaboration between Broadcom and Microsoft." (Opp'n Br. 6.) In furtherance of the joint collaboration, Broadcom and Microsoft entered into a Joint Development Agreement ("JDA").[1] (Jay Decl., Ex. J.) In the JDA, Broadcom and Microsoft stated that "Microsoft intend[ed] to design and implement in its operating system products an interface that will allow division of networking tasks between a host computer's operating system and networking hardware connected to that host computer" and that Broadcom and Microsoft "wish[ed] to collaborate on the design of this interface." (Jay Decl., Ex. J at BCM_EMX 03844852.) Broadcom concedes that its collaboration with Microsoft was undertaken to design this interface and that the "TCP Chimney software came out of this collaboration." (Opp'n Br. 6-7.)

The JDA included the following "License Grant by Broadcom to Broadcom Input":

Broadcom grants to Microsoft, under Broadcom's intellectual property and proprietary rights, the following worldwide, nonexclusive, irrevocable, royalty free, fully paid rights: (1) to make, use, and copy the Broadcom Input, (2) to modify and create derivative works of any Broadcom Input, (3) to publicly perform or display, import, broadcast, transmit, distribute, license offer to sell and sell, rent lease or lent copies of Broadcom Input (and derivative works thereof;) [sic] and (4) to sublicense to third parties the foregoing rights, including the right to sublicense

---

[1] The inventors of the '623 patent developed the TCP/IP offload scheme that is the invention of the '623 patent before Broadcom and Microsoft executed the JDA, but after a meeting between the companies at which Broadcom and Microsoft discussed the "chimney" concept. (Docket No. 382, Mot. Br., Ex. B ¶ 50.) The inventors "conceived of the invention of the '623 patent by at least as early as March 3, 2001." (Mot. Br., Ex. B ¶ 52.) The JDA was executed on March 30, 2001. (Jay Decl., Ex. J at BCM_EMX 03844859.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |

Title    Broadcom Corp. v. Emulex Corp., et al.

to further third parties."

(Jay Decl., Ex. J at BCM_EMX 03844854.) Whether Broadcom licensed the invention of the '623 patent to Microsoft, therefore, turns on whether the invention qualifies as "Broadcom Input" under the JDA.

The JDA defines "Broadcom Input" as "any suggestions, comments, feedback, or other information that Broadcom transmits to Microsoft in connection with the activities contemplated by [the JDA.]" (Id. at BCM_EMX 03844852.) The Court finds that "Broadcom Input" includes the information about the invention of the '623 patent that was conveyed to Microsoft in connection with the joint collaboration. Broadcom's own expert confirms that Broadcom conveyed information about the invention of the '623 patent to Microsoft in connection with the joint collaboration. Notably, he states that

> [a]s part of th[e collaborative] relationship, Broadcom shared technical details of its TCP/IP offload scheme with Microsoft in order for [Microsoft and Broadcom] to develop the interface between the network controller and the operating system. It is thus not surprising that some of the technical details of the TCP/IP offload scheme for its Ethernet controller, including the invention of the '623 patent, were incorporated into documents that Microsoft generated as part of the joint development effort.

(Mot. Br., Ex. B ¶ 55.) He also states that agenda items from a presentation suggest that "the TCP offload architecture being discussed was something that Broadcom had presented to Microsoft, not the other way around" and he had not seen evidence to the contrary. (Id. ¶ 57.) Broadcom's inventor also testified that Broadcom conveyed information to Microsoft about how to perform TCP offload, including how the connection variables would interact with the TOE and the host. (See, e.g., Mot. Br., Ex. I, Fan Depo. 176:3-21.) Thus, the evidence establishes that, in connection with the joint collaboration, Broadcom conveyed to Microsoft detailed information about how to develop and practice the invention that is the subject of the '623 patent. That information, therefore, constitutes "Broadcom Input." Accordingly, because Broadcom granted Microsoft a license to make, use, copy, sell, and sublicense Broadcom Input and the invention of the '623 patent constitutes Broadcom Input, the Court finds that Broadcom granted Microsoft a license to sell and sublicense products practicing the '623 patent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

third parties, including Emulex.

Broadcom argues that "Broadcom Input" cannot include the invention of the '623 patent because the definition of Broadcom Input "specifically excludes from the license grant to Microsoft any rights to Broadcom's hardware innovations." (Opp'n Br. 13.) The Court disagrees with Broadcom's interpretation of the JDA. The JDA did not exclude from the license rights to Broadcom's innovations, but rather to the hardware and software Broadcom developed and supplied to Microsoft.

The JDA provides that "Broadcom Input shall not include the Broadcom Hardware or Drivers." (Jay Decl., Ex. J at BCM_EMX 03844854.) However, the definitions of these terms show that this language does not remove the invention of the '623 patent from the scope of the term "Broadcom Input." "Broadcom Hardware" is defined as "networking hardware developed by or for Broadcom, including without limitation network interface cards and/or components thereof such as networking chips." (Id. at BCM_EMX 03844852.) "Drivers" are defined as "software developed by Broadcom that allows Broadcom's networking hardware to interoperate with the Interface Implementation, and all related software created by Broadcom, that is provided to Microsoft under the Agreement." (Id. at BCM_EMX 03844853.) Although these definitions exclude the networking hardware and drivers developed by Broadcom from the definition of "Broadcom Input," they do not exclude ideas or technical information relating to networking hardware or drivers developed by Broadcom from the definition of "Broadcom Input."[2] (Id. at BCM_EMX 03844853.) Unlike the definitions of "Broadcom Hardware" and "Drivers," the definition of "Broadcom Input" expressly encompasses the "suggestions, comments, feedback, or other information" exchanged in connection with the joint collaboration (which included the invention that is the subject of the '623 patent), as opposed to the hardware and software itself.

---

[2] In fact, the JDA expressly provides that Microsoft could use and distribute versions of the Drivers. Specifically, Broadcom licensed Microsoft "worldwide, nonexclusive, irrevocable, royalty free, fully paid rights to make, use, and copy the Drivers for the purpose of developing the Specification and Interface Implementation" and agreed that if "Microsoft decides, in its sole discretion, to distribute final versions of the Drivers, such distribution will be pursuant to Microsoft's standard driver distribution program for Windows Family Operating Systems." (Jay Decl., Ex. J at BCM_EMX 03844854.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

Thus, the Court finds that "Broadcom Input" includes the invention of the '623 patent.³ This is the only reasonable interpretation in light of the JDA's definitions of the relevant terms, along with the recitals and provisions about joint development and licenses set forth in the JDA. Notably, the JDA expressly recites that the parties anticipated that the interface would "allow division of networking tasks between a host computer's operating system and <u>networking</u> <u>hardware</u> connected to that computer" and that Microsoft would implement this interface in its operating system. (<u>Id.</u> at BCM_EMX 03844852, emphasis added.) For all of these reasons, the Court finds that Broadcom licensed Microsoft to sell products practicing the '623 patent.⁴

Accordingly, the Court finds that the "authorized sale" requirement for patent exhaustion is satisfied.

  2. <u>Substantially</u> <u>Embodies</u>

An article substantially embodies a patent if its "only reasonable and intended use [i]s to practice the patent" and it "embodie[s] the essential features of the patented invention." <u>Quanta</u>, 553 U.S. at 631 (quotation marks and citation omitted). TCP Chimney substantially embodies the '623 patent because it meets both of these requirements.

  i. *Only Reasonable and Intended Use*

The only reasonable and intended use of TCP Chimney is to practice the '623 patent. The Microsoft Windows operating system constitutes the "host" and the host and

---

 ³ Although not necessary to the Court's conclusion, the Court notes that a contemporaneous document confirms that this was Broadcom's understanding of the JDA. Specifically, Broadcom noted, "<u>Any IP</u> or input that we give to MSFT, will be the property of MSFT." (Mot. Br., Ex. H at BCM_EMX 03845705, emphasis added.)

 ⁴ The Court also notes that although the JDA predates the '623 patent itself (<u>see</u> Opp'n Br. 13), the inventors conceived of the invention of the '623 patent weeks before the JDA was executed (Mot. Br., Ex. B ¶ 52). Regardless of when Broadcom applied for or obtained the patent, the JDA licensed Microsoft the invention that is the subject of the '623 patent, which had already been conceived at the time the JDA was executed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

TOE are "coupled" through Microsoft's TCP Chimney software. Broadcom documents state that"[t]he new TCP Chimney offload Architecture from Microsoft enables offload of the TCP protocol stack to a TCP offload engine (TOE)-based network interface card (NIC)." (Mot. Br., Ex. DD at BCM_EMX01211810.) Additionally, Broadcom concedes and Broadcom's experts state that "to perform TCP offload in the Microsoft Operating System environment, the technology of the '623 patent is required." (Statement of Genuine Disputes of Material Fact ("SOF") # 13; Mot. Br., Ex. B ¶ 48, Ex. CC at 55.) In fact, for any customer to use TCP Chimney, it must do so according to the TCP Chimney specifications. Broadcom admits that the "Microsoft TCP Chimney offload specification describes each of the elements of the asserted claims of the '623 patent."[5] (SOF # 5.) Thus, the Court finds that the only reasonable and intended use of the TCP Chimney is to practice the '623 patent.

Broadcom argues that practicing the '623 patent is not the only reasonable and intended use of the TCP Chimney interface software because Emulex's expert, Dr. Acampora, describes how the TCP Chimney interface software could be used without infringing the '623 patent. (Opp'n Br. 11-12.) Broadcom mischaracterizes Dr. Acampora's report. In discussing how to avoid infringement, Dr. Acampora does not identify any reasonable or intended use of TCP Chimney that would avoid infringement, but rather discusses hypothetical ways that Emulex could avoid infringing the '623 patent. For example, he explains that by changing source code, "Emulex could entirely disable Microsoft TCP Chimney support from its drivers and eliminate any question about infringement." (Jay Decl., Ex. N ¶ 86.) Disabling TCP Chimney would not constitute "use" of the product, however, so this statement in the report could not provide a noninfringing reasonable and intended use of the product. Broadcom points to the following statement by Dr. Acampora:

---

[5] At the hearing, Broadcom noted that although the specification embodies the patent, the specification is not the same thing as the TCP Chimney software, and Microsoft sells TCP Chimney, not the specification. However, to use TCP Chimney, consumers must follow the specification. In other words, without the specification, the product would be useless. Therefore, although the Court recognizes the distinction between the software and the specification, the Court finds that Broadcom's admission that the specification describes each of the elements of the asserted claims of the '623 patent is persuasive evidence that the only reasonable and intended use of TCP Chimney practices the patent because the only way to use TCP Chimney is according to the specification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

> Another option to indisputably avoid infringement would be to perform all TCP offload processing within the driver. The driver runs on the host, so any TCP offload processing performed by the driver is actually performed by the host processor. In effect, no TCP offload processing would be performed by the adapter, avoiding any possibility of infringement of the '623 patent.

(Jay Decl., Ex. N ¶ 89.) Broadcom argues that through this statement, "Emulex admits that the TCP Chimney interface software could be used in a manner that does not practice the '623 patent." (Opp'n Br. 12.) However, no where in this statement does Dr. Acampora state that the process he describes would actually use TCP Chimney. Moreover, there is no indication that this is a reasonable or intended use of TCP Chimney, as opposed to a mere hypothetical way to avoid infringement. As Emulex points out, the TCP Chimney specification requires the offload to be sent to a network interface card and Broadcom has not provided any evidence that the hypothetical method to avoid infringement is possible using TCP Chimney. In fact, as noted above, Broadcom "admits that to perform TCP offload in the Microsoft Operating System environment, the technology of the '623 patent is required." (SOF #13.) As in Quanta, Broadcom "has suggested no reasonable use for the [product] other than incorporating [it] into computer systems that practice the [patent]." 553 U.S. at 632. Thus, Broadcom has not raised a triable issue that there is any reasonable and intended use for the TCP Chimney that would not practice the '623 patent.

ii. *Embodies the Essential Features*

The article sold also embodies the essential features of the patented invention. Broadcom admits that the "Microsoft TCP Chimney offload specification describes each of the elements of the asserted claims of the '623 patent." (SOF # 5.) Broadcom extensively argues, however, that TCP Chimney cannot "substantially embody" the '623 patent because the TCP Chimney software does not include the networking hardware necessary to practice the patent. (Opp'n Br. 8-11.)

The United States Supreme Court made clear in Univis and Quanta that the article at issue does not need to include all of the elements of the patent in order to "substantially embody" the patent. Nor does the article need to "contain all the physical aspects needed to practice the patent" in order to substantially embody the patent. Quanta, 553 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

631 (rejecting the argument that "Univas should be limited to products that contain all the physical aspects needed to practice the patent"). Instead, the article substantially embodies the patent when it has no reasonable noninfringing use and includes all the inventive aspects of the patented methods. Id. at 638.

      The Supreme Court articulated this standard in Quanta. In Quanta, LG Electronics, Inc. ("LGE") licensed certain patents ("LGE Patents") to Intel Corporation ("Intel"). Id. at 623. The license agreement permitted Intel to manufacture and sell microprocessors and chipsets ("Intel Products") that used the LGE Patents. Id. In a separate agreement, Intel agreed to give written notice to its customers that any Intel Product they purchased was licensed by LGE and therefore did not infringe any patent held by LGE, but that the license did not extend to any product made by combining an Intel Product with a non-Intel product. Id. at 623-24. Quanta and other computer manufacturers (collectively, "Quanta") nonetheless manufactured computers using the Intel Products in combination with non-Intel memory and buses in ways that practiced the LGE Patents. Id. at 624. Quanta did not modify the Intel Products and followed Intel's specifications to incorporate the parts into its own systems. Id. LGE sued Quanta for patent infringement. Id.

      The district court initially granted summary judgment to Quanta, finding that although the Intel Products did not fully practice any of the patents, they had no reasonable noninfringing use and therefore their authorized sale exhausted LGE's patent rights in the completed computers. Id. The district court then issued an order limiting its summary judgment ruling, holding that patent exhaustion did not apply because the LGE Patents included method claims, as opposed to apparatus or composition-of-matter claims. Id. at 624-25. The Federal Circuit affirmed in part and reversed in part, holding that the doctrine of patent exhaustion did not apply to method claims and, in the alternative, exhaustion did not apply because LGE did not license Intel to sell the products to Quanta for use in combination with non-Intel products. Id. at 625. The Supreme Court reversed, rejecting the argument that method claims can never be exhaustible and holding that LGE's patent rights were exhausted because Intel was authorized to sell microprocessors and chipsets that practiced the LGE Patents and the microprocesssors and chipsets substantially embodied the LGE Patents. Id. at 630, 638.

      The facts of the instant case are similar to those of Quanta. Here, Microsoft's TCP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

Chimney is analogous to the Intel microprocessors and chipsets, and Emulex's networking hardware is analogous to the non-Intel memory and buses. In Quanta, the Court found that the microprocessors and chipsets substantially embodied the LGE Patents even though the microprocessors and chipsets could not carry out their functions unless they were attached to memory and buses. Id. at 633. Similarly, TCP Chimney cannot carry out its function unless it is coupled to networking hardware. Yet the need for TCP Chimney to be coupled to networking hardware does not mean that TCP Chimney does not embody the essential features of the patented invention. Rather, the Court must consider whether TCP Chimney comprises the inventive features of the patented invention and whether the networking hardware constitute standard components.

      The record establishes that TCP Chimney comprises the inventive features of the patented invention. Broadcom has described the claims of the '623 patent as being "directed to systems for dividing control of TCP connection variables to optimize TCP communications." (Docket No. 219 at 12.) Broadcom's expert stated that in developing the patented invention, Broadcom believed that for an Ethernet controller to perform the desired TCP/IP offload, "there needed to be a specific interface in the host operating system that would allow the Ethernet controller to do so." (Mot. Br., Ex. B ¶ 51.) Its expert also stated that the "patent is directed to a novel method of dividing the TCP work between the host and the TOE." (Id. ¶ 46.) Broadcom concedes that the "patent is directed to a novel system used to split TCP processing between the host and the TOE – by control of TCP connection variables or state information." (Opp'n Br. 3.) It is TCP Chimney that divides the TPC connection variables between the host and the TOE and TCP Chimney, therefore, comprises the novel features of the invention.[6]

      On the other hand, drivers and NICs are standard components. Emulex was not required to make any creative or inventive decision when it added the networking hardware, and Emulex had to follow Microsoft's specifications in combining the components to create a functioning TCP Chimney offload system. The additional

---

      [6] Broadcom argues that TCP Chimney cannot substantially embody the patent because "the processing of an offloaded TCP/IP connection takes place in Emulex's hardware," not in the software. (Opp'n Br. 9, emphasis in original.) However, regardless of where the offloaded connection is processed, the inventive aspect of the invention is the splitting of the connection variables between the host and the TOE, which is accomplished by TCP Chimney.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

components in this case, therefore, are analogous to the memory and buses in Quanta. Quanta, 553 U.S. at 634 ("Quanta was not required to make any creative or inventive decision when it added those parts. Indeed, Quanta had no alternative but to follow Intel's specifications in incorporating the Intel Products into its computers.").

TCP Chimney therefore does embody the "essential features" of the '623 patent, as that term is used in Quanta. In Quanta, "the final step to practice the patent [wa]s common and noninventive: . . . connecting a microprocessor or chipset to buses or memory." Id. at 634. Likewise, in this case, the final step to practice the '623 patent is coupling TCP Chimney to networking hardware, which is a common, noninventive step. Therefore, as in Quanta, the product sold embodies the essential features of the patent because the product "carr[ies] out all the inventive processes when combined, according to [its] design, with standard components." Id.

Even if the TCP Chimney software itself did not substantially embody the patent, the Court is convinced that the substantial embodiment prong of the patent exhaustion standard is met for two additional reasons.

First, as explained above, for any customer to use TCP Chimney, it must do so according to the TCP Chimney specifications. Microsoft sells the TCP Chimney software to Emulex, provides the required specifications, and runs the tests to determine compliance with the system. (See Mot. Br., Ex. W at BCM_EMX_E04794175, Ex. X at 16:15-17:5.) TCP Chimney would not function without the required specifications. Therefore, TCP Chimney would not be a salable product without the specifications. No customer would purchase TCP Chimney without the specifications. Accordingly, the product marketed and sold by Microsoft, i.e., the product sold by Microsoft to Emulex, should be deemed to include both the software and the specifications necessary to use the software. Thus, Broadcom's admission that the "Microsoft TCP Chimney offload specification describes each of the elements of the asserted claims of the '623 patent" (SOF #5) demonstrates that the product marketed and sold by Microsoft substantially embodies (in fact, completely embodies) the asserted claims of the '623 patent.

Second, the "authorized sale" covers products practicing the '623 patent, not simply TCP Chimney, and therefore encompasses products that, by definition, substantially embody the '623 patent. As noted above, the "doctrine of patent exhaustion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

Title    Broadcom Corp. v. Emulex Corp., et al.

provides that the <u>initial authorized sale</u> of a patented item terminates all patent rights to that item." <u>Quanta</u>, 553 U.S. at 625 (emphasis added). The "<u>initial</u> authorized sale" in this case is the license from Broadcom to Microsoft, not the sale from Microsoft to Emulex. As explained in Section II.B.1., Broadcom granted Microsoft a license to sell and sublicense products practicing the '623 patent to third parties. This grant was not restricted to the TCP Chimney itself. Instead, the license was a broad grant encompassing the intellectual property rights to the invention that is the subject of the '623 patent. Accordingly, the initial authorized sale was of this article, the invention of the '623 patent, which substantially embodies (in fact, completely embodies) the '623 patent. Broadcom's rights to that article, therefore, have been exhausted.

For all of these reasons, the Court finds no material factual dispute that Broadcom made an initial authorized sale of a product that embodies the essential features of the patented invention and whose only reasonable and intended use is to practice the '623 patent. Thus, the article sold substantially embodies the '623 patent.

In sum, the doctrine of patent exhaustion bars Broadcom's claim for infringement of the '623 patent because there was an "authorized sale" of an article that "substantially embodies" the '623 patent. <u>Id.</u> at 638. As the Supreme Court has explained, "the authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold." <u>Quanta</u>, 553 U.S. at 631 (quoting <u>Univis</u>, 316 U.S. at 249 (citations omitted)). So is the case here.

III.    <u>Conclusion</u>

For the foregoing reasons, the motion is GRANTED.

|  | : | 00 |
|---|---|---|
|  | Initials of Preparer | nkb |