UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

| Present: The Honorable | James V. Selna |
|---|---|

| Nancy Boehme | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order DENYING Motion for Summary Judgment of Invalidity of the Asserted Claims of the '194, '124, and '057 Patents (fld 6/21/11)

Defendant Emulex Corporation ("Emulex") moves for summary judgment based on invalidity of claim 1 of U.S. Patent No. 6,424,194 ("the '194 patent"); claim 5 of U.S. Patent No. 7,486,124 ("the '124 patent"), and claim 42 of U.S. Patent No. 7,724,057 ("the '057 patent") (collectively, "the '194 patent family"). For the following reasons, Emulex's motion for partial summary judgment is DENIED.

I.    Legal Standard

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

242, 248 (1986). A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1103 (9th Cir. 2000).

A patent is presumed valid; the burden of establishing invalidity rests on the party asserting invalidity. 35 U.S.C. § 282. An invalidity defense must be proved by clear and convincing evidence. Microsoft Corp. v. i4i P'ship, No. 10-290, – U.S. –, slip op. at 1 (June 9, 2011).

II.  Discussion

    A.  Background

The technology in the patents at issue is discussed more fully in the Court's Order on Summary Judgment of Non-Infringement of the Asserted Claims of the '194, '124, and '057 Patents. The '194 patent family is important for implementing storage area networks ("SANs") and other networking applications. (Docket No. 504, Opp'n Br. 2-3.) The '194 patent family uses "current-steering" techniques to enhance switching speed for circuits that must process signals with higher speeds. (Id. at 3.) As Broadcom explains, the asserted claims of the '194 patent family combine $C^3MOS$ and CMOS in a device called a "serializer / deserializer" ("SerDes"). (Docket No. 468, Opp'n Br. 4.) In this device, "a high-speed signal is broken into smaller, slower pieces (deserialized),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

processed in parallel, then reassembled into a high-speed signal (serialized)." (Id.) Broadcom explains that, in a SerDes, $C^3$MOS circuitry combines with conventional CMOS to process signals. (Id.) Sometimes this process includes two stages, with one stage implemented using $C^3$MOS and the second implemented using conventional CMOS. (Portney Decl., Ex. C, at 12:62-66; 13:10; 13:30-32.)

      1.    Claim Language

Emulex seeks summary judgment as to claim 1 of the '194 patent, which provides:

1. A metal-oxide-semiconductor field-effect transistor (MOSFET) circuit fabricated on a silicon substrate, comprising:
>  first circuitry implemented using current-controlled
>  > complementary metal-oxide semiconductor $C^3$MOS logic wherein logic levels are signaled by current steering in one of two or more branches in response to differential input signals, the first circuitry being configured to process a first signal having a first frequency; and
>
>  second circuitry implemented using conventional complementary metal-oxide-semiconductor (CMOS) logic wherein substantially zero static current is dissipated, the second circuitry being coupled to the first circuitry and configured to process a second signal having a second frequency that is different than the first frequency, wherein the first circuitry comprises an input circuit that is implemented using the $C^3$MOS logic, and is configured to deserialize the first signal into a plurality of lower frequency signals.

(Portney Decl., Ex. A, at 8:60-9:14.)

Emulex also seeks summary judgment as to claim 5 of the '124 patent, which provides:

5. The circuit of claim 1, further [comprising:
>  an input that is operable to receive an input signal;
>  a deserializer circuit block, implemented using current controlled
>  > complementary metal-oxide semiconductor ($C^3$MOS) logic wherein

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

> logic levels are signaled by current steering in one of two or more branches in response to differential input signals, that is operable to convert the input signal into a parallel signal that includes a plurality of signals such that the plurality of signals includes all information within the input signal; and an output that is operable to transmit the parallel signal by transmitting each signal of the plurality of signals] comprising:
>
> at least one additional circuit block, implemented using conventional CMOS logic wherein substantially zero static current is dissipated, that is operable to receive and process one signal of the plurality of signals within the parallel signal.

(Portney Decl., Ex. B, at 8:38-50; 65-9:3.)

Claim 42 of the '057 patent, the final patent for which Emulex seeks summary judgment, is as follows:

> 42. The apparatus of claim 37 [An apparatus, comprising:
> a first stage for deserializing a differential serialized signal
> thereby generating a first deserialized signal that includes a first plurality of signals, wherein the first stage includes a current-controlled complementary metal-oxide semiconductor ($C^3MOS$) circuit having a first metaloxide semiconductor (MOS) transistor with a first drain, a first gate, and a first source and a second MOS transistor with a second drain, a second gate, and a second source, wherein:
> a current steering circuit within the $C^3MOS$ circuit includes the first source and the second source;
> the first source and the second source are coupled together and to a current source; and
> the first drain and the second drain are coupled to a power supply; and
> a second stage, coupled to the first stage, for processing the first deserialized signal thereby generating a second deserialized signal that includes a second plurality of signals]
> wherein:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

the second stage is implemented using conventional (CMOS) logic.

(Portney Decl., Ex. C, at 12:61-13:13; 13:29-31.)

    2.    <u>Markman</u> Construction

The Court has already construed the term "$C^3$MOS circuit" as a "circuit section that uses current steering techniques and is fabricated using CMOS processes, also known as $C^3$MOS". (Order Regarding <u>Markman</u> / Claim Construction Hearing, Docket No. 261, at 23.) The Court construed "current steering" as "directing constant flow of available sourced current into one of two or more branches in response to differential input signals." (<u>Id.</u>)

Emulex argues that the dispositive issue before the Court is whether an earlier patent discloses the "current steering" limitation. (Docket No. 440, Mot. Br. 1.) Broadcom argues that, "taken together, the claims at issue require: (1) $C^3$MOS (all claims); (2) current steering, including both a constant flow of available sourced current in response to differential output signals (all claims); (3) substantially zero current dissipation (claims 1 and 5) ; and (4) a two-stage deserializer (claim 42)." (Opp'n Br. 7-8.) The Court will examine these arguments in turn.

    B.    Pickering

Emulex argues that U.S. Patent No. 6,121,793 ("the Pickering patent") anticipates the claims in the three patents of the '194 family at issue here. Emulex argues that the Pickering patent discloses digital differential input signals and cites to portions in Dr. Fair's report in which he used the terms "logic," "logic levels," "high," and "low" to refer to digital signals. (Mot. Br. 2-3.) Emulex argues that Pickering discloses that the differential circuitry of Pickering "can" be used to implement logic functions, and in certain circumstances "requir[es] a low power supply noise as the differential logic uses a virtually constant current." (<u>Id.</u> at 4, citing to Rebuttal Expert Report of Dr. Richard Fair ("Fair Report"), at Ex. B, at 5:39-44.)

Broadcom argues that Pickering is concerned with a "different problem" – that is, according to Broadcom's rebuttal expert, Dr. Fair, the Pickering patent addressed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

signal "conversion", and the '194 patent family addressed high-speed serialization and deserialization. (Fair Report, Ex. A, at ¶ 23.) Broadcom maintains that a dispute of fact exists as to whether Pickering discloses all references, arguing that Pickering does not satisfy the "$C^3$MOS limitation"; "substantially zero static current; or the "second stage" deserializer limitation. (Opp'n Br. 1.) Moreover, Broadcom offers evidence that the Pickering patent is aimed at converting "low-level voltages" into a "full rail-to-rail signal for use with standard CMOS logic." (Fair Report, Ex. B, at 1:25-28.)

Broadcom argues that Pickering describes a "symmetrical loading design" because the current flows through two sides of the circuit and is thus variable instead of constant (as it is in the '194 patent). (Id., Ex. A, at ¶ 35.) Broadcom argues there are two types of input signals for the Pickering circuitry: "differential" input signals and "common-mode" input signals. (Fair Report, Ex. B, at 4:17-20; 4:46-63; and 4:38-41.) Broadcom argues that the patent includes a "simulation" performed on the circuitry using a common-mode input. (Opp'n Br. 10.) According to Broadcom, Figure 5 in the Pickering patent discloses a "constant flow of available source current" but Pickering does not state what the simulation results would be if the inputs were a differential input. (Id.)

Dr. Wooley, Emulex's expert, stated in his report that one difference between the '194 patent family and the Pickering patent "lies in the manner in which the source of current that is switched by the current-steering pair is established." (Portney Decl., Ex. E, at ¶ 172.) If a person of ordinary skill followed Pickering's disclosure "to the letter," the person would realize a "symmetrical loading design that is different from the '194 patent family." (Opp'n Br. 11, citing to id. at ¶ 174.) Dr. Wooley has also stated that the Pickering patent includes ten "errors," that if corrected would result in disclosure of $C^3$MOS. (Portney Decl., Ex. E, at ¶¶ 99, 176.) Dr. Fair presented evidence disagreeing with this conclusion. (Portney Decl., Ex. D, at ¶ 37.)

With this background, the Court now considers whether the following four limitations are present in the Pickering patent and whether genuine issues of material fact exist as to each.

       1.    $C^3$MOS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. | | |
|---|---|---|---|

Emulex argues that Figure 3 of Pickering discloses a virtually constant current and that Dr. Fair's expert report is entirely inconsistent with what Pickering discloses. (Mot. Br. 7.) Emulex argues there is no dispute that Pickering discloses $C^3MOS$ because Pickering discloses "current steering." (Docket No. 557, Reply Br. 6.)

Emulex has not met its burden of proof here. Broadcom argues that Pickering does not disclose $C^3MOS$ for three reasons. First, Broadcom argues that Pickering does not disclose $C^3MOS$ ("CML") but in Dr. Wooley's opinion Pickering would require changes to correct "errors" in diagrams, changing transistors from PMOS to NMOS. (Portney Decl., Ex. F, at 68:3-6.) Accordingly, Broadcom argues that $C^3MOS$ cannot be read into Pickering because it would be necessary to change transistors from PMOS to NMOS. (Portney Decl., Ex. F, at 68:3-6; see also Opp'n Br. 16, citing to In re Arkley, 455 F.2d 586, 587 (1972) (claimed subject matter must be identically disclosed or described in the prior art); NetMoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008) ("[D]ifferences between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation.") The claimed subject matter would need to be changed in order to anticipate Pickering. During the hearing, Emulex argued that the figures at issue, Figures 8 and 9, are not relevant to the disputed claims. Broadcom responded that Dr. Wooley grouped some of the figures together when he made his report, in doing so he created a triable issue that should be resolved by a jury. However, there are other reasons why disputes of fact exist.

Broadcom raises a dispute regarding the competing opinions of Doctors Wooley and Fair as to whether one of ordinary skill would recognize Pickering's disclosure of PMOS transistors as an error (Dr. Wooley's position) or would find the drawings are accurate and disclose "slow logic circuits" (Dr. Fair's position). (Portney Decl., Ex. D, at ¶ 37.) Because Emulex has not met its burden to show by clear and convincing evidence that the Pickering patent discloses $C^3MOS$, the Court denies Emulex's motion. The Court agrees with Broadcom that because $C^3MOS$ is present in every asserted claim, Emulex's motion fails. Nonetheless, the Court will also address whether Pickering anticipates other limitations.

2. "CMOS logic wherein substantially zero static current is dissipated"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

Emulex argues that Pickering explicitly discloses "conventional CMOS logic wherein substantially zero static current is dissipated." Emulex argues that Pickering discloses CMOS and discloses that the standard CMOS is used "for the less speed critical logic[,] in which circumstances the CMOS circuitry has the advantages of low power consumption and high pack intensity." (Mot. Br. 7, citing to Fair Report, Ex. B, at 5:44-48.) "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation . . . ." Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1373 (Fed. Cir. 2002); King Pharms., Inc. v. Eon Labs, Inc., 616 F.3d 1267, 1274 (Fed. Cir. 2010).

Dr. Wooley admitted that Pickering does not disclose a "structure that 'necessarily' has substantially zero static current dissipation." (Opp'n Br. 17.) Dr. Wooley stated that "it's not necessarily the case that they will have zero static current through them." (Portney Decl., Ex. F., at 69:7-70:10.) During the hearing, Emulex again discussed this issue, but the Court finds that Broadcom maintains the better argument. A question of fact exists as to whether Pickering explicitly discloses "CMOS logic wherein substantially zero static current is dissipated."

      3.    "[A] second stage . . . generating a second deserialized signal"

Emulex argues that Dr. Wooley identifies the portion of Pickering that discloses the "second stage." (Lamberson Decl., Ex. D, at Ex. A-3, at 4-6.) Dr. Wooley's chart states, "Pickering discloses the apparatus of claim 37, wherein the second stage is implemented using conventional complementary metal-oxide-semiconductor." (Id. at 6.)

Broadcom argues that Pickering does not anticipate claim 42 of the '057 patent because Pickering does not disclose the two-stage deserializer that satisfies the claim limitation for a "second stage . . . generating a second deserialized signal." (Opp'n Br. 18.) During the hearing, Broadcom argued that Dr. Wooley's report and deposition testimony do not identify a second stage in Pickering. The Court agrees. Moreover, Broadcom argues that Dr. Wooley "apparently did not realize that claim 42 required a two-stage deserializer" because he did not provide any analysis addressing the two-stage serializer. (Id. at 19.) Emulex has provided evidence, but it is not clear and convincing evidence such that the Court may grant summary judgment in Emulex's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

favor. Moreover, it is not clear that Pickering's disclosure of "further processing using standard logic" is equivalent to a second stage in the deserialization process. (Lamberson Decl., Ex. D, at Ex. A-3, at 3-4.)

   4. "Current steering"

 Emulex argues that Pickering explicitly discloses the "current steering" limitation because the "differential logic [in the embodiment of Pickering] uses a virtually constant current." (Docket No. 559, Reply Br. 5, citing to Fair Report, Ex. B, at 5:38-45.) Emulex argues that Figure 3 shows that Pickering has differential inputs and that current flows along one of two branches depending on the inputs. (Id.) During the hearing, Emulex also discussed Figure 5, which it argues embodies a common mode voltage input with an alleged constant flow of current, and Figures 7 through 10, which embody a "low swing, high variable current in response to differential signals."

 Broadcom argues that Pickering does not disclose current steering because Pickering "discloses" current steering only "by combining two separate embodiments." (Opp'n Br. 20.) However, anticipation "requires the presence in a single prior art disclosure of all elements of a claimed invention *arranged as in the claim*." Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1334-35 (Fed. Cir. 2008). Current steering requires "constant flow of available sourced current . . . in response to differential input signals." (Order Regarding Markman / Claim Construction Hearing, Docket No. 261, at 23.) Therefore, according to Broadcom, Pickering would "need to disclose a structure that can steer a 'constant flow of available sourced current' in response to 'differential input signals.'" (Opp'n Br. 21, citing to ) Broadcom has provided sufficient evidence from Dr. Fair (regarding the result when differential input signals are input into the Pickering structure) that creates a dispute about whether it is possible that the embodiment in Pickering satisfies the current steering limitation. (Portney Decl., Ex. D, at ¶ 35.)

 Broadcom also introduced evidence from Dr. Fair's rebuttal report, responding to Dr. Wooley's opinion based upon the differential inputs. Dr. Fair concluded that using the Pickering structure, "it is not possible to direct constant flow of available sourced current into one of two or more branches in response to differential input signals." (Portney Decl., Ex. D, at ¶ 33.) During his deposition, Dr. Wooley stated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | August 3, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

that the "common-mode" embodiment of the Pickering patent met the "constant flow" limitation. (Portney Decl., Ex. F, at 60:22-61:2.) Subsequently, Dr. Fair also provided an opinion on the common-mode embodiment during his deposition, in response to Dr. Wooley's new opinion. Dr. Fair concluded that Pickering's common-mode embodiment "does not result in 'directing constant flow of available sourced current into one of two or more branches in response to differential input signals." (Opp'n Br. 14, citing to Portney Decl., Ex. G, at 258:12-13; 259:5-8). Based on this discrepancy in the experts' reports and deposition testimony, the Court finds that a dispute of material fact exists as to whether Pickering discloses current steering.

III. Conclusion

Because genuine issues of material fact exist as to whether Pickering discloses all of the limitations of the asserted claims, Emulex's motion for summary judgment is DENIED.

IT IS SO ORDERED.

| | : | 00 |
|---|---|---|
| Initials of Preparer | nkb | |