Juanita R. Brooks (SBN 75934)
  *brooks@fr.com*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099

*(Additional counsel listed on signature page)*

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>       Plaintiff,<br><br>       v.<br><br>EMULEX CORPORATION,<br><br>       Defendant.<br><br>_____<br><br>And Related Counterclaims | Case No. CV 09-1058-JVS (ANx)<br><br>consolidated with CV 10-3963 JVS (ANx)<br><br>**DEFENDANT EMULEX CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL ON NON-INFRINGEMENT OF THE '150 PATENT**<br><br>Hearing Date:   December 12, 2011<br>Time:                3:00 p.m.<br>Place:               Courtroom 10C<br>Before:             Hon. James V. Selna |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     ARGUMENT ........................................................................................2

A.   Emulex's Motion is Procedurally Proper................................2

  1.   Emulex's Motion is an Appropriate Request for a New Trial Pursuant to F.R.C.P. 59(a) ................................................................2

  2.   Broadcom Does Not Explain Why a New Trial is Procedurally Inappropriate ........................................................................4

  3.   Broadcom's Motion Mischaracterizes the Relevant Procedural History ......5

  4.   Even if Viewed as a Motion for Reconsideration, Emulex's Motion is Procedurally Proper........................................................8

B.   Broadcom Does Not Address the Multiple Bases Upon Which a Reasonable Jury Could Disbelieve Dr. Stojanovic .........................................9

C.   Broadcom's "Proof" of Infringement Was Deficient ..................................11

D.   Broadcom Misquotes its Own Expert Report with Respect to the Second Order Loop Dispute ........................................................14

E.   Emulex Did Not "Admit the Presence and Operation of an Interpolator Control Module" ........................................................15

III.    CONCLUSION ..................................................................................16

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) ...................................................................................3

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)...........................................................12, 14

*Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.*,
  2011 U.S. Dist. LEXIS 20653 at *9 (N.D. Cal. February 17, 2011) ...........5

*Bilbud Rancho Cal. v. Johnson & Johnson Dev. Corp.*,
  1996 U.S. App. LEXIS 13097 at *4 (9th Cir. May 17, 1996) ......................8

*City of Colton v. Am. Promotional Events*,
  2010 U.S. Dist. LEXIS 123744 at *15 ........................................................9

*Colgrove v. Battin*,
  413 U.S. 149 (1973) ...................................................................................8

*Digidyne Corp. v. Data General Corp.*,
  734 F.2d 1336 (9th Cir. 1984)....................................................................4

*Eolas Techs., Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005)...............................................................3, 4

*Freund v. Nycomed Amersham*,
  347 F.3d 752 (9th Cir. 2003)......................................................................3

*Hannex Corp. v. GMI, Inc.*,
  140 F.3d 194 (2nd Cir. 1998).....................................................................3

*Johnson v. New York, N. H. & H. R. Co.*,
  344 U.S. 48 (1952) ................................................................................3, 4

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007)......................................................................4

*Nobelpharma Ab v. Implant Innovations*,
  141 F.3d 1059 (Fed. Cir. 1998)........................................................9, 10, 11

*Oracle USA, Inc. v. SAP AG*,
  2011 U.S. Dist. LEXIS 98816 at *9 (N.D. Cal. September 1, 2011) .......3, 4, 5

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010)....................................................................7

*Rohm & Haas Co. v. Brotech Corp.*,
  127 F.3d 1089 (Fed. Cir. 1997).................................................................16

*United Cal. Bank v. THC Fin. Corp.*,
  557 F.2d 1351 (9th Cir. 1977)...................................................................11

*United States Rubber Recycling, Inc. v. Encore Int'l, Inc.*,
  2011 U.S. Dist. LEXIS 11678 at *12 (C.D. Cal. January 7, 2011) .............9

CASE NO. CV 09-1058-JVS (ANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Statutes</u>**

Federal Rule of Civil Procedure 50 ................................................................2

Federal Rule of Civil Procedure 59 .......................................................2, 3, 4, 8

Federal Rule of Civil Procedure 83 ................................................................8

**<u>Other Authorities</u>**

Charles Alan Wright, et al.,
   *Federal Practice and Procedure* § 2803 .........................................................3

**<u>Rules</u>**

Local Rule 59 ........................................................................................4

Local Rule 7-18..................................................................................8, 9

iii

## I.   INTRODUCTION

Broadcom's opposition is striking for the many things it does not rebut.  For example, Broadcom does not challenge that the standard for granting judgment as a matter of law in favor of a party with the burden of proof on infringement is incredibly high.  In fact, Broadcom does not cite a single case where a court granted JMOL of infringement, and it does not cite a single Federal Circuit case approving of such a result.  That is likely because, as both the Federal Circuit and Ninth Circuit have stated, this is a drastic remedy awarded only in extreme cases.

Broadcom also does not explain how the Interpolator Control Module ("ICM") in any accused product even allegedly meets the *entire* limitation of claim 8.  Broadcom argues that its expert, Dr. Stojanovic, was able to determine the operation of the ICM based on schematics alone, but Broadcom does not point to any instance where Dr. Stojanovic actually explained to the jury how he used those schematics to find *all* of the requirements for the ICM limitation of claim 8.  Further, if it were actually true that the schematics alone show the operation of the ICM, Broadcom should have pointed the Court to those specific portions of the schematics in its opposition, so that the Court could evaluate this evidence in making a decision on this motion.  Yet Broadcom cites nothing in its opposition, other than a few conclusory statements by its expert that the ICM limitation is met.

Instead of directly rebutting arguments Emulex made in its opening brief, Broadcom spends the bulk of its opposition arguing that Emulex's request is barred on procedural grounds.  (Opp.[1] at 1-7).  These arguments are incorrect both as a matter of law and fact.  On the law, Emulex makes a proper request for a new trial pursuant to F.R.C.P. 59(a).  The standard for granting a new trial is broad, giving this Court considerable discretion to grant Emulex the relief it seeks.  Further, even

---

[1] "Opp." refers to Broadcom's Opposition to Emulex's Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial on Non-Infringement of the '150 Patent (Docket No. 969).

1  if viewed as a motion for reconsideration, that standard is also met because

2  reconsideration is necessary in order to avoid a manifest injustice.

3      Because a reasonable jury can and will disregard the unsupported theories

4  presented by Broadcom and its expert, and because the evidence Broadcom

5  presented at trial (taking all inferences in favor of Emulex) does not compel a

6  finding of infringement, specifically with respect to the ICM limitation, the Court

7  should grant Emulex's motion and award a new trial on infringement of the '150

8  patent, where Broadcom can be put to its burden of proof.

9  **II.   ARGUMENT**

10    **A. Emulex's Motion is Procedurally Proper**

11      Broadcom spends the majority of its opposition arguing that Emulex's motion

12  is procedurally improper.  (Opp. at 1-7).  In doing so, Broadcom misrepresents both

13  the applicable law and the relevant procedural history.  As discussed below,

14  Emulex's motion is an appropriate request for a new trial pursuant to Fed. R. Civ. P.

15  59(a).  Moreover, even if viewed as a motion for reconsideration pursuant to L.R. 7-

16  18, that standard is also met because a retrial is necessary in order to prevent a clear

17  misapplication of the law to the facts of this case.

18      **1.  Emulex's Motion is an Appropriate Request for a New Trial**

19      **Pursuant to F.R.C.P. 59(a)**

20      Broadcom complains that "Emulex's motion does not identify any rule of

21  procedure (Federal or Local) authorizing such a motion."  (Opp. at 4).  As Emulex

22  stated in its opening brief, however, the most appropriate remedy – the remedy

23  Emulex seeks – is a new trial on infringement of the '150 patent.  (Docket No. 948

24  at 13-14).  Such relief is expressly permitted by Federal Rule of Civil

25  Procedure 59(a).[2]

26  _____

27  [2] Emulex's motion also included a renewed request for JMOL, but that request was
mainly to preserve appellate rights.  Such motions are commonly presented in the

28  alternative, as reflected in F.R.C.P. 50(b).

2

The decision of whether to grant or deny a new trial under Rule 59 is one committed solely to the sound discretion of this Court.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) ("The authority to grant a new trial…is confided almost entirely to the exercise of discretion on the part of the trial court"); *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003) ("The district court is most familiar with the context of the trial, and enjoys broad discretion with regard to a new trial motion"); *Oracle USA, Inc. v. SAP AG*, 2011 U.S. Dist. LEXIS 98816 at *9 (N.D. Cal. September 1, 2011) ( "[w]hether to grant a new trial is a matter of the trial court's discretion").

"Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice.  It is the judge's right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so."  Charles Alan Wright, et al., *Federal Practice and Procedure* § 2803.  "The concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury."  *Id*. at § 2804.

Rule 59 does not enumerate specific bases for granting a new trial, but instead states that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  F.R.C.P. 59(a).  It is well established that an incorrect ruling (including on JMOL) can form the basis for a new trial.  *See Johnson v. New York, N. H. & H. R. Co*., 344 U.S. 48, 53 (1952) (noting that a JMOL movant "can also ask for a new trial either for errors of law or on discretionary grounds"); *Eolas Techs., Inc. v. Microsoft Corp*., 399 F.3d 1325, 1333-35 (Fed. Cir. 2005) (granting a new trial after JMOL incorrectly removed validity issues from jury consideration); *Hannex Corp. v. GMI, Inc*., 140 F.3d 194 (2nd Cir. 1998) (remanding for new trial).  In the *Oracle* case cited above, the district court noted that it had "discretion to order a new trial rather than grant judgment as a matter of law if it believes that [a] defect in the nonmoving party's

CASE NO. CV 09-1058-JVS (ANx)

proof might be remedied on a second trial, or if needed evidence was ruled out at trial by some error of the court." *Oracle USA, Inc.*, 2011 U.S. Dist. LEXIS 98816 at *8. Indeed, the Local Rules in this District specifically provide for filing a request for a new trial based on "an error of law occurring at the trial." *See* L.R. 59-1.1.

Here, as discussed below, Emulex's request is based on the Court's ruling on Broadcom's JMOL motion, which on the current record did not address the fact dispute regarding the ICM limitation, and which stated Broadcom made out a "prima facie case" of infringement, when in fact the standard for granting JMOL in Broadcom's favor was much higher.

### 2. Broadcom Does Not Explain Why a New Trial is Procedurally Inappropriate

In its opposition, Broadcom does not directly address why a new trial pursuant to F.R.C.P. 59(a) is allegedly inappropriate as a matter of procedure. Instead, Broadcom incorrectly suggests that in order to grant a new trial under F.R.C.P. 59, the Court must first find that its ruling was "against the great weight of the evidence." (Opp. at 6, citing *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984)). But as discussed above, "against the great weight of the evidence" is not the only basis for granting a motion for a new trial – other bases include that the damages were excessive, that the trial was not fair, or based on errors in legal rulings. *See* L.R. 59-1, *Johnson*, 344 U.S. 53 & *Eolas Techs., Inc.*, 399 F.3d 1333-35, discussed above; *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (noting that Rule 59 does not list specific grounds for a new trial, and enumerating several bases). At this juncture, Emulex cannot claim that any verdict was "against the great weight of the evidence" because there was no jury verdict.

Broadcom also incorrectly suggests that the standard for granting a new trial is more stringent than the standard for granting JMOL. (Opp. at 6.) But as

4

discussed above, the standard for granting a new trial is discretionary, and is therefore **less restrictive** than the standard for granting judgment as a matter of law. *See Oracle*, 2011 U.S. Dist. LEXIS 98816 at *9 ("Courts apply a lower standard of proof to motions for new trial than they do to motions for judgment as a matter of law"); *Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc*., 2011 U.S. Dist. LEXIS 20653 at *9 (N.D. Cal. February 17, 2011) (same).  It is simply not the case, as Broadcom suggests, that the Court's granting of JMOL somehow prohibits granting a new trial.  These are separate inquiries, and nothing bars the Court from considering the substance of Emulex's request.

### 3.  Broadcom's Motion Mischaracterizes the Relevant Procedural History

In addition to misstating the applicable law, Broadcom's opposition also misstates the procedural history of this dispute.

Broadcom begins its opposition by rearguing its position on the full-rate/half-rate dispute, (Opp. at 1), which is completely irrelevant to the instant motion.[3] Broadcom then suggests that it was "no surprise" to Emulex that its non-infringement defense was challenged on legal grounds during trial.  Nothing could be further from the truth.

Emulex's expert, Dr. Nikolic, first presented his non-infringement opinion that half-rate circuits do not infringe claim 8 of the '150 patent to Broadcom on May 13, 2011.  Broadcom deposed Dr. Nikolic over two days, on June 7-8, 2011.  Broadcom filed summary judgment motions on June 13, 2011, as well as *Daubert* motions and motions *in limine* on July 15, 2011.  None of these motions ever challenged (or even mentioned) Dr. Nikolic's opinion that half-rate circuits do not infringe claim 8.  Broadcom also never mentioned this as a disputed legal issue in either its Memorandum of Contentions of Fact and Law, or in the Pretrial Order.

---

[3] Emulex will not repeat its arguments in support of its position here.  Those can be found in Docket No. 861.

5

1   (*See* Docket Nos. 751 & 752).  Thus Broadcom never suggested to Emulex or to the

2   Court before trial that these non-infringement positions were legally improper, or

3   that this was a dispute that required resolution by the Court.

4       In fact, the first time Broadcom raised any challenge to Dr. Nikolic's non-

5   infringement opinions was on September 29, 2011, the ***very same day*** Dr. Nikolic

6   was set to testify.  Specifically, Broadcom filed a bench memorandum asking the

7   Court to exclude Dr. Nikolic's non-infringement opinions, but that memorandum

8   did not raise the "sometimes infringement" issue that the Court ultimately found

9   persuasive in its JMOL ruling.  Instead, Broadcom raised a purported claim

10  construction dispute with respect to the "sampling signal" limitation.  (*See* Docket

11  No. 829).  As Emulex rightly pointed out, its non-infringement defense had nothing

12  to do with the construction of "sampling signal."  (Trial Tr., Day 7 (9/29/2011) at

13  56:1-57:14).  The Court agreed, and allowed Dr. Nikolic to present his opinions over

14  Broadcom's objection.  (*Id*. at 60:25-61:5).

15      It was not until October 4, 2011, four days after Dr. Nikolic had testified, that

16  Broadcom brought its JMOL for infringement, arguing that Emulex's position

17  meant the claims were infringed "at least some of the time."  (Docket No. 855).

18  Broadcom did not re-raise its "sampling signal" argument in that motion.

19      Broadcom's JMOL motion was only 2 pages long, and only raised the full-

20  rate/half-rate dispute.  (*Id*.)  Emulex was forced to respond to that motion in less

21  than 24 hours, and the Court was forced to decide the issue only hours after

22  receiving Emulex's opposition, since trial was nearly complete.  Broadcom suggests

23  that by focusing on the full-rate/half-rate dispute in pleadings and oral argument,

24  Emulex gave "short shrift" to the other deficiencies in Broadcom's infringement

25  case.  (Opp. at 3).  This is simply incorrect: the reason Emulex started its brief by

26  focusing on that is it was the ***only*** issue raised in Broadcom's motion.  Nevertheless,

27  after dealing with that dispute, Emulex spent two pages (the same length as

28

6

Broadcom's entire opening brief) discussing other significant failures of proof in Broadcom's infringement case. (*See* Docket No. 861 at 9-10). This discussion expressly included the failure of proof with respect to the ICM limitation and included specific trial record citations showing where these deficiencies of proof were established in the record. (*Id.*) Broadcom never responded to this point, either in briefing or during the oral argument. After the Court indicated that it would grant Broadcom's JMOL motion, Emulex respectfully pointed the Court to this critical portion of its brief, and reiterated the associated trial record citations orally. (Trial Tr., Day 10 (10/5/2011) at 183:21-184:8). Nothing in this procedural history suggests that Emulex gave these fact disputes "short shrift."

Broadcom also speculates as to why Emulex did not spend more time focusing on this failure of proof during trial. As an initial matter, this inquiry is irrelevant – Emulex could have presented no non-infringement case, and judgment in Broadcom's favor would still be improper. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (finding that defendant's failure to present damages expert testimony did not relieve the plaintiff of its obligation to prove its damages case). More fundamentally, Emulex made a decision on which non-infringement defense to present ***before*** it put on its expert. Because Broadcom had never challenged this non-infringement position, Emulex chose a defense that allowed it to have its expert explain how its circuits functioned differently than the circuits claimed in the '150 patent – namely, that its circuits were "half-rate" circuits, whereas the claims recite "full-rate circuits." In addition to having its expert discuss the full-rate/half-rate issue, however, as noted in its opening brief, Emulex also cross-examined Dr. Stojanovic and other Broadcom witnesses on issues relevant to the failure of proof with respect to the ICM limitation. Emulex's decision on which theory to have its own expert present was not based on any

7

perception of shortcomings in other arguments, and in any event what defense *Emulex* presented is irrelevant as to whether *Broadcom* met its burden of proof.

### 4. Even if Viewed as a Motion for Reconsideration, Emulex's Motion is Procedurally Proper

Broadcom suggests that Emulex is procedurally limited to "moving for reconsideration pursuant to Rule 59(e) and Local Rule 7-18." (Opp. at 4). As discussed above, this is legally incorrect – there is ample legal support for Emulex's request for a new trial pursuant to Rule 59(a).

As to Rule 59(e), it does not apply here because that rule addresses "motion[s] to alter or amend a *judgment*." *See* F.R.C.P. 59(e). No judgment has been entered on infringement of the '150 patent, or on any other issue in the case.

As to Local Rule 7-18, the Local Rules of this District cannot trump the Federal Rules, which as discussed above give the right to a new trial based on legal error. *See Bilbud Rancho Cal. v. Johnson & Johnson Dev. Corp.*, 1996 U.S. App. LEXIS 13097 at *4 (9th Cir. May 17, 1996) ("Federal Rule of Civil Procedure 83 authorizes district courts to make rules governing their own practices so long as they are 'not inconsistent with the Federal Rules.' Where a conflict arises between the two, federal rules must prevail" (citing *Colgrove v. Battin*, 413 U.S. 149, 161 n.18 (1973)). Indeed, Broadcom's position would mean that its own post-trial motions for judgment as a matter of law – which simply reassert issues it raised during trial in its omnibus JMOL filing – should be viewed as "motions for reconsideration." Such a result would circumvent the post-trial briefing procedures laid out in the Federal Rules.

Even if Broadcom is correct, however, that this dispute should be viewed as a request for reconsideration pursuant to L.R. 7-18, reconsideration is nevertheless appropriate on the facts of this case. Specifically, Local Rule 7-18 provides that the Court may reconsider any ruling where there is "a manifest showing of a failure to

CASE NO. CV 09-1058-JVS (ANx)

consider material facts presented to the Court before such decision."  Here, the failure of proof with respect to the ICM limitation was identified before the Court ruled on Broadcom's JMOL request.  (*See* Docket No. 861 at 9-10; Opp. at 5).  The Court's oral order granting the JMOL motion applied a "prima facie" showing standard, and did not expressly address the failures of proof identified in Emulex's opposition:

> I believe Dr. Stojanovic made the prime facie case, and he really
> wasn't cross-examined on anything but this – the rotation aspect of
> the interpolator.

(Trial Tr., Day 10 (10/5/2011) at 183:12-14).  As discussed in Emulex's opening brief, the standard for granting JMOL in favor of a party with the burden of proof requires more than making a "prima facie case" – it requires that the movant establish its case by evidence that the jury ***would not be at liberty to disbelieve***, and that the only reasonable conclusion (taking all inferences in favor of Emulex) is in Broadcom's favor.  *See Nobelpharma Ab v. Implant Innovations*, 141 F.3d 1059, 1065 (Fed. Cir. 1998).  Because the Court did not consider these facts under the required legal framework, reconsideration is appropriate.  *See United States Rubber Recycling, Inc. v. Encore Int'l, Inc.*, 2011 U.S. Dist. LEXIS 11678 at *12 (C.D. Cal. January 7, 2011) (granting reconsideration upon review of case law); *City of Colton v. Am. Promotional Events*, 2010 U.S. Dist. LEXIS 123744 at *15 (same).[4]

## B.  Broadcom Does Not Address the Multiple Bases Upon Which a Reasonable Jury Could Disbelieve Dr. Stojanovic

As noted above and in Emulex's opening brief, the standard for granting JMOL in favor of Broadcom required evidence that "the jury would not be at liberty

---

[4]  Broadcom also argues that the Court should not consider Emulex's arguments because they are "identical" to those made during trial.  While Emulex did identify this fact dispute to the Court in its briefing and at oral argument, it did not present the same ***arguments*** that are made in its opening brief, which is what the local rule forbids.  *See* L.R. 7-18.

9

to disbelieve." *Nobelpharma*, 141 F.3d at 1065.  There is no dispute that Broadcom's infringement case is based on the testimony of its expert, Dr. Stojanovic.  (*See* Opp. at 7-9).  In its opening brief, Emulex identified multiple reasons why a reasonable jury could disbelieve this testimony, and Broadcom did not address these shortcomings in its opposition.  Specifically:

- Dr. Stojanovic admitted he was not one of skill in the art during the relevant time period (Trial Tr., Day 5 (9/27/2011) at 164:11-13);

- Dr. Stojanovic did not examine any actual chips for any accused product, did not perform any testing of any accused product, and did not have access to any RTL code for any accused product (*Id.* at 166:8-19 & 183:7-13).

- For the BE2, Dr. Stojanovic relied entirely on the reverse engineering reports prepared by Cellixsoft (*Id.* at 151:6-16), which a reasonable juror could find unreliable (*see* Trial Tr., Day 4 (9/26/2011) at 6:18-22:13);

- Because the Court struck the Zhang report, Dr. Stojanovic could not show the jury any support for his claim that the BE2 infringed, and could only show the jury a black box labeled "CDR" to support each claim limitation (*see* Docket No. 949, Ex. 3 (PDX04-082); Trial Tr., Day 5 (9/27/2011) at 174:4-8;

- Dr. Stojanovic relied on "draft" schematics for the BE3 (*Id.* at 170:2-7); and

- Dr. Stojanovic relied on the PCI Express portion of the circuitry for the BE2, rather than the Ethernet portion (*Id.* at 173:10-17).

The only issue Broadcom even mentions in its opposition brief is that a review of RTL code and physical testing was allegedly not necessary in order to reach its conclusion of infringement.  (Opp. at 10-11).

First, as noted above, *any* of these shortcomings could cause a reasonable juror to disregard Broadcom's expert testimony, and attempting to rebut one shortcoming while ignoring the rest does not make JMOL appropriate. *See Nobelpharma*, 141 F.3d at 1065.

Second, with respect to the RTL code issue, as Emulex noted in its opening brief, Broadcom's own inventor, Dr. Le, testified that the only way to know how an ICM actually operates is to review the "RTL code" – essentially, a form of source code that describes the desired logic functions that will ultimately be embodied in hardware circuits to perform that logic.  (*See* Trial Tr., Day 5 (9/27/2011) at 92:13-93:6).  It is undisputed that Dr. Stojanovic did not have access to and did not review that code.  And despite Broadcom's argument that such a review was unnecessary, Broadcom does not point to any place in any circuit diagram in the accused products that allegedly shows the operation of the ICM logic functions specifically recited in the claim limitation.  Even if the Court were to credit Broadcom's unsupported expert testimony, this creates a fact dispute – and, at the JMOL stage, the Court must assume that all such fact disputes could be resolved by a jury in Emulex's favor.  *See United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1356 (9th Cir. 1977).

Because a reasonable juror was free to disbelieve Dr. Stojanovic's testimony, judgment as a matter of law in favor of Broadcom was not warranted.

### C. Broadcom's "Proof" of Infringement Was Deficient

Additionally, in order to warrant JMOL, Broadcom was required to present evidence which permitted only one possible conclusion: that of infringement.  *See Nobelpharma*, 141 F.3d at 1065.  Because a reasonable juror could find Broadcom failed to meet that burden, a directed verdict in its favor was inappropriate.  This is a separate and independent legal basis for granting Emulex's motion.

With respect to the SOC422, Broadcom argues that "Dr. Stojanovic … explained exactly how the SOC 422 reduces the frequency offset between the sampling signal and the serial data signal, the critical aspect of the 'interpolator control module' limitation." (Opp. at 8). The law of infringement, however, does not allow simply for comparison of products to the "critical aspect" of a claim, it requires comparison to the entire claim limitation. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc*., 239 F.3d 1343, 1351 (Fed. Cir. 2001). Here, claim 8 requires far more than simply "reducing the frequency offset," it requires:

> an interpolator control module coupled to each receive lane, the
> interpolator control module being adapted to cause the phase
> interpolator in each receive-lane to rotate the interpolated phase of the
> sampling signal in the receive-lane at a rate corresponding to a
> frequency offset between the sampling signal and the serial data signal
> associated with the receive-lane so as to reduce the frequency offset
> between the sampling signal and the serial data signal.

(JX005,[5] Claim 8). Dr. Stojanovic's high-level discussion of one portion of this limitation ("so as to reduce the frequency offset") did not relieve him of his duty to explain how the rest of the limitation was allegedly met by the accused products.

Broadcom also states that "Dr. Stojanovic relied on – and cited to – the underlying Toshiba schematics in reaching his opinion." (Opp. at 8). Yet the only testimony Broadcom cites in support of this position is the following:

> In SOC 442 there are actual schematics that you can analyze. In that
> case you can actually understand what is happening inside the
> interpolator control module

(Trial Tr., Day 5 (9/27/2011) at 166:21-25). This testimony has three fatal flaws:

---

[5] Docket No. 949, Ex. 1.

12

- ***First***, Dr. Stojanovic never actually explains how one could analyze the circuit diagrams to discern the operation of the ICM.

- ***Second***, even assuming one could analyze the underlying SOC 442 circuit diagrams in the manner Dr. Stojanovic suggests, Broadcom does not identify in its opposition the portions of those schematics that allegedly show this operation.  This leaves the Court with no ability to independently assess the weight of Broadcom's purported evidence in favor of infringement, to see if it is truly capable of only one possible conclusion.

- ***Third***, again assuming the operation of the ICM is shown in the SOC 442 schematics, Dr. Stojanovic's testimony suggests that for all of the other accused products (BE2, BE3, and Lancer), one ***cannot*** discern the operation of the ICM solely from the schematics – resulting in a complete absence of proof that those products have an ICM that meets all of the requirements of Claim 8.

With respect to the BE3 and Lancer, Broadcom apparently admits that the only portion of claim 8 that Dr. Stojanovic addressed was the "reducing frequency offset" portion of the limitation, which as noted above is not the entirety of claim 8.  (*See* Opp. at 9).  Finally, with respect to the BE2, Dr. Stojanovic did not even address that small part of the ICM limitation.  Broadcom instead argues that "Dr. Stojanovic testified to his review of the BE2 reverse engineering schematics," as if mentioning the existence of the schematics is sufficient to prove infringement, but as the Court is aware those schematics were not introduced into evidence because they were struck, and thus the jury could not consider them.  (*See* Docket No. 341).  Because Broadcom has no proof of infringement for these accused products, much less proof that is capable of only one possible conclusion, JMOL in Broadcom's favor was inappropriate.

### D. Broadcom Misquotes its Own Expert Report with Respect to the Second Order Loop Dispute

Whether claim 8 requires a first-order or second-order loop is apparently a new claim construction dispute. It is largely irrelevant for the purposes of this motion – as discussed above, there are ample alternative bases to find that Broadcom failed to meet its burden of proof, and failed to present evidence that no reasonable jury could disbelieve. Yet in arguing that "Claim 8 does not contain any limitation requiring the 'interpolator control module' to use a first-order loop or a second-order loop," (Opp. at 11), Broadcom misquotes its own expert report.

Specifically, Broadcom claims that Emulex cites a portion of Dr. Stojanovic's report that deals with a limitation in claim 12 ("frequency estimator"), not the ICM limitation in claim 8. This is demonstrably false. The question asked on cross-examination specifically referred to the ICM limitation of claim 8. (*See* Trial Tr., Day 5 (9/27/2011) at 188:22-189:1). And, had the objection not been sustained,[6] Dr. Stojanovic would then have been confronted with portions of his expert report that relate specifically to claim 8, not claim 12:

- "[The] Golbus [prior art reference] does not describe an interpolator control module **as recited in claim 8**. The Golbus update logic uses a first order algorithm…" (Docket No. 949, Ex. 2 (Stojanovic Report) at ¶ 85);

- "[The] Chang II [prior art reference] does not describe an interpolator control module **as recited in claim 8**. The Chang II interpolator control logic uses a first order algorithm…" (*Id*. at ¶ 90).

---

[6] Broadcom suggests that the Court should ignore Emulex's questions regarding the second-order loop issue because those questions allegedly related to invalidity. But these questions were relevant to non-infringement as well, since the same claim scope must be used for both infringement and validity. *See Amazon*, 239 F.3d at 1351 ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses").

14

To be sure, Dr. Stojanovic repeated this same argument for claim 12 (*see, e.g., id.* at ¶ 86 ("the Golbus update logic uses a first order algorithm which cannot cause the phase interpolator in each receive-lane to rotate the interpolated phase of the sampling signal in the receive-lane at a rate corresponding to a frequency offset between the sampling signal and the serial data signal"). But Broadcom is simply incorrect when it states that his admission was limited to that claim.

Broadcom apparently wishes to distance itself from its expert's own admission regarding the scope of the asserted patent, likely because it cannot prove whether any asserted product actually uses a first-order or second-order algorithm. This about-face may also be due to the fact that the Pickering prior art reference undisputedly uses a second-order algorithm, and thus this argument cannot be used to distinguish that reference. Finally, it may simply be the case that Broadcom no longer agrees with its expert's interpretation of the asserted claims. Whatever the reason, at the very least this is yet another reason why a reasonable juror could disbelieve Dr. Stojanovic.

### E. Emulex Did Not "Admit the Presence and Operation of an Interpolator Control Module"

Broadcom's final argument is that Emulex allegedly admitted the presence of the ICM limitation. Broadcom states that "Emulex fails to offer a single citation showing that Dr. Nikolic disputed any aspect of the [ICM] limitation." (Opp. at 12). Broadcom apparently overlooks the quotation cited in Emulex's opening brief, where Dr. Nikolic clearly stated he was disputing the entire ICM limitation. (*See* Trial Tr., Day 8 (9/30/2011) at 82:12-14 ("I am basically disputing that it practices that limitation on the claim that describes the operation of the interpolator control module")). Broadcom also does not attempt to explain its own expert's admission, where he agreed that Dr. Nikolic disputed whether Emulex practices the entire ICM limitation, as well as whether Broadcom had identified the correct circuitry within

15

the ICM.  (*See, e.g.,* Trial Tr., Day 5 (9/27/2011) at 143:11-18 (discussing BE3); *Id.* at 149:13-16 (discussing Lancer)).  Finally, Broadcom does not even attempt to distinguish the cases cited in Emulex's opening brief, which show that simply because one party does not have its expert opine on something does not relieve the other party from meeting its burden of proof.  *See ResQNet.com,* 594 F.3d at 872; *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089 (Fed. Cir. 1997).  Here, it is *Broadcom's* failure to cover the entirety of the ICM limitation that is at issue, and because a reasonable jury could find for Emulex on that basis, judgment as a matter of law was inappropriate.

## III.   CONCLUSION

For the reasons given above and in Emulex's opening brief, the Court should grant Emulex a new trial on infringement of the '150 patent.


Dated:  December 2, 2011              FISH & RICHARDSON P.C.

                                     By: */s/ Jonathan J. Lamberson*
                                         Jonathan J. Lamberson

                                     Attorneys for Defendant and
                                     Counterclaimant
                                     EMULEX CORPORATION


*Additional Counsel*

David M. Barkan (SBN 160825)
  barkan@fr.com
Jonathan J. Lamberson (SBN 239107)
  lamberson@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063-1526
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

16

1  Joseph V. Colaianni, Jr. (*pro hac vice*)
2     colaianni@fr.com
   FISH & RICHARDSON P.C.
3  1425 K Street, N.W., 11th Floor
   Washington, DC 20005
4  Telephone:  (202) 783-5070
   Facsimile:  (202) 783-2331

5  Thomas H. Reger II (*pro hac vice*)
      reger@fr.com
6  FISH & RICHARDSON P.C.
7  1717 Main Street, Suite 5000
   Dallas, Texas 75201
8  Telephone:  (214) 747-5070
   Facsimile:  (214) 747-2091

9  Wasif H. Qureshi (*pro hac vice*)
      qureshi@fr.com
10 FISH & RICHARDSON P.C
   One Houston Center
11 1221 McKinney Street, 28th Floor
   Houston, Texas 77010
12 Telephone:  (713) 654-5300
   Facsimile:  (713) 652-0109
13

14 50817459.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                     17

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 2, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3.  Any other counsel of record will be served by U.S. mail or hand delivery.

By: */s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

50817459.doc

18

CASE NO. CV 09-1058-JVS (ANx)