Juanita R. Brooks (SBN 75934)
*brooks@fr.com*
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

*(Additional counsel listed on signature page)*

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>      Plaintiff,<br><br>      v.<br><br>EMULEX CORPORATION,<br><br>      Defendant.<br><br>And Related Counterclaims | Case No. CV 09-1058-JVS (ANx)<br><br>consolidated with CV 10-3963 JVS (ANx)<br><br>**DEFENDANT EMULEX CORPORATION'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OF NO INFRINGEMENT**<br><br>Hearing Date: December 12, 2011<br>Time: 3:00 p.m.<br>Place: Courtroom 10C<br>Before: Hon. James V. Selna |

# TABLE OF CONTENTS

I. System Claim 7 Requires Circuitry in the Ports ...................................................... 1

II. Emulex's Ports Cannot Meet the Expressly Claimed Port Requirements ........... 3

    A. Broadcom Admits that the InSpeed Ports do not Maintain the Alleged Scoreboard Table ......................................................................................... 4

    B. Broadcom Admits that the InSpeed Ports do not Establish the Data Path Through the Crossbar Switch ...................................................................... 6

    C. Literal Infringement Cannot be Found When the Claim is not Met *Exactly* by the Accused Product .................................................................. 8

III. A Reasonable Jury Must Find That Emulex's Products Do Not Infringe Claim 7 Under the Doctrine of Equivalents ............................................................ 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AquaTex Indus., Inc. v. Techniche Solutions*,
  479 F.3d 1320 (Fed. Cir. 2007) ................................................................... 10

*Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ..................................................................... 8

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009) ..................................................................... 4

*Friskit, Inc. v. Real Networks, Inc.*,
  306 Fed. App'x 610 (Fed. Cir. 2009) ......................................................... 8, 9

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990) ..................................................................... 3

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001) ................................................................... 10

*K-2 Corp. v. Salomon S.A.*,
  191 F.3d 1356 (Fed. Cir. 1999) ................................................................. 2, 8

*Linear Tech. v. Int'l Trade Comm'n*,
  566 F.3d 1049 (Fed. Cir 2009) ...................................................................... 9

*Resonate Inc. v. Alteon Websys., Inc.*,
  338 F.3d 1360 (Fed. Cir. 2003) ..................................................................... 9

*Texas Instruments, Inc. v. Int'l Trade Comm'n*,
  988 F.2d 1165 (Fed. Cir. 1993) ................................................................. 2, 8

Broadcom's Opposition fails to identify evidence in the trial record from which a jury could find that every limitation of Claim 7 of the '691 patent is met by Emulex's accused InSpeed products.  First, Broadcom fails to point to trial record evidence from which a jury could conclude that the accused products have "port circuitry" that meets the expressly stated requirements of Claim 7.  Instead, Broadcom's Opposition freely discusses the functionality of components *other than the port circuitry*, which clearly is not evidence upon which a jury could base a finding regarding the "circuitry in each said port circuit" as required by Claim 7.  Broadcom's failure to identify proof in the trial record regarding port circuitry in the accused products is particularly fatal since Claim 7 is a system claim, not a method claim, and infringement can only be shown with evidence about whether the InSpeed products include the expressly recited components of the system claim.

Second, Broadcom exaggerates the functionality of the circuitry in the accused InSpeed ports by repeatedly arguing that the InSpeed ports ask for these functions to be performed "using intermediary components."  But Broadcom's arguments are not evidence, and the evidence at trial – unrebutted by Broadcom – showed that the InSpeed ports simply have no knowledge of, access to, or control over the functions which Claim 7 expressly says must be performed by the port circuitry.  Thus, neither of Broadcom's theories is supported by evidence in the trial record from which a jury could find claim 7 infringed.

**I.  System Claim 7 Requires Circuitry in the Ports**

At the outset, it is important to note that the only asserted claim of the '691 patent is a system claim that recites various components and requirements of those components:

> 7.   A packet switch …, comprising:
>
> a crossbar switch;
>
> a protocol bus;

1

CASE NO. CV 09-1058-JVS (ANx)

1            a plurality of port circuits …;

2            circuitry in each said port circuit … for maintaining a

3       scoreboard table …  and a routing table …; and

4            wherein said port circuits …

5

6 As a <u>system</u> claim, it is obvious that claim 7 is not a method claim that merely

7 requires that an accused product perform identified functions or steps.  Instead, this

8 system claim requires specific components and circuitry, and this required circuitry

9 is squarely – and unambiguously – only in the "ports" according to the claim.  In

10 short, the claim language – without any proposed claim construction by any party or

11 expert – expressly requires distinct circuitry in ports.

12       In its Opposition, Broadcom implies that this Court should rewrite system

13 claim 7 such that the express claim language would no longer require ports to

14 include the required circuitry.  Specifically, Broadcom asks the Court to construe

15 claim 7, post-trial, to only require that the ports "'trigger' all the claimed functions"

16 or "perform claimed functions using intermediary components."  (Opp. at 2).  Of

17 course, the claims do not recite "trigger," "cause," "initiate" or any other such soft

18 language.  Moreover, Broadcom's request would rewrite system claim 7 into a

19 method claim to cover any product that performs the claimed functions even though

20 that product includes ports with none of the required circuitry.  Therefore,

21 Broadcom's request is at odds with Federal Circuit law, which precludes courts

22 from rewriting patent claims. *See Texas Instruments, Inc. v. Int'l Trade Comm'n*,

23 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("[T]o construe the claims in the manner

24 suggested by TI would read an express limitation out of the claims.  This, we will

25 not do because courts can neither broaden nor narrow claims to give the patentee

26 something different than what he has set forth.") (internal citations omitted); *K-2*

27 *Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite

28

claims; instead, we give effect to the terms chosen by the patentee."). Accordingly, to prove infringement of this system claim, Broadcom is required to show that Emulex's *ports* include the specified circuitry.

## II. Emulex's Ports Cannot Meet the Expressly Claimed Port Requirements

Broadcom's Opposition repeatedly misconstrues Emulex's non-infringement argument, namely that the InSpeed ports have *no circuitry* to do the expressly claimed functionality. Instead, Broadcom created its own argument on Emulex's behalf, including:

- "the central legal premise of Emulex's core argument—that the accused products cannot infringe because their router performs certain functions at the initiative of the port circuit." (Opp. at 2)

- "the legal premise of this argument contravenes Federal Circuit precedent holding that it is not a defense to infringement for one component to carry out a claimed function through an intermediary component." (Opp. at 4)

Put simply, Emulex never argued that its router performs functions "at the initiative" of the port circuitry. To the contrary, Emulex's fact witness and expert testified the port circuitry lacks any circuitry to perform those functions and that testimony was unrebutted by Broadcom. Similarly, Broadcom's second point both misstates Emulex's argument and misstates the law. As shown below, Federal Circuit law is clear that when a system claim recites that a particular component must have certain characteristics, as the two "port circuit" limitations of claim 7 do here,[1] the fact that the accused component lacks those characteristics is dispositive of no infringement – period. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device is, not what a device does");

---

[1] Broadcom's Dr. Vahdat referred to these limitations collectively as the "port circuits limitation" (Trial Trans. Day 4 at 170:13-14) and the "wherein said port circuits limitation." (*Id*. at 183:14-15).

*see also Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1363 (Fed. Cir. 2009) ("Our precedents draw a clear distinction between method and apparatus claims for purposes of infringement liability, which is what Section 271 is directed to.").

### A. Broadcom Admits that the InSpeed Ports do not Maintain the Alleged Scoreboard Table

While also proving that the router is the only component with so-called "initiative," Emulex proved that the InSpeed ports do not have the circuitry required by the claims. In fact, although not required, Emulex even proved that the InSpeed ports have no knowledge of, access to, or control over the claimed functions that, according to Claim 7, must be performed by port circuitry. For example, with respect to the claimed port requirement of maintaining a scoreboard table, Emulex proved that the InSpeed ports have *nothing* to do with the accused scoreboard table: *no* control over the accused scoreboard table, *no* access to the accused scoreboard table, and *no* knowledge of the accused scoreboard table.[2] As Broadcom's Opposition admitted, it is undisputed that the InSpeed <u>ports</u> do not build or update the scoreboard table. Broadcom's Opposition instead acknowledges that it is the InSpeed router that builds and updates the accused scoreboard table:

> Mr. Warden confirmed that the port circuits maintain the scoreboard and routing tables by communicating information to the router that ***allows the router to build and update the scoreboard and routing tables***.

(Opp. at 8-9) (*emphasis added*). While Broadcom attempts to frame this admission by stating that the router uses information from the ports, that argument is contrary to the trial record.

---

[2] Trial Tr., Day 8 (09/30/11) at 183:25-184:13 (discussing "status information," which Broadcom alleges is the claimed scoreboard table).

4

CASE NO. CV 09-1058-JVS (ANx)

1       With respect to the trial record, Broadcom's Opposition cites to trial
2 testimony by Emulex's expert Mr. Warden:
3       (*See* Trial Tr. Oct. 4, 2011, at 90:12-16 ("Q: It is the communications
4       between the port and the router that give the router the information it
5       needs to populate that scoreboard table; correct? A: In a manner of
6       speaking, yes.")
7 (Opp. at 8-9). But Broadcom's selective quote from Emulex's expert includes a
8 significant misquote. Broadcom's Opposition quotes Mr. Warden as answering "In
9 *a* manner of speaking, yes." However, the certified transcript actually reveals that
10 Mr. Warden testified "In ***your*** manner of speaking, yes."
11       Regardless, Broadcom's selective quote is directly preceded by trial
12 testimony that unequivocally proved that *no* information from the InSpeed ports is
13 used to populate the accused scoreboard table.³ Instead of confirming that the
14 scoreboard table receives information from the InSpeed ports, that omitted
15 testimony states:
16       [Mr. Mueller]: Mr. Warden, that table receives the information from
17       the ports; correct?
18       A. … – *you're talking about the scoreboard table? No, it does not*.
19       Q. Mr. Warden, the scoreboard table in the Emulex router keeps the
20       information it receives from the ports; correct?
21       A. *No, it does not*.
22       Q. If the ports never communicated with the router, the scoreboard
23       table would be empty; isn't that right?
24       A. *No*.
25       Q. How would it know what the status of the ports is without
26       receiving communications from the ports?

---

³   Trial Tr., Day 9 (10/04/11) at 89:12-90:4.

A. The router makes the connections itself. As it makes connections, it puts that status into its own table. ***So the ports don't actually send any message that says I am now busy, put this in a table, or update the table for me. Nothing like that occurs.***

(Trial Tr., Day 9 (10/04/11) at 89:12-90:4).  In short, the InSpeed router – not an InSpeed port – establishes the connection and creates the status information for that connection that is used to populate the accused scoreboard table.  And the InSpeed router – not an InSpeed port – is the only component that knows about, has access to, or controls the accused scoreboard table.[4]

As such, the undisputed trial evidence proves that the InSpeed port does not include circuitry "for maintaining a scoreboard table."  For this reason alone, a reasonable jury must find that Emulex's InSpeed products do not literally infringe claim 7 of the '691 patent.

## B. Broadcom Admits that the InSpeed Ports do not Establish the Data Path Through the Crossbar Switch

As another example that the InSpeed ports have no knowledge of, access to, or control over the expressly required <u>port</u> functions, claim 7 requires the <u>port</u> to "establish a data path via a particular channel through said crossbar switch."  Here, it is undisputed that the InSpeed ports send no commands to the crossbar switch and otherwise have no control over the crossbar switch:

Q. Now, does the port send commands to the crossbar switch?

A. No.

Q. Do the ports have any control over the crossbar switch?

A. No.

(Trial Tr., Day 8 (9/30/11) at 183:5-8).  Indeed, Broadcom's Opposition acknowledges that a wholly different component establishes a data path through the

---

[4] *See* fn. 2 *supra*.

crossbar switch, noting that "the ***router***, acting as an intermediary, ***causes the crossbar switch to configure itself such that there is a data path between the source and destination ports***." (Opp. at 14) (*emphasis added*).[5]

      Broadcom attempts to frame its admission by stating that the router does this function "acting as an intermediary," which is again both contrary to the trial record and irrelevant. Not only does the InSpeed port not have the circuitry to establish a data path through the crossbar switch, but the port does not have the circuitry to "use an intermediary component" to do so – as Broadcom's Opposition suggests. There is simply no trial evidence that ports send commands or provide any other initiative to other components, such as the router and crossbar switch. Instead, the unrebutted testimony by Emulex witnesses is that the InSpeed ports do not send commands to the router, whether for use by the crossbar switch or otherwise.[6]

      Here, the jury heard that the crossbar switch is controlled by one component alone, the InSpeed router. Specifically, it is unrebutted testimony that the InSpeed *router* – not the port – is the "brains of the [InSpeed] chip," and the InSpeed *router* – not the port – is "responsible to make all the decisions to connect or disconnect the connections between ports."[7] As the (only) responsible component, the InSpeed

---

[5] In addition to the clear admission above, Broadcom's Opposition merely cites evidence that a data path through the crossbar switch is established, namely that: 1) Dr. Vahdat testified that "as a result there is a 'path through the crossbar switch'," and 2) Mr. Warden agrees that "there is a resulting data path established." (Opp. at 14).

[6]   Q. Now, to be clear, sir, do any of these signal lines send commands from a port to a router?
    A. No, they don't.
(Trial Tr., Day 8 (9/30/11) at 182:18-20).

[7]   Q. What is the InSpeed router?
    A. The router is the brains of the chip.
    Q. What do you mean by that?
    A. It's responsible to make all the decisions to connect or disconnect the connections between the two ports.
(Trial Tr., Day 8 (9/30/11) at 182:24-183:4).

    Q. …What component controls the crossbar switch in the InSpeed products?
    A. The router.
(Trial Tr., Day 8 (9/30/11) at 183:10-12).

7

router is *not* some intermediary component that "performs certain functions at the initiative of the port circuits" as Broadcom pretends. And, as the (only) responsible component, the InSpeed router cannot meet claim limitations that expressly require a different component (a port) to include specific circuitry. Therefore, Broadcom's literal infringement allegations must fail here where Broadcom is unable to show that the InSpeed ports include the *exact* circuitry required by the claim.

### C. Literal Infringement Cannot be Found When the Claim is not Met *Exactly* by the Accused Product

The mere assertion that "a scoreboard table is maintained" or that "a data path is established" is legally insufficient to prove that a system claim is infringed, particularly when the system claim expressly states that the port must be the component that includes the requisite circuitry. First, claim 7 expressly states that the circuitry is in the port ("circuitry in each said port circuit," and "wherein said port circuits function to…"), and it is improper to find literal infringement when the claim is not met *exactly* by the accused product.[8] *See Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, ***exactly***. Thus, [i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law.") (internal citations omitted) (*emphasis added*).

Broadcom's cited caselaw is not applicable – or contradictory – to the express claim language here. First, the Court in *Friskit*[9] ruled that "control" in the asserted patent could include "direct" and "indirect" control because a separate claim

---

[8] *See Texas Instruments, Inc. v. Int'l Trade Comm'n,* 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("[T]o construe the claims in the manner suggested by TI would read an express limitation out of the claims. This, we will not do because courts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.") (internal citations omitted); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

[9] *Friskit, Inc. v. Real Networks, Inc.*, 306 Fed. App'x 610 (Fed. Cir. 2009).

specifically required "direct control," therefore the Court was inclined "to give effect to the adjective 'direct.'" 306 Fed. App'x at 614-615. Not only is Broadcom's post-trial claim construction too late, but no such claim differentiation exists in the '691 patent. In addition, unlike the claim given broader interpretation in *Friskit*, claim 7 of the '691 patent recites <u>specified circuitry in a specified component</u> (the port), negating any inference that one of skill in the art could read the claim to mean that the specified component merely "initiates" a process through circuitry that resides in a completely different component. Second, in *Linear Tech*,[10] the claim expressly required circuitry, or a signal, "to cause" a resulting event. *See Linear Tech.* 566 F.3d at 1056. But here, claim 7 does not recite circuitry that "causes" another component to perform the claimed port circuit functions; claim 7 expressly recites port circuitry to perform the port circuit functions. Third, in *Resonate*,[11] the parties disputed whether an asserted claim required that a transmission path bypass a specific network component, where the asserted claim did not expressly include the "bypass" language. *See* 338 F.3d at 1363. The *Resonate* court refused to rewrite the claim language to include the bypass limitation. *See Resonate*, 338 F.3d at 1367. In short, no case cited by Broadcom supports its argument that express language in a system claim can be ignored.

Accordingly, Emulex respectfully asks this Court to grant judgment as matter of law that no reasonable jury could find that Emulex literally infringes claim 7 of the '691 patent.

### III. A Reasonable Jury Must Find That Emulex's Products Do Not Infringe Claim 7 Under the Doctrine of Equivalents

Broadcom's attempt to show infringement under the doctrine of equivalents fails as a matter of law. Broadcom's Dr. Vahdat attempted to apply the function,

---

[10] *Linear Tech. v. Int'l Trade Comm'n*, 566 F.3d 1049 (Fed. Cir 2009).
[11] *Resonate Inc. v. Alteon Websys., Inc.*, 338 F.3d 1360 (Fed. Cir. 2003).

way, result test to show infringement under the doctrine of equivalents.[12] For such an attempt, the Federal Circuit has "held that the function, way, result inquiry focuses on "an examination of the claim and the explanation of it ***found in the written description of the patent***." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (*emphasis added*); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001) (applying function, way, result test, stating "[h]aving identified the functions in the claim language itself, ***we look to the way in which those functions are accomplished and the attendant results in the specification***.") (*emphasis added*). But not once did Dr. Vahdat refer to the '691 patent specification to compare a disclosed function, way, and result to the InSpeed products. For this reason alone, Broadcom has failed to meet the legal requirements to show infringement under the doctrine of equivalents.

Ignoring these legal requirements, Broadcom's Opposition attempts to show that Dr. Vahdat provided the required "particularized testimony" for the function/way/result test for the "maintain" claim limitation. For that test, Dr. Vahdat proposed that the function of the "maintain" claim limitation is connectivity between the port and the routing and scoreboard tables:

> [t]he function of this claim limitation is to essentially have connectivity from the port circuits to the routing table and scoreboard table over a protocol bus, and we see that exact same functionality in the InSpeed products.

(Trial Tr., Day 4 (09/23/11) at 181:8-11). Broadcom's Opposition then argues that Dr. Vahdat's testimony did "contain evidence showing 'connectivity' to the scoreboard and routing tables." (Opp. at 16).

---

[12] Trial Tr., Day 4 (09/23/11) at 167:21-168:2.

But instead of providing testimony by Dr. Vahdat that the ports have supposed connectivity *to the tables*, Broadcom's Opposition provides testimony that the ports have general connectivity *to the router*. Specifically, the Broadcom-quoted testimony of Dr. Vahdat is repeated below (as emphasized by Broadcom):

> A: Certainly. . . . It's a little bit hard to read, but on the left-hand side we have a large rectangle that's labeled port logic . . . and within the port logic we have a smaller box labeled control logic. . . . And now over here there is a smaller rectangle labeled router/switch logic. *The important thing to know is that there is connectivity from the control logic to the router/switch logic that forms the protocol bus*. . . ."

(Opp. at 16). Needless to say, this testimony does not reference a routing table or a scoreboard table and therefore is insufficient to prove Dr. Vahdat's own proposed "function" can be found in the InSpeed products. Nor does Broadcom's Opposition point to any other "particularized" testimony by Broadcom's expert that the InSpeed ports have connectivity to those tables in the router. Along with a picture emphasizing the same general connectivity between an InSpeed port and router, this is the <u>only</u> evidence that Broadcom's Opposition proposes as "particularized testimony" that the InSpeed products meet the alleged "function of this claim limitation [which] is to essentially have *connectivity from the port circuits to the routing table and scoreboard table*." As such, even assuming that Dr. Vahdat's proposed "function" for this limitation is correct and legally sufficient, Broadcom's Opposition does not point to any evidence Dr. Vahdat relied on to show that the ports have such connectivity to the tables.[13] Therefore, even viewed in a light most

---

[13] To the contrary, as shown above in Section II, Emulex's evidence specifically showed that the InSpeed ports have no access to or knowledge of the alleged routing table or scoreboard table whatsoever. (Trial Tr., Day 8 (09/30/11) at 184:6-13; 183:19-24). And Broadcom did not call Dr. Vahdat as a rebuttal witness to address this issue after Emulex's case was complete.

favorable to Broadcom, Broadcom's Opposition provided no showing that the ports have connectivity *to the tables* in Dr. Vahdat's analysis.

Broadcom's Opposition fails to prove that a reasonable jury would have a legally sufficient basis to find infringement under the doctrine of equivalents. Accordingly, Emulex asks this Court to grant judgment as a matter of law that no reasonable jury could find that Emulex infringes claim 7 of the '691 patent under the doctrine of equivalents.

Dated:  December 2, 2011                         FISH & RICHARDSON P.C.

                                                 By: */s/ Jonathan J. Lamberson*
                                                     Jonathan J. Lamberson

                                                 Attorneys for Defendant and
                                                 Counterclaimant
                                                 EMULEX CORPORATION

*Additional Counsel*

David M. Barkan (SBN 160825)
  barkan@fr.com
Jonathan J. Lamberson (SBN 239107)
  lamberson@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063-1526
Telephone:  (650) 839-5070
Facsimile:  (650) 839-5071

Joseph V. Colaianni, Jr. (*pro hac vice*)
  colaianni@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone:  (202) 783-5070
Facsimile:  (202) 783-2331

| | |
|---|---|
| 1 | Thomas H. Reger II (*pro hac vice*) |
| 2 | reger@fr.com<br>FISH & RICHARDSON P.C. |
| 3 | 1717 Main Street, Suite 5000<br>Dallas, Texas 75201 |
| 4 | Telephone: (214) 747-5070<br>Facsimile: (214) 747-2091 |
| 5 | Wasif H. Qureshi (*pro hac vice*) |
| 6 | qureshi@fr.com<br>FISH & RICHARDSON P.C |
| 7 | One Houston Center<br>1221 McKinney Street, 28th Floor |
| 8 | Houston, Texas 77010<br>Telephone: (713) 654-5300 |
| 9 | Facsimile: (713) 652-0109 |
| 10 | 50817206.doc |

13

CASE NO. CV 09-1058-JVS (ANx)

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 2, 2011 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-3.3. Any other counsel of record will be served by U.S. mail or hand delivery.

By: */s/ Jonathan J. Lamberson*
Jonathan J. Lamberson

50817206.doc

14

CASE NO. CV 09-1058-JVS (ANx)