WILLIAM F. LEE
(admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA
(admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER
(admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS
(admitted *pro hac vice*)
(louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

Attorneys for Plaintiff
BROADCOM CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>EMULEX CORPORATION,<br><br>Defendant.<br><br><br>And Related Counterclaims | CASE No.  SACV09-1058 JVS (ANx)<br>consolidated SACV 10-03963-JVS (ANx)<br><br>**PLAINTIFF BROADCOM CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OF INFRINGEMENT OF CLAIM 1 OF THE '194 PATENT (BE3 AND QT2025), AND CLAIM 5 OF THE '124 PATENT (SOC442)**<br><br>Before:         Hon. James V. Selna<br>Date:            December 12, 2011<br>Time:            3:00 p.m.<br>Courtroom:    10C |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

I.    INTRODUCTION .......................................................................... 1

II.   ARGUMENT ................................................................................ 3

    A.    The BE3 and QT2025 Infringe Claim 1 as a Matter of Law.......................................................................................... 3

        1.    Emulex—Not Broadcom—Is Seeking a New and Different Post-Trial Claim Construction. .................................. 4

        2.    Claim 1 Does Not Require a $C^3MOS$ Demultiplexer. ...................................................................... 7

        3.    Emulex Admits that the BE3 and QT2025 Include $C^3MOS$ and Deserialize. ..................................................... 12

    B.    The SOC442 Infringes Claim 5 as a Matter of Law. ......................... 13

III.  CONCLUSION ............................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Conoco, Inc. v. Energy & Environmental International, L.C.*,
    460 F.3d 1349 (Fed. Cir. 2006) ...................................................................... 5, 6

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ...................................................................... 4, 6

*Geo. M. Martin Co. v. Alliance Machine Sys. International LLC*,
    618 F.3d 1294 (Fed. Cir. 2010) ............................................................. 4, 12, 14

*Kara Tech. Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009) .......................................................................... 10

*Lazare Kaplan Int'l, Inc. v. Photoscribe Technologies, Inc.*,
    628 F.3d 1359 (Fed. Cir. 2010) .......................................................................... 11

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008) ............................................................................ 14

*Teleflex, Inc. v. Ficosa North America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) .......................................................................... 13

*Upjohn Co. v. Mova Pharmaceutical Corp.*,
    225 F.3d 1306 (Fed. Cir. 2000) .................................................................... 3, 14

*Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*,
    602 F.3d 1325 (Fed. Cir. 2010) ............................................................................ 5

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

# I.   INTRODUCTION

Like its defense at trial, Emulex's opposition to JMOL rests on the premise that claim 1 of U.S. Patent No. 6,424,194 (the "'194 patent") requires that the claimed $C^3MOS$ circuitry be "used for deserialization." (Emulex's Opposition to Broadcom's Motion for Judgment as a Matter of Law Regarding Infringement of Claim 1 of the '194 Patent (BE3 and QT2025) and Claim 5 of the '124 patent (SOC442), Dkt. 973, Nov. 23, 2011 ("Emulex Op."), at 3, 16.) Specifically, Emulex argues that the $C^3MOS$ circuits must themselves be used to divide down the frequency of a signal to satisfy claim 1. (*See id.* at 11 n.7 (equating "divid[ing] down" frequency with "deserializ[ing]).) In other words, Emulex's defense rests on the premise that the $C^3MOS$ circuits must themselves be the circuits in the deserializer that divide down the frequency of the signals—i.e., "demultiplex" the signals.

But the invention of the '194 is not so limited. As the specification makes clear, $C^3MOS$ can be used for a variety of purposes in high-speed deserializers—including "divid[ing] down the frequency of the signals," ***but also*** including to "interfac[ing] with and process[ing] the high speed signals" before that "dividing down" occurs. '194 patent col.7 ll.6-12. Part of the genius of the invention is that power-hungry $C^3MOS$ can be used only to the extent necessary, in the particular parts of the deserializer where it is needed to handle a high-speed signal. (*See, e.g.*, Emulex Op. at 9 (conceding that $C^3MOS$ is used when "vital"); Trial Tr. Sept. 22, 2011, at 33:15 (testimony of inventor Dr. Armond Hairapetian that $C^3MOS$ is used only "where it [i]s essential.").)

Emulex argues that the invention is somehow limited to the specific configuration in which C3MOS is used to divide down the frequency of the signal, but this mischaracterizes the invention and is not what claim 1 requires. Rather, claim 1 requires only that the first circuitry contain $C^3MOS$, ***and*** that the first

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1   circuitry be "configured to deserialize." ('194 patent col.9 ll.11-13.)  There is no

2   dispute that the circuitry identified by Broadcom's expert Dr. Fair as the claimed

3   "first circuitry" in the BE3 and the QT2025 products contains $C^3$MOS, and there is

4   no dispute that the first circuitry is configured to deserialize.  (*See, e.g.*, Trial Tr.

5   Sept. 30, 2011, at 46:4-10.)   Because no reasonable jury could find otherwise,

6   Broadcom is entitled to JMOL.

7        Emulex attempts to avoid JMOL by suggesting that Broadcom is somehow

8   offering a "brand new claim construction."  But Emulex—not Broadcom—is

9   asking the Court to construe claim 1 post trial.  In its opposition, Emulex

10  specifically requests that claim 1 be "construed to require that at least a 'portion' of

11  the deserialization used $C^3$MOS circuitry"—in other words, that the $C^3$MOS

12  circuits are used to divide down the frequency.  (Emulex Op. at 16; *see also id.* at

13  11 n.7.)  It is improper for Emulex to offer a new limiting construction post-trial,

14  and Emulex's construction is contrary to the claim language as well as the specific

15  portion of the specification that Broadcom cited in its opening brief, but Emulex

16  ignored in its opposition.

17       To support its new construction, Emulex relies heavily on Dr. Fair's

18  testimony that because the claim says "$C^3$MOS" and "is configured to deserialize,"

19  the infringing circuitry must include "$C^3$MOS" ***and*** be "configured to deserialize."

20  (Emulex Op. at 2, 10 (citing Trial Tr. Sept. 23, 2011, at 38:12-39:2).)  But that is

21  not what is actually in dispute.  Neither Broadcom nor Dr. Fair has ever disputed

22  that, to infringe, a product must include $C^3$MOS, ***and*** must be configured to

23  deserialize.  Dr. Fair did, however, unequivocally reject Emulex's view that the

24  infringing $C^3$MOS circuits had to be the circuits in the deserializer that were

25  performing demultiplexing (i.e., "dividing down the frequency").  (*See, e.g.*, Trial

26  Tr. Sept. 22, 2011, at 139:8-15; *id.* at 157:5-6.)  Because Emulex's construction

27  finds no support in either the intrinsic record or the testimony at trial, the Court

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1    should reject it and grant Broadcom's motion for JMOL.

2          Emulex's opposition to JMOL of infringement of claim 5 of U.S. Patent No.

3    7,486,124 (the "'124 patent") is equally flawed.  Emulex relies solely on a

4    purported factual dispute resulting from Emulex's expert's conclusory, impeached,

5    and counterfactual testimony that the signal pair Q1P and Q1N is never "output"

6    from the circuit in which it is generated.  But an expert's conclusory opinion,

7    unsupported by the factual record, does not defeat JMOL.  *See, e.g.*, *Upjohn Co. v.*

8    *Mova Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000) ("[T]here must be

9    factual support for an expert's conclusory opinion").  Based on the record as a

10   whole, Broadcom's motion for JMOL that the SOC442 infringes claim 5 should be

11   granted.

12   **II.   ARGUMENT**

13         **A.   The BE3 and QT2025 Infringe Claim 1 as a Matter of Law.**

14         There is no dispute that the BE3 and QT2025 use $C^3$MOS, and that they do

15   so "for a reason."  (Trial Tr. Sept. 30, 2011, at 46:4-10.)  As Emulex itself

16   concedes, the use of $C^3$MOS can be "vital" in high-speed applications, including

17   high-speed SerDes.  (Emulex Op. at 9.)  But, because $C^3$MOS requires substantial

18   power, it is only used in SerDes circuitry in the particular locations "where it [i]s

19   essential."  (Trial Tr. Sept. 22, 2011, at 33:15.)

20         Emulex contends that the use of $C^3$MOS circuitry described in claim 1 has

21   only a limited purpose—to divide down the frequency of a signal.   (Emulex Op. at

22   3, 11 n.7.)  But Emulex's proposed limiting construction comes too late, and, in

23   any event, is unsupported by the claim language, specification, prosecution history,

24   and testimony at trial.  Once Emulex's construction is rejected, "the evidence,

25   construed in the light most favorable to [Emulex], permits only one reasonable

26   conclusion"—that the BE3 and QT2025 infringe claim 1.  *Geo. M. Martin Co. v.*

27   *Alliance Machine Sys. Int'l LLC*, 618 F.3d 1294, 1300 (Fed. Cir. 2010) (quoting

28

3

1  *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002)).

2        *1.*      **Emulex—Not Broadcom—Is Seeking a New and Different**

3                        **Post-Trial Claim Construction.**

4        Before trial, Emulex never sought the limiting construction of claim 1 that it

5  now advocates.  The Court construed six terms in the claims of the '194 patent, and

6  held that all other terms "shall have their plain and ordinary meaning."  (Glossary,

7  Dkt. No. 899, Sept. 21, 2011, at 3-4); *see also, e.g.*, *Finjan, Inc. v. Secure*

8  *Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (approving use of plain

9  and ordinary meaning when parties do not dispute meaning of claim term).

10  Neither the "wherein the first circuitry" limitation, nor any of the component parts

11  "first circuitry," "input circuit," or "configured to deserialize" was among the

12  construed terms.  (*See id.*)

13        Contrary to Emulex's assertions, Broadcom's motion for judgment as a

14  matter of law does not "demand[] a new claim construction."  (Emulex Op. at 4.)

15  Broadcom's motion does not advocate for any new claim construction—in fact, it

16  does not mention claim construction at all.  Rather, Broadcom's motion is

17  premised solely on the claim language, in view of the concessions that Emulex

18  made at trial that the identified circuitry in the BE3 and QT2025 is $C^3MOS$.  (*See*

19  Plaintiff Broadcom Corporation's Memorandum in Support of Its Motion for

20  Judgment a Matter of Law of Infringement of Claim 1 of the '194 Patent (BE3 and

21  QT2025) and Claim 5 of the '124 Patent (SOC442), Dkt. No. 961, at 18

22  ("Broadcom Mem.").)

23        Emulex—not Broadcom—is now seeking to apply a new and narrower

24  claim construction of claim 1.  Emulex admits expressly in its brief that its primary

25  argument applies only "when claim 1 of the '194 Patent *is construed* to require

26  that at least a 'portion' of the deserialization used $C^3MOS$ circuitry."  (Emulex Op.

27  at 16 (emphasis added).)  But as Emulex itself argues, seeking a new claim

28

**BROADCOM'S REPLY BRIEF ON JMOL OF
INFRINGEMENT OF '194 AND '124 PATENTS**

1    construction post trial is improper.  *See, e.g.*, *Conoco, Inc. v. Energy &*

2    *Environmental Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[L]itigants

3    waive their right to present new claim construction disputes if they are raised for

4    the first time after trial."); (*see also* Emulex Op. at 1, 4-5).

5           Moreover, Emulex's new position that claim 1 should be construed to

6    require that the claimed $C^3$MOS circuits be "used for deserialization" (by which it

7    means used to divide down frequency) is inconsistent with its earlier position that

8    the "input circuit" limitation did not require construction.  At the outset of the

9    claim construction process, Emulex submitted its list of proposed claim

10   constructions pursuant to Northern District of California Patent Local Rule 4-2.

11   (*See* Ex. A, Emulex Corporation's Preliminary Claim Constructions and Extrinsic

12   Evidence, June 18, 2010.)[1]  In that disclosure, Emulex proposed that the term

13   "[i]nput circuit" be construed to mean "A $C^3$MOS circuit configured to deserialize

14   the first signal."  (*Id.* at 19.)  However, three months later, Emulex reversed course

15   and abandoned its claim that "input circuit" required construction.  On September

16   10, 2010, Emulex filed amended proposed claim constructions that made no

17   mention of any construction of "input circuit."  (*See* Ex. B, Emulex's First

18   Amended Preliminary Claim Constructions and Extrinsic Evidence, Sept. 10,

19   2010.)  Emulex never subsequently amended its proposed constructions and never

20   sought any construction of "input circuit."  Emulex has therefore waived its right

21   to seek construction of the "input circuit" limitation.  *See Verizon Servs. Corp. v.*

22   *Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010) (holding that party is

23   not entitled to post-trial claim construction where it "never identified at any time

24

25           [1]      All exhibits are exhibits to the Declaration of Jason H. Liss

26   Accompanying Broadcom Corporation's Reply Brief in Support of Its Motion for

27   Judgment as a Matter of Law of Infringement of Claim 1 of the '194 Patent (BE3
     and QT2025), and Claim 5 of the '124 Patent (SOC442), filed concurrently.

28

**BROADCOM'S REPLY BRIEF ON JMOL OF
INFRINGEMENT OF '194 AND '124 PATENTS**

1  during the proceedings before the district court any specific claim term that was

2  misconstrued or that needed further construction"); *see also, e.g.*, *Finjan*, 626 F.3d

3  at 1207; *Conoco*, 460 F.3d at 1359.

4       Emulex is also wrong to suggest that Broadcom's understanding that claim 1

5  does not require the $C^3MOS$ circuits themselves to be used to divide down the

6  frequency of the signal is somehow a "new position."  (Emulex Op. at 1.)

7  Broadcom's expert at trial repeatedly made clear that his position was that the

8  demultiplexing did not have to occur in $C^3MOS$ to satisfy claim 1, and that he

9  understood that Dr. Nikolic was taking a contrary position.  (*See, e.g.*, Trial Tr.

10  Sept. 22, 2011, at 139:8-15 (testimony of Dr. Fair explaining disagreement with

11  Dr. Nikolic's view; *id.* at 157:5-6 (same).)  Moreover, Emulex was aware well

12  before trial—certainly at the latest, after the deposition of Dr. Nikolic—that

13  Broadcom's position was that a product containing $C^3MOS$ and performing

14  deserialization infringed, even if the $C^3MOS$ circuits themselves did not perform

15  the actual demultiplexing by dividing down the signal.  (*See, e.g.*, Ex. C,

16  Deposition of Borivoje Nikolic, June 8, 2011, at 215:3-231:22.)  In fact—at least at

17  the time of his deposition—Dr. Nikolic himself not only understood Broadcom's

18  position, but ***agreed*** that, depending on the implementation, a product (like the

19  BE3 and QT2025) that contained $C^3MOS$ and a deserializer could infringe, even if

20  it had a non-$C^3MOS$ circuit performing deserialization:

21       [Q.]   Does a product that contains a $C^{[3]}MOS$ circuit that does not

22       perform deserialization and also a circuit that does perform

23       deserialization but that is not $C^{[3]}MOS$, can such a product infringe

24       any of  the asserted claims?

25       A.     That's a very hypothetical question, and I can give you a

26       hypothetical answer:  ***Possibly.  It really depends on the***

27       ***implementation***.

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1    (*Id.* at 216:16-23 (emphasis added).)  Emulex has been aware of Broadcom's

2    position for months; it cannot claim surprise or argue that Broadcom's position on

3    claim 1 is somehow "new."  Rather, it is Emulex that is improperly seeking a new,

4    never-before-requested, and limiting claim construction after trial.

5              2.    ***Claim 1 Does Not Require a $C^3MOS$ Demultiplexer.***

6         Nothing in the language of claim 1, the specification, the prosecution

7    history, or the evidence at trial supports Emulex's view that claim 1 requires that

8    the claimed $C^3MOS$ circuits must themselves demultiplex—*i.e.*, perform the actual

9    dividing down of the frequency of the incoming signal.  (Emulex Op. at 3, 11 n.7.)

10   Thus, even if Emulex were permitted to raise its new, limiting claim construction

11   for the first time post-trial, the Court should reject it.

12        Preliminarily, Emulex focuses much of its brief arguing that the "input

13   circuit" portion of the "first circuitry" of claim 1 must be "configured to

14   deserialize."  (Emulex Op. at 9-15.)  In particular, Emulex relies on statements in

15   the prosecution history and testimony by Broadcom's expert Dr. Fair that suggest

16   that the claimed input circuit is "configured to deserialize."  (*Id.* at 8, 10.)  But the

17   actual dispute between the parties is not about whether the deserialization occurs in

18   the "input circuit" or elsewhere in the "first circuitry."  It is whether the claim

19   requires that the $C^3MOS$ circuits themselves are the circuits in the deserializer that

20   demultiplex—i.e., divide down the frequency of the signal.

21        As Emulex admits in its brief, its noninfringement position is that "the

22   alleged $C^3MOS$ was not used for deserialization."  (Emulex Op. at 3.)  Emulex

23   therefore argues in its opposition for a narrow construction of claim 1, in which the

24   claim would require that the $C^3MOS$ circuits perform the actual demultiplexing—

25   *i.e.*, dividing down of the frequency of the incoming signal.  (Emulex Op. at 16.)

26   Neither the intrinsic nor the extrinsic evidence supports such a narrow

27   construction.

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1    ***First***, the language of claim 1 includes no requirement whatsoever of

2    $C^3MOS$ used to demultiplex.  The claim requires the first circuitry and the input

3    circuit to be "implemented using" $C^3MOS$—but, as the Court has already made

4    clear, "implemented using" requires only that the circuitry includes but is not

5    limited to $C^3MOS$.  (*See* Order Regarding Markman / Claim Construction Hearing,

6    Dec. 17, 2010, Dkt. No. 261, at 17.)  Thus, the claimed "first circuitry" can contain

7    circuits that are not $C^3MOS$ circuits.  The claim requires that the circuitry be

8    "configured to deserialize"—but the claim says nothing about which portions of

9    the circuitry—the $C^3MOS$ portions or the non-$C^3MOS$ portions—must perform the

10   actual dividing down of the frequency of the incoming signal.  By contrast, other

11   claims of the SerDes patent family—including certain claims of the '124 patent—

12   specifically require that the $C^3MOS$ portion of the circuit itself perform the signal

13   division.  *See, e.g.*, '124 patent col.8 ll.40-45 ("a deserializer circuit block,

14   implemented using [$C^3MOS$] . . . that is operable to convert the input signal into a

15   parallel signal").

16   ***Second***, the specification makes clear that $C^3MOS$ can be used in an "input

17   circuit" to process high-speed signals, without the $C^3MOS$ actually performing the

18   signal division operation itself.  Emulex makes the broad claim that, in the

19   specification, "[i]n all cases, the structure that performs the deserialization is not

20   some circuit "apart from" the input circuit but the input circuit itself."  (Emulex

21   Op. 7-8.)  But this argument is simply incorrect.  To the contrary, the specification

22   includes an express example—discussed in detail at trial and in Broadcom's

23   opening brief—of a $C^3MOS$ input circuit that is ***separate*** from the structure that

24   performs the signal division.  Specifically, the specification says:

25         For example, to enable an integrated circuit to be used in ultra high

26         speed applications, ***the input and output circuitry that interfaces with***

27         ***and processes the high speed signals is implemented using $C^3MOS$***.

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1    The circuit *__also employs C³MOS to divide down the frequency__* of the

2    signals being processed to a low enough frequency where

3    conventional CMOS logic can be used.

4    '194 patent col.7 ll.6-12 (emphases added).  As Broadcom explained in its opening

5    brief, this section confirms that the "input . . . circuitry" can be separate from the

6    circuitry that "divide[s] down the frequency."  (*See* Broadcom Mem. at 4-5, 17.)

7    Either or both can be implemented using C³MOS.  *See* '194 patent col.7 ll.6-12.

8    Broadcom's expert—Dr. Fair—also testified in detail about this portion of the

9    specification at trial, and concluded that the example "describe[s] first circuitry

10   that's implemented such that it processes a signal *and then* it deserializes a signal.

11   So you've got a number of things going on in C³MOS . . . ."  (Trial Tr. Sept. 23,

12   2011, at 46:9-13 (emphasis added).)  Notably, even though this section of the

13   specification was a focus of Broadcom's opening brief, and even though

14   Broadcom's expert Dr. Fair testified about it in detail at trial, Emulex's opposition

15   makes no mention of it, no effort to address Broadcom's argument based on it, and

16   no attempt to square it with its claim that the C³MOS input circuit must divide

17   down the frequency "in all cases."  (Emulex Op. at 7-8.)

18       Emulex also identifies examples in the specification in which input circuitry

19   that is implemented using C³MOS performs deserialization.  (*See, e.g.*, Emulex Op.

20   at 7 (citing '194 patent at col.7 ll.27-28 ("C³MOS input circuitry **1100** is a

21   deserializer") and col.7 ll.16-18 ("C[3]MOS input circuit 1000 receives a high

22   frequency input signal IN and outputs a divided down version of the signal

23   IN/n.")).)  Preliminarily, both of Emulex's citations are to exemplary

24   configurations in particular embodiments in the patent—not to any portion of the

25   specification that purports to describe the invention as a whole.  Such examples do

26   not limit the claims.  *See, e.g., Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341,

27   1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1  we will not limit him to his preferred embodiment or import a limitation from the

2  specification into the claims.")  But more importantly, those examples say nothing

3  about whether the C$^3$MOS circuits within that input circuitry are performing the

4  demultiplexing itself, or whether those C$^3$MOS circuits process the signal in the

5  input circuit before other (non-C$^3$MOS) circuits in the input circuitry actually

6  perform the demultiplexing.

7      ***Third***, Emulex's two partial and out-of-context quotes from the prosecution

8  history of the '194 patent do not support its construction of claim 1.  (Emulex Op.

9  at 3, 8.)  Emulex relies on the statement that "[. . .] the claimed <u>input circuit</u> would

10  be block 1100 (including latches 1104 and 1106) <u>that 'is configured to deserialize</u>

11  <u>the input signal.'</u>"  (Emulex Op. at 8 (quoting Qureshi Decl. Ex. 2, JX-9 ('194

12  prosecution history), at ELX-PAT-00011520).)  But Emulex omits the first half of

13  the sentence, which reads: "***In the context of the exemplary embodiment*** shown in

14  Fig 11 ***for illustrative purposes*** . . . ."  ('194 prosecution history at ELX-PAT-

15  00011520 (emphases added).)  As the portion that Emulex omitted makes clear, the

16  statement in the prosecution history was not intended to limit any claim, but

17  merely describing one particular embodiment—the embodiment in Figure 11.

18  Moreover, the statement in the prosecution history uses (in quotation marks) the

19  language "configured to deserialize ***the input signal***"—a phrase that does not

20  appear in claim 1.  (*Id.* (emphasis added).)  In the language of claim 1, the circuitry

21  is "configured to deserialize ***the first signal***," not "the input signal."  ('194 patent

22  col.9 ll.12-13.)  Given the express language in the history limiting the discussion to

23  "illustrative purposes" and an "exemplary embodiment," and given that the claim

24  language at issue does not track the language  used in the prosecution history, the

25  statements on which Emulex relies fall well short of the "clear and unmistakable

26  disavowal" necessary to limit claim scope.  *E.g.*, *Lazare Kaplan Int'l, Inc. v.*

27  *Photoscribe Techs., Inc.*, 628 F.3d 1359, 1370 (Fed. Cir. 2010).

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1    **Fourth**, the testimony of Dr. Hairapetian—the inventor of the '194 patent—

2    does not limit the claim to require $C^3MOS$ be used to divide down the signal.

3    Emulex relies on Dr. Hairapetian's testimony that $C^3MOS$ is "vital" in high speed

4    applications (Emulex Op. at 9)—but this has never been in dispute.  There is, in

5    fact, no dispute that the two high-speed chips at issue in this motion use $C^3MOS$,

6    and there is no dispute that the $C^3MOS$ "has to be in there for a reason."  (Trial Tr.

7    Sept. 30, 2011, at 46:4-10.)  Emulex also relies on Dr. Hairapetian's testimony that

8    he "used $C^{[3]}MOS$ in areas where it was essential"—another fact that is not in

9    dispute.  But Emulex ignores Dr. Hairapetian's later testimony explaining just

10   which portions those were—including the "front end or the first stages" (i.e., the

11   circuitry that processes the high speed signal entering the chip, before it is

12   deserialized).  (Trial Tr. Sept. 22, 2011, at 33:12-22.)  Nothing in Dr. Hairapetian's

13   testimony supports Emulex's construction requiring $C^3MOS$ to be used to divide

14   down the signal.

15   **Finally**, contrary to Emulex's suggestion, Dr. Fair's testimony is entirely

16   consistent with Broadcom's position.  Emulex relies heavily on Dr. Fair's

17   testimony that, because the claim says "$C^3MOS$" and "is configured to

18   deserialize," the infringing circuitry must include "$C^3MOS$" **_and_** be "configured to

19   deserialize."  (Emulex Op. at 10 (citing Trial Tr. Sept. 23, 2011, at 38:12-39:2).)

20   But Broadcom has never disputed that—in Emulex's counsel's words—"it's 'and'

21   and not an 'or' situation."  (*Id.*)  Dr. Fair never said, however, that the claim

22   required that the $C^3MOS$ circuits themselves perform demultiplexing.  Rather, he

23   testified—repeatedly—that he disagreed with Dr. Nikolic's view that the $C^3MOS$

24   circuits had to demultiplex to infringe claim 1.  (*See, e.g.*, Trial Tr. Sept. 22, 2011,

25   at 139:8-15; *id.* at 157:5-6.)

26   Thus, even if the Court were to address Emulex's belated request to construe

27   claim 1, it should not construe it as Emulex contends.  (Emulex Op. at 16.)  Rather,

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1   the Court should construe the "wherein the first circuitry" limitation to require

2   simply a first circuitry that includes an input circuit that is implemented using

3   $C^3MOS$, and that the first circuitry be configured to deserialize—whether or not

4   the $C^3MOS$ circuits themselves are actually performing demultiplexing or

5   performing some other function.  Thus, once Emulex's late and unsupported

6   limiting construction of claim 1 is rejected, the "only one reasonable conclusion"

7   from the evidence is that the BE3 and QT2025 infringe, and Broadcom is entitled

8   to judgment as a matter of law.  *See Geo. M. Martin Co.*, 618 F.3d at 1300.

9           *3.      Emulex Admits that the BE3 and QT2025 Include $C^3MOS$*

10                  *and Deserialize.*

11          As Emulex admits in its brief, the only noninfringement defense that it put

12   on as to the BE3 and QT2025 was that "the alleged $C^3MOS$ was not used for

13   deserialization."  (Emulex Op. at 3.)  Emulex does not dispute—and its expert Dr.

14   Nikolic admitted—that the circuits that Dr. Fair identified as $C^3MOS$ in the BE3

15   and QT2025 are, in fact, $C^3MOS$.  (Trial Tr. Sept. 30, 2011, at 46:4-10.)  Nowhere

16   in its brief does Emulex dispute that the BE3 and QT2025 circuitry that Dr. Fair

17   identified as "configured to deserialize" does, in fact, perform deserialization.  (*See*

18   Broadcom Mem. at 16, 19 (summarizing Emulex concessions).)

19          Emulex makes two arguments against JMOL in the event that the Court

20   rejects its claim construction—neither of which have merit.  **First**, Emulex

21   suggests that the jury could have found that Dr. Fair had "little or no credibility"

22   and rejected his testimony outright on that basis.  (Emulex Op. at 16-17.)  But—

23   apart from its dispute about whether the $C^3MOS$ circuitry performs

24   demultiplexing—Emulex never disputed any of Dr. Fair's opinions concerning the

25   BE3 or the QT2025.  Moreover, Emulex's own expert—and Emulex's counsel—

26   agreed with Dr. Fair that the BE3 and QT2025 contain $C^3MOS$ and include a

27   deserializer.  (Trial Tr. Sept. 30, 2011, at 45:14-17, 46:4-5, 8-10; Trial Tr. Oct. 6,

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1   2011, at 117:20-21, 122:1-3, 146:16-20, 151:16-18.)  This is not a case in which

2   Dr. Fair's opinion was merely "uncontested" and subject to rejection by a

3   reasonable jury; this was a case in which Emulex and its expert affirmatively

4   **conceded** that the limitations were present in the accused devices.  *See, e.g.,*

5   *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1322, 1335 (Fed. Cir. 2002)

6   (affirming judgment based in part on concessions).

7         ***Second***, Emulex argues that a jury could have found that the "data recovery

8   block" of the QT2025 and the "DFE" or "Decision Feedback Equalizer" of the

9   BE3 were not part of the claimed "first circuitry," because Broadcom allegedly

10  "presented no testimony" on the issue.  (Emulex Op. at 17.)  But Broadcom ***did***

11  present testimony on precisely this issue.  In fact, in two of the very demonstratives

12  of Dr. Fair's that Emulex reproduced in its own opposition brief, Broadcom

13  identified the "data recovery block" and the "DFE" as part of the "first circuitry."

14  Specifically, on page 14 of Emulex's brief, it reproduces PDX02-120, which was

15  Dr. Fair's demonstrative identifying the QT2025 block labeled "Data Recovery" as

16  part of the "first circuitry comprising an input circuit."  (Emulex Op. at 14.)

17  Likewise, on page 12 of its brief, Emulex reproduces PDX02-50, which was Dr.

18  Fair's demonstrative identifying the BE3 block "***dfe_***slice" as part of the "first

19  circuitry."  (Emulex Op. at 12 (emphasis added).)  Thus, Emulex is wrong to argue

20  that JMOL should be denied because "Broadcom presented no testimony" on these

21  issues.

22         **B.    The SOC442 Infringes Claim 5 as a Matter of Law.**

23         Emulex's only argument against judgment as a matter of law on claim 5 of

24  the '124 patent is that infringement turns on "a factual issue that . . . was disputed

25  between the experts."  (Emulex Op. at 18.)  But whether an issue is "disputed

26  between the experts" is not the standard for judgment as a matter of law.

27  Broadcom is entitled to JMOL if "the evidence, construed in the light most

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1  favorable to [Emulex], permits only one reasonable conclusion"—that the SOC442

2  infringes claim 5.  *Geo. M. Martin Co.*, 618 F.3d at 1300.  An expert's conclusory

3  opinion, unsupported by the facts, does not preclude JMOL.  *See, e.g.*, *Upjohn*, 225

4  F.3d at 1311 (noting that "there must be factual support for an expert's conclusory

5  opinion"); *cf. Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008)

6  ("Conclusory expert assertions cannot raise triable issues of material fact on

7  summary judgment.")

8      Here, Emulex seeks to avoid JMOL by relying on the on the unsupported

9  and factually incorrect conclusion of its expert that the signal pair that Dr. Fair

10  identified as an "output" is not actually "output" from the deserializer.  Claim 5

11  requires that the claimed circuitry have an "output that is operable to transmit the

12  parallel signal."  ('124 patent col.8 ll.49-50.)  Dr. Fair identified this "output" as

13  the signal pair "Q1P" and "Q1N" in the circuit block "DFEC4_DEFF_R3."  (*See*

14  Broadcom Mem. at 11; PDX02-144; JX-0388 at page TEAC 0278.)  As Broadcom

15  explained in its opening brief—and as Emulex concedes in its opposition (Emulex

16  Op. at 18-19)—this circuit actually generates *two* copies of the signal pair Q1P and

17  Q1N:

18

19

20

21

22

23

24

25

26



27

28  (*See* JX-0388 at page TEAC 0278 (red and blue annotations added).)  The first

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

1   copy of Q1P and Q1N is shown with a bold arrow (indicating that it is output from

2   the circuit diagram to another location).  The second copy of Q1P and Q1N

3   continues to the right side of the circuit, where it is input into a multiplexer along

4   with another signal pair (Q2P and Q2N), generating a reserialized signal pair

5   labeled "QP" and "QN."  (JX-0388 at page TEAC 0278.)  It is the first copy of

6   Q1P and Q1N that Dr. Fair identified as the "output."  (*See* Broadcom Mem. at 11;

7   PDX02-144.)

8        Emulex's only purported evidence that the first copy of Q1P and Q1N is not

9   "output" is the following testimony by Dr. Nikolic:

10       Q.    When we look at the actual schematic, and this is the first

11       circuit, are these outputs coming out of the first circuit?

12       A.    Actually they are not. They are being used internally inside this

13       first block to correct for DC offset -- to correct for the DC offset.

14       What we have here is the input signal is coming in here, is split into

15       two parts.  We can say that it is being deserialized.  But then it is

16       being serialized again through a multiplexer, and one output is coming

17       out.  This is the only output that is coming out of that block of the

18       data.

19  (Trial Tr. Sept. 29, 2011, at 131:18-132:4.)  This testimony is insufficient to defeat

20  Broadcom's JMOL motion for two reasons.

21       *First*, contrary to Emulex's suggestion, it is not at all clear that Dr. Nikolic

22  was referring to the first copy of Q1P and Q1N—rather than the second copy—

23  when he testified that signals are being "used internally inside this first block to

24  correct for DC offset."  (Emulex Op. at 18, 19.)  Dr. Nikolic's testimony never

25  even acknowledges that there are two copies of Q1P and Q1N within the

26  deserializer circuit block.  He appears instead to refer to a single signal pair that is

27  "used internally . . . to correct for DC offset" and "*then* it is being serialized again

28

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

through a multiplexer." (Trial Tr. Sept. 29, 2011, at 131:21-132:2.) Nowhere does Dr. Nikolic acknowledge that (as Emulex now admits) there are two distinct copies of Q1P and Q1N within the deserializer circuit block. Thus, the testimony that Emulex identifies does not actually appear to dispute that the *first* copy of Q1P and Q1N is output without being reserialized.

   *Second*, even to the extent that Dr. Nikolic's testimony could be read as concluding that the first copy of Q1P and Q1N is "used internally," there is no factual support whatsoever for that conclusion in the record. To the contrary, the SOC442 schematics—which are the only evidence on which Dr. Nikolic purports to rely for his conclusions about Q1P and Q1N—unambiguously show that the first copy of the signal pair is output from the deserializer circuit block. The deserializer circuit block that Dr. Fair identified is the block labeled DFEC4_SYS_R6, which is shown in block form on in the SOC442 schematics. (*See* Broadcom Mem. 12; PDX02-146; JX-0388 at page TEAC 290.) The two copies of Q1P and Q1N are generated in a sub-block of that DFEC4_SYS_R6 circuit. (*See* JX-0388 at page TEAC 291.) As the circuit schematics unambiguously show, the signal pair Q1P and Q1N are output from the DFEC4_SYS_R6 block and into the next circuit block in the signal path:

BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS

(JX-0388 at page TEAC 290 (highlighting added).)   In fact, the circuit diagrams are so unambiguous about the path of the first copy of the Q1P and Q1N signal pair that Dr. Nikolic himself admitted on cross examination that same signal pair—Q1P and Q1N—is input into the next circuit block.  (*See* Trial Tr. Sept. 30, 2011 at 78:5.)  Dr. Nikolic's conclusory testimony that the signal pair is not output therefore lacks factual support and does not preclude JMOL.

## III.   CONCLUSION

For the foregoing reasons, and the reasons discussed in Broadcom's opening brief, Broadcom respectfully requests that the Court enter judgment in favor of Broadcom that Emulex's BE3 and QT2025 products infringe claim 1 of the '194 patent, and that its SOC442 product infringes claim 5 of the '124 patent.

Dated: December 2, 2011                    WILMER CUTLER PICKERING
                                           HALE AND DORR LLP

                                           By:   /s/ Louis W. Tompros
                                                 Louis W. Tompros

                                           Attorneys for Plaintiff
                                           BROADCOM CORPORATION

*Broadcom Corporation v. Emulex Corporation*,
Case Nos.  SACV09-1058 JVS (ANx) and SACV 10-03963-JVS (ANx)

## PROOF OF SERVICE

Fed. R. Civ. P. 5(b) & L.R. 5-3

I, Jason H. Liss, hereby certify that a copy of the foregoing *Plaintiff Broadcom Corporation's Reply Brief in Support of Its Motion for Judgment as a Matter of Law of Infringement of Claim 1 of the '194 Patent (BE3 and QT2025), and Claim 5 of the '124 Patent (SOC442)* was served upon the following parties as indicated below on this 2nd day of December, 2011.

### For Emulex Corporation:

smg@jmbm.com
broadcom-emulex@fr.com
broadcomemulexservice@tklaw.com
(email addresses for service on Emulex per agreement of the parties)

☐ Via Hand Delivery
☐ Via Overnight Courier (1 copy)
☐ Via Facsimile
☒ Via Electronic Mail (1 copy)

I certify under penalty of perjury that the foregoing is true and correct.


/s/ Jason H. Liss
Jason H. Liss

18

**BROADCOM'S REPLY BRIEF ON JMOL OF INFRINGEMENT OF '194 AND '124 PATENTS**

ACTIVEUS 91509590v10