UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Karla J. Tunis | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (In Chambers) Order Denying Defendant's Motion for Judgment as a Matter of Law on the basis of Obviousness of the '194, '124 and '057 Patents (Fld 11-9-11 #951) and Defendant's Motion for Judgment as a Matter of Law on the basis of Obviousness of the '150 Patent (Fld 11-9-11, #954)

After a trial that resulted in factual findings by a jury related to the issue, this matter is before the Court to determine whether certain patents are invalid based on the defense of obviousness. The Court ordered briefing on the defense of obviousness, and the parties filed opening and responsive briefs, as well as Exhibits in support of their briefs. (See Docket Nos. 951, 953-54, 956, 962, 968, 971, 976-77 & 979-80.) Emulex, because it argues that certain factual findings of the jury were not supported by substantial evidence, styles its opening briefs as Renewed Motions for Judgment as a Matter of Law or New Trial (Docket Nos. 951 & 954). In its opening briefs, Broadcom seeks entry of judgment in its favor as to Emulex's affirmative defense and counterclaims of obviousness. (Docket Nos. 962 & 963.)

As set forth below, the Court concludes the patents at issue are not invalid on the basis of obviousness. The Court denies Emulex's Motions and the Court shall, at the appropriate time, enter judgment in favor of Broadcom on the affirmative defense and counterclaims of obviousness.

I.   Motion for Judgment as a Matter of Law ("JMOL") or New Trial

Under Rule 50(b), a party may renew its motion for a judgment as a matter of law within twenty-eight days after entry of final judgment. Id. "Judgment as a matter of law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion . . . ." Acosta v. City and County of San Francisco, 83 F.3d 1143, 1145 (9th Cir.1996). "If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). In this way, the standard for granting a renewed motion for judgment as a matter of law, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, mirrors standard for granting a motion for summary judgment. Id.

The power of the Court to grant a new trial under Fed. R Civ. P. 59(a) is "confided almost entirely to the exercise of discretion on the part of the trial court." Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir.1990). In deciding a motion for new trial, the Court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir.1987). The district court should "set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) ("the district court has the duty to weigh the evidence as the court saw it") (internal alteration marks, quotation marks, and citations omitted). However, a court should grant a new trial only when it "is left with the definite and firm conviction that a mistake has been committed," Landes Constr., 833 F.2d at 1372. and it "may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001).

II. Standard for Determining Obviousness

A patent is invalid for obviousness if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a).

Whether the claimed subject matter would have been obvious to an ordinarily skilled artisan at the time of the invention "is a question of law based on underlying questions of fact." Green Edge Enters., LLC v. Rubber Mulch Etc., 620 F.3d 1287, 1298

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

(Fed. Cir. 2010). The underlying factual inquiries include: (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and (4) relevant secondary considerations, including "commercial success, long felt but unsolved needs, [and] failure of others." KSR Int'l v. Teleflex Inc., 550 U.S. 398, 407 (quoting Graham v. John Deere Co. of Kan. City, 383 U.S. 1, 17-18 (1966)). Other relevant secondary considerations include copying by others of the claimed invention, as well as acceptance of the claimed invention by others in the field, as demonstrated by either praise or from the licensing of the claimed invention. See, e.g., Trimed, Inc. v. Stryker Corp., 608 F.3d 1333, 1341 (Fed. Cir. 2010); Hearing Components, Inc. v. Shure Inc., 600 F.3d 1357, 1374-75 (Fed. Cir. 2010); Power-One, Inc. v. Artesyn Technologies, Inc., 599 F.3d 1343, 1352 (Fed. Cir. 2010).

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." KSR, 550 U.S. at 416. If an ordinarily skilled artisan can "implement a predictable variation" of a work available in the same field of endeavor, then "35 U.S.C. § 103 likely bars its patentability." Id. at 417. However, "a patent composed of several elements is not proved obvious merely by demonstrating that each of is elements was, independently, known in the prior art." Id. at 418.

Determining whether a patent claiming a combination of known elements would have been obvious "usually entails considering the 'interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.'" Trimed, 608 F.3d at 1341 (quoting KSR, 550 U.S. at 418).

Because patents are presumed valid, 35 U.S.C. § 282, the invalidity of patent claims must be shown by clear and convincing evidence. Hearing Components, 600 F.3d at 1366. Patent validity is a question of law for the Court to determine, even if, as here, disputed facts must first be resolved by a jury's findings. See id. at 1373. The burden of proof as to a patent's invalidity is on the party challenging it. Pfizer, Inc. v. Apotex, Inc., 480 F.3d 1348, 1361 (Fed. Cir. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

III. SerDes Patents

The first group of patents are analyzed together. Those are U.S. Patent No. 6,424,194 ("the '194 patent"), U.S. Patent No. 7,486,124 ("the '124 patent"), and U.S. Patent No. 7,724,057 ("the '057 patent") (collectively, "the '194 patent family" or "the SerDes patents").[1]

    A. Jury's Factual Findings

        1. The Level of Ordinary Skill in the Pertinent Art

In the Special Verdict, the jury was asked to find the level of ordinary skill in the field at the time the claimed invention was made. (Docket No. 896 at 5 (Special Verdict Question No. 7.) It responded by adopting Dr. Nikolic's proposal and found that such a person would have "[a]t least an advanced degree (M.S. or Ph.D) in Electrical Engineering or related discipline, with approximately 4 years of experience in the design of physical layer circuits." Id.

        2. Secondary Considerations

The jury also found that the following secondary considerations had been established:

> commercial success of a product due to the merits of the claimed invention;
>
> a long-felt, but unsolved, need for the solution provided by the claimed invention;
>
> unsuccessful attempts by other[s] to [find] the solution that is provided by the claimed invention;

---

[1] The "SerDes" designation comes from the use of the claimed invention as a "serializer/deserializer" ("SerDes").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

   copying by others of the claimed invention;

   unexpected and superior results from the claimed invention; and

   acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.

(Id. at 6 (Special Verdict Question No. 8).) In contrast, the jury rejected the finding that the claimed invention was independently invented by others before or at about the same time as the named inventor thought of it. (Id.)

  On the ultimate question, the jury rendered an advisory verdict that Emulex had failed to prove obviousness by clear and convincing evidence. (Id. at 6-7 (Special Verdict Question No. 9).)

  Emulex contends that Broadcom failed to present any evidence that supports the secondary considerations of unsuccessful attempts by others to find the solution provided by the claimed invention and copying of the claimed invention by others. (Emulex Opening Brief at 21.)

  The Court finds that Broadcom presented sufficient evidence supporting the jury's findings as to the unsuccessful attempts by others to find the solution provided by the claimed invention. (See Broadcom Reply Br. at 13 (quoting testimony of Broadcom CTO, Dr. Fair, and Dr. Hairapetian).) Most directly, the testimony of Dr. Hairapetian addressed this issue: "At that time[,] high-speed data communication was limited to devices that were very expensive and very high power, and that was limiting the growth of the traffic and it was very difficult for companies to build products that can handle a lot of data." (Trial Tr. Sept. 22, 2011, at 21 (Dr. Hairapetian).) This is sufficient in light of the cost-lowering solution envisioned by Dr. Hairpetian's invention, which came about "in order to solve that problem, to be able to handle very high-speed data on a very low-cost CMOS technology." (Id. at 21-22.)

  Conversely, the Court agrees the testimony cited by Broadcom does not support the jury's finding regarding the copying of the claimed invention by others. (See id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

16-17.) That testimony is limited to the fact that the patented technology "replace[d] the[] older technologies." (Trial Tr. Sept. 22, 2011 at 157.) Therefore, the Court holds that the jury's finding regarding the copying of the claimed invention by others is not supported by substantial evidence and disregards the finding.[2]

The Court finds that substantial evidence supports the remaining factual findings.

B. <u>Discussion</u>

The scope and content of the prior art includes references to (1) U.S. Patent No. 6,008,670 ("Pace") (JX02731), and (2) U.S. Patent No. 6,121,793 ("Pickering") (JX0272).

Emulex contends that it has established a motivation to combine the teachings of the prior art. However, the evidence to which it cites is insufficient on this point. Specifically, Emulex argues that the combination in the claimed invention "made sense at the relevant time in the art," and to the extent evidence of specific motivation is required, it establishes such motivation. (Emulex Opening Br. (Docket No. 951 at 17-18.) The evidence to which it cites states that Pace and Pickering are "in the same classification" and "both deal with high-speed differential CMOS logic circuits." (<u>Id.</u> at 18.) Thus, in Emulex's view, the "known need . . . for fast SerDes in CMOS" made obvious to one skilled in the art that the "high-speed differential $C^3MOS$ logic gates" disclosed by Pace with respect to serialization could be combined with the Pickering disclosure of "the use of current mode logic circuits for deserialization" in order to use the logic gates "at the other ends of a SerDes for the . . . high-speed deserialization." (<u>Id.</u> at 19.) However, the worth of the "same classification" evidence is limited by its generality.

Broadcom's position is more precise. Broadcom contends that Pace and Pickering deal with different issues and "solv[e] different problems." (Broadcom Opening Br.

---

[2] Thus, for purposes of the present analysis, the Court assumes the absence of copying by others. In other words, the Court's analysis herein assumes that the jury found for Emulex on the narrow issue of the absence of copying by others of the claimed invention. Notwithstanding this assumption, the balance of the secondary considerations still strongly supports the conclusion drawn by the Court that the claimed invention was not obvious.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

(Docket No. 962 at 7).) Broadcom cites to evidence presented at trial that "Pace is directed to 'differential CMOS logic cell[s]'" but that "Pickering addresses 'shift[ing] small differential signals to a big single-ended output.'" (Id. (quoting Trial Tr. Oct. 4, 2011, at 154:6-14 (Dr. Fair)).) Moreover, and importantly, the claimed invention addressed a problem wholly separate from either Pace or Pickering: "'[T]o handle very high-speed data on a very low-cost CMOS technology.'" (Trial Tr. Sept. 22, 2011, at 21:25-22:1 (Dr. Hairapentian).) Thus, in Broadcom's view, any combination of the two was not obvious.

Emulex's proferred testimony on a reason to combine the prior art is unconvincing. Specifically, Dr. Wooley, Emulex's expert, merely asserts that "someone working in the field of trying to accomplish building higher-speed circuits in conventional CMOS technology without waiting for the technology to continue to improve would naturally" combine Pace and Pickering because both "talk about differential – techniques for – differential CMOS logic." (Trial Tr. Sept. 28, 2011, at 157-58.)

The Court agrees with Broadcom's position that the combination of Pace and Pickering does not render the SerDes claims obvious. In addition to the difficulties in reaching the contrary conclusion noted above, Dr. Wooley's necessary assumption of a "drafting error" in the Pickering design, upon which a hypothetical combination of Pace and Pickering is premised, is unlikely in light of the concordance of the supposed error in both the figures depicted and the text that accompanies them. (See Trial Tr. Sept. 29, 2011, at 30-31 (Dr. Wooley); cf. JX 272 at col. 5, ll. 3-7.) At a minimum, Dr. Wooley's assumption of error substantially undercuts the value of his analysis as clear and convincing evidence.[3]

The Court also agrees that absent the existence of the theorized drafting error, Pace's circuitry could not be combined with Pickering in the manner that results in the "current steering" used in the claimed invention, as the relevant claim was construed by

---

[3] The same is true of Dr. Wooley's apparent assumption that the teachings of Pace regarding serialization also teach the "complementary" function of deserialization. (Compare Trial Tr. Sept. 29, 2011, at 37 (acknowledging Pace does not mention a deserializer) with Trial Tr. Sept. 28, 2011, at 153 (asserting that serialization and deserialization "are just opposite functions and sort of complementary, if you know one you should know the other").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

the Court.[4] (See Trial Tr. Oct. 4, 2011, at 150-52 (Dr. Fair); cf. Docket No. 261 (Markman Order) at 23.) Specifically, the Court construed the term "current steering" as "directing constant flow of available sourced current into one of two or more branches in response to differential input signals." (Id.) Thus, Dr. Fair's testimony that describes in Pickering a "nonconstant current," differentiates Pickering from the claimed invention. (See Trial Tr. Oct. 4, 2011, at 150-51.)

      C.      Ruling Re SerDes Patents

Thus, taking into account the identified prior art, the level of ordinary skill in the art, and the differences between the prior art and the claims at issue, the Court concludes that Emulex has failed to establish by clear and convincing evidence its affirmative defense of obviousness. The jury's findings regarding the relevant secondary considerations support this conclusion, and the Court finds all but one finding supported by substantial evidence. The overall conclusion that Emulex failed to meet its burden by clear and convincing evidence stands, even if less than all the relevant secondary considerations have been established.

IV.      The '150 Patent

The remaining patent, U.S. Patent No. 7,058,150 ("the '150 patent"), is analyzed separately.

      A.      Jury's Factual Findings

            1.      The Level of Ordinary Skill in the Pertinent Art

In response to the question of the level of ordinary skill in the field at the time the invention by the '150 Patent was made, the jury responded by adopting Broadcom's proposal, that such a person would be "[a]n electrical engineer with at least a bachelor's degree in electrical engineering and several years of post-graduate experience with CDR

---

[4] Specifically, the Court construed the term "current steering" as "directing constant flow of available sourced current into one of two or more branches in response to differential input signals." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. | | |
|---|---|---|---|

circuits, implemented in complementary metal-oxide-semiconductor (CMOS) integrated circuit devices, or the equivalent." (Docket No. 896 (Special Verdict Question No. 13).)

### 2. Secondary Considerations

The jury made exactly the same findings regarding the secondary considerations with respect to the '150 Patent as it did with respect to the SerDes Patents, including rejecting the finding that the claimed invention was independently invented by others before or at about the same time as the named inventor thought of it. (Id. at 9 (Special Verdict Question No. 14).) Additionally, on the ultimate question, the jury rendered an advisory verdict that Emulex had failed to prove obviousness by clear and convincing evidence. (Id. at 9-10 (Special Verdict Question No. 15).)

Emulex challenges these findings, arguing first that Broadcom failed to meet its burden to establish a connection or nexus between the claimed invention and the secondary considerations. On this issue, Emulex correctly notes that Broadcom bears the burden of proof. See Ormco Corp. v. Align Technology, Inc., 463 F.3d 1299, 1311 (Fed. Cir. 2006) (citing WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed.Cir.1999)).

However, as to the secondary considerations that have been established (as noted below), Broadcom met this burden through the testimony of Dr. Stojanovic. (See Broadcom Opening Br. at 16.) Specifically, Dr. Stojanovic, directly linked the secondary factors to the specific of the claim at issue: "[O]nce you were able to solve the multilane transceiver problem by the technique described in claim 8, you were able to build those very reliable multilane transceivers and that . . . both solved the long-term need and also enabled the commercial success of products
that are based . . . on claim 8." (Trial Tr. Oct. 5, 2011, at 22.)

Broadcom correctly notes that substantial evidence supports the jury's finding of commercial success of a product due to the merits of the claimed invention. (See, e.g., Trial Tr. Oct. 5, 2011, at 21 (Dr. Stojanovic) (claimed invention met demand for chip that operated reliably at low cost and higher throughput resulting in commercial success); Trial Tr. Sept. 27, 2011, at 87 (Dr. Le) (Broadcom uses the claimed invention in many of their products even eleven years after it was patented).) Emulex contends that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. |
|---|---|

commercial success of products incorporating the claimed invention also incorporate the invention claimed in the SerDes patent, thus making it impossible to determine the commercial success of the invention claimed in the '150 patent. (Emulex Opening Br. at 16.) However, it is not necessary that the commercial success of products embodying the patent be attributable solely to the patented technology. See Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1273 (Fed. Cir. 1991). Here, in the form of Dr. Le's and Dr. Stojanovic's testimony (quoted and cited above) there is evidence supporting the jury's finding on this point.

So too is there evidence supporting the jury's findings on the secondary considerations of a long-felt, but unsolved, need for the solution provided by the claimed invention and unsuccessful attempts by others to find the solution that is provided by the claimed invention. (Trial Tr. Oct. 5, 2011, at 20 (Dr. Stojanovic).) Dr. Stojanovic testified to the desirability of reducing the number of chips needed to "handl[e one] SerDes lane, . . . while increasing the data rate per lane," and unsuccessful previous attempts to accomplish this because of "underlying noise-coupling issues." (Id.)

The same is true regarding the secondary consideration of acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention. (See Trial Tr. Sept. 27, 2011 at 86-87 (Dr. Le) (describing the selection of a peer-reviewed paper on the '150 invention for presentation at a prestigious 2004 Symposium on Circuits and the publication of the paper at the Symposium).)[5]

Conversely, Broadcom cites no evidence supporting the secondary considerations of copying by others of the claimed invention and unexpected and superior results from the claimed invention. Therefore, the Court holds that the jury's finding regarding these two secondary considerations are not supported by substantial evidence and disregards

---

[5] Emulex objects to the Court's reference to the paper because it was not received in evidence. What was received in evidence was Dr. Le's testimony that he and his co-inventors authored a paper on the claimed invention, it was selected for presentation at the Symposium, and it was published at the Symposium. (Id.) This testimony was not subject to objection. Although the general topic of the paper is relevant, the precise contents of the paper are not. The Court finds that the cited testimony supports the secondary consideration of praise from others in the field to the extent necessary to withstand the present challenge for judgment as a matter of law or new trial on the issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

the finding.[6]

      B.    <u>Discussion</u>

      The scope and content of the prior art includes a reference to a European Pickering Patent, EP 0 909 035 B1 (JX 295).[7] Thus, Emulex maintains that in light of Pickering, there was nothing new or novel in the claimed invention. (Emulex Opening Br. at 12.)

      The major difference between the two is acknowledged by both sides. The '150 patent is concerned with recovering both clock and data signals, while the express language of Pickering patent dealt with recovering the clock signal only. (<u>See</u> Broadcom Opening Br. at 2; Emulex Opening Br. at 1.) Emulex contends one skilled in the relevant art would recognize an implicit "data path" in Pickering, bringing Pickering more in line with the claimed invention, and therefore the absence of an express reference to data paths or data recovery in Pickering is not fatal to its position on obviousness. The Court disagrees.

      At the outset, and importantly, the Court notes that the claimed invention and Pickering solve different problems.

      Dr. Stojanovic testified that Pickering "recovers clock from the input data," while the claimed invention, at "Claim 8, talks about recovering data <u>and</u> clock from the input serial signal." (Trial Tr. Oct. 5, 2011, at 8 (emphasis added).) More specifically, he testified that "the purpose of Pickering is to produce a clock signal that is phase-aligned with the input data[,]" and that "[i]ts purpose is not to recover data from the incoming stream." (<u>Id.</u> at 8-9.) Dr. Stojanovic referred to Pickering as a "sub system that . . . deal[s] only with phase synchronization" and that lacks any "data output." (<u>Id.</u> at 9-11.)

---

     [6] Thus, for purposes of the present analysis, the Court assumes the absence of these two secondary considerations. Notwithstanding this assumption, the balance of the secondary considerations still strongly supports the conclusion drawn by the Court that the claimed invention was not obvious.

     [7] Although the parties previously agreed that the references also included U.S. Patent No. 6,247,138 ("Tamura"), Emulex has disclaimed reliance on that reference in connection with matter currently before the Court. (<u>See</u> Emulex Opening Br. at 13 ("[F]or purposes of this motion[,] Emulex is not alleging obviousness based on an explicit combination of Pickering and Tamura." ).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

In contrast to Pickering, the claimed invention recovers both the clock and data. (Id. at 11.) "The subject matter of the '150 patent are the clock and data recovery circuits for multilane high-speed transceivers." (Trial Tr. Oct. 5, 2011, at 5 (Dr. Stojanovic).) The invention allowed for the reliable use of multiple data paths on the same chip, which improved performance, lowered costs, and reduced power consumption. (Id. at 20.) The co-inventor testified regarding a "clock and data recovery circuit" designed to recover data transmissions "as error free as possible." (Trial Tr. Sept. 27, 2011, at 64 (Dr. Le).)

Emulex relies upon Dr. Nikolic's testimony to refute Dr. Stojanovic's testimony regarding the differences. Specifically, Dr. Nikolic testified that a data path in Pickering is implied and that, although not disclosed or "clearly labeled," such a data path would be "obvious to one of ordinary skill in the art." (Trial Tr. Sept. 29, 2011, at 169-70 (cited in Emulex Reply Br. at 1, 8).) Similarly, in light of evidence that the Pickering patent describes a system for demodulating a received data signal (JX 295 ¶ 3), Emulex relies on Dr. Stojanovic's testimony that "a data path would be necessary to . . . demodulate the received data signal" (Trial Tr. Oct. 5, 2011, at 35). Although this is some evidence of the implied data path suggested by Dr. Nikolic, it is insufficient in light of the discussion regarding the varying purposes of the two inventions, supra, and in light of Emulex's burden of establishing obviousness by clear and convincing evidence. In any event, the cited testimony does not speak to data recovery (as opposed to an implicit data path), which distinguishes the claimed invention from Pickering.

Nor is Emulex's reliance on Figure 16 of Pickering (JX295), which describes "Serial Data Inputs" in a "Clock/Data Recovery Circuit," of much assistance to it in meeting its heightened evidentiary standard. (See Emulex Opening Br. at 12; JX 295 at 21, Fig. 16.) Any marginal probative value of these labels that suggest there is a recovery of data by Pickering is counterbalanced by those portions of Figure 16 pointed out by Broadcom which, although evidencing serial data input, show that Pickering concerns itself exclusively with "Clock Phase Regeneration," i.e., clock recovery, rather than including data recovery. (See Broadcom Reply Br. at 6; JX 295 at 21, Fig. 16; see also Trial Tr. Oct. 5, 2011, at 10 (Dr. Stojanovic) (opining that from a reading of "the spec and the whole description with figures . . . associated with Figure 16, it is clear that ['Clock/Data Recovery Circuits'] means 'clock from data recovery circuit.'").)

Emulex does not fare better in its argument that data paths were known in the art

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. | | |
|---|---|---|---|

and thus the claimed invention is obvious. As explained by KSR, the mere fact that a patent is composed of elements that were all independently known in the prior art does not render it obvious. KSR, 550 U.S. at 418. Nevertheless, as Emulex sees it, in light of Dr. Le's desire to construct a "high-speed transceiver device," Pickering could be modified to allow for construction of a data path to move data at high speeds. (Emulex Opening Br. at 12 (citing Trial Tr. Sept. 27, 2011, at 75 & 86.) However, Dr. Stojanovic testified that Emulex's proposed combination of Pickering with a data path would result in an inoperable circuit. (Trial Tr. Oct. 5, 2011, at 12, 15, 18-19.)

In response, Emulex contends Pickering itself teaches phase offset to realign data to allow an operable circuit with a data path. (See Emulex Reply Br. at 14 (quoting JX295 ¶¶ 16 & 20).) As explained by Dr. Stojanovic, sampling occurs "at the peaks and valleys . . . with the help of the sampling signal," and that sampling in a "gray zone" (between those peaks and valleys) as would occur if one added a data path to Pickering, yields no helpful information. (Trial Tr. Oct. 5, 2011, at 13-14.) Emulex argues that Pickering itself teaches a phase offset that could be implemented to alter the output signal in a manner that shifts the sampling signal to support data recovery. (See Emulex Reply Br. at 14.) Although the Court does not reject outright the general proposition that such a phase offset could solve the problem identified by Dr. Stojanovic, neither does the Court accept it on the current record. Although Pickering clearly contemplates an "output signal" that "may . . . be in phase with the input signal" or that may instead "have a predetermined phase offset" (JX295 ¶ 16), there is simply no evidence that supports the notion that such a phase offset could be predetermined, that such an offset would operate in a manner that allows the sampling at the peaks and valleys described by Dr. Stojanovic, or that sampling using such a phase offset would result in data recovery.[8] Certainly, this proposition has not been established by clear and convincing evidence.

Notably, Broadcom does not, as represented by Emulex, concede in its briefing "that a 'data path' is a necessary part of a Clock/*Data* Recovery ("CDR") circuit." (Emulex Reply Br. at 1; see also id. at 8 ("Broadcom's own brief admits that a 'data path'

---

[8] By the same token, Emulex's contention that "one of ordinary skill in the art would have known to simply shift the sampling signal by a constant offset in order to sample at the correct locations" (Emulex Reply Br. at 14-15), is unsupported by any evidence, and the Court rejects that contention.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-01058-JVS (ANx) consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
|---|---|---|---|

| Title | Broadcom Corp. v. Emulex Corp., et al. | | |
|---|---|---|---|

is a necessary part of a CDR circuit.").) In context, it is clear that Broadcom admits no such thing. Instead, Broadcom merely states that "a data path . . . is a necessary element of the 'clock *and data* recovery circuit," which is how it describes the '150 patent. (Broadcom Opening Br. at 8.) Indeed, Broadcom explicitly contrasts Pickering with the '150 patent on this very issue. (Compare id. at 2 (describing the '150 patent as a "clock *and data* recovery circuit") with id. at 4 (characterizing Pickering (the prior art) as "a circuit that recovers only clock information" that was to be "contrast[ed] to the clock and data recovery circuitry of the '150 patent").) Simply put, Broadcom's meaning is clear, and even a cursory review of the language used reveals it is meant to reject the very proposition Emulex contends it expresses.

In short, although the Court does not reject in theory that a given element may be implicitly understood by one skilled in the relevant art, the Court does not conclude that the evidence here lends itself to such an interpretation in light of the requirement that obviousness be proven by clear and convincing evidence. Moreover, it is uncontroverted that Pickering does not recover data, that the claimed invention does, establishing an important difference between the two, which weighs against a finding of obviousness.

### C. Ruling Re '150 Patent

Thus, taking into account the identified prior art, the level of ordinary skill in the art, and the differences between the prior art and the claims at issue, the Court concludes that Emulex has failed to establish by clear and convincing evidence its affirmative defense of obviousness. The jury's findings regarding the relevant secondary considerations support this conclusion, and the Court finds all but the two findings noted above supported by substantial evidence. Again, the Court's overall conclusion that Emulex failed to meet its burden to prove obviousness stands, even if less than all the secondary considerations have been established.

## V. Conclusion

As set forth herein, the Court concludes the challenged patents are not invalid on the basis of obviousness. The Court denies Emulex's Motions for Judgment as a Matter of Law or New Trial. The Court will at the appropriate time enter judgment in favor of Broadcom on the affirmative defense and counterclaims of obviousness regarding the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 09-01058-JVS (ANx)<br>consolidated CV 10-03963-JVS (ANx) | Date | December 15, 2011 |
| Title | Broadcom Corp. v. Emulex Corp., et al. | | |

patents discussed herein.

**IT IS SO ORDERED.**

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | kjt | | |