WILLIAM F. LEE (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA (admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER (admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS (admitted *pro hac vice*)
(louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Plaintiff and Counterclaim Defendant
BROADCOM CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| **BROADCOM CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**EMULEX CORPORATION,**<br><br>Defendant.<br><br>**And Related Counterclaims** | CASE No. SACV09-1058 JVS (ANx)<br>consolidated SACV10-3963-JVS (ANx)<br><br>**PLAINTIFF BROADCOM CORPORATION'S RESPONSE TO DEFENDANT EMULEX CORPORATION'S OBJECTIONS TO BROADCOM'S SECOND AMENDED PROPOSED PERMANENT INJUNCTION**<br><br>Before Hon. James V. Selna |

1    In the Court's Memorandum of Decision re Injunctive Relief (Dkt. 1090
("Court's Mem.") at 17), the Court determined that Emulex will be permitted to
sell to customers "only for the specific *customer device(s)* for which the infringing
product [was] qualified" prior to the commencement of the sunset period (*Id.* at 18
(emphasis added)).  The Court further explained that Emulex will not be permitted
to "benefit from any infringing product qualified by a customer where *the program*
had not matured into a production order" prior to the commencement of the sunset
period. (*Id.* at 19-20 (emphasis added); *see also id.* at 19 (discussing OEM "sunk
development costs" for a particular non-qualifying server program as "one of the
potential casualties of attempting to strike a balance" between Broadcom's patent
rights and harm to others).)  The Court thus described a Sunset Provision that
would protect Emulex's customers where a "design win" had matured into
qualification and a production order.

   In short, the Sunset Provision does not simply permit continued sales of
infringing products; rather, it permits sales of infringing products to particular
customers *for particular customer devices* and for *specific programs*.  (*See*
Second Amended Proposed Permanent Injunction, Dkt. No. 1091-1 ("Prop. Inj.")
at Parts II(b), IV(b).)  But Emulex ignores this language.  In its Objections to
Broadcom's Second Amended Proposed Permanent Injunction (Dkt. No. 1092
("Obj.")), as well as the submission Emulex provided to Broadcom regarding
allegedly Sunset-qualified sales, Emulex refuses to acknowledge the plain terms of
the "narrow and limited Sunset Provision" described in the Order.  Rather, Emulex
takes the opposite position, essentially contending that *any* order for production
quantities of an infringing product by a customer prior to the Sunset Period allows
Emulex to continue to sell *any* amount of that infringing product to that customer
for any purpose (including new design wins or new customer devices) during the
Sunset Period.

BROADCOM'S RESPONSE TO EMULEX'S
OBJECTIONS TO SECOND AMENDED
PROPOSED PERMANENT INJUNCTION

Emulex is incorrect. The Court's Sunset Provision exists to protect *customers*, and the protection is narrow: it only allows sales that are needed to support qualified devices and programs (i.e., design wins) which use Emulex's products. The Sunset Provision does not exist to protect Emulex's ability to keep selling its infringing products *carte blanche*, to any customer for any purpose. Nor does it exist to permit Emulex's customers who are Sunset-qualified for particular programs "to purchase as many of those sunset devices as they wish." (Concurrently-filed Declaration of Jason H. Liss Exh. A, E-Mail from Lamberson to Teran, March 30, 2012 ("Lamberson Email").) Rather, those customers are permitted to purchase infringing products "only for the specific customer device(s) for which the infringing product [was] qualified" prior to the commencement of the sunset period. (Court's Mem. at 18.)

Emulex's objections flow almost entirely from its disregard for this portion of the Court's order. With few exceptions, Emulex's objections should be overruled.

## I. Emulex's Objections to Reporting Provisions.

Emulex's attempt to avoid the plain terms of the Sunset Provision is clear from its objections to Broadcom's proposed reporting provisions. (Obj. at 5-6).

During discovery and at trial, Emulex's witnesses consistently testified that Emulex worked closely with its OEM customers and was well aware of the customer devices and platforms for which Emulex's products had been selected and qualified. (*See, e.g.*, 9/28/2011 Trial Tr. at 42:5-9 (Emulex CEO James McCluney describing a design win as a "written statement" in which "the OEM says we are selecting you and your component to go into this particular server or this particular platform"); *id.* at 40:17-20 ("We build long relationships with [OEMs] and we work very, very closely with them.").) Similarly, in its arguments opposing Broadcom's requested injunction, Emulex made repeated assertions

regarding the supposedly devastating harm to its OEM customers that an immediate injunction would cause, and submitted detailed evidence from three of its most significant OEM customers. (*See* Defendant Emulex Corporation's Opposition to Broadcom's Motion for a Permanent Injunction, Dkt. No. 1036, at 6-8, 9-11, 25-26 (arguing that OEMs will suffer "substantial hardships" from the entry of an immediate injunction); *see also* Dkt. Nos. 1028-32 (OEM declarations).)

Now, in much the same way that it claimed ignorance of its suppliers' designs, Emulex strategically claims ignorance about the devices and platforms for which its customers have placed production quantity orders for infringing products. Specifically, Emulex asserts that it "does not require customers to identify any particular 'platform' when they make purchases," and hence that Broadcom's proposed reporting requirements seek "information that Emulex does not typically possess." (Obj. at 6.) Emulex's typical past practices are utterly irrelevant; sales of infringing products are now permitted only for use in specific customer programs. And Emulex not only knows the identities of those programs, it is also well aware of their significance. (*See, e.g.*, 3/2/2012 Hearing Tr. at 26:16-25 (counsel for Emulex arguing unsuccessfully for a different Sunset Provision covering "existing customers who have previously selected an infringing Emulex product to be qualified for an existing platform").)

Even if Emulex does not presently possess the information necessary to establish that particular sales are sunset-eligible, it can surely obtain such information from its customers – and if it cannot, then there are no sunset-eligible sales. As an equitable matter, any Emulex customer unwilling to identify the platforms for which its own purchases are intended is unlikely to suffer from the risk of harm upon which the Sunset Provision is premised, and should therefore not enjoy its benefits. This is especially true for those customers who have chosen to

submit evidence in this proceeding.

Emulex's failure to address the Court's Sunset Provision on its own terms is of a piece with Emulex's failure to provide Broadcom with a list of customer devices and products eligible for sunset period sales. Instead, to date Emulex has merely provided a list of customers, infringing products, and past order dates, but has made no mention whatsoever of particular customer devices, programs, or platforms for which pre-Sunset Period production orders were made. (*See* Lamberson Email ("We have identified the specific configurations of products that we sell to our customers . . . .").) Emulex's approach is ripe for manipulation, and for confirmation the Court need look no further than Emulex's objections: "[s]ome of the Emulex products (such as PCIe networking cards) can be used in multiple different platforms by end customers."[1] (*Id.*; *see also* Lamberson Email ("Original Equipment Manufacturers ("OEMs") may purchase thousands of OneConnect PCIe cards or BE3 chips, and use them in a variety of different platforms.")) Broadcom's proposed reporting requirements are thus reasonable and necessary, and impose little burden on either Emulex or its customers.[2]

## II. Emulex's Objections to "Extraterritorial Provisions."

Emulex likewise misapprehends Broadcom's proposed territorial limitation provisions. Broadcom does not seek to limit legitimate foreign sales, and does not seek royalties on legitimate foreign sales. In fact, Broadcom's proposed provisions

---

[1] That the Sunset Provision is tied to specific customer programs would appear to preclude sales to "resellers or distributors" who "do not themselves create 'platforms.'" (Obj. at 6.)

[2] Broadcom's proposed requirement that Emulex identify "ultimate customers" is not, as Emulex suggests, directed to the customers of "independent distributors or resellers" or the end users of OEMs' products. (Obj. at 6.) Rather, it recognizes that OEMs may make purchases through intermediaries who perform roles such as product warehousing or assembly.

1  do not require or prohibit any extraterritorial activity whatsoever.

2  But given the potential for manipulation of the Sunset Provision, it is important to minimize the possibility that Emulex will use foreign sales as a means to induce infringement in the United States.  The record demonstrates in some detail – because Emulex introduced the evidence – that major Emulex customers make substantial portions of their sales of products containing Emulex devices in the United States.  (*See* Broadcom's Reply in Support of its Motion for Entry of Permanent Injunction, Dkt. No. 1070, at 26 n.21 (citing Declaration of Chris Hughes, Dkt. No. 1029, at ¶ 5; Declaration of Robert Gennaro, Dkt. No. 1030, at ¶ 28; Deposition of Charles Newfell at 15:18-16:12).)  Emulex thus knows that significant portions of its sales to major customers, whether made in or out of the United States, will be destined for the United States market and will induce or contribute to United States infringement.  Broadcom's proposed foreign sale certification requirement does nothing more than prevent Emulex from claiming ignorance "that its customers [are] selling its product[s] in this country" so as to avoid application of the Sunset Provisions's limitations.  *See Global-Tech Applicances, Inc. v. SEB, S.A.*, 131 S.Ct. 2060, 2068-72 (2011) (doctrine of willful blindness applies to induced infringement under 35 U.S.C. § 271(b)).  For the same reason, Emulex's royalty payments should reflect the full measure of indirect infringement caused by Emulex's sunset period sales, and not a mere fraction of those sales.  Any other result would frustrate the purpose of the royalty, which is to compensate Broadcom for harm caused to it during the sunset period by continued infringement.

### III. Emulex's Objections to Royalty Provisions.

Emulex objects to Broadcom's proposed royalty provisions on two grounds.  Neither has merit.

First, Broadcom did not "argu[e] for a drastically increased royalty base."

(Obj. at 4.) Rather, Broadcom adopted the ***description*** of the royalty base used by the Court. (Court's Mem. at 19.) Nevertheless, Broadcom does not oppose modifying this language. *See* Part IV, *infra*.

Second, Emulex objects to Broadcom's proposed royalty rate for the '691 patent. (Obj. at 4-5.) Here again, Broadcom's proposal simply adopts the Court's view. (Court's Mem. at 19.) Moreover, the Federal Circuit has held that district courts may make royalty rate determinations without an underlying jury verdict. *See Paice LLC v. Toyota Motor Corp.*, 504 F. 3d 1293, 1316 (Fed. Cir. 2007) ("the fact that monetary relief is at issue in this case does not, standing alone, warrant a jury trial").

## IV.     Broadcom's Third Amended Proposed Injunction.

Broadcom's Third Amended Proposed Injunction, reflecting those Emulex modifications to which Broadcom is not opposed, is attached hereto as Appendix A.[3] In particular:

- Broadcom does not oppose modifying the royalty base language to refer to "Enjoined Products." (Obj. at 4.)
- Broadcom does not oppose modifying the technical support provision to permit support under the Sunset Provision. (Obj. at 6-7.)

Emulex also proposes to pay royalties into escrow "with appropriate instructions to the escrow agent tied to the outcome of the appellate proceedings." (Obj. at 5.) Although Broadcom does not oppose the payment of royalties into escrow, in this case such an arrangement is unnecessary. Given Broadcom's substantial annual revenues there is no reasonable likelihood that Broadcom would be unable to repay the royalties if ordered by the Court.

---

[3] Also attached, as Appendix B, is a redline comparison between Broadcom's Second and Third Amended [Proposed] Permanent Injunctions.

BROADCOM'S RESPONSE TO EMULEX'S
OBJECTIONS TO SECOND AMENDED
PROPOSED PERMANENT INJUNCTION

## V. Emulex's Request for Stay.

In the two weeks since the Court's order granting Broadcom's motion for permanent injunction, Emulex has yet to provide sufficient information to identify sunset-eligible sales, and its objections are premised largely on an evident disregard for the operation of the Sunset Provision. Because Broadcom cannot be assured that Emulex will ever provide information sufficient to determine the scope of its sunset-eligible sales, Broadcom opposes Emulex's request for a temporary stay (Obj. at 7) and instead requests the immediate entry of a permanent injunction.[4]

Date: April 2, 2012

WILMER CUTLER PICKERING
HALE AND DORR LLP

/s/ Jason H. Liss
Jason H. Liss

Attorneys for Plaintiff
BROADCOM CORPORATION

---

[4] In the alternative, Broadcom requests that the Court enter an order requiring Emulex to provide to Broadcom, on or before April 4, 2012, (1) identification of sales Emulex claims to be sunset-eligible by (a) customer; (b) infringing product; (c) customer device for which the infringing product was qualified; (d) qualification date; and (e) production quantity order date, along with (2) documentation corroborating such representations.

*Broadcom Corporation v. Emulex Corporation*,
Case Nos. SACV09-1058 JVS (ANx) and SACV 10-03963-JVS (ANx)

# PROOF OF SERVICE

Fed. R. Civ. P. 5(b) & L.R. 5-3

I, Jason H. Liss, hereby certify that a copy of the foregoing *Plaintiff Broadcom Corporation's Response to Defendant Emulex Corporation's Objections to Broadcom's Second Amended Proposed Permanent Injunction* and accompanying Appendices A-B was served upon the following parties as indicated below on this 2nd day of April, 2012.

**For Emulex Corporation:**

| | |
|---|---|
| smg@jmbm.com | ☐ Via Hand Delivery |
| Broadcom-Emulex@fr.com | ☐ Via Overnight Courier (1 copy) |
| BroadcomEmulexService@tklaw.com | ☐ Via Facsimile |
| (email addresses for service on Emulex per agreement of the parties) | ☒ Via Electronic Mail (1 copy) |

I certify under penalty of perjury that the foregoing is true and correct.

/s/ Jason H. Liss
Jason H. Liss

ACTIVEUS 94308032v5