1   Juanita R. Brooks (SBN 75934)
      brooks@fr.com
2   FISH & RICHARDSON P.C.
3   12390 El Camino Real
    San Diego, CA 92130
4   Telephone: (858) 678-5070
    Facsimile: (858) 678-5099
5
6   *(Additional counsel listed on signature page)*
7   Attorneys for Defendant and Counterclaimant
    EMULEX CORPORATION
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11                  (SOUTHERN DIVISION)
12

| | |
|---|---|
| 13  BROADCOM CORPORATION, | Case No. CV 09-1058-JVS (ANx) |
| 14      Plaintiff, | consolidated with CV 10-3963 JVS (ANx) |
| 15  v. | |
| 16 | **DEFENDANT EMULEX CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS *EX PARTE* APPLICATION FOR STAY OF PERMANENT INJUNCTION** |
| 17  EMULEX CORPORATION, | |
| 18      Defendant. | |
| 19 | |
| 20 | |
| 21 | ████████████████ |
| 22 | |
| 23  And Related Counterclaims | Before:         Hon. James V. Selna |
| 24 | |

25  ████████████████████████████████
26  ████████████████████████████████
27  ████████████████████████████████
28  ████████████████████████████████

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................... 1

II.  SPECIFIC ITEMS FOR WHICH STAY IS REQUESTED ...................... 3

  A. Lancer ............................................................................................ 4

  B. Additional Products ....................................................................... 6

  C. Disputed Products ......................................................................... 6

III. ARGUMENT ................................................................................... 8

  A. Emulex Has a "Substantial Chance of Prevailing" on the Merits of Its Appeal ... 8

    1. *JMOL of Infringement of '150 patent* ........................................ 9

    2. *Non-Obviousness* ................................................................... 10

    3. *Permanent Injunction* ............................................................ 11

  B. Public Will Be Injured If a Stay Is Not Granted ........................... 13

  C. Emulex Will Face Significant Irreparable Harm If a Stay Is Not Granted ......... 15

  D. Broadcom Will Not Be Injured By a Stay ..................................... 16

IV.  CONCLUSION ............................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broadcom Corp. v.Qualcomm Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) ................................................................. 9

*eBay, Inc. v. MercExchange LLC*,
   547 U.S. 388 (2006) ................................................................................ 12

*Edelman v. Jordan*,
   414 U.S. 1301 (Rehnquist, Circuit Justice 1973) ...................................... 16

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   582 F.3d 1288 (Fed. Cir. 2009) ................................................................. 9

*High Tech Med. Instrumentation Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) .................................................................. 11

*Hilton v. Braunskill*,
   481 U.S. 770 (1987) ................................................................................... 9

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2012) .................................................................. 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
   No. 2009-1504, 343 Fed. Appx. 619, 2009 WL 2873909 (Fed. Cir. 2009).............. 2

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) .................................................................................. 10

*Nobelpharma AB v. Implant Innovations Inc.*,
   141 F.3d 1059 (Fed. Cir.1998) .................................................................. 10

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
   448 F.3d 1309 (Fed. Cir. 2006) ................................................................. 10

*Power-One, Inc. v. Artesyn Techs., Inc.*,
   599 F.3d 1343 (Fed. Cir. 2010) ................................................................. 10

*Standard Havens Prods. v. Gencor Indus. Inc.*,
   897 F.2d 511 (Fed. Cir. 1990) ..................................................... 2, 8, 9, 18

*SynQor v. Artesyn*,
   No. 2011-11191, 417 Fed. Appx. 976, 2011 WL 1362187,  (Fed. Cir. 2011).... 2, 15

*United Cal. Bank v. THC Fin. Corp.*,
   557 F.2d 1351 (9th Cir. 1977) .................................................................... 9

ii

## I.   INTRODUCTION

Defendant Emulex Corporation ("Emulex") respectfully moves for a stay pending appeal of the permanent injunction entered by the Court on April 3, 2012. Pursuant to Federal Rule of Appellate Procedure Rule 8, a party requesting a stay pending appeal must first move for a stay in the district court, before it can present a motion for stay in the Federal Circuit.  Emulex filed its notice of appeal on April 4, 2012 and intends to request an expedited briefing schedule from the Federal Circuit as soon as this motion is resolved, thereby minimizing the necessary duration for a stay during the pendency of the appeal.  With an expedited briefing schedule, it is likely that appeal at the Federal Circuit could be completed within six months.  In addition, while Emulex recognizes that the Court considered the harm to OEMs and customers in crafting the sunset provision, the issue of a stay pending an appeal raises different concerns that the imposition of the sunset itself.

Except for a limited 18-month sunset provision that applies only to those products for which there was already a firm order for production quantities as of October 12, 2011, the injunction is immediately effective.  (*See* Lamberson Decl. Ex. 1 (Emulex's Proposed Appendix of Permitted Sunset Sales).)  Emulex's OEM's had already released certain products to market prior to the Court's granting of the injunction and some of those OEM products do not qualify under the sunset provision because firm orders for production quantities of the Emulex component in those products occurred after October 12, 2011 but before March 16, 2012.  In addition, Emulex's OEMs have additional products for which firm orders for productions quantities in the United States would be imminent but-for the cut-off date in the sunset provision.  Emulex's OEMs have no alternatives to replace the Emulex components in these products during the pendency of the appeal.  (*See* Lamberson Decl. Ex. 2 (Emulex's List of Customer Activities Halted Under Court-Ordered Injunction.)

1

1    As a result of the lack of an available alternative, a stay of the injunction

2    pending appeal is necessary to prevent significant hardship to the businesses which

3    depend on Emulex's products and the public at large.  The Federal Circuit has

4    consistently recognized the appropriateness of a stay pending appeal to prevent this

5    type of third party harm.  *See, e.g., SynQor v. Artesyn*, No. 2011-11191, 417 Fed.

6    Appx. 976, 2011 WL 1362187, *1 (Fed. Cir. 2011) ("[T]he appellants have met

7    their burden to obtain a stay as to the enjoined converters sold to Radisys and

8    Enterasys, particularly in light of the fact that it is not materially disputed that

9    SynQor does not manufacture and sell a suitable replacement for Radisys' and

10   Enterasys' products.  Thus, a non-infringing alternative is likely unavailable before

11   this appeal can be decided or before September 30, 2011—the date it is estimated a

12   non-infringing converter can be in use."); *i4i Ltd. P'ship v. Microsoft Corp.*, No.

13   2009-1504, 343 Fed. Appx. 619, 2009 WL 2873909 (Fed. Cir. 2009); *see also*

14   *Standard Havens Prods. v. Gencor Indus. Inc.*, 897 F.2d 511 (Fed. Cir. 1990).

15   In fashioning the sunset provision, the Court recognized the public harm that

16   will come from market disruptions if the OEM's products are unable to be sold, and

17   the uncontroverted fact that "an infringing chip is a complicated process that

18   requires new development, interaction between the chip supplier and the

19   manufacturer, and potential hardware and software modifications" so that there are

20   no "'off-the-shelf' substitutes."  (D.I. 1090 (Memorandum of Decision re Injunctive

21   Relief) at 13-17.)   In addition, as the Court's Order recognized, OEMs may suffer

22   substantial harm from the immediate injunction since they have invested significant

23   sunk costs in products that may not meet the Court's sunset criteria.  (*Id.*)

24   Uncontroverted testimony shows that despite the sunset provision, Emulex will not

25

26

27

28

In the context of an appeal, particularly one that the Federal Circuit is likely
to expedite, the issue is whether the entities negatively impacted by the injunction
can ever be made whole if the Federal Circuit ends up reversing or modifying the
injunction.  For example, if the Federal Circuit ends up overturning the liability
finding or the injunction itself, ███████████████ will have been critically
harmed with no ability to seek a remedy for the injury caused to them.  A stay is
particularly appropriate on the factual record here, since there is no evidence in the
record to indicate that Broadcom will itself benefit from the denial of a stay.  For
these reasons alone, a stay of the injunction pending appeal is warranted.

## II.   SPECIFIC ITEMS FOR WHICH STAY IS REQUESTED

As the Court has found, in light of technological constraints and demands for
upmost reliability, it is impossible for the OEMs to simply swap out enjoined
Emulex products and replace them with alternatives.  (D.I. 1090 at 14.)  Rather,
extensive redesign and qualification work is required before a product with an
alternative chip could reach the marketplace.  Yet unless a product meets the specific
requirements of the sunset provision, the Court's injunction is effective
immediately.  There are critical products—many already released or scheduled to be
released this year—for which Emulex chips have been selected and significant
resources have been expended by the OEMs qualifying the Emulex chip, but for
which the sunset provision will not apply.  For these products, there are no currently
available alternatives to the enjoined Emulex chips.  As detailed below, in light of
the lack of available alternatives, if the injunction is in effect while this appeal is
pending, the OEMs will be unable to sell key next generation servers and
technology, and customers will suffer significant irreparable harm as a result.
Moreover, in most cases, including for all Lancer Fibre Channel HBA products, it is
undisputed that even in the absence of a stay, any replacement part could not come
from Broadcom.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## A. Lancer

As the sworn declarations for HP explain, ████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ the Lancer chip is only capable of supporting Fibre Channel, not FCoE or any other Ethernet protocol, and thus does not compete with any Broadcom products directly or indirectly.

████████████████████████████████████████████████████████████████

████████████████████████ Emulex recognizes that the Court noted in its Order that the Lancer datasheet generally describes the chip's capability to handle both Fibre Channel and FCoE; however, the chips ████████████████████████ will only be capable of supporting pure Fibre Channel. (D.I. 1079, Ex. 5 (Gervais) at 361:1-10.)

16Gb Fibre Channel represents a significant benefit for data centers over the earlier Fibre Channel technology, providing two to four times the speed of prior products and allowing customers to keep up with their rapidly increasing requirement for greater bandwidth. ████████████████████████ Lancer is the only 16Gb Fibre Channel product ████████████████████████████████

4

1

2            Broadcom could not possibly provide a replacement as they

3 do not make Fibre Channel products.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Other Emulex customers will also not be able to sell their Lancer product. As

2    a result they and their customers will suffer similar irreparable hardships. ███

3

4

5

6

7

8

9

10

11

12

13

14    **B. Additional Products**

15    Attached hereto as Exhibit 2 is a list of additional products that Emulex will

16    be unable to sell in the United States under the Court-ordered injunction.  These

17    include products for major OEM's including ████████████ They also

18    include products that have already shipped prior to the entry of the injunction, but

19    after the start of the sunset period.  Each of these represents a customer that has

20    invested substantial time and money qualifying an Emulex product, and lacks

21    alternatives during the pendency of the appeal.  All of these customers will be

22    injured absent a stay.

23    **C. Disputed Products**

24    In addition, it appears that Broadcom is taking the position that a number of

25    other products—which Emulex believes do meet the Sunset provisions—should be

26    immediately enjoined.  In fact, to date, Broadcom has not even conceded that

27    products which its own expert described as selling in commercial quantities at trial

28    are properly within the sunset criteria.  At present, it appears that Broadcom will

1  focus its attack on products intended for the Romley platform.  Broadcom

2  essentially asserts that not a single Romley platform qualifies under the sunset

3  criteria.  The ████████████ declarations submitted during the injunction briefing

4  included extensive description of the OEM's investment in the qualification,

5  development, and sales of Romley based products.  And, with that evidence in the

6  record, the Court constructed a sunset provision based on the date of a firm order for

7  production quantities—not a blanket prohibition of Romley based products.[1]

8      The documentation that Emulex provided Broadcom regarding orders for

9  Emulex components qualified for use in Romley-based products is irrefutable and

10  shows that OEMs had qualified and placed firm orders for productions quantities

11  well before October 12, 2011. ████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  Intel subsequently delayed its release of the Romley microprocessor, forcing the

14  OEMs (despite the fact that they qualified and ordered the components from Emulex

15  for the products) to wait until March to provide their Romley platforms to

16  customers.  During that delay, the data centers that had prepared to receive Romley

17  products had to wait to get the improved speed, storage, and additional applications

18  that Romley will provide.  Now that those data centers have already waited an extra

19  six months because of Intel, it would be particularly harmful if they had to cease

20  purchasing Romley based platforms and defer their data center improvements for

21  another six months while the Federal Circuit decides the appeal.

22      In addition, ████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████

## III.   ARGUMENT

In determining whether to grant a stay, a court must consider:  (1) the likelihood of success on the merits; (2) the harm to Emulex if a stay is not granted; (3) the harm to Broadcom in the absence of a stay; and (4) the public interest.  *See Standard Havens*, 897 F.3d at 512-13.  While in this case all four factors favor granting of a stay, the Federal Circuit requires a flexible approach to weighing the four factors, and a strong showing on one factor can overcome a modest showing on another. *See id.* at 513.

### A. Emulex Has a "Substantial Chance of Prevailing" on the Merits of Its Appeal

There is a substantial likelihood that the Federal Circuit will reverse the Court's issuance of a permanent injunction.  While Emulex recognizes that it has yet

to persuade the Court that the injunction should not issue, many of the underlying issues will be reviewed *de novo* by the Federal Circuit, and at the very least, Emulex has shown that a "substantial legal question exists regarding [infringement and] validity and that it has a substantial chance of prevailing when [the Federal Circuit] decides this appeal." *Standard Havens*, 897 F.3d at 516 (granting a stay when this standard was met); *see also Hilton v. Braunskill*, 481 U.S. 770, 778 (1987) (holding that a stay is appropriate when the moving party can demonstrate "a substantial case on the merits" and other stay factors mitigate in the moving party's favor).

While not exhaustive,[2] some of the issues for which Emulex has a "substantial chance of prevailing" are described below.

### 1.    *JMOL of Infringement of '150 patent*

Unlike the *Broadcom v. Qualcomm* case where a jury had found Qualcomm was infringing and this Court had affirmed the jury's verdict, in this case there has been no jury finding of infringement. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008). Rather on the '150 patent, this Court entered a JMOL of infringement after the close of the evidence but before the case was submitted to the jury. Therefore, the Federal Circuit will review this Court's JMOL decision *de novo*, without deference to the existing finding of liability. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1294 (Fed. Cir. 2009). A JMOL in favor of the party with the burden of proof—as here with Broadcom— can be granted only in the "exceptional case," *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1356 (9th Cir. 1977), where the movant "has established [its] case by evidence that the jury would not be at liberty to disbelieve and . . . the only reasonable conclusion is in

---

[2] For purposes of this motion to stay, Emulex focuses on the '150 patent. Since the products found to infringe the '691 patent are all older products which should meet the sunset criteria, the need for a stay during the appeal arises primarily from the '150 patent. Should the Court find that even these older products do not fall within the sunset then the likelihood of reversal on the '691 patent, arising from both the JMOL decision and the claim construction order becomes relevant as well.

1   [the movant's] favor." *Nobelpharma AB v. Implant Innovations Inc.*, 141 F.3d

2   1059, 1065 (Fed. Cir.1998).

3           Even under the Court's claim construction, the Federal Circuit is likely to find

4   that the jury could have found that the failure of Broadcom's expert to specifically

5   address portions of the claim element at issue ("at a rate corresponding to the

6   frequency offset") was sufficient to find non-infringement.  This is particularly true

7   in the light of the testimony in the record regarding the operation of the accused

8   device and the inferences to be drawn from that testimony.  The Federal Circuit will

9   be required to draw all such inferences in Emulex's favor when reviewing a JMOL

10  determination. *See Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d

11  1309, 1314 (Fed. Cir. 2006); *Nobelpharma AB*, 141 F.3d at 1065.  Emulex

12  respectfully refers the Court to the briefing on the JMOL motions and the

13  subsequent oral argument on the JMOL issues.  (D.I. 861; D.I. 948; D.I 983;

14  Lamberson Decl. Ex. 5 (JMOL Oral Argument).)  In light of the de novo review

15  which will govern the appeal, there is a substantial chance that the Federal Circuit

16  will reach a different conclusion than the trial court in the inferences to be drawn

17  from the testimony and in reviewing the conclusory testimony of Broadcom's

18  expert.

19                          2.    *Non-Obviousness*

20          The district court's finding that the sole asserted claim of the '150 patent was

21  not obvious will be subject to de novo review on appeal. *Power-One, Inc. v.*

22  *Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010).  And there is at least a

23  substantial chance that the Federal Circuit will find the claim obvious under *KSR*

24  *Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

25          As discussed in the JMOL briefing and the Court's Order on Obviousness, the

26  invalidity of the '150 patent essentially boiled down to the single issue of whether

27  the Pickering prior art sufficiently disclosed the use of the "data path" element in

28

1   order to make claim 8 obvious to one of skill in the art.  As the Court noted in its

2   order:

3         Emulex relies on Dr. Stojanovic's testimony that "a data path would

4         be necessary to . . . demodulate the received data signal" (Trial Tr.

5         Oct. 5, 2011, at 35).  Although this is some evidence of the implied

6         data path suggested by Dr. Nikolic, it is insufficient in light of the

7         discussion regarding the varying purposes of the two inventions,

8         supra, and in light of Emulex's burden of establishing obviousness

9         by clear and convincing evidence.

10  (D.I. 992 ; *see also* D.I. 954; D.I. 979.)  There is a substantial chance that the

11  Federal Circuit in reviewing that evidence, as well as the additional evidence in the

12  record will reach a different conclusion about the similarity of the problem and

13  solution described by Pickering and the sufficiency of the admissions of Dr.

14  Stojanovic and the testimony of Dr. Nikolic to meet the clear and convincing

15  evidence standard.

16                 3.    *Permanent Injunction*

17       A stay of the injunction is particularly appropriate in this case as the Federal

18  Circuit is likely to overturn the injunction on appeal, at least in part, even if affirms

19  the liability determination.

20       First, the Federal Circuit is likely to find that the district court erred in

21  applying the injunction to Emulex's pure Fibre Channel products (which include all

22  of the InSpeed products and the Lancer HBA Fibre Channel chip).  It is undisputed

23  that Broadcom does not directly compete in the Fibre Channel market.  (D.I. 1090 at

24  6.)  Even before the Supreme Court's *eBay* decision, the Federal Circuit noted that a

25  lack of competition weights strongly against a finding of irreparable harm.  *See, e.g.,*

26  *High Tech Med. Instrumentation Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556

27  (Fed. Cir. 1995).  The fact that Emulex and Broadcom do compete in the 10GbE and

28  FCoE markets does not show that they compete in the distinct Fibre Channel

market. Broadcom's claims of "indirect competition" and "protocol competition"
are untenable.  First, Broadcom's own senior level and expert witnesses
acknowledged that it did not compete with the Inspeed or Lancer HBA products.

Second, contrary to this Court's findings, the OEMs to whom Emulex
sell its products stated under oath that they cannot replace the Emulex Fibre Channel
products with Broadcom's 10Gb Ethernet or FCoE offerings.   Not only is this
physically impossible—they require completely different topologies and are not
even installed in the same location in the data center —but also it is unacceptable in
the marketplace, as a large majority of customers for the products in question still
demand pure Fibre Channel rather than Ethernet or FCoE, which Broadcom's
products cannot provide.

At a minimum, Broadcom
offered nothing in the record to show that customers already invested in Fibre
Channel data centers would replace that infrastructure investment by switching all
that physical infrastructure to Ethernet.

In light of this lack of competition, Broadcom's allegation of irreparable harm
in this market segment is very likely to fail.  *See eBay, Inc. v. MercExchange LLC*,
547 U.S. 388, 391(2006).  In fact, Broadcom's own damages expert has agreed that
Broadcom would not be harmed by a compulsory license for pure Fibre Channel
products. (D.I 1017, Ex. 9 (Davis) at 244:15-246:3.)

Additionally, for BE2, BE3, and Lancer CNA products,[3] which are used to practice various 10Gbps Ethernet and FCoE standards, the Federal Circuit is likely to find that at a minimum the district court erred in limiting its 18 month sunset period to only those products for which the OEMs had "already placed a firm order for productions quantities" by October 12, 2011.  As discussed below, Broadcom will suffer no irreparable harm if products which had already been selected but for which there was not any "firm" order by the sunset date are allowed to be sold, as OEMs would not be able to switch to Broadcom parts within 18 months.  In contrast, the OEMs and their customers will suffer significant harm, as they have no immediate alternatives to the enjoined products, and there are numerous products for which an Emulex product has already been selected, and the product is already being sold or is set for release, but for which there was not a firm order for production quantities as of October 11, 2011.  *See infra* Section III.B-D.  Thus, the balance of harms greatly favors a broader sunset period, and the Federal Circuit is likely to find that the Court abused its discretion in not providing one.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 864 (Fed. Cir. 2012) (modifying injunction on appeal to have a five month sunset period when the evidence established that it would take five months to release a non-infringing alternative).

### B. Public Will Be Injured If a Stay Is Not Granted

The public interest strongly supports granting a stay.  End users, such as banks, hospitals, government and major e-commerce businesses, depend on networks that use Emulex products for their most sensitive, mission critical data. Situations in which their servers become congested for months at a time are simply untenable. ███████████████████  Yet that is precisely what these businesses and government entities will face if a stay is not granted.

---

[3] As noted earlier, Lancer can ship in a Fibre Channel only version or in a CNA version which has both Fibre Channel and FCoE.  The particular products at issue in this motion to stay are the Fibre Channel only version of Lancer.

1    Although the injunction includes a sunset period, it only applies to those

2    products for which the OEM has already had a "firm order" to purchase production

3    quantities from Emulex prior to the Court's JMOL decisions.   But for the injunction

4    against the '150 patent, there are multiple products which have recently been

5    released or whose release is imminent, where the Emulex chip has been selected and

6    no other chip has been qualified, but the OEM did not have a firm order for

7    production quantities by October 11, 2011. (*See* Lamberson Decl., Ex. 2.)

8    Notably, the end users cannot simply substitute server products from another

9    vendor.  Trying to substitute server products from one manufacturer into an

10    environment that has been built upon another manufacture's system involves

11    substantial cost and time—when it is possible at all—and can lead to further

12    disruption in service and increased uncertainty.

13    

14    

15    Various declarants

16    testified as to the irreparable harm customers will suffer and the concern customers

17    are voicing due to the disruption of their operations that an immediate injunction

18    will cause.

19    

20    

21    The third party OEMs will also suffer irreparable harm if a stay is not granted.

22    They will immediately face millions of dollars in redesign and requalification costs

23    for products in which they have already invested significant resources and time.

24    

25    They will be forced to delay release of new products, putting millions of

26    dollars of direct and indirect sales and significant market share at risk.

27    

28    And they will face long term loss of reputation and competitive position.

14

1   ████████████████████   None of these costs will be recoverable if the Federal

2   Circuit subsequently finds the injunction never should have issued.

3     The structure of the Court's sunset provisions will introduce market

4   distortions that will cause additional significant harm to certain OEMs. ████████

5   ██████████████████   This market impact will be impossible to undue even

6   if the Federal Circuit reverses the finding of infringement.

7     All of these harms will be even greater, if as Broadcom is arguing, some of

8   the currently disputed products do not come under the sunset provision despite the

9   evidence of qualification and firm production orders. ████████████████████

10   ████████████████████████████████

11     Notably, Broadcom has provided no third party declarations or other evidence

12   rebutting Emulex's strong showing of public harm.

13     The Federal Circuit has recognized that a stay of an injunction is appropriate

14   when—as here— "a non-infringing alternative is likely unavailable before this

15   appeal can be decided." *SynQor*, No. 2011-11191, 417 Fed. Appx. 976, 2011 WL

16   1362187, *1 (Fed. Cir. 2011). Allowing the significant harm to third parties and the

17   public that would result from the stay in this case would be particularly inequitable

18   given that, as discussed below, Broadcom is unlikely to suffer any significant harm

19   if a stay is granted.

20       **C. Emulex Will Face Significant Irreparable Harm If a Stay Is**

21        **Not Granted**

22     If a stay is not granted, Emulex faces imminent risk of a significant disruption

23   in its sales. Exhibit 2 documents the products which Emulex will be unable to sell

24   in the United States during the pendency of the appeal absent a stay. ████████

25   ████████████████████████████████████

26   ████████████████████████████████████

27   ████████████████████████████████

28   ████████████████   Even if Emulex ultimately succeeds on appeal, it

15

1   will never be able to recoup the ███████████████████████████████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   23.)  These significant unrecoverable costs strongly favor the grant of a stay.  *See,*

5   *e.g.*, *Edelman v. Jordan*, 414 U.S. 1301, 1302-03 (Rehnquist, Circuit Justice 1973)

6   (granting stay where it was unlikely that the petitioner would have been able to

7   recover his funds if he prevailed before the Supreme Court).  And the harm will be

8   even greater if, as it appears Broadcom is arguing for, even more products are

9   ultimately excluded from the sunset.

10       Moreover, absent a stay, even if successful on appeal, Emulex is likely to face

11   ████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████████████  The equities do not support subjecting Emulex to the risk of

15   harm that will remain even if it is successful on appeal.

16                    **D. Broadcom Will Not Be Injured By a Stay.**

17       If this court issues a stay, Broadcom will not suffer any meaningful injury.

18       First, for the Lancer 16GB Fibre Channel HBA it is undisputed that

19   Broadcom does not compete in the Fibre Channel market at all and has no products

20   that could replace the enjoined products.  (D.I. 1090 at 6.)  Accordingly, Broadcom

21   cannot establish any loss of revenue or market share that would result from a stay.[4]

22   ──────────────────

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████

Furthermore, Broadcom's concerns about new design cycle losses—its primary argument for irreparable harm in the absence of an injunction and the basis for the Court's finding of irreparable harm in granting a stay do not provide a basis for concluding that Broadcom will be injured by a stay during the pendency of the appeal. (*See* D.I. 1090 at 10.) As discussed, even an immediate injunction will not result in Broadcom's products being substituted for the Emulex products for which there have already been design wins. And the next major design cycle—known as the "Grantley" cycle—is not expected to take place until 2014. D.I. 1023 (Gervais Decl.) ¶ 34.) By this time, the appeal will have been decided, and thus any stay pending appeal would be moot. Although there are minor mid-cycle design competitions, these are unlikely to result in wins for a new supplier such as Broadcom that has not been previously qualified. The uncontroverted testimony establishes that the OEMs cannot consider Broadcom for these mid-cycle products because there is insufficient time to test and qualify the Broadcom parts.[5]

## IV.   CONCLUSION

If a stay is not granted, for many enjoined products that do not come under the Sunset provision, including the Lancer products, there will be no available alternatives throughout the pendency of the appeal. This will result in enormous market disruptions and irreparable harm to the third party OEMs, their customers,

---

[5] Moreover, any possible harm to Broadcom based on new design competitions can be completely mitigated—while still protecting the public from the large majority of harm—by granting a stay, but limiting it to apply only to those products that have already been selected by the OEMs for use in a current or upcoming product as of the time of the Court's March 16 Order.

1 and the public at large.  Emulex too will face devastating losses that will not be

2 recoverable even if it later proves successful on appeal. On the other hand, any harm

3 to Broadcom if there is a stay will be minimal. Thus the balance of the harms

4 strongly favors granting of a stay, particularly given the "substantial chance" that

5 Emulex will be successful on appeal.  *See Standard Havens*, 897 F.2d at 516.

6 Accordingly, Emulex respectfully requests a stay of the injunction pending appeal.

7 *See id.* at 512-13.  In the alternative, Emulex requests a partial stay of the injunction

8 during the pendency of the appeal that would allow Emulex to sell chips to OEMs if

9 the chip had already been selected for use in a current or future OEM product as of

10 the time of the Court's March 16 Order.

11

12 Dated:  April 11, 2012                        FISH & RICHARDSON P.C.

13                                               By: _____

14                                                  Jonathan L. Lamberson

15                                               Attorneys for Defendant and

16                                               Counterclaimant
                                                EMULEX CORPORATION

17

18

19 *Additional Counsel*

20 David M. Barkan (SBN 160825)
     barkan@fr.com

21 Jonathan J. Lamberson (SBN 239107)
     lamberson@fr.com

22 FISH & RICHARDSON P.C.
   500 Arguello Street, Suite 500

23 Redwood City, California 94063-1526
   Telephone:  (650) 839-5070

24 Facsimile:  (650) 839-5071

25 Joseph V. Colaianni, Jr. (*pro hac vice*)
     colaianni@fr.com

26 FISH & RICHARDSON P.C.
   1425 K Street, N.W., 11th Floor

27 Washington, DC 20005
   Telephone:  (202) 783-5070

28 Facsimile:  (202) 783-2331

1  
Thomas H. Reger II (*pro hac vice*)  
  *reger@fr.com*  
2  FISH & RICHARDSON P.C.  
1717 Main Street, Suite 5000  
3  Dallas, Texas 75201  
Telephone:  (214) 747-5070  
4  Facsimile:  (214) 747-2091

5  
Wasif H. Qureshi (*pro hac vice*)  
  *qureshi@fr.com*  
6  FISH & RICHARDSON P.C  
One Houston Center  
7  1221 McKinney Street, 28th Floor  
Houston, Texas 77010  
8  Telephone:  (713) 654-5300  
Facsimile:  (713) 652-0109  
9

10  50834326.doc

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28