WILLIAM F. LEE
(admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA
(admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER
(admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS
(admitted *pro hac vice*)
(louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:   (617) 526-5000

Attorneys for Plaintiff and
Counterclaim Defendant
BROADCOM CORPORATION
(Additional Counsel Listed on
Signature Page)

JUANITA R. BROOKS (SBN 75934)
(brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099

DAVID M. BARKAN (SBN 160825)
(barkan@fr.com)
FISH & RICHARDSON P.C.
505 Arguello Street, Suite 500
Redwood City, CA  94063-1526
Telephone:  (650) 839-5070
Facsimile:   (650) 839-5071

Attorneys for Defendant and
Counterclaim Plaintiff
EMULEX CORPORATION
(Additional Counsel Listed on
Signature Page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| **BROADCOM CORPORATION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EMULEX CORPORATION,**<br><br>**Defendant.**<br><br><br><br>**And Related Counterclaims** | CASE No. SACV09-1058 JVS (ANx)<br>consolidated SACV 10-03963-JVS (ANx)<br><br>**JOINT STATUS REPORT**<br><br>Status Conference: April 16, 2012<br>Hon. James V. Selna<br><br>~~FILED UNDER SEAL – CONTAINS~~<br>~~HIGHLY CONFIDENTIAL –~~<br>~~OUTSIDE COUNSEL ONLY~~<br>~~INFORMATION~~<br><br>PUBLIC<br><br>REDACTED<br><br>VERSION |

1      Broadcom Corporation ("Broadcom") and Emulex Corporation ("Emulex")

2   submit this Joint Status Report pursuant to the Court's Order dated March 23,

3   2012.

4   **I.      PERMANENT INJUNCTION SUNSET PROVISION ELIGIBILITY**

5           **A.      Broadcom's Statement.**

6           In view of Emulex's customers' supposed reliance on the availability of

7   infringing products, the Court entered a Permanent Injunction with a narrow

8   Sunset Provision.  Emulex's view of the Sunset Provision, however, is

9   fundamentally at odds with both the letter and the logic of the Court's order, and is

10  premised on a specious claim of ignorance.  Emulex's conduct has frustrated the

11  parties' ability to reach agreement on sunset-eligible sales.

12          **1.      Background.**

13          The Court entered a Permanent Injunction on April 3, 2012.  (Dkt. No. 1095

14  ("Perm. Inj.").)  In accordance with the Court's Memorandum of Decision re:

15  Injunctive Relief (Dkt. No. 1090 ("Court's Mem.")), the Permanent Injunction

16  included a "narrow and limited Sunset Provision appropriately balances the public

17  interest and all the other [equitable] factors" (*Id.* at 17.)  The Court determined that

18  an 18-month Sunset Period is reasonable, that the Sunset Period for sales of

19  products found to infringe U.S. Patent No. 7,050,150 (the "'150 Patent") began on

20  October 12, 2011, and that the Sunset Period for products found to infringe U.S.

21  Patent No. 7,471,691 (the "'691 Patent") began on December 16, 2011.  (*Id.* at 18;

22  *see also* Perm. Inj. §§ II(a), IV(a).)  In order to balance "the needs of Emulex

23  customers with the protection of Broadcom's patent rights" (Court's Mem. at 19),

24  the Court imposed several restrictions.  In particular, during the Sunset Period:

25          • Emulex is permitted to sell infringing products only to those customers

26                  who "qualified an infringing product" **and** "placed a firm order for

27                  production[] quantities" prior to the start of the applicable Sunset Period.

28

**JOINT STATUS REPORT**

1    (*Id.* at 18; *see also* Perm. Inj. §§ II(b), IV(b).)

2    • Emulex is permitted to sell infringing products "only for the specific

3       customer device(s) for which the infringing product has been qualified"

4       prior to the start of the applicable Sunset Period.  (Court's Mem. at 18;

5       *see also* Perm. Inj. §§ II(b), IV(b) (permitting Sunset Sales only as

6       "specifically and identified in an Appendix to [the Permanent]

7       Injunction.").)

8    • Emulex is permitted to sell infringing products only in "substantially the

9       same configuration" as at the start of the Sunset Period.  (Court's Mem.

10      at 18; *see also* Perm. Inj. §§ II(b); IV(b).)

11   • Emulex is not "permitted to participate in any new design competition or

12      to benefit from any infringing product qualified by a customer where the

13      program had not matured into a production order on the basis of any

14      infringing product" prior to the start of the applicable Sunset Period.

15      (Court's Mem. at 19.)

16      The Court stated that it "strongly believes that the permissible scope of

17   Sunset Sales should be defined at the outset."  (Court's Mem. at 18 n.21; *see also*

18   Perm. Inj. §§ II(b), IV(b) (permitting Sunset Sales only as "specifically and

19   exclusively identified in an Appendix to [the Permanent] Injunction.").)

20   Accordingly, the Court "anticipate[d] that the parties would meet and confer to

21   develop a list of qualified customers and customer devices" and stated that "[t]o

22   the extent that there are disputes, the Court is prepared to resolve such disputes

23   promptly."  (Court's Mem. at 18 n.21.)

24                    **2.       Status of the Parties' Discussions.**

25      Following the Court's decision, Broadcom immediately requested that

26   Emulex identify those sales it claims to be sunset-eligible and produce

27

**JOINT STATUS REPORT**

1  "documentation to corroborate both (a) when the infringing products were

2  qualified for use in the customer devices, and (b) when the placement of firm

3  orders for production quantities of infringing products to support those customer

4  devices was made."  (Concurrently-filed Declaration of Jason H. Liss ("Liss

5  Decl.") Exh. A, E-Mail from Teran to Barkan, March 22, 2012; *see also* Liss Decl.

6  Exh. B, E-Mail from Teran to Lamberson, March 19, 2012 (requesting meet and

7  confer regarding sunset-eligible products.)

8        In response, Emulex has failed to provide information and documentation

9  necessary to support its claims of sunset eligibility for any customer devices.

10  Initially, Emulex merely provided a list of customers, product configurations, and

11  order dates.  (Liss Decl. Exh. C, Emulex Products [Allegedly] Authorized for U.S.

12  Sales During Sunset Period.)  That list was deficient in numerous respects, primary

13  among them that it did not identify even a single customer device.  Broadcom

14  explained these defects and requested that Emulex remedy them by March 30,

15  2012.  (Liss Decl. Exh. D, E-Mail from Teran to Lamberson, March 28, 2012.)

16  Emulex did not do so, claiming that Broadcom's request was "unworkable"

17  because it sought "levels of detail typically beyond Emulex's knowledge or

18  control."[1]  (Liss Decl. Exh. E, E-Mail from Lamberson to Teran, March 30, 2012

19

20  [1]  Emulex also asserted that the customers on its list are "entitled to purchase as
    many of those sunset devices as they wish" regardless of the platform in which

21  the product will be used.  (Lamberson Email.)  But this view invites widespread
    circumvention of the Sunset Provision – Emulex customers "may purchase

22  thousands of OneConnect PCIe cards or BE3 chips, and use them in a variety of

23  different platforms."  (*Id.*; *see also* ███████████████████████

24  ███████████████████████████████  Qualification without respect to specific

25  customer programs is thus counter to the Court's recognition that interest in

26  continued supply is greater for qualified, production-ordered uses than for

27  others.

**JOINT STATUS REPORT**

("Lamberson Email").)

Then, three days after the Court entered the injunction and ordered the parties to provide an agreed Appendix to the Permanent Injunction by April 11 (Dkt. No. 1096) – Emulex provided an updated list and "some examples of documentation showing firm orders for production quantities for [OEMs] Cisco, Dell, HP & IBM."  (Liss Decl. Exh. G, E-Mail from Lamberson to Tompros, April 6, 2012; Liss Decl. Exh. H, Emulex Products [Allegedly] Authorized for U.S. Sales During Sunset Period ("Emulex List").)

On April 10, Broadcom's counsel provided Emulex with Broadcom's proposed sections of the Joint Status Report.  On the morning of April 11, Broadcom's counsel received an amended list and additional documentation from Emulex.  Broadcom's counsel are currently reviewing the amended list and documentation, in an effort to narrow issues in dispute regarding sunset period sales.  While the amended list provides useful additional information, it still fails to identify qualified customer devices with particularity, or provide dates on which the Emulex infringing products in question were qualified for those devices.  In addition, although Emulex's documentation purports to show when orders for various infringing products were placed with Emulex, the documentation thus far produced, standing alone, does not establish dates when firm orders for production quantities were placed, or (in many cases) which particular customer devices these orders are related to.  Broadcom expects to meet and confer with Emulex regarding its amended list on April 11.

### 3. Emulex Has Not Provided Information Sufficient to Identify Sunset-Eligible Sales.

Emulex's List remains deficient in several major respects.  First, Emulex has identified customer devices only in the vaguest of terms. ███████████████

1 ████████████████████████████████████████████

2 █████████████████████████████████████████████

3 ███████████████████████████████████████████

4 █████████████████████

5         Second, at least some of the information on Emulex's list directly

6 contradicts the representations of Emulex and the OEM declarants. ████████████

7 ████████████████████████████████████████

8 █████████████████████████████████████████

9 ████████████████████████████████████

10 ██████████████████████████████████████████

11 ███████████████████████████████████████████

12 █████████████████████████████████████████████

13 █████████████████████████████████████████████

14 ██████████████████████████████████████████████

15 █████████████████████████████████████████████

16 ██████████████████████████████████████████████

17 ██████████

18         Third, Emulex's superficial manner of identification of qualifying devices

19 does not enable the parties to make the distinctions envisioned by (and presented

20 to) the Court.  For example, the Court recognized that HP's "sunk development

21 costs" for its "next-generation Tiger servers" would be "one of the potential

22 casualties of attempting to strike a balance" because HP did not begin its "efforts

23 to qualify Emulex products" for those servers did not begin until mid-2011, and

24 orders in production quantities are some time off."  (Court's Mem. at 19.) ████

25 ████████████████████████████████████████████

26 ████████████████████████████████████████████

27

**JOINT STATUS REPORT**

## Typical Lifecycle Of An OEM Design

- OEM sends RFQ to one or more vendors
- **OEM selects vendor solution ("design win")**
- OEM designs vendor product into their platform
- OEM has prototype made for preliminary testing
- OEM performs initial validation and basic system testing
- OEM works with vendor to make necessary corrections
- OEM arranges for pilot manufacturing
- OEM conducts detailed testing and performance analysis
- OEM conducts focused end user testing
- OEM conducts final certification and qualification to OEM specific standards
- OEM announces product launch
- **OEM places production orders**

Hughes Testimony                                    ⬡ EMULEX          2

Fourth, Emulex's "examples" of firm orders almost uniformly show quantities in the dozens rather than the hundreds or thousands.  Such quantities suggest orders for test or evaluation units, rather than production-quantity orders, and Emulex has not provided any other information to corroborate its claims with respect to these examples.

Fifth, ████████████████████████████████████████████████ ████████████████████████████████████, it has failed to support that assertion by identifying any qualification dates.  Emulex has elsewhere acknowledged that where the dividing lines recognized by the Sunset Provision fall: in the "Typical Lifecycle Of An OEM Design," production orders follow product launches, which follow final certifications and qualifications: (Liss Decl. Exhs. K-L, 3/2/2012 Hearing Demonstrative & Tr. at 15-17 (counsel

**JOINT STATUS REPORT**

1   for Emulex detailing the steps required for sunset eligibility).)  Thus, the first step

2   in establishing sunset eligibility for a particular customer-platform-product

3   combination would be for Emulex to make a showing of at least the dates of final

4   certification and qualification as well as product launch.  Emulex has not done so.

5              **4.      Emulex's Claim of Ignorance is Both Incorrect and**

6                        **Irrelevant.**

7              Emulex asserts that Broadcom's request that Emulex "identify how

8   [Emulex] customer[s] use our products" as a condition of sunset eligibility "is

9   unworkable" because it requires "levels of detail typically beyond Emulex's

10  knowledge or control" and because Emulex "does not know all of the devices its

11  customers make and sell, or every usage of the accused products." (Lamberson

12  Email.)

13             Emulex's disavowal of the details of its product sales to and usage by OEMs

14  is particularly striking given that Emulex and OEMs "work very, very closely

15  together."[2]  (*See, e.g.*, 9/28/2011 Trial Tr. at 40:17-20 (Emulex CEO McCluney:

16  "We build long relationships with [OEMs] . . . .");  ███████████████████

17  ████████████████████████████████████████

18  ████████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ██████████████████████   Likewise, Emulex should not be heard

22  to complain about a supposed lack of information in light of its extensive reliance

23  _____

24  [2]  ████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ████████████   Presumably Emulex has taken steps to ensure that this team's
    current work does not exceed that permitted under the Permanent Injunction.

27

**JOINT STATUS REPORT**

1   on protestations of third-party harm in opposing Broadcom's request for injunctive

2   relief. (*See* Dkt. No. 1036, Emulex's Opposition to Broadcom's Motion for Entry

3   of Permanent Injunction, at 1 (asserting that "an injunction would cause

4   disproportionate harm not only to Emulex, but also to original equipment

5   manufacturers . . ., as well as to the end users of those products"); *see also* Dkt.

6   Nos. 1028-32 (OEM Declarations).)

7          Emulex is attempting to use third-party information as both sword and

8   shield, just as it did in relation to the design details of its infringing chips.  This

9   tactic is no more appropriate now; Emulex is, course, free to consult with its

10  customers.  But where Emulex cannot produce information sufficient to establish

11  sunset eligibility for a particular combination of Emulex chip and customer device,

12  that combination is not sunset eligible.

13         **B.    Emulex's Statement.**

14         The Court crafted the sunset provision in its permanent injunction to protect

15  customers who were far enough down the road in developing products with

16  Emulex chips to have decided that the chips were working and to have made

17  production quantity orders.  Emulex is and has been responding to Broadcom's

18  requests to provide information that is reasonably needed for Broadcom to confirm

19  what customers and products belong on the sunset list.  However, Broadcom's

20  efforts to rewrite the provisions of the sunset provision in order to drive as many

21  customers as possible off the list are not in keeping with the letter or purpose of the

22  sunset provision.  Broadcom's insistence on trying to expand the reach of the

23  injunction is what has frustrated the parties' ability to reach agreement on sunset-

24  eligible sales.

25         In short, Broadcom is attempting to rewrite the sunset provision to permit

26  only the sale of Emulex components for OEM products that were actually shipping

27

**JOINT STATUS REPORT**

1   in the market as of October 12, 2011.  This is contrary to both the Court's March

2   16th Decision regarding the Permanent Injunction and the form of Injunction

3   entered by the Court.  It is even contrary to what Broadcom counsel represented as

4   his understanding of the Court's tentative sunset provision in the March 2nd hearing

5   when he stated: "Your Honor's sunset is something less than saying the product has

6   to be on the market."  Tr. 3/2/12 at 57:14-15.

### 1.      Background

8          The Court's April 3, 2012 injunction specifies that sunset sales regarding the

9   '150 patent are permissible to "existing Emulex customers who (i) before October

10  12, 2011, qualified a '150 Enjoined Product or device that includes a '150

11  Enjoined Product for use in a particular customer ***platform***; and (ii) before October

12  12, 2011, placed a firm order for production quantities of that '150 Enjoined

13  Product or device that includes a '150 Enjoined Product for use in that particular

14  customer ***platform***," production quantities being defined as "***any*** purchases in

15  excess of those necessary for testing and development."  Perm. Inj. § II(b)

16  (emphasis added).   The Court further specified that devices "sold under the Sunset

17  Provision shall be in substantially the same design configuration as [they were] on

18  October 12, 2011."  *Id.*  For the '691 patent there are similar provisions, except that

19  the sunset provision for the '691 patent begins December 16, 2011.  *Id.* at § IV(b).

### 2.      Status of Discussions

21         The parties have engaged in a number of rounds of discussion regarding the

22  identification of products that should appear on the approved sunset list.  Emulex

23  understood and expected that this process of finalizing a list of products approved

24  under the sunset provision would be an iterative process, taking into account what

25  information the parties can agree is reasonably needed to reassure Broadcom that

26  Emulex is complying with the terms of the injunction.  Accordingly, Emulex has

27

**JOINT STATUS REPORT**

1    engaged in lengthy meet and confer discussions with Broadcom, and has

2    performed additional research, and revised its  listing of products for sunset sales

3    extensively, in response to Broadcom's comments and concerns.

4         On April 6, 2012, Emulex provided a detailed list to Broadcom providing

5    additional information on customer platforms that qualify for sunset sales under the

6    provisions of the permanent injunction that issued on April 3, 2012, including

7    information on the customer, customer type, customer platform, configuration, and

8    production order date (as qualification date would precede production order date).

9    Emulex generated this list by pulling purchase order and sales order

10   acknowledgement data for every chip affected by the permanent injunction.  That

11   list provided the information that establishes compliance with Sections II(b) and

12   IV(b) of the injunction, and that Broadcom initially asked for, namely information

13   on  "(a) when the infringing products were qualified for use in the customer

14   devices, and (b) when the placement of firm orders for production quantities of

15   infringing products to support those customer devices was made." *See*

16   Broadcom's discussion in Section I.A.2 above.  Emulex also provided examples of

17   corroborating documentation for those dates, including sales order

18   acknowledgements and other corroborating documentation for its largest

19   customers, and invited Broadcom to request additional documentation as needed.

20        Emulex has continued to work on this listing and chart, and agreed to and

21   has been working to provide an updated chart that breaks out the different

22   customer platforms in certain ways that Broadcom requested in an email on April

23   8, 2012. ███████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ██████████████████████████████████████████████████

26   ███████████████████████████████████████  Emulex had

27

**JOINT STATUS REPORT**

1    what it believed was a productive meet and confer by telephone with Broadcom

2    counsel in the early afternoon on April 9th.  However, several hours later,

3    Broadcom sent an email making demands for new  information in an email on

4    April 9, including a new demand for customer "model number" information,

5    despite no mention of the need for such information in the March 16th Order or the

6    Injunction itself.

7         In an attempt to resolve the issues in Broadcom's April 9th email without

8    involving the Court, Emulex investigated additional information that would

9    respond to Broadcom's stated substantive concern – the need to distinguish

10   between sales destined for Romley versus Westmere platforms and Broadcom's

11   assumed skepticism regarding the Romley platform.   Given the volume of

12   information involved, this was a time consuming process but on April 10, 2012,

13   Emulex provided even more granularized data and supporting documentation for

14   each customer platform, including Sales Order Acknowledgement forms, Purchase

15   Orders, and Packing Slips for most of the products at issue.  This more

16   granularized data provides the OEM's Ordered Item number – the OEM SKU,

17   which identifies the OEM's part number for the Emulex component used in the

18   OEM's device. ██████████████████████████████████

19   ████████████████████████████████████████████████████

20   ███████████████████████ Emulex also indicated that it was gathering additional

21   documentation on the remaining products.

22         Attached as Exhibit 2 to the Lamberson declaration is the updated, and more

23   granularized, sunset product listing served late on April 10th.  This list was

24   accompanied by more than 20 megabytes of sales order acknowledgements,

25   packing slips, and purchase orders.  Emulex does not wish to burden the Court

26   with this volume of paper but can submit the documentation to the Court under

27

**JOINT STATUS REPORT**

1   seal if it will assist the Court.  Given the timing, Emulex recognizes that Broadcom

2   counsel is currently digesting this information at the time of this status report[3] but

3   respectfully submits that this data goes far beyond the requirements of the sunset

4   criteria in the Injunction and should address all the issues raised by Broadcom.

5   The full sunset product list is too long to paste into this report; ███████████

6   ████████████████████████████████████████████████

7   ███████████████████

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25   [3] Emulex has been informed that Broadcom counsel is still reviewing the

26      documentation but their initial reaction is to continue to dispute the sufficiency

27      of this granularized data.

**JOINT STATUS REPORT**

| Customer | Customer Type | Customer Platform | Customer Configuration | Production Order Date | Ordered Item(s) | Sample SOA # |
|---|---|---|---|---|---|---|
| | | ▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄ |
| | | ▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄ |
| | | ▄▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄ |
| | | ▄▄▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄▄ |
| ■ | OEM | | | | | |
| | | ▄▄▄ | ████ | ▄▄ | ████ | ▄▄▄ |
| | | ▄▄▄ | ████ | ▄▄ | ████ | ▄▄ |
| | | ▄▄▄ | ████ | ▄▄ | ████ | ▄▄ |
| | | ▄▄▄ | ████ | ▄▄ | ████ | ▄▄ |
| | | ▄▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄▄ |
| | | ▄▄▄ | ▄▄▄ | ▄▄ | ████ | ▄▄▄ |

Each entry above was accompanied by production of the Sales Order Acknowledgement and where available the accompanying Purchase Order and Packing Slip.

> ### 3. Broadcom's Refusal to Accept Evidence of Sunset-Eligible Sales Jeopardizes the Ability of the Sunset Provision to Protect the Public as Intended

As described above, Emulex is and has been responding to Broadcom's requests to provide appropriate information on sunset-eligible sales. Broadcom's dissatisfaction with Emulex's efforts appears to stem from its desire to eliminate as many customers as possible from the list. Broadcom's approach to the sunset is contrary to both the plain language and the intent of the sunset.

**JOINT STATUS REPORT**

1    First, Broadcom ignores the plain language of the sunset provision to argue

2   that products are not sunset-eligible based on their platform.  But the injunction's

3   language (proposed by Broadcom) specifically states that sunset sales are

4   permitted to customers who qualified and placed firm orders for enjoined products

5   "for use in a particular customer platform."  Broadcom's request for more granular

6   information, such as "specific OEM models" is neither appropriate nor

7   necessary—the Court's Injunction says nothing about model numbers with respect

8   to sunset eligibility.  (*See* Lamberson Decl. Ex. 1 ); Perm. Inj. §§ II(b), IV(b)).

9   Model numbers are not even referenced in the portion of the Injunction specifying

10   the information to be included in quarterly royalty reports.  Emulex is providing

11   information by customer and platform, as the Injunction requires.

12   ████████████████████████████████████████

13   ████████████████████████████████████████████

14   ██    As described above, Emulex has gathered the purchase orders and they

15   clearly establish that there were qualifying production orders.  (*See* Lamberson

16   Decl., Ex. 2).  Contrary to Broadcom's assertion, ████████████████████

17   ██████████████████████████████████.  The sunset criteria

18   do not seek total sales prior to the sunset date, just a production order early enough

19   to qualify.  Therefore, Emulex focused on finding the earlier production order

20   rather than total volume. ███████████████████████████

21   ██████████████████████████████████████████████

22   ██

23    Third, there is no inconsistency with testimony of ██ witnesses or with the

24   timeline detailed on the "Typical Lifecycle of an OEM Design" presented to the

25   Court at oral argument. ██████████████████████████

26   ██████████████████████████████████████

27

**JOINT STATUS REPORT**

15

1 ███████████ the lead time (in many cases 4-5 months) for receiving chips that

2 have been ordered required the OEMs to make their firm order for production

3 quantities long before the final OEM server product (with many components

4 unrelated to Emulex) made its way into the end user data center.  What is most

5 significant is that the firm order evidences the OEMs' "point of no return" and

6 their great "interest in a continued supply of the infringing devices" –hence,  why

7 the Court required not only qualification of the device but the placing of "firm

8 production orders" before a device can fall within the sunset provision.

9   Broadcom appears now to be arguing that if there is ongoing qualification

10 work on fixing bugs in the software or firmware, despite a firm production order

11 having been placed, that product does not fall within the terms of the sunset

12 provision. . Such an interpretation of the sunset provision results in the evisceration

13 of the provision. █████████████████████████████████

14 ████████████████████████████████████████

15 █████████████████████████████████████████

16 ██████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 █████████████████████████████████████████

20 █████████████████████████████████████

21 ██████████████

22   Broadcom's current position is a complete retreat from what it previously

23 represented to the Court during the March 2nd hearing, when its counsel agreed that

24 the Court's sunset does not require that a product already be released into the

25 market in order for it to fall within the sunset provision.  Tr. 3/2/12 at 57:14-15.

26 Since bug fixes and tweaks to the software can be expected to continue even after a

27

**JOINT STATUS REPORT**

1  product is on the market, it is the fact that firm production orders were placed

2  which indicates that the OEM was confident that the hardware was robust and the

3  product would go to market.  Thus, the orders indicate that the products were, in

4  fact, qualified at this time, and not when all product testing ceases, since that may

5  never be the case.

6  **II.     EMULEX'S *EX PARTE* APPLICATION FOR PARTIAL STAY OF**

7  **PERMANENT INJUNCTION**

8  **A.     Broadcom's Statement.**

9      Emulex has informed Broadcom that it intends to file an *ex parte* application

10  to stay the permanent injunction for sales that do not fall under the Court's Sunset

11  provision, or that otherwise do not appear on the parties' agreed list of sunset-

12  eligible sales.

13      Broadcom opposes Emulex's request.  As the Court has recognized, the

14  Emulex customers "with the greatest interest in a continued supply of the

15  infringing devices are those who have qualified an infringing device and who have

16  already placed firm orders for production quantities."  (Dkt. No. 1090,

17  Memorandum of Decision re: Injunctive Relief, at 18.)  The Court's narrow Sunset

18  Provision protects precisely those customers, and in crafting that Sunset Provision

19  the Court explicitly balanced the interests not only of Broadcom and Emulex, but

20  also of the public as Emulex presented it.

21      Emulex's requested stay would, in the short term, grant full protection to

22  those customers that the Court has concluded have a lesser interest in continued

23  product supply.  This strained logic should be rejected; while Broadcom is unable

24  to respond with specificity to an application that Emulex has not yet filed, the

25  governing standard requires either "a strong likelihood of success on the merits [of

26  the appeal] or, failing that, nonetheless demonstrate a substantial case on the merits

27

**JOINT STATUS REPORT**

1  provided that the harm factors militate in its favor." *Mytee Prods., Inc. v. Harris*

2  *Research, Inc.*, 395 Fed. Appx. 590 (Fed. Cir. 2010) (in denying stay, citing *Hilton*

3  *v. Braunskill*, 481 U.S. 770, 778 (1987)).  Emulex has not established any

4  compelling reason to stay the injunction, either in full or in part.

5        **B.**    **Emulex's Statement.**

6        Defendant Emulex Corporation ("Emulex") is filing an ex parte application

7  for a stay pending appeal of the permanent injunction entered by the Court on

8  April 3, 2012.  Pursuant to Federal Rule of Appellate Procedure Rule 8, a party

9  requesting a stay pending appeal must first move for a stay in the district court,

10  before it can present a motion for stay in the Federal Circuit.   Since the Federal

11  Circuit is likely to expedite the appellate briefing schedule in light of the

12  injunction, the appeal could be completed within six months.  In addition, while

13  Emulex recognizes that the Court considered the harm to OEMs and customers in

14  crafting the sunset provision, the issue of a stay pending an appeal raises different

15  concerns that the imposition of the sunset itself.

16        Except for a limited 18-month sunset provision that applies only to those

17  products for which there was already a firm order for production quantities as of

18  October 12, 2011, the injunction is immediately effective.  Emulex's OEM's had

19  already released certain products to market prior to the Court's granting of the

20  injunction and some of those OEM products do not qualify under the sunset

21  provision because firm orders for production quantities of the Emulex component

22  in those products occurred after October 12, 2011 but before March 16, 2012.  In

23  addition, Emulex's OEMs have additional products for which firm orders for

24  productions quantities would be imminent but-for the cut-off date in the sunset

25  provision.  Emulex's OEMs have no alternatives to replace the Emulex

26  components in these products during the pendency of the appeal.

27

**JOINT STATUS REPORT**

1    As explained in the ex parte application and supporting brief, the Federal

2    Circuit has consistently recognized the appropriateness of a stay pending appeal to

3    prevent this type of third party harm.  *See, e.g., SynQor v. Artesyn*, No. 2011-

4    11191, 417 Fed. Appx. 976, 2011 WL 1362187 (Fed. Cir. 2011); *i4i Ltd. P'ship v.*

5    *Microsoft Corp.*, No. 2009-1504, 343 Fed. Appx. 619, 2009 WL 2873909 (Fed.

6    Cir. 2009); *see also Standard Havens Prods. v. Gencor Indus. Inc.*, 897 F.2d 511

7    (Fed. Cir. 1990).

8    In the context of an appeal, the issue is whether the entities negatively

9    impacted by the injunction can ever be made whole if the Federal Circuit ends up

10   reversing or modifying the injunction.  Third party declarations submitted with the

11   ex parte application detail examples of the harm that will result and which cannot

12   be remedied if the injunction is overturned on appeal.  Emulex respectfully refers

13   the Court to its brief and supporting declarations which provide the full record in

14   support of a short stay during an appeal.

15   **III.   RETRIAL**

16   **C.   Broadcom's Statement.**

17   At trial the jury did not reach a verdict on Emulex's alleged infringement of

18   Broadcom's United States Patent Nos. 6,424,194, 7,486,124, and 7,724,057 (the

19   "SerDes Patents") and United States Patent No. 7,471,691 (the "'691 Patent").

20   (*See* Dkt. No. 896, Special Verdict.)

21   The Court subsequently found that Emulex did not prove that the SerDes

22   patents are invalid for obviousness.  (*See* Dkt. No. 992, Order Denying

23   Defendant's Motion for Judgment as a Matter of Law on the basis of Obviousness

24   of the '194, '124 and '057 Patents and Defendant's Motion for Judgment as a

25   Matter of Law on the basis of Obviousness of the '150 Patent.)  In addition, the

26   Court found that Emulex infringed the '691 Patent as a matter of law.  (*See* Dkt.

27

**JOINT STATUS REPORT**

1    No. 993, Order Denying Defendant's Motion for Judgment as a Matter of Law on

2    the Basis of Non-Infringement and Granting Plaintiff's Motion for Judgment as a

3    Matter of Law on the basis of Infringement of '691 Patent.)  The Court previously

4    granted summary judgment of no invalidity of the '691 Patent.  (*See* Dkt. No. 715,

5    Order Granting Broadcom's Motion for Partial Summary Judgment of No

6    Invalidity of the '691 and '500 Patents.)

7         Broadcom does not request a trial of its claims for willful infringement and

8    money damages with respect to Emulex's infringement of the '691 Patent.  To the

9    extent that Count Four of Broadcom's First Amended Complaint (Dkt. No. 60)

10   seeks relief related to those claims, Broadcom requests that it be dismissed without

11   prejudice.

12        Broadcom requests a new trial of its claims for infringement of the SerDes

13   Patents, i.e. (1) Counts Six and Eight of Broadcom's First Amended Complaint

14   (Dkt. No. 60); and (2) Count One of Broadcom's Complaint in Case No. 2:10-cv-

15   3963-JVS (Dkt. No. 1).  Broadcom estimates that retrial of these claims will take

16   two weeks, and therefore requests that the Court set trial dates of January 28-

17   February 8, 2013.  Broadcom's proposed trial dates reflect the next two-week

18   window of availability for its lead counsel.

19        **D.    Emulex's Statement.**

20        Broadcom first informed Emulex of its intent to proceed with retrial of the

21   the '194, '124, and '057 patents and its proposed dates at 6pm the night before this

22   status report was due.  Emulex is checking those dates with its likely witnesses, but

23   it appears that at least Dr. Nikolic, Emulex's technical expert on those patents, has

24   a conflict with his academic commitments during the end of January and in

25   February.  Dr. Nikolic is available earlier in January, up until January 18th.

26        Emulex also notes that there will need to be a discussion of the issues to be

27

**JOINT STATUS REPORT**

20

tried.  As the Court noted in its post-trial remarks:   "The Court has some discretion in setting a new trial if there is a mistrial as to this count and what issues are up for retrial notwithstanding the verdict the jury may have found on certain issues." Trial Tr. 10/12/11 at 13:18-21.  For example, the issue of obviousness may need to be presented to the jury in order to provide proper context for the limitations on the scope of the claim.  Briefing the necessity of this presentation is beyond the scope of this status report but Emulex raises it as an issue for future briefing.  Similarly, Broadcom has not indicated whether it intends to maintain its assertion of willful infringement, but if it does, then additional issues, including the prior trial, become relevant to the issue of post-filing willfulness.  Again, this issue requires separate briefing at an appropriate point in time.

## IV.  TIMING AND CONTENT OF FIRST ROYALTY REPORT FOR SALES FROM OCTOBER 12, 2011 THROUGH MARCH 31, 2012

### E.   Broadcom's Statement.

Broadcom does not oppose Emulex's request regarding the timing of Emulex's first royalty report and corresponding payment.  Broadcom does, however, oppose Emulex's requested exemption from the customer certification requirement for the first royalty period.  For the same reasons that Emulex's broad categorizations of customer devices are insufficient to establish sunset eligibility, the certification requirement is essential to Broadcom's ability to confirm that the entries in Emulex's royalty report comply with the terms of the sunset provision.[4]

---

[4]  Broadcom did not raise a request for such certification prior to submitting its Second Amended Proposed Permanent Injunction because its previous proposed injunctions preceded the Court's determination that a sunset period is appropriate.  Absent the sunset period, there would be no need for the certification requirement.

**F.   Emulex's Statement.**

As the Court recognized in its March 16, 2012 Order, the timing of the first royalty report may need to be adjusted given the timing of the entry of the injunction.  Order, 3/16/12 at 19, fn 22.  As a practical matter, the first royalty report cannot be completed until the list of sunset products in the appendix has been finalized.  Emulex therefore requests that it have fifteen (15) days after the entry of the sunset product list as an appendix to the Injunction to provide its first royalty report for sunset sales (through March 31) and then have fifteen (15) days from the date of the report to remit payment to Broadcom.

Finally, the injunction terms require a certification from customers buying sunset products.  Since the injunction was not entered until after the end of the March quarter, there was no reason for Emulex to request, or for customers to provide, such a certification for sales prior to the entry of the injunction.

In fact, Broadcom never raised a request for such a certification until the proposed form of injunction it filed on March 26th, only a few days before the end of the quarter.  As a practical matter, therefore, the first royalty report should be exempted from the requirement of providing certifications to Broadcom for sales prior to the entry of the injunction.

Dated:  April 11, 2012          By: _____

Michael D. Jay

WILLIAM F. LEE (admitted *pro hac vice*)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA (admitted *pro hac vice*)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER (admitted *pro hac vice*)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS (admitted *pro hac vice*)
(louis.tompros@wilmerhale.com)
WILMER CUTLER PICKERING

**JOINT STATUS REPORT**

HALE AND DORR LLP
60 State Street
Boston, MA  02129
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

Attorneys for Attorneys for Plaintiff
and Counterclaim Defendant
BROADCOM CORPORATION

Dated:  April 11, 2012          By: *Jonathan Lamberson*  / with permission MDJ

Jonathan Lamberson

JUANITA R. BROOKS (SBN 75934)
(brooks@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:   (858) 678-5099

DAVID M. BARKAN (SBN 160825)
(barkan@fr.com)
FISH & RICHARDSON P.C.
505 Arguello Street, Suite 500
Redwood City, CA  94063-1526
Telephone:  (650) 839-5070
Facsimile:   (650) 839-5071

JOSEPH V. COLAIANNI, JR.
(Admitted Pro Hac Vice)
(colaianni@fr.com)
FISH & RICHARDSON P.C.
1425 K. Street, NW
Washington, DC  20005
Telephone:  (202) 783-5070
Facsimile:   (202) 783-2331

THOMAS H. REGER II
(Admitted Pro Hac Vice)
(reger@fr.com)
FISH & RICHARDSON P.C.
1717 Main Street
Dallas, TX 75201
Telephone:  (214) 747-5070
Facsimile:   (214) 747-2091

WASIF H. QURESHI
(Admitted Pro Hac Vice)
(qureshi@fr.com)

**JOINT STATUS REPORT**

23

1

2

3

FISH & RICHARDSON P.C.
1 Houston Center
1221 McKinney Street
Houston, TX  77010
Telephone:  (713) 654-5300
Facsimile:   (713) 652-0109

4

5

6

7

RANDALL WICK (SBN 95584)
(randall.wick@emulex.com)
EMULEX CORPORATION
3333 Susan Street
Costa Mesa, CA  92626-7112
Telephone:  (714) 885-3691
Facsimile:   (714) 641-0172

8

9

Attorneys for Defendant
and Counterclaim Plaintiff
EMULEX CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**JOINT STATUS REPORT**