1  Juanita R. Brooks (SBN 75934)
    *brooks@fr.com*
2  FISH & RICHARDSON P.C.
    12390 El Camino Real
3  San Diego, CA 92130
    Telephone: (858) 678-5070
4  Facsimile: (858) 678-5099

5  *(Additional counsel listed on signature page)*

6  Attorneys for Defendant and Counterclaimant
    EMULEX CORPORATION
7

8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA
10                  (SOUTHERN DIVISION)
11

| | |
|---|---|
| 12  BROADCOM CORPORATION, | Case No. CV 09-1058-JVS (ANx) |
| 13      Plaintiff, | consolidated with CV 10-3963 JVS (ANx) |
| 14      v. | **DEFENDANT EMULEX CORPORATION'S BRIEF ON APPLICATION OF SUNSET PROVISION TO DISTRIBUTORS** |
| 15  EMULEX CORPORATION, | |
| 16      Defendant. | |
| 17 | ▇▇▇▇▇▇▇▇▇▇ |
| 18  And Related Counterclaims | Hearing Date:  April 23, 2012<br>Time:          8:00 a.m.<br>Place:         Courtroom 10C<br>Before:        Hon. James V. Selna |
| 19 | |
| 20 | |

21  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

CASE NO. CV 09-1058-JVS (ANx)

1    At the April 12ᵗʰ status conference, Broadcom for the first time stated that the
2    Court's injunction should treat Emulex's distributors differently than its OEMs.
3    [2012-04-12 Status Conf. Tr., at 12:4-19.] Broadcom asserted that the distributors
4    should be excluded wholesale, without considering on a case by case basis whether
5    the Court's sunset provisions could reasonably be applied to them. [*See id.*, at 12:5-
6    7.] Broadcom's argument was overly simplistic and took no account of the relevant
7    distribution channels for products that were established in the market prior to
8    October 12, 2011. Through extensive inter-operability, engineering design and
9    other testing, evaluation, and verification, Emulex and its OEMs and other
10   customers insure that Emulex's converged network adapter cards will work in the
11   systems and sub-systems that end users reliably maintain in their data centers. This
12   required selection and qualification process generally occurs prior to when the
13   distributor actually purchases qualified Emulex parts for the distributor's customers.
14   Emulex's U.S. distributors purchase adapter cards, not bare chips. By the
15   time a distributor places a firm production order for adapter cards, the use of those
16   cards has been qualified for use in the end users' systems. The distributor's decision
17   to supply a particular Emulex adapter card is itself a reflection of existing demand
18   for that product from users already using that product in their data centers.



1 █████████████████████████████████████████████████
2 ████████████████████████████████████
3     The distributors at issue have been authorized by certain OEMs to buy and
4 sell certain Emulex parts for the OEM's customers. Those parts have been qualified
5 by the OEM – no reputable OEM ███████████████████████████
6 ████████ would approve sales of products to its customers through separate
7 distributors without first thoroughly testing and ultimately qualifying those products
8 for its customers' applications.
9     At the hearing, the Court inquired why Emulex could not supplant the role
10 played by distributors by supplying those customers directly. [*See* 2012-04-12
11 Status Conf. Tr., at 22:16-18.] There are several reasons why Emulex is not
12 equipped to do so and could not establish a replacement direct distribution chain
13 during the remaining sunset period. First, distributors are a well-established supply
14 chain in the technology industry because they are able to aggregate resources and
15 apply them to the products of many different companies. If Emulex were to replace
16 its distributors, it would need to already have built the logistics infrastructure and
17 personnel that the distributors have taken many years to establish themselves by
18 leveraging the distributors' business across many different kinds of products.
19 ████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████
22 ██████████████████████████████ Indeed, this is a well-established
23 business model. Ford does not directly sell its cars to its "users." Rather, Ford
24 authorizes dealers to buy and sell Ford vehicles and does not compete directly
25 against those dealers.
26 ² ██████████████████████████████████
27 ████████████████████████████████████████████████████
28 ██████████████████████████

Continuing with the car analogy, a driver of a Ford typically cannot get a needed part for his car directly from Ford. Instead, the driver goes to the local Ford dealer or Auto-Zone store and buys the part on the condition that Ford has authorized that part for use in his car. The Ford dealer or Auto-Zone (the distributor) is not in the business of qualifying that part; rather the part had to be approved by Ford in order for Ford to recommend and stand by that part for use in its vehicles. [REDACTED] Particularly in the case of highly-sophisticated computer systems responsible for maintaining huge quantities of mission-critical data, an end user is not going buy to parts for its company's systems without knowing that those parts are qualified by a reputable OEM for use in the intended platform and that thorough testing, expertise, compatibility and interoperability checking, and certification underlies the use of those parts. [*See* Decl. of John Alfieri.] [REDACTED]

[REDACTED] Broadcom's suggestion that the parts Emulex's distributors purchases are not qualified is not the case – they are qualified for use in OEM's server and storage systems and sub-systems, and by the particular end user for the user's existing data center usage.

Emulex relies on its distributors to build and maintain distribution channels for its products, and in turn, OEMs and end users rely on these distribution channels to re-supply product for end users to continue their companies' operations. [REDACTED]

[REDACTED] End users in these various fields

have come to rely upon and expect the continuous supply of Emulex adapter cards to keep their systems running, and to provide the public with seamless services (e.g., using ATM machines).

The sunset provisions in the Court's injunction can be applied to Emulex's distributors. The distributors (*see* n. 1 *supra*) are existing Emulex customers. The BE2 and BE3 –based adapter cards those distributors placed production orders for prior to October 12, 2011 are necessarily qualified for the end uses of downstream purchasers. Although the distributor has not itself qualified the Emulex products – the distributors are not in the business of qualifying devices; they are in the business of distributing product within a region – the products have either been qualified by Emulex or the OEM, and by the end user. And in the case with the OEMs, a distributor can only be an authorized seller for that OEM if that OEM has qualified the part for use in the particular OEM systems used by the end users. In addition, because distributors do not do their own testing, by the time distributors order product they are necessarily "production orders" because they are for products already qualified and in use out in the field.

By limiting Emulex's sales to distributors to sales where the distributor can certify that it will sell the product only to customers (the distributor's customers) who previously ordered that product prior to October 12, 2011, all of the Court's sunset criteria can be met. Such sales will by definition be for products that were already qualified and the subject of "production orders."

| | | |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | Dated: April 20, 2012 | FISH & RICHARDSON P.C. |
| 4 | | |
| 5 | | By: /s/ David M. Barkan |
| 6 | | David M. Barkan |
| 7 | | Attorneys for Defendant and Counterclaimant EMULEX CORPORATION |

*Additional Counsel*

David M. Barkan (SBN 160825)
 barkan@fr.com
Jonathan J. Lamberson (SBN 239107)
 lamberson@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063-1526
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Joseph V. Colaianni, Jr. (*pro hac vice*)
 colaianni@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thomas H. Reger II (*pro hac vice*)
 reger@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091

Wasif H. Qureshi (*pro hac vice*)
 qureshi@fr.com
FISH & RICHARDSON P.C
One Houston Center
1221 McKinney Street, 28th Floor
Houston, Texas 77010
Telephone: (713) 654-5300
Facsimile: (713) 652-0109