Juanita R. Brooks (SBN 75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

David M. Barkan (SBN 160825)
barkan@fr.com
Jonathan J. Lamberson (SBN 239107)
lamberson@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION,<br><br>　　Plaintiff,<br><br>　　v.<br><br>EMULEX CORPORATION,<br><br>　　Defendant.<br><br>And Related Counterclaims. | Case No. CV 09-1058-JVS (ANx)<br><br>consolidated with CV 10-3963 JVS (ANx)<br><br>**EMULEX'S MOTION TO EXTEND THE SUNSET PERIOD**<br><br>Date:　　April 15, 2013<br>Time:　　1:30p.m.<br>Place:　　Courtroom 10C<br>Judge:　　Hon. James V. Selna |

Case No. CV 09-1058-JVS (ANx)

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

   A. The Original Injunction ................................................................................. 2

   B. Broadcom's Agreements with Emulex and OEM's ....................................... 3

III. STATEMENT OF LAW ....................................................................................... 4

IV. ARGUMENT ......................................................................................................... 5

   A. Broadcom's Agreements With Emulex and its OEM Customers Support Extending the Sunset Period ................................................................................ 5

   B. The Additional Time Necessary for OEM Customers to Qualify the Redesigned BE3 Chip Warrants Extending the Sunset Period ............................. 8

V. CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
   579 F. Supp. 2d 554 (D. Del. 2008) .................................................................. 6

*Agostini v. Felton*,
   521 U.S. 203 (1997) ............................................................................................ 5

*Amado v. Microsoft Corp.*,
   517 F.3d 1353 (Fed. Cir. 2008) .......................................................................... 5

*Crawford v. Honig*,
   37 F.3d 485 (9th Cir. 1994) ................................................................................ 5

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388, 391 (2006) .................................................................................... 4

*MercExchange, L.L.C. v. eBay, Inc.*,
   500 F. Supp. 2d 556 (E.D. Va. 2007) ................................................................. 6

*System Federation No. 91 Railway Employees' Dep't v. Wright*,
   364 U.S. 642 (1961) ............................................................................................ 5

*T.J. Smith and Nephew Ltd. v. Consolidated Med. Equip., Inc.*,
   821 F.2d 646 (Fed. Cir. 1987) ............................................................................ 6

*United States v. Oregon State Med. Soc.*,
   343 U.S. 326 (1952) .......................................................................................... 10

**Statutes**

Fed. R. Civ. P. 60 ...................................................................................................... 5

## I. INTRODUCTION

Emulex respectfully requests that the Court extend the injunction sunset period to permit Emulex to continue making sunset sales beyond April 11, 2013, and until such time as Emulex's sunset customers can qualify the redesigned BE3-R chip. There are two reasons why such action is warranted.

First, subsequent to the Court's Orders finding irreparable harm in Broadcom's favor, Broadcom nonetheless elected to authorize both Emulex and its major OEM customers to continue selling enjoined parts ███████████ ████████████████████████████████████████████ ████████████████████████████████████ Broadcom elected to allow the continued sale of enjoined products, both during and after the sunset period, despite the competition between the enjoined products and Broadcom's products. This activity shows that sales to these OEM customers for existing design wins does not "irreparably harm" Broadcom, and that money damages are adequate compensation for such sales.

Second, despite efforts to diligently develop a redesigned BE3 chip (called the "BE3-R"), Emulex's supplier LSI has informed Emulex that the redesign chip will not be available for OEM qualification until ██████████████. As the Court noted in its prior order,[1] it will take Emulex's OEM customers some amount of time after the redesigned chip is available to test and replace their existing BE2 and BE3 implementations with the redesigned BE3-R. The Court specifically required a sunset period because prohibiting sales to certain OEM's would cause real and substantial harm, not only to their businesses but also to their end customers who rely on these products in mission-critical data center applications. For implementations that are already on the sunset list, and therefore necessarily qualified for this protection, it would be unnecessarily punitive to cut off supplies of the BE2 and BE3 products before customers are able to qualify the BE3-R as a

---

[1] *See* D.I. 1090 at 14, excerpted below.

replacement. Emulex, its suppliers and its customers are making every effort to diligently qualify the BE3-R chip, but designing a new chip takes time, and it will currently be impossible for customers to complete qualification before the April 11th sunset cut-off. Allowing sales to sunsetted customers after April 11th would in no way harm Broadcom, since these sales are for design wins awarded years ago, and there is nothing that Broadcom can do to replace Emulex in these existing implementations. Such sales would also be extremely limited in scope, given that Broadcom has already authorized ███████████████████████ ███████████

As explained in more detail below, Emulex respectfully requests that the Court extend the sunset period to allow Emulex to continue making sunset sales past April 11, 2013, and until such time as Emulex's sunset customers can qualify the redesigned BE3-R chip.

## II. STATEMENT OF FACTS

### A. The Original Injunction

Following a jury trial, this Court entered a permanent injunction on April 3, 2012, which was immediately effective except for a limited sunset provision that applied to only a subset of products. (*See*, Docket No. 1095). Several of the Court's findings of fact and conclusions of law are instructive.

First, the Court highlighted in both its "irreparable harm" and "adequacy of money damages" analysis the fact that "Broadcom ha[d] never licensed the '150 or the '691 Patent individually." (D.I. 1090 at 10, 11).

Second, in considering the harm to the public caused by an injunction, the Court noted the significant time and effort required to qualify a replacement chip:

> The Court is satisfied that replacement or redesign of an
> infringing chip is a complicated process that requires new
> development, interaction between the chip supplier and
> the manufacturer, and potential hardware and software

2

modifications so that a new chip will function in the device. This would be true if the goal is to incorporate a redesigned Emulex chip or an existing Broadcom chip. There are no "off-the-shelf" substitutes, such as one might imagine in replacing radio tubes in the mid-Twentieth Century. (*Id.* at 14).

Third, in setting an 18-month sunset period, the Court noted the uncertainty surrounding how long such an effort might take: "The Court is somewhat skeptical of the estimates [required to provide a replacement chip] because of the inherent self-interest of those making the estimates. Moreover, there are more favorable experiences than those which Emulex put before the Court, such as Broadcom's FCoE qualification at Dell in 4-6 months. However, taking all the information before the Court, the Court believes that an 18-month period is reasonable." (*Id.* at 17-18 (internal citations omitted)).

Fourth, the Court found that "[t]he customers with the greatest interest in a continued supply of the infringing devices are those who have qualified an infringing device and who have already placed firm orders for production quantities." (*Id.* at 18).

**B. Broadcom's Agreements with Emulex and OEM's**

After the Court entered the injunction, Broadcom proposed, and the Court entered, an amendment providing: "Nothing in this Permanent Injunction shall prohibit the Enjoined Parties from engaging in activities that are expressly authorized in writing by Broadcom. Such activities shall be specifically described in an Appendix to this Injunction." (*See*, Docket No. 1199). At the same time, Broadcom filed notices stating that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*See*, Docket Nos. 1192, 1217.)

3

Case No. CV 09-1058-JVS (ANx)

In July of 2012, Broadcom and Emulex entered into a settlement and license agreement that authorized Emulex to make and sell its fibre channel products, including the enjoined Lancer and SOC 442 products. (Docket No. 1235.)

In August through October of 2012, Broadcom and Emulex engaged in extensive discovery and motion practice concerning ███████████████ ████████. On October 22, 2012, Broadcom withdrew its motion to exclude ██████████████████. (Docket No. 1272.) On December 21, 2012, Broadcom filed a notice stating that it has authorized IBM "to undertake certain activities relating to certain infringing and enjoined activities of Defendant Emulex Corporation." (Docket No. 1279.)

On February 27, 2013, Broadcom informed Emulex that ████████ ██████████████████████████████████████████████ ██████████████████ (Ex.² A).

On March 8, 2013, Broadcom produced copies of ████████████ ██████████████.

### III. STATEMENT OF LAW

This Court relies upon the traditional four factor test necessary in order to evaluate the appropriateness of injunctive relief, namely, (1) that the plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See, eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court has broad and continuing discretion in shaping the form of injunctive relief. *See, id.* at 394 ("the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be

---

² Exhibits are attached to the Declaration of Jonathan J. Lamberson, filed concurrently herewith.

exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards").

Pursuant to Section VIII of the Second Amended Injunction, the Court "retains jurisdiction to enforce, modify, extend, or terminate this Permanent Injunction as the equities may require upon a proper showing." Docket No. 1236; *see also, Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994) ("district courts have continuing jurisdiction to enforce their injunctions"); Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [when] … applying it prospectively is no longer equitable"). Modification of an injunction is equitable when there has been a significant change in relevant law or factual circumstances. *See, System Federation No. 91 Railway Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961) ("a sound judicial discretion may call for the modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen"); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360-61 (Fed. Cir. 2008) (affirming dissolution of permanent injunction based on change of law). A court abuses its discretion "when it refuses to modify an injunction or consent decree in light of such changes." *Agostini v. Felton*, 521 U.S. 203, 215 (1997).

## IV. ARGUMENT

Two significant developments warrant extension of the sunset period: Broadcom's recent agreements with Emulex and OEM's authorizing continued purchases of the enjoined products, and the impossibility of sunset customers completing qualification prior to April 11, 2013.

### A. Broadcom's Agreements With Emulex and its OEM Customers Support Extending the Sunset Period

Broadcom argued to this Court that it would suffer "irreparable harm" if Emulex were permitted to continue selling its BE2, BE3, Lancer and SOC products.

1  (*See, e.g.*, D.I. 1003 at 17). Broadcom also argued that money damages could not
2  adequately compensate for that alleged harm. (*See, e.g., id.* at 18). Yet after the
3  injunction was in place, Broadcom granted Emulex a license for the Lancer and
4  SOC products. (D.I. 1235). And with respect to the BE2 and BE3 products,
5  Broadcom granted permission for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to continue purchasing these products during the sunset
7  period, even for products that Broadcom previously argued should not qualify for
8  sunset protection. (D.I. 1192, 1217, 1279). With respect to at least ▮▮▮▮▮▮
9  ▮▮▮▮ those agreements further allow for purchases of BE2 and BE3 even after the
10 expiration of the sunset period. (Exs. A-C).

11       Licensing by a patent holder has always been a factor that suggests no
12 "irreparable harm," and that strongly suggests money damages are adequate
13 compensation for infringement. *See, e.g., T.J. Smith and Nephew Ltd. v.*
14 *Consolidated Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (noting that
15 granting licenses is "incompatible with . . . the right to exclude"); *Advanced*
16 *Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560 (D. Del.
17 2008) ("[t]he fact that [patent owner] ACS was selective regarding its licensing
18 compensation—exchanging its technology only for other licenses to competing
19 technology—does not rectify the fact that ACS was willing, ultimately, to forego its
20 exclusive rights for some manner of compensation"); *MercExchange, L.L.C. v.*
21 *eBay, Inc.*, 500 F. Supp. 2d 556, 570 (E.D. Va. 2007) (noting that granting licenses
22 "weighs against the need for an equitable remedy as it evidences [patentee's]
23 willingness to forgo its right to exclude in return for money").

24       With respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮ both demonstrate that Broadcom is not "irreparably harmed" for sales to OEM
26 customers for existing design configurations, and that money damages are adequate
27 compensation for such sales. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



With respect to the balance of hardships, modification will not significantly harm Broadcom because Broadcom has already granted permission for the vast majority of these sales to continue even after the expiration of the sunset period. ▮

▮ The vast majority of Emulex's sales will continue regardless of whether the injunction is modified. The impact of any additional sales on Broadcom will be negligible, and Broadcom will receive a 9% royalty for these sales.

With respect to the public interest, the Court specifically required the sunset period because prohibiting sales to certain OEM's would cause real and substantial harm, not only to their businesses but also to their end customers. The Court noted that a redesigned chip may require "potential hardware and software modifications so that a new chip will function in the device." (D.I. 1090 at 14). The Court also said that "[t]he customers with the greatest interest in a continued supply of the infringing devices are those who have qualified an infringing device and who have already placed firm orders for production quantities." (*Id.* at 18). Allowing

7

continued sales to these specific customers, all of whom have already qualified for sunset protection, will avoid this real and substantial harm.

Finally, the Court should modify its earlier decision barring sales to distributors. (D.I. 1174). The Court previously enjoined such sales primarily based on concern about the diversion of distributor parts to unlicensed OEM customers. Now that ▮▮▮▮▮ all have agreements with Broadcom, there is no significant risk of diversion. If the Court allows the remaining Emulex OEM customers to also continue their purchases, the risk of diversion is eliminated.

Because the facts underlying the Court's original sunset period have changed, and because all four *eBay* factors now weigh strongly in favor of modification of the sunset period, the Court should allow Emulex to continue making sunset sales after April 11, 2013.

### B. The Additional Time Necessary for OEM Customers to Qualify the Redesigned BE3 Chip Warrants Extending the Sunset Period

LSI previously informed the Court that it would likely take between 18 and 24 months for it to redesign the BE3 to remove the adjudged-infringing CDR circuitry. (D.I. 1035 (Allen Decl.) ¶ 8). ▮▮▮▮▮ LSI now estimates that it will have a redesigned BE3 chip (called the "BE3-R") available for OEM qualification by ▮▮▮▮▮. (Evashenk Decl., ¶ 11). ▮▮▮▮▮

The Court specifically indicated in its memorandum decision granting injunctive relief that in creating the sunset period, it was attempting to "approximate

8

1  the time to develop noninfringing substitutes **and for customers to bring to**
2  **market products embodying those substitutes**." (Docket No. 1090 at 18
3  (emphasis added)).  The Court noted the inherent uncertainty in the time estimates
4  provided by the parties and the impacted third-parties concerning the time necessary
5  to design and qualify a replacement part.  (*See* Docket No. 1090 at 17-18).  That
6  uncertainty, however, is now largely resolved: LSI should have a redesigned part
7  available for OEM qualification by ▉▉▉▉▉▉▉.  (Evashenk Decl., ¶ 11). ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉ The Court acknowledged the complexity of this testing process in its
14  original memorandum decision.  (Docket No. 1090 at 14).  Nothing about the
15  process of qualification has changed since that time, and as the Court noted, it
16  applies regardless of whether the OEMs are using a new or a redesigned chip.
17         The time required for LSI and Emulex to complete the BE3 redesign has
18  nothing to do with a lack of diligence.  Ms. Evashenk noted in her earlier declaration
19  that, after the Court granted its JMOL of infringement, she ▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

1 ██████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████ █ ████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████ █ ███████████████
██████████████████████████████████████████████████
████████████████████████████████████

12       Modification of the injunction is appropriate in light of these recent
13  developments because modification would best protect the interest of third-parties
14  and the public, who selected these chips years ago (long before any litigation).
15  These customers rely on the enjoined Emulex products in mission-critical data
16  center applications, and cannot switch away from Emulex in these existing products.
17  The Court specifically required the sunset period because prohibiting sales to such
18  OEM's would cause real and substantial harm, not only to their businesses but also
19  to their end customers.  (D.I. 1090 at 14-18).  For implementations that are already
20  on the sunset list, and that therefore necessarily qualified for this extra protection, it
21  would be unnecessarily punitive to cut off supplies of the BE2 and BE3 before
22  customers are able to qualify the BE3-R as a replacement.  There would be no
23  possible benefit to Broadcom, since these sales are for design wins awarded years
24  ago – design wins that Broadcom cannot compete for, with or without an injunction.
25  *C.f., United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952) ("The sole
26  function of an action for injunction is to forestall future violations"). ████████
███████████████████████████████████████████████
28

[REDACTED]

## V. CONCLUSION

For the reasons noted above, the Court should modify the injunction to allow Emulex to continue making sunset sales beyond the current April 11th cut-off, until such time as Emulex's sunset customers can qualify the redesigned BE3-R chip.

Dated:  March 18, 2013

FISH & RICHARDSON P.C.

By: /s/ Jonathan J. Lamberson

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

50888934.doc