

WILMER CUTLER PICKERING
HALE AND DORR LLP
WILLIAM F. LEE
(admitted pro hac vice)
(william.lee@wilmerhale.com)
DOMINIC E. MASSA
(admitted pro hac vice)
(dominic.massa@wilmerhale.com)
JOSEPH J. MUELLER
(admitted pro hac vice)
(joseph.mueller@wilmerhale.com)
LOUIS W. TOMPROS
(admitted pro hac vice)
(louis.tompros@wilmerhale.com)
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

Attorneys for Plaintiff
BROADCOM CORPORATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

**BROADCOM CORPORATION,**

**Plaintiff,**

**v.**

**EMULEX CORPORATION,**

**Defendant.**

**And Related Counterclaims.**

Case No. SACV09-1058 JVS (ANx)
consolidated SACV 10-03963-JVS (ANx)

**BROADCOM'S OPPOSITION TO EMULEX'S MOTION TO EXTEND THE SUNSET PERIOD**

~~**FILED UNDER SEAL**~~
PUBLIC REDACTED VERSION

Date: April 15, 2013
Time: 1:30 p.m.
Location: Courtroom 10C
Before: Hon. James V. Selna

## I. INTRODUCTION

A year ago, after extensive briefing, evidence, and argument, the Court entered a permanent injunction. (Dkt. No. 1095 (Permanent Injunction).) The injunction contained a specific and well-defined Sunset Period that was and is, with respect to the '150 patent, set to expire on April 11, 2013 (*Id.* Part II), eighteen months after the Court granted judgment as a matter of law of infringement. (Dkt. No. 1090 (Memorandum of Decision re Injunctive Relief ("Inj. Mem.")) at 18.) In its Motion to Extend the Sunset Period (Dkt. No. 1301 ("Motion" or "Mot.")), Defendant Emulex Corporation ("Emulex") now asks the Court to scrap the well-defined Sunset Period expiration and replace it with open-ended authorization for infringement to continue for some undetermined period of time. Plaintiff Broadcom Corporation ("Broadcom") opposes Emulex's Motion on three grounds: first, the Court lacks jurisdiction to grant it during the pendency of Emulex's appeal; second, the Sunset Provision already reflects the Court's thorough consideration of Emulex's stated reasons; and third, Broadcom's agreements with certain OEMs—which are mischaracterized in Emulex's Motion—do not justify the relief Emulex seeks.

## II. BACKGROUND

Following the Court's adjudication that Emulex's accused products infringe the '150 patent, Broadcom moved for the entry of a permanent injunction. (Dkt. No. 999.) In opposing Broadcom's motion, Emulex requested that if the Court granted injunctive relief, it impose a sunset provision. (Dkt. No. 1036 (Emulex's Opposition to Broadcom's Motion for Entry of a Permanent Injunction) at 22-23.)

Though Emulex did not request a specific duration for its requested sunset provision, its primary fact witness regarding direct competition between the parties stated that an 18-24 month period would suffice. The Court considered that declaration, along with declarations of others at Emulex, Emulex's suppliers, several representatives of Emulex's OEM customers (including Hewlett-Packard ("HP") and International Business Machines ("IBM")), and Broadcom. (Inj. Mem. at 14-18.) In doing so, the Court recognized that estimates of the product design and qualification processes varied significantly and included estimates shorter than Emulex described, that some degree of uncertainty was inherent in

the estimates various witnesses provided, that many of the estimates Emulex relied on were necessarily self-interested, and that the equitable factors for injunctive relief required the Court to weigh competing interests. (*Id.*) Ultimately, the Court concluded that injunctive relief was warranted, that an 18-month Sunset Period struck a reasonable balance between potential harm to users of Emulex's infringing products and the need to protect Broadcom's patent rights, and that Emulex would be permitted to sell the infringing products only for established uses. (*Id.* at 17-20.) After the Court entered the injunction, Emulex noticed its appeal. (Dkt. No. 1097 (Notice of Appeal).)

Over the subsequent months, the Court invited multiple rounds of additional briefing from the parties on the progress and operation of the Sunset Provision. This included supplemental briefing from Emulex regarding whether distributors would be permitted to purchase (from Emulex) and sell (to end users) the infringing products during the Sunset Period. (Dkt. No. 1145 (Emulex's Brief on Application of Sunset Provision to Distributors ("Distr. Br.")).) The Court concluded that the risk of, and administrative necessities for preventing, potential diversion to unauthorized purchasers were too great, and excluded Emulex sales to distributors from the Sunset Provision except in emergency circumstances. (Dkt. No. 1174 (Order re Sunset Provision ("Sunset Order").) After the Court entered its final order regarding Sunset Provision mechanics, Emulex amended its appeal to include that order. (Dkt. No. 1211 (Amended Notice of Appeal).)

During the course of proceedings to determine which combinations of enjoined Emulex components and OEM products would be sunset-eligible, Broadcom and Emulex reached a partial settlement agreement resolving certain aspects of this litigation [redacted]

[redacted]

[1] [redacted]

[redacted] Broadcom submitted notices of the [redacted] agreements to Emulex and to the Court on June 21, 2012 and December 21, 2012, respectively.[2] (Dkt. No. 1217; Dkt. No. 1275.)

In its appeal to the Federal Circuit, Emulex has argued that Broadcom's injunction-related dealings [redacted] undermine Broadcom's claim to injunctive relief. *See infra* Part III(A). Emulex also argued that the scope of the Sunset Provision is too narrow—both in coverage and in duration—to protect the public interest and the interests of Emulex's customers, and that the Court's exclusion of distributors from the Sunset Provision was an abuse of discretion. *See id.* The Federal Circuit has not yet decided Emulex's appeal.

The Sunset Period expires on April 11, 2013. Citing Broadcom's agreements with Emulex and certain OEMs and [redacted], Emulex now requests that the Court extend the Sunset Period indefinitely. Emulex also asks that the Court effectively lift its exclusion of Emulex sales to distributors from the Sunset Provision. But [redacted] Emulex has been aware of Broadcom's agreements for since—at minimum—October 2012. None of these factors support the relief Emulex requests.

## III. ARGUMENT

### A. The court lacks jurisdiction to grant Emulex's motion.

It is well-settled that the filing of a notice of appeal divests a district court of jurisdiction over the subject of the appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction

---

2 [redacted] Broadcom informed Emulex and the Court that those negotiations were still ongoing on September 13, 2012 (Dkt. No. 1254), and withdrew its motion on October 22, 2012. (Dkt. No. 1272.)

on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *see also McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) ("[t]he filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed").

Here, Emulex appealed not only the Court's grant of a permanent injunction but also the Court's order detailing the operation of the Sunset Provision. (Amended Notice of Appeal at 1-2.) And all of the issues Emulex now raises in its Motion, [REDACTED] including the duration of the Sunset Period, have been presented in Emulex's appeal to the Federal Circuit.

***First***, in its Motion Emulex argues that "it will currently be impossible for customers to complete qualification [of its redesign] before the April 11th sunset cut-off." (Mot. at 2.) On appeal, Emulex argued that the duration of the Sunset Period was insufficient for OEM customers to complete qualification. (Liss Ex. A[3] (Emulex's Confidential Opening Brief ("Opening Appeal Br.")) at 13, 61.) But the 18-month Sunset Period reflected a reasonable balance of interests, not an attempt to forestall all potential difficulties. *See infra* Part III(B).

***Second***, Emulex argues that "[a]llowing sales to sunsetted customers after April 11th would in no way harm Broadcom, since these sales are for design wins awarded years ago, and there is nothing that Broadcom can do to replace Emulex in these existing implementations." (Mot. at 2.) On appeal, Emulex argued that the incumbency effect of the design win process rendered the injunction immaterial to Broadcom. (Opening Appeal Br. at 12-13, 55, 61.) [REDACTED]

***Third***, Emulex argues that Broadcom's OEM agreements "demonstrate that Broadcom is not 'irreparably harmed' for sales to OEM customers for existing design configurations, and that money damages are adequate compensation for such sales." (Mot. at 6.) [REDACTED]

[3] Citations to "Liss Decl. Ex. _" refer to exhibits to the accompanying Declaration of Jason H. Liss in Support of Broadcom's Opposition to Emulex's Motion to Extend the Sunset Period.

But Emulex's argument is premised on a portrayal of Broadcom's agreements that does not square with the actual details of the agreements, and has already been considered and rejected by both this Court and the Federal Circuit in very similar circumstances. *See infra* Part III(C).

***Fourth***, Emulex argues that "the Court should modify its earlier decision barring sales to distributors" in light of Broadcom's OEM agreements. (Mot. at 8.) On appeal, Emulex specifically argued that the exclusion of distributors was an abuse of the Court's discretion. (Opening Appeal Br. at 13, 62.) But Emulex's arguments are irrelevant to the distributor sales exclusion. *See infra* Part III(C).

Emulex's Motion thus asks the Court to revisit issues that are currently pending on appeal,[4] which would result in "the confusion and inefficiency of two courts considering the same issues simultaneously." *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983). This is precisely the result that the principle of exclusive appellate jurisdiction is "designed to avoid." *Id.*

To the extent the Court retains jurisdiction during the pendency of Emulex's appeal, it does so only pursuant to Federal Rule of Civil Procedure 62(c). But Rule 62(c) "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers*, 686 F.2d at 734 (vacating district court order to reinstate employees whose termination was on appeal). Instead, Rule 62(c) "grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal." *Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("action taken pursuant to Rule 62(c) "may not materially alter the status of the case on appeal" (internal quotation omitted)).[5] Having

---

[4] The only specific basis for jurisdiction that Emulex provides is the Court's retention of jurisdiction pursuant to the Section VIII of the Second Amended Permanent Injunction. (Mot. at 5.) But that provision, effective both before and after Emulex's appeal, cannot override binding precedent regarding the jurisdictional effect of an appeal, particularly where Emulex requests that the Court adjudicate subject matter that Emulex itself has brought before the appellate court.

[5] *See also Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010) (vacating injunction modification that "altered the status quo"); *Rocky Mountain Farmers Union v. Goldstene*, CV-F-09-2234 LJO DLB, 2012 WL 217653 (E.D. Cal. Jan. 23, 2012) (denying motion that would "alter the status quo by suspending the preliminary injunction"); *Farris v. Seabrook*, 11-5431 RJB, 2011 WL 3665123 (W.D. Wash. Aug. 19, 2011)

vigorously argued to the Federal Circuit that the length of the Sunset Period and the prohibition on distributor sales constitute abuses of discretion by this Court, Emulex cannot credibly contend that indefinitely extending the Sunset Period and eliminating the distributor prohibition would not "alter the status of the case" with respect to the issues currently on appeal.[6]

**B. The redesign status does not justify reconsideration of the Sunset Provision.**

[redacted] But because Emulex's stated basis adds nothing to the Court's previous consideration of the reasonable length of the Sunset Period, and because Emulex has not demonstrated that it was diligent either in pursuing the redesign or bringing its motion, no such extension is warranted.

As Emulex concedes in its Motion, the Court was aware of and accounted for the uncertainty that Emulex argues is inherent in the redesign and qualification processes. But Emulex's suggestion that the Court specifically set the length of the Sunset Period to guarantee that Emulex, its suppliers, and its customers would complete the entire redesign and requalification process is incorrect. Rather, the Court attempted to "balance[] the right of Broadcom to not simply enjoy the benefits of it patents but to be free from competitive challenges using its own intellectual property, on the one hand, with the hardships which Emulex will sustain and the effects on the public, on the other hand." (Inj. Mem. at 22; *id.* at 19 (the Sunset Provision "reflects a balancing of the needs of Emulex customers with the protection of Broadcom's patent rights").) Accordingly, the Court recognized that the Sunset Provision "is not a perfect solution from the standpoint of Emulex's customers," in part because "sunk development costs would be one of the potential casualties." (*Id.* at 19.)

In crafting the Sunset Period, the Court specifically considered estimates provided by LSI (and Emulex's other suppliers), various OEM customers, and Broadcom. (Inj. Mem. at 14-17.)

---

(denying motion to stay a preliminary injunction because "Defendants ask[ed] for a decision on the same issues which were just adjudicated" and because the requested relief would "improperly materially alter the status of the case on appeal") (internal quotation omitted).

[6] Likewise, that Rule 62(c) permits district courts to "supervis[e] compliance with the injunction," *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002), does not justify the Court's consideration of the fundamental changes that Emulex seeks. Emulex asks the Court not to "supervise compliance" but to alter the terms of the injunction dramatically.

With respect to LSI's proffered estimate, the Court noted that LSI's witness, Dr. Phillip E. Allen, "spoke to no one at LSI, did not review the LSI schematics, and worked only from 'generic information.'" (*Id.* at 15 n.16.) [REDACTED] As the Court has observed, "second-hand statements may be admissible for notice [but] do not establish reality." (Inj. Mem. at 14 n.15.)

Furthermore, Emulex's proffered evidence does not establish that Emulex has been diligent. As a threshold matter, Emulex waited until it was adjudged to infringe to begin its redesign efforts; it is therefore "clear that some portion of any delay in bringing redesigned products to market is of Emulex'[s] own making." (Inj. Mem. at 20.) [REDACTED] Emulex waited several more weeks before even raising the issue of this Motion with Broadcom. (Liss Decl. Ex. C (Correspondence from Counsel for Emulex to Counsel for Broadcom dated February 28, 2013).)[7] Thus, only on the cusp of the expiration of the Sunset Period did Emulex move for an extension.[8]

---

[7] In providing Broadcom with a written statement of the bases for its motion so that the parties could meet and confer in writing if necessary, Emulex referred to Broadcom's OEM agreements and only generally to customers completing qualification of the redesigned BE3; [REDACTED]. (Liss Decl. Ex. D (Correspondence from Counsel for Emulex to Counsel for Broadcom dated March 7, 2013).)

[8] Emulex argues that Broadcom's agreements with Emulex and certain OEMs justify the modifications it seeks, but Emulex has been aware of those agreements since—at minimum—October 2012. *See supra* at 3. That Emulex brings these issues to the Court only now—just as the Sunset Period is expiring, [REDACTED]

These delays—entirely within Emulex's control—stand in contrast to the purported urgency of its request.

Emulex's lack of diligence is particularly striking given the nature of the relief it seeks—open-ended authorization to continue making infringing sales. The Court has repeatedly emphasized the importance of establishing firm contours for the Sunset Provision. (Inj. Mem. at 18 n.21 ("The Court strongly believes that the permissible scope of Sunset Sales should be defined at the outset."); Sunset Order at 4 (warning that the Court might narrow the Sunset Provision "[s]hould the administration of the Sunset Provision prove unduly time consuming or cumbersome").) But Emulex proposes an extension with no specific end date, instead substituting a customer-by-customer extension—"until such time as Emulex's sunset customers can qualify the redesigned BE3-R chip" (Mot. at 14)—with no readily identifiable termination and no incentive whatsoever for Emulex's customers to ***ever*** qualify the redesign, [REDACTED]

[REDACTED]

[REDACTED] the estimates that customers themselves provided to the Court (Inj. Mem. at 15-17 (collecting customer testimony that chip qualification processes range from six to 30-plus months)) [REDACTED]

---

[REDACTED]—suggests that its arguments are merely pretext for its attempt to eviscerate the permanent injunction by dramatically altering the Sunset Provision.

[redacted] and the absence of any time limitation or cutoff mechanism in Emulex's proposal could result in twelve months or more of additional sales of adjudicated infringing Emulex products. [redacted].[9]

C. **Broadcom's OEM agreements do not justify the relief Emulex seeks.**

Broadcom's OEM agreements are not as Emulex describes, and they do not justify Emulex's request for an extension of the Sunset Period.

[redacted] The considerations underlying the injunction and the operation of the Sunset Provision with respect to those combinations have not changed. Emulex does not explain why Broadcom's specific and narrowly-tailored agreements [redacted] should permit Emulex to continue to make infringing sales to other OEMs, and to do so by extending the Sunset Period indefinitely.

Broadcom's agreements [redacted] do not demonstrate either an absence of irreparable harm relating to ongoing Emulex sales, that monetary damages are adequate

---

[9] As Broadcom demonstrated at trial, the invention of the '150 patent solved an interference problem inherent to other multilane transceiver designs, and in doing so allowed for the creation of smaller, higher-performance chips that consume less power. [redacted]

compensation for Emulex's ongoing infringement, or that Broadcom has merely authorized ongoing sales "in return for the payment of money damages." (Mot. at 6-7.) To make such arguments, Emulex ignores the overall thrust of the agreements as well as many of their specific provisions; the result is a grossly misleading oversimplification. In particular:

[redacted]



- 11 -

BROADCOM'S OPPOSITION TO EMULEX'S MOTION TO EXTEND THE SUNSET PERIOD

Broadcom's OEM agreements are not bare patent licenses, and they do not provide the OEMs with blanket permission to purchase enjoined Emulex components.

[11] Broadcom's agreements are highly sensitive, forward-looking strategic documents that threaten significant competitive harm if revealed. Accordingly, Broadcom produced them to counsel for Emulex on an Outside Attorneys' Eyes Only basis pursuant to the governing Confidentiality Order (Dkt. No. 57 ¶ 10).

[12] At the same time, these agreements mitigate the effect of the injunction on end users of enjoined Emulex components.

 [redacted] Emulex makes no attempt to account for this distinction in asserting that "[t]he vast majority of Emulex's sales will continue regardless of whether the injunction is modified."[17] (Mot. at 7.)

Similarly, the effect of Broadcom's OEM agreements on the sunset eligibility of Emulex sales to distributors is irrelevant, as it does not alter the potential for diversion of enjoined Emulex products to unauthorized purchasers. As the Court observed, neither an OEM's authorization of a distributor nor Emulex's past sales to a distributor can provide any assurance that the distributor's own sales will end up in sunset-eligible products. (Liss Decl. Ex. E ("4/23/2012 Tr.") at 20-21.) This is especially true because Emulex's distributors sell to both end users—who may or may not use sunset-eligible products—and to OEMs who made no effort to demonstrate sunset eligibility. ([redacted]) "The missing step" in Emulex's justification for distributor sunset eligibility was and remains "where is the product ultimately going?" (4/23/2012 Tr.at 20-21.) Emulex's Motion offers nothing to address the Court's concern that "[t]racing parts to second and possibly third tiers of distribution is not practical." (Sunset Order at 3.)

---

[14] *See, e.g.*, http://www.dell.com/us/enterprise/p/powervault-md32x0i-series/pd?refid=powervault-md32x0i-series (identifying PowerVault products, including certain products identified in the Sunset Appendix).

[15] *See, e.g.*, http://www.dell.com/us/enterprise/p/poweredge-t410/pd?refid=server-poweredge-t410 (describing the PowerEdge T410 Tower Server, listed in the Sunset Appendix).

[16] *See, e.g.*, http://www.dell.com/us/enterprise/p/poweredge-m610/pd?refid=server-poweredge-m610 (describing the PowerEdge M610 Blade Server, listed in the Sunset Appendix).

[17] [redacted] contrary to the requirements of the injunction, Emulex has not provided sunset reporting to Broadcom since that first period.

Emulex's argument that Broadcom's agreements with its own customers demonstrate the adequacy of monetary damages is not only deceptively simplistic—it is contrary to law. This Court has dealt with similar circumstances, and concluded that an agreement with "a customer not a competitor," in view of the agreement's advancement of "a strategic business alliance," "is not informative" as to the adequacy of money damages. *Broadcom Corp. v. Qualcomm, Inc.*, No. SACV05-467, 2007 U.S. Dist. LEXIS 97467 (C.D. Cal. Dec. 31, 2007). The Federal Circuit expressly considered and agreed with the Court's conclusions, stating that a license to a customer that "provide[s] many non-monetary benefits . . . such as the formation of a strategic business alliance" "has little bearing on the effect of a compulsory license to a direct competitor." *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008) (affirming permanent injunction).

Emulex also suggests that the parties' own partial settlement agreement undermines Broadcom's arguments with respect to the inadequacy of monetary damages. (Mot. at 6.) But like Broadcom's agreements [REDACTED], Broadcom's agreement with Emulex sheds little light on the issues now before the Court. [REDACTED]

[REDACTED]

Second, agreements reached in "the context of litigation" are of limited use in evaluating the equitable factors for injunctive relief. (Inj. Mem. at 9 (citing *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008)).)

**IV. CONCLUSION**

For the reasons given, Broadcom respectfully requests that the Court deny Emulex's Motion to Extend the Sunset Period.

Dated: March 25, 2013

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND DORR LLP

By: [signature] /JDK
Jason H. Liss

Attorneys for Plaintiff
BROADCOM CORPORATION