| | |
|---|---|
| 1 | Juanita R. Brooks (SBN 75934) |
| | brooks@fr.com |
| 2 | FISH & RICHARDSON P.C. |
| | 12390 El Camino Real |
| 3 | San Diego, California 92130 |
| | Telephone: (858) 678-5070 |
| 4 | Facsimile: (858) 678-5099 |
| 5 | David M. Barkan (SBN 160825) |
| | barkan@fr.com |
| 6 | Jonathan J. Lamberson (SBN 239107) |
| | lamberson@fr.com |
| 7 | FISH & RICHARDSON P.C. |
| | 500 Arguello Street, Suite 500 |
| 8 | Redwood City, California 94063 |
| | Telephone: (650) 839-5070 |
| 9 | Facsimile: (650) 839-5071 |
| 10 | Attorneys for Defendant and Counterclaimant |
| | EMULEX CORPORATION |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| | |
|---|---|
| BROADCOM CORPORATION, | Case No. CV 09-1058-JVS (ANx) |
| Plaintiff, | consolidated with CV 10-3963 JVS (ANx) |
| v. | **EMULEX'S REPLY IN SUPPORT OF ITS MOTION TO EXTEND THE SUNSET PERIOD** |
| EMULEX CORPORATION, | |
| Defendant. | |
| And Related Counterclaims | Before: Hon. James V. Selna |

1   EMULEX'S REPLY IN SUPPORT OF ITS MOTION
TO EXTEND THE SUNSET PERIOD
Case No. CV 09-1058-JVS (ANx)

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ........................................................................................................ 5

    A.   This Court Retains Jurisdiction to Modify the Sunset Period ....................... 5

    B.   Changed Facts Concerning the Status of the Redesign Warrant Reconsideration of the Length of the Sunset Period .................................... 8

    C.   Broadcom's Agreements Show There is No Harm in Allowing Sales for Existing Design Wins ................................................................................... 12

III. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton,*
    521 U.S. 203 (1997) ............................................................................... 4, 10

*Broadcom Corp. v. Qualcomm Inc.,*
    2007 U.S. Dist. LEXIS 97647 (C.D. Cal. December 31, 2007) ................. 14

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006) ................................................................................ 4, 9

*Farris v. Seabrook,*
    2011 WL 3665123 (W.D. Wash. Aug. 19, 2011) ......................................... 8

*Horne v. Flores,*
    557 U.S. 433 (2009) ................................................................................... 10

*In re Delta Smelt Consol. Cases,*
    2011 WL 2559021 (E.D. Cal. June 24, 2011) .............................................. 5

*Masalosalo v. Stonewall Ins. Co.,*
    718 F.2d 955 (9th Cir. 1983) ........................................................................ 8

*Mayweathers v. Newland,*
    258 F.3d 930 (9th Cir. 2001) ........................................................................ 5

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,*
    686 F.2d 731 (9th Cir. 1982) ........................................................................ 8

*Natural Res. Def. Council, Inc. v. Sw. Marine Inc.,*
    242 F.3d 1163 (9th Cir. 2001) .............................................................. 5, 6, 7

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) ............................................................................... 2, 13

*Price v. City of Stockton,*
    390 F.3d 1105 (9th Cir. 2004) .................................................................... 10

*Rocky Mountain Farmers Union v. Goldstene,*
    2012 WL 217653 (E.D. Cal. Jan. 23, 2012) ................................................. 8

*see Griggs v. Provident Consumer Disc. Co.,*
    459 U.S. 56 (1982) ....................................................................................... 8

*Shell Offshore Inc. v. Greenpeace, Inc.,*
    2012 WL 1931537 (D. Alaska May 29, 2012) ............................................. 5

*Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO,*
    611 F.3d 483 (9th Cir. 2010) ........................................................................ 8

*System Fed'n No. 91 Railway Emps.' Dep't v. Wright,*
    364 U.S. 642 (1961) ............................................................................. 4, 10

*United States v. Oregon State Med. Soc.*,
  343 U.S. 326 (1952) .................................................................................... 12

**Statutes**

Federal Rules of Civil Procedure 62 .................................................................. 5, 8

Juanita R. Brooks (SBN 75934)
Juanita R. Brooks (SBN 75934)
  brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, California 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

David M. Barkan (SBN 160825)
  barkan@fr.com
Jonathan J. Lamberson (SBN 239107)
  lamberson@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION)

| BROADCOM CORPORATION, | Case No. CV 09-1058-JVS (ANx) |
|---|---|
| Plaintiff, | consolidated with CV 10-3963 JVS (ANx) |
| v. | **EMULEX'S REPLY IN SUPPORT OF ITS MOTION TO EXTEND THE SUNSET PERIOD** |
| EMULEX CORPORATION, | |
| Defendant. | |
| And Related Counterclaims | Before: Hon. James V. Selna |

## I. INTRODUCTION

Since the injunction was entered in April, 2012, Broadcom has engaged in a pattern of conduct that has eliminated any possible harm to Broadcom from extending the sunset period. To argue that there is still irreparable harm, Broadcom is therefore forced to take positions that are directly contrary to the representations it made to this Court to obtain the injunction in the first place. Moreover, nothing in

the relief sought by this motion undermines the benefit of the bargain Broadcom made in its agreements with Emulex, ▮▮▮▮▮. To the contrary, this motion seeks only an extension of the time period during which Emulex can sell products on the sunset list – products that by their very inclusion on the sunset list are necessarily old design wins where there is no possible competition with Broadcom. By permitting Emulex to continue selling products which by definition were both qualified and subject to firm orders for production quantities prior to October 12, 2011, the Court would in no way impact any competition for future design wins or diminish the benefits Broadcom obtained in the agreements it made since obtaining the injunction.

Tellingly, Broadcom suggests that because its license to Emulex was for "indirect competition," it does not show a willingness to license competing sales. (*See* Broadcom Opp. at 14 ("Broadcom specifically carved out areas of direct competition from its agreement with Emulex")). This is exactly the opposite of what Broadcom argued to this Court previously, when it claimed that there was "irreparable harm" caused even by indirect competition. (*See, e.g.,* D.I. 1084 at 7 ("Emulex's sales of infringing Fibre Channel products necessarily undercut Broadcom's efforts to expand its own storage-related business")). The Court agreed with Broadcom. (*See* D.I. 1090 at 7 ("Indirect competition is no less competition.")).

Because these "indirect" sales were enjoined, Broadcom was able to extract a $58 million license from Emulex specifically for these sales. (D.I. 1235). Having made these representations, and having prevailed on them and obtained multiple tens of millions of dollars as a result, Broadcom should be judicially estopped from arguing now that these sales are somehow inconsequential. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory

argument to prevail in another phase"). This license shows a willingness by Broadcom to authorize a competitor to continue selling the exact products that Broadcom relied upon to show irreparable harm.

Second, Broadcom attempts to downplay the significance of its agreements ███████████████████████████████████████. Broadcom suggests that because these agreements contain other provisions, ████████████████████ ██████████████ they do not show a willingness to tolerate continued infringement. To be clear, ***Emulex is not seeking any remedy that would in any way impact any future design competition with Broadcom***. Emulex is not asking for the injunction to be dissolved. Emulex is not asking for the right to sell its enjoined products to new customers, or for new products. All that Emulex seeks is the ability to continue providing chips to customers who have already qualified for sunset protection, and only for those existing sunset configurations. These sales will continue only until a replacement chip is available. ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████

Third, Broadcom mischaracterizes the issues presented to the Federal Circuit on appeal. Emulex has not asked the Federal Circuit to make any decisions concerning the *length* of the sunset period. Instead, Emulex asked that the

injunction be modified so that it would not apply to customers for which there had been a pre-existing design win (*i.e.*, a design win prior to October 11, 2011). (*See* Liss Ex. A at 63 ("this Court should vacate the … '150 patent injunction as to sales of Fibre Channel products and products for which there was a preexisting design win"); Liss Ex. B at 30 ("Even if the district court's liability ruling is affirmed, the Court should vacate the '150 patent injunction as to sales of products for which there was a preexisting design win")). The instant motion, regarding the length of the sunset period, has nothing to do with the relief sought in the Federal Circuit. Also, Broadcom's argument that this Court has no jurisdiction over any matter pertaining to the "operation of the Sunset Provision" cannot be taken seriously in light of the number of times Broadcom has invoked the authority of this Court to update and modify the parameters of the sunset provision while the appeal has been pending.

Fourth, Broadcom argues that the Court should not consider the new evidence before it concerning the current status of the BE3 redesign. Yet injunctions in patent law are no different than injunctions in any other area of law. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-94 (2006) ("[judicial] discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards"). As noted in Emulex's opening brief, it is an abuse of discretion not to consider changed facts and circumstances when weighing the continued application of prospective injunctive relief. *See Agostini v. Felton*, 521 U.S. 203, 215 (1997); *System Fed'n No. 91 Railway Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961). Here, there are new facts available concerning the status of the redesign. Those new facts show that it will be impossible, without modification, for the sunset period to achieve its stated goal, namely, "for customers to bring to market products embodying those substitutes." (Docket No. 1090 at 18). These changed circumstances warrant

reevaluation of the length of the sunset period. That is the only limited relief Emulex seeks in this motion.

For the reasons discussed below and in Emulex's opening brief, Emulex's request for an extension of the sunset period should be granted.

## II.   ARGUMENT

### A.   This Court Retains Jurisdiction to Modify the Sunset Period

Broadcom does not dispute that Rule 62(c) of the Federal Rules of Civil Procedure expressly affirms the Court's inherent power to "suspend, modify, restore, or grant an injunction," even while an appeal of the "order or final judgment that grant[ed], dissolve[d], or denie[d]" that injunction is pending. *See* FRCP 62(c). Pursuant to this inherent power, the Court always "retains jurisdiction during the pendency of an appeal to act to preserve the status quo." *See Natural Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166-67 (9th Cir. 2001) (affirming the District Court's modification of language and deadlines in an injunction, since the changes did not materially alter the status of the case on appeal, and "left unchanged the core questions before the appellate panel"); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001) (upholding entry of a second preliminary injunction while the first was being appealed); *In re Delta Smelt Consol. Cases*, 2011 WL 2559021 (E.D. Cal. June 24, 2011) (finding jurisdiction to modify an injunction because "[n]ew facts are constantly being created" and "[m]aintenance of the status quo may require changes"); *Shell Offshore Inc. v. Greenpeace, Inc.*, 2012 WL 1931537 (D. Alaska May 29, 2012) (finding that the status quo precluded Greenpeace from engaging in certain activities and modifying the scope of the injunction so the status quo would be maintained in the face of changed circumstances). Likewise here, an extension of the sunset period is both warranted and permissible to preserve the status quo.

First, Emulex's request for an extension to the sunset period is essentially a request that the Court *maintain* the existing state of affairs – the status quo – so that the stated goals of the sunset period can be met in the face of new facts and circumstances. Specifically, an extension is consistent with the stated purpose of the sunset period, which was to balance the needs of the public by allowing sunset customers time to qualify and "bring to market products embodying those substitutes," (D.I. 1090 at 17-18), a "complicated process that requires new development." (*Id.* at 14). Broadcom's request that the Court allow the sunset period to lapse without any consideration of the new facts that have arisen therefore disregards the Court's discretion to make "minor adjustments that effectuate[] the underlying purposes of the original requirements." *See Natural Res. Def. Council*, 242 F.3d at 1167.

Second, Emulex's Motion does not require the Court to "revisit issues that are currently pending on appeal." Broadcom's arguments to the contrary rely on mischaracterizations of the issues that were actually appealed. The question Emulex posed to the Federal Circuit was whether it was proper to "enjoin[] sales of Emulex chips for use in products **for which there had already been a design win**." (Liss Decl., Ex. A at 55 (emphasis added); *see also* Liss Decl., Ex. B at 23-24 ("The only remaining issue is whether Emulex may continue to make sales and otherwise supply BE2 and BE3 chips for use in OEM products **where the design competition at the OEM was completed before the injunction issued**")). While it is certainly true that Emulex's Federal Circuit briefing mentioned the length and scope of the sunset period and Broadcom's agreements with OEM's, they were mentioned only in order to discuss the ultimate question of whether preexisting design wins should have been enjoined at all. (*See* Liss Decl., Ex. A at 61 (describing the contours of the sunset period in discussing the public harm prong); *id.* at 55, 62 (discussing the relation of past design wins to the irreparable harm prong); Liss Decl., Ex. B at 25-

26 (describing impact of Broadcom's OEM agreements on the irreparable harm prong)). Emulex never asked the Federal Circuit to alter the length of the sunset period. Similarly, the instant motion does not ask the Court to add any additional OEM customers or products to the sunset list, nor does it raise any other question that would "materially alter the status of the case on appeal." *See Natural Res. Def. Council*, 242 F.3d at 1166.

Third, Broadcom's argument that this Court has no jurisdiction over any matter pertaining to the "operation of the Sunset Provision" cannot be taken seriously in light of the number of times Broadcom has invoked the authority of this Court to update and modify the parameters of the sunset provision while the appeal has been pending. Specifically, Emulex first noticed its appeal of the injunction on April 4, 2012. (D.I. 1097).[1] If that appeal divested the Court of jurisdiction to modify or update the sunset list in any way, then all of the Court's modifications to the injunction since that appeal was filed are void, including the entry of the sunset list itself on June 11, 2012, (D.I. 1201), the May 30, 2012 decision concerning distributors, (D.I. 1174), the July 18, 2012 Second Amended Injunction modified in light of the partial settlement between Broadcom and Emulex, (D.I. 1236-37), and all of the appendices and amendments concerning ███████████ (D.I. 1160, 1192, 1216-18, 1234, & 1279). Broadcom's argument that the Court lacks jurisdiction to reassess the sunset provision is also inconsistent with its August 28, 2012 request for the Court's assistance in modifying the sunset list ███████. (D.I. 1245, 1251). Put simply, if the Court maintained the authority to alter the scope of the sunset list by adding or removing products or even whole companies, a proposition to which both parties previously agreed, then certainly it has the

---

[1] Emulex filed amended notices of appeal on June 26, 2012 (D.I. 1211) and August 6, 2012 (D.I. 1243).

authority to decide whether those same customers can continue receiving those same products while the appeal is pending in order to preserve the status quo.

The cases Broadcom relies on to show a lack of jurisdiction could not be more different from the relief Emulex seeks. Those cases concern sweeping requests for major, substantive changes to an injunction while an appeal was pending. *See, e.g., Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 495 (9th Cir. 2010) (involving removal of a prohibition against the use of coercive measures by a union); *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) (involving an order to reinstate employees who were not working when the appeal was filed); *Rocky Mountain Farmers Union v. Goldstene*, 2012 WL 217653 (E.D. Cal. Jan. 23, 2012) (noting the requested relief "goes even farther than requesting the current status quo to roll back to the pre-injunction status quo").[2] As noted above, it is beyond dispute that Rule 62(c) gives this Court authority to maintain the status quo by making minor modifications to the injunction. Here, Emulex has been selling sunset parts to its customers for 18 months, and requests a limited extension in order to effectuate the stated purpose of the sunset period, which was to give customers time to switch to non-infringing parts. Nothing in this request alters the status quo or impacts the issues on appeal, and there is simply no valid basis for the Court to decline to consider the motion based on jurisdictional grounds.

### B. Changed Facts Concerning the Status of the Redesign Warrant Reconsideration of the Length of the Sunset Period

---

[2] The remaining cases Broadcom cites either state general propositions, *see Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), or address matters not at issue here, *see Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) (upholding jurisdiction of district court to award attorneys' fees after notice of appeal was filed); *Farris v. Seabrook*, 2011 WL 3665123 (W.D. Wash. Aug. 19, 2011) (denying stay of injunction where movant's arguments focused only on errors in the original ruling).

1   Broadcom argues that the purpose of the sunset list was to keep it "free from
2   competitive challenges using its own intellectual property." (Broadcom Opp. at 6).
3   First, this is not correct: the sunset list was to protect customers who selected
4   Emulex products years earlier and who could not switch to a Broadcom chip even if
5   they wanted to do so. (*See* D.I. 1090 at 14 ("There are no 'off-the-shelf' substitutes,
6   such as one might imagine in replacing radio tubes in the mid-Twentieth Century")).
7   Second, as noted above, this argument is a red herring because this motion has
8   nothing to do with new design competition. Emulex does not seek to lift the
9   injunction. Emulex is not asking to sell new products to new customers, or for new
10  design configurations. All that Emulex seeks is an extension of the sunset period for
11  existing sunset customers. All of these customers were required to meet a strict two
12  part test in order to be placed on the sunset list in the first instance: Emulex and its
13  OEM customers had to show both qualification and firm, production quantity orders
14  prior to October 12, 2011. (*See* D.I. 1236 (Second Amended Permanent Injunction),
15  Section II(b)). Emulex gave Broadcom declarations and voluminous documentation
16  in order to satisfy these requirements to prove sunset eligibility for each and every
17  customer and product configuration. (*See* D.I. 1176, 1186, 1195, 1219, 1223-1226).
18  In the end, Broadcom decided not to challenge *any* of the entries on the sunset list
19  ███████████████████████████. (*See* D.I. 1251 at fn.2; D.I. 1279). These
20  are customers for which there was not and cannot be any design competition with
21  Broadcom, since the design wins were awarded years ago, and an extension of the
22  sunset period for these specific customers will not prompt any new competition or
23  competitive harm.[3]
24  Broadcom focuses the Court on the past, but injunctions in patent law are no
25  different from injunctions in any other area of law, s*ee eBay*, 547 U.S. at 391-94

---

[3] Broadcom's argument that the "scope of Sunset Sales should be defined at the outset" (Broadcom Opp. at 8) also misses the mark, since the sunset customers and products remain unchanged. Only the length of the sunset period is at issue here.

9   EMULEX'S REPLY IN SUPPORT OF ITS MOTION
    TO EXTEND THE SUNSET PERIOD
    Case No. CV 09-1058-JVS (ANx)

("[judicial] discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards"), and it is an abuse of discretion not to consider changed facts or circumstances when they arise. *See Agostini*, 521 U.S. at 215; *System Fed'n*, 364 U.S. at 647; *Horne v. Flores*, 557 U.S. 433 (2009) (ordering reevaluation of an injunction in light of changed facts). This Court has already recognized the complexity of the redesign process, as well as the uncertainty in how long the redesign would take to carry out. (*See* D.I. 1090 at 14 ("The Court is satisfied that replacement or redesign of an infringing chip is a complicated process…"); *Id.* at 18). That uncertainty, while not completely eliminated, is largely resolved – the chip should be available for OEM qualification in ▮▮▮▮▮▮▮▮. (Evashenk Decl., ¶ 11).[4] Broadcom is certainly correct that some uncertainty remains, and if new facts arise the Court should consider them, but this is Emulex's best understanding of when the redesigned chip will be available, from the person who has ultimate responsibility over the redesign process within Emulex, and Emulex currently has no reason to believe that there will be further slippage. (*Id.*).

Broadcom also suggests that the timeline for the redesign is inconsistent with earlier declarations. (Broadcom Opp. at 8). This argument demonstrates a misunderstanding of the design and qualification process. Emulex and LSI have been "qualifying" the redesigned BE3 for 18 months: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] Emulex is not asking for a sweeping ruling about "strong" versus "weak" patents, as Broadcom suggests. (Broadcom Opp. at 9). Emulex's motion is based on the facts of this case, and the amount of time it will take to redesign this accused product for this asserted patent, nothing more. The injunction must be narrowly tailored to fit these facts. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) ("an injunction must be narrowly tailored…").



17  Broadcom plows old ground by arguing that Emulex should have started
18  redesigning its products sooner.  The jury settled this dispute, finding that Emulex
19  was not a willful infringer, and therefore did not act unreasonably in continuing to
20  sell the accused products until there was a finding of liability.  (*See* D.I. 896,
21  Question 12).  Also, the BE3 was not even accused until April 2010.  (*See* D.I. 888
22  at p.36).  Regardless, the purpose of injunctive relief is not to punish the adjudged
23  infringer, even if they are willful – which the jury said Emulex was not.  *See United*

11  EMULEX'S REPLY IN SUPPORT OF ITS MOTION
TO EXTEND THE SUNSET PERIOD
Case No. CV 09-1058-JVS (ANx)

1  *States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952) ("The sole function of
2  an action for injunction is to forestall future violations").
3        Broadcom also argues that Emulex waited until "the cusp of the expiration of
4  the Sunset Period" to move for an extension. (Broadcom Opp. at 7). Here,
5  Broadcom ignores its own delay in providing critical information that Emulex
6  needed in order to bring its motion, namely Broadcom's agreements with ▮▮▮
7  ▮▮▮▮▮ Emulex asked Broadcom for copies of these agreements in
8  November of 2012, (D.I. 1292, Ex. A), but Broadcom resisted this discovery to the
9  point of forcing Emulex to file a motion to compel before finally producing these
10 agreements on March 8, 2013. (*See* D.I. 1291, 1295). These agreements are critical
11 to understanding the relief requested in this motion, and Emulex did not have them
12 until the week before it filed its motion.
13       This Court crafted the sunset period to give customers enough time "to
14 develop noninfringing substitutes **and for customers to bring to market products**
15 **embodying those substitutes**." (D.I. 1090 at 18 (emphasis added)). The only way
16 that this purpose can be accomplished is by extending the sunset period to allow
17 customers sufficient time to qualify the redesigned BE3. While Broadcom
18 complains about this requested relief, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This is the relief that will achieve
21 the stated goal of the sunset period.
22       **C.   Broadcom's Agreements Show There is No Harm in Allowing**
23             **Sales for Existing Design Wins**
24       Broadcom's opposition mischaracterizes its agreements in several key
25 respects.
26       First, Broadcom glosses over its license agreement with Emulex, when in fact
27 Broadcom should be judicially estopped from asserting that the products it licensed
28

in that agreement do not compete with Broadcom.  Specifically, Broadcom argues that because its license to Emulex was for "indirect competition," it does not show willingness to license competing sales.  (*See* Broadcom Opp. at 14).  This is exactly the opposite of what Broadcom argued to this Court previously, when it claimed that there was "irreparable harm" caused even by indirect competition.  (*See, e.g.,* D.I. 1084 at 7 ("Emulex's sales of infringing Fibre Channel products necessarily undercut Broadcom's efforts to expand its own storage-related business")).  This Court agreed with Broadcom, stating that "[i]ndirect competition is no less competition." (*See* D.I. 1090 at 7).  Having made these representations, and having prevailed on them and obtained multiple tens of millions of dollars as a result, Broadcom should be judicially estopped from arguing now that these sales are somehow inconsequential.  *See New Hampshire v. Maine*, 532 U.S. at 749 ("judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase").

  Both SOC 442 and Lancer were enjoined as allegedly infringing the '150 patent because Broadcom argued there was real and meaningful competition. Broadcom then chose to license both products.  This willingness by Broadcom to license products it said were competing is fundamentally at odds with demonstrating a desire to exclude competitors, and it is entirely different from anything this Court faced in *Qualcomm*.

  Broadcom also attempts to downplay the significance of its agreements with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, by arguing that these agreements contain other provisions, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1  ████████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████
6  ██
7  ████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████
9  ██████████████████████████████████████████████████████
10 █████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████
12 ██████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████
16 █████████████████████████████████████████████████████
17 ██████████████████████████████████

18   Broadcom also argues that these agreements are no different from the Verizon

19 license at issue in the *Qualcomm* case, but that is once again incorrect. In

20 *Qualcomm*, this Court noted that the agreement between Broadcom and Verizon was

21 part of a "strategic business alliance" between the two companies. *Broadcom Corp.*

22 *v. Qualcomm Inc.*, 2007 U.S. Dist. LEXIS 97647 at *12 (C.D. Cal. December 31,

23 2007). █████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ███████████████████████████████████████████████████████

26 _____

27 [7] ████████████████████████████████████████████████████

28 ██████████████████████████████████████████████

1  ■
2  ■
3  ■
4  ■
5      Broadcom also implies that the scope of non-licensed sunset sales is too large
6  to permit.  (Broadcom Opp. at 9 ( ■
7  ■ ).  Yet as noted in Emulex's
8  opening brief, Broadcom's agreements were not haphazard: ■
9  ■
10 ■ The impact on Broadcom from any remaining
11 sales, regardless of the number of specific configurations, will be negligible.[8]
12     Finally, regarding distributors, Broadcom suggests that there is still a risk of
13 diversion.  (Broadcom Opp. at 13).  ■
14 ■
15 ■
16 ■
17 ■
18 ■
19 ■
20 ■
21 / / /
22 / / /
23 / / /
24
25
26
27 [8] ■
28
         15    EMULEX'S REPLY IN SUPPORT OF ITS MOTION
                  TO EXTEND THE SUNSET PERIOD
                  Case No. CV 09-1058-JVS (ANx)

### III. CONCLUSION

For the reasons noted above and in its opening brief, the Court should modify the injunction to allow Emulex to continue making sunset sales beyond the current April 11th cut-off, until such time as Emulex's sunset customers can qualify the redesigned BE3-R chip.

Dated: April 3, 2013

FISH & RICHARDSON P.C.

By: _____
Jonathan J. Lamberson

Attorneys for Defendant and Counterclaimant
EMULEX CORPORATION

50891872.doc